# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 19-CR-324(BAH)** |
| | ) | |
| | ) | |
| **JOSEPH SMITH,** | ) | |
| | ) | |
| | ) | **Chief Judge Beryl A. Howell** |
| **Defendant.** | ) | **Trial Begins:  June 8, 2020** |
| _____ | ) | |

## GOVERNMENT'S NOTICE OF INTENT TO CALL
## CHILD SEXUAL ABUSE EXPERT WITNESS
## DR. STEPHANIE WOLF AND SUMMARY OF TESTIMONY

The government requests that the attached discovery letter, dated March 24, 2020, be made part of the record in this case.

Dated: March 24, 2020

Respectfully submitted,

TIMOTHY SHEA
UNITED STATES ATTORNEY

_/s/ Caroline Burrell and Mona Sedky_
SAUSA Mona Sedky, D.C. Bar 447968
AUSA Caroline Burrell
555 Fourth Street, N.W.
Washington, D.C. 20530
(202)262-7122; Mona.Sedky2@usdoj.gov and
Mona.Sedky@usdoj.gov
(202)252-6950; Caroline.Burrell2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the GOVERNMENT'S NOTICE AND EXPERT DISCOVERY LETTER was duly served upon the defense counsel Brandi Harden by electronic means via the Court's ECF system.

This 24th day of March, 2020.

_/s/ Mona Sedky_
SAUSA Mona Sedky, D.C. Bar 447968
AUSA Caroline Burrell
555 Fourth Street, N.W.
Washington, D.C. 20530
(202)262-7122; Mona.Sedky2@usdoj.gov and
Mona.Sedky@usdoj.gov
(202)252-6950; Caroline.Burrell2@usdoj.gov



**U.S. Department of Justice**
United States Attorney
District of Columbia

---

*Judiciary Center*
*555 Fourth Street NW*
*Washington, DC 20530*

March 24, 2020

<u>**VIA ELECTRONIC MAIL**</u>

    *Re:* <u>*United States v. Joseph Smith*</u>
      *Case No. 19-CR-324*

Dear Counsel:

   The Government intends to call Dr. Stephanie Wolf, J.D., Ph.D., as an expert on patterns and symptoms of child sexual abuse, including mental health symptoms and effects, disclosure of child sexual abuse, memory around child sexual abuse, and the complex clinical needs of victims of child sexual abuse. The purpose of this letter is to provide you with additional information regarding Dr. Wolf's opinions in this case.

   At trial Dr. Wolf may testify that sexual abuse has a far greater chance of being committed by someone the child knows, such as a family member or close friend, versus a stranger. This is for a variety of reasons including the proximity such a person has to the child, more opportunities to be alone with the child, and the caregiver's lowering of their guard around the individual. When a caregiver or close family member is a perpetrator, a child may be even less likely to disclose due to worries about destroying the family unit or wondering if others will even believe that the trusted person would do such an act.

   Dr. Wolf may further testify that when a parent was a victim of child sexual abuse themselves, they may display behavior or parenting practices that lead to greater risk of their own child being sexually abused. They may be more likely to have children who are perpetrated against. Past unresolved abuse may lead to inadequate monitoring of their children, unresolved trauma symptoms which encourage family dysfunction, poor boundaries, and difficulty in protecting the child from sexual perpetrators.

   Dr. Wolf may also testify that non-disclosure of child sexual abuse is the norm versus the exception. She may testify that the majority of children do not disclose immediately following

abuse and that a high percentage of children do not disclose until adulthood. Additionally, she may testify that survivors average approximately 5-16 years from onset of the abuse to the disclosure.

Dr. Wolf may also explain delayed disclosure as resulting from a multitude of barriers. Specifically, barriers from within the child (for example, internalized victim-blaming, mechanisms to protect oneself, and immature development at time of abuse); barriers in relation to others (for example, violence and dysfunction in the family, power dynamics, awareness of the impact of telling, and fragile social network); and barriers in relation to the social world (for example, labeling, taboo of sexuality, lack of services available, and culture or time period).

At trial, Dr. Wolf may testify in detail to each of these barriers and subthemes, as well as discuss the fact that additional factors, such as the following, may substantially contribute to delayed disclosure: younger age at the onset of abuse, being financially or otherwise dependent on the perpetrator, and wanting to protect the non-offending family members from harm or distress. Dr. Wolf may also testify that fear of consequences (for example, punishment by a parent, whether physical, verbal, or loss of privileges) may lead to delayed disclosure.

Dr. Wolf may also testify that child sexual abuse victims do not display a "one-size-fits-all" pattern of symptoms. Some child victims are highly successful at masking the outward appearance of victimhood; other child victims are more evidently symptomatic, displaying symptoms of anxiety, depression, and post-traumatic stress disorder. They may have regression in their development and lose skills they have mastered. Some child victims also have disruptions in their functioning both at school and at home. At school, they may no longer be able to concentrate, may be inattentive, hyperactive, get into trouble and fight with peers, as well as exhibit sexual behaviors. At home, they may have problems with sleep, may lose interest in relationships with friends and family and become so distressed that they engage in self-harming behaviors such as cutting or suicidal ideation or attempts. As a result of the abuse, they may also engage in more risky behaviors, including rule-breaking.

Dr. Wolf may opine that for children aged 5-13, the most common recipient of disclosure are peers and mothers, and that most children who disclosed told more than one individual. Many factors contribute to the decision to disclose to a certain person. For example, many children go through a conscious selection phase, in which they consider the expected response of peers and/or family members and whether that person can provide support. Children may try to choose a person to disclose to who they perceive is able to stop the abuse.

Dr. Wolf may also opine that the disclosure of child sexual abuse is not an event, but rather, a process, and that a neat, coherent, and timely disclosure should be regarded as the exception, rather than the rule. A child reporting abuse may not disclose all of the details of their abuse at once. Rather, certain aspects of trauma can be punctuated in a child victim's brain due to the fear response and hormonal release that encodes some of these memories differently than others. In addition, the child's memory of the abuse may not be linear, and may blend fewer events than the victim actually experienced. It is also not unusual for a child to have difficulty pinpointing the exact date or dates on which the abuse occurred. Disclosures of child sexual abuse can also be brought about by a trauma trigger or reminder. It is also not uncommon for victims of child sexual abuse to experience gaps in their memories that they cannot account for.

Dr. Wolf may further testify that cultural factors can affect disclosure. Although sexual abuse occurs in all cultures and societies, certain cultural beliefs and values may contribute to family environments in which children are more at risk to being abused or may promote silence and secrecy about abuse such as specific taboos, sexual scripts, and sexuality.

Dr. Wolf may also testify that "grooming" is often a key component of child sexual abuse. Grooming is a systematic way of gaining a child or parent's trust, filling a need of the child or her caregivers, isolating the victim, sexualizing the relationship, and maintaining control, often through the use of secrecy and shame. Another aspect of grooming is gradually exposing the child to increasingly more violating and sexual contact, which is intended to increase the child's level of comfort with invasions in their privacy and shame from the act of which they have been a part.

Dr. Wolf will base her opinions and conclusions on her education and training, which is outlined in her curriculum vitae, which has been provided to you separately. Dr. Wolf will also rely on her knowledge of relevant professional literature, including articles by clinicians and scientifically-controlled studies.

Please let me know if you require any further detail regarding Dr. Wolf's expected testimony or the bases for her conclusions.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney

By:   /s/ Caroline Burrell and Mona Sedky
SAUSA Mona Sedky, D.C. Bar 447968
AUSA Caroline Burrell
555 Fourth Street, N.W.
Washington, D.C. 20530
(202)262-7122; Mona.Sedky2@usdoj.gov and
Mona.Sedky@usdoj.gov
(202)252-6950; Caroline.Burrell2@usdoj.gov