**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 19-CR-324 (BAH)** |
| | ) | |
| | ) | |
| **JOSEPH SMITH,** | ) | |
| | ) | |
| | ) | **Chief Judge Beryl A. Howell** |
| **Defendant.** | ) | **Trial Begins:  October 26, 2020** |
| ———————————————————— | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION TO
EXCLUDE TESTIMONY OF DR. STEPHANIE WOLF AND REQUEST FOR
<u>DAUBERT HEARING</u>**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this opposition to the defendant's supplemental motion to exclude the testimony of Dr. Stephanie Wolf and request for a <u>Daubert</u> hearing. In his motion, the defendant argues that Dr. Wolf's testimony should be excluded because her 'methodology' does not employ the <u>Daubert</u> factors typically used to assess the reliability of scientific expert testimony. However, the defendant misstates the law and misunderstands the nature of Dr. Wolf's proposed testimony. As discussed in detail herein, the <u>Daubert</u> factors are not applied mechanically or in every case, and they are inapplicable here because Dr. Wolf is not providing scientific testimony; rather, she is testifying about general principles based upon her specialized knowledge. Given that Dr. Wolf's anticipated testimony clearly meets the requirements of Rule 702, there is no basis for a <u>Daubert</u> hearing and the defendant's motion should be denied without a hearing.

# LEGAL BACKGROUND[1]

Rule 702 of the Federal Rules of Evidence controls the admission of expert testimony.

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has addressed the requirements of Rule 702 in two major cases, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). These cases dispensed with the more restrictive "general acceptance" requirement of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), and require instead that the trial court perform a "gatekeeping function" to ensure that the evidence is "not only relevant, but reliable." Daubert, 509 U.S. at 589.

In Daubert, the Court set forth a list of factors that the district court *may* consider when determining whether to admit scientific expert testimony, including 1) whether it can be (and has been) tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential rate of error; 4) the existence and maintenance of standards controlling the technique's operation; and 5) the degree it is accepted as reliable within the relevant scientific community. Id. at 591, 593-94. While enumerating these factors, the Court nonetheless emphasized that the inquiry envisioned by Rule 702 is a "flexible one." Id. at 594.

---

[1] The government incorporates by reference all arguments and recitations of the facts as set forth in prior pleadings and filings.

Daubert was a case that considered testimony that was scientific *per se* – whether a particular pharmaceutical was a risk factor in causing birth defects. Almost entirely ignored by the defendant's motion is the Supreme Court's subsequent decision in Kumho Tire, which considered "how Daubert applies to the testimony of engineers and other experts who are not scientists." 526 U.S. 137 (1999). While maintaining that the trial judge's general gatekeeping obligation applies to testimony based on technical and other specialized knowledge, the Supreme Court recognized that the Daubert factors apply most neatly to scientific testimony and concluded that "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Id. at 141. Indeed, the Advisory Committee Note to Rule 702 recognizes that, in addition to Kumho Tire, "[o]ther cases have recognized that not all of the specific Daubert factors can apply to every type of expert testimony," citing to Tyus v. Urban Search Management, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in Daubert do not neatly apply to expert testimony from a sociologist) and Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 809 (3d. Cir. 1997) (holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge").

The Court in Kumho reiterated that the trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152; see also United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999) ("[District courts] have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable") (quoting Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc., 178 F.3d 1030, 134 (8th Cir. 1999). Thus, trial judges are not required to mechanically apply the Daubert factors or the like to both scientific and non-scientific testimony; rather judges

are entitled to broad discretion when discharging their gatekeeping function. See Kumho Tire, 526 U.S. at 152.

Moreover, it is well-established that the trial court may find an expert's testimony reliable based on his or her experience; indeed, as the Advisory Committee Notes to Rule 702 explain, "[t]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis of a great deal of reliable expert testimony." See Advisory Committee Notes to Rule 702; Kumho Tire, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"). When considering the admissibility of testimony based on specialized knowledge, Rule 702 generally is "construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000) (trial court properly discharged gatekeeping function in admitting police gang expert's testimony about gangs' "code of silence") (citing United States v. Ramsey, 165 F.3d 980, 984 (D.C.Cir.1999) (admission of opinion testimony, given by agent of Drug Enforcement Administration regarding drug trade was not plainly erroneous; while agent was not formally qualified as expert, agent described his qualifications, including his specialized knowledge, education, skill and experience, before giving testimony)).

Finally, it is well-established that an expert may provide the jury with background information, without commenting specifically on the case at hand. As the Advisory Committee Notes to Rule 702 explain,

> it might also be important in some cases to an expert to educate the factfinder about
> general principles, without ever attempting to apply these principles to the specific
> facts in the case. For example, experts might instruct the factfinder on the principles
> of thermodynamics, or bloodclotting, or on how financial markets respond to

corporate reports, without ever knowing about or trying to tie their testimony into

the facts of the case. The amendment does not alter the venerable practice of using

expert testimony to educate the factfinder on general principles.

Fed. R. Evid. 702, Committee Notes on Rules – 2000 Amendment.

Thus, although the "general principles" of <u>Daubert</u> apply to all expert testimony, the specific factors enumerated in <u>Daubert</u> are not meant to be applied mechanically or to all expert testimony. <u>Kumho Tire</u>, 526 U.S. at 149. The ultimate question is "whether expert testimony has a reliable basis in the knowledge and experience of the relevant discipline," and the trial has considerable leeway in how it goes about making this determination. <u>Heller v. District of Columbia,</u> 801 F.3d 264, 271 (D.C. Cir. 2015)

## **ARGUMENT**

### **A.   Dr. Wolf's Proffered Testimony Does Not Require 'Scientific Validation' and Is Admissible Under Rule 702.**

The proposed expert testimony by Dr. Stephanie Wolf satisfies the reliability analysis of Rule 702 and the cases interpreting it. As discussed in the government's initial opposition, Dr. Wolf's testimony will be offered in the nature of background testimony regarding sometimes counterintuitive child victim responses to sexual abuse. This testimony will be based on Dr. Wolf's education and training, her familiarity with relevant literature and research, and her clinical experience with numerous victims of child sexual abuse. Dr. Wolf will not opine specifically that A.S. was sexually abused or comment on A.S.'s credibility.

### 1.   The Daubert Factors Are Not Applicable to Dr. Wolf's Testimony

The defendant's motion claims that Dr. Wolf's testimony is inadmissible because there is no "scientific validation" for her testimony and that her experience as a treating psychologist is not a reliable basis for expert testimony. Def. Mot. at 7. This argument is mistaken on two fronts.

First, the defendant ignores the entire body of law, discussed above, which expressly states that an expert's experience can form the basis for her testimony. See, e.g., Kumho Tire, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); United States v. Marshall, 946 F.3d 591, 596 (D.C. Cir. 2020) (holding that child abuse pediatrician's medical training, on-the-job experience, and published articles and lectures clearly qualified her as an expert in the nature and structure of a sex trafficking operation, including recruitment, grooming, manipulation, and control of sex trafficking victims); Heller v. District of Columbia, 801 F.3d 264, 272 (D.C. Cir. 2015) (affirming admission of expert testimony based on decades of experience and relying on appropriate sources to form opinions); United States v. Smith, 640 F.3d 358, 366 (D.C. Cir. 2011) (finding a witness would have qualified as an expert on the basis of extensive experience investigating drug crimes); see also Advisory Note to Fed. R. Evid. 702 ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").

Second, Dr. Wolf's 'methodology' does not need to satisfy the enumerated Daubert factors in order to be deemed reliable. As discussed supra, the Daubert factors are particularly relevant when assessing scientific opinions; it is well-established that these factors are not meant to be mechanically applied, and they may not be applicable to assessing other types of non-scientific expertise. See Kumho Tire, 526 U.S. at 141 ("Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case"); see also Advisory Committee Notes to

Rule 702 ("other cases have recognized that not all of the specific <u>Daubert</u> factors can apply to every type of expert testimony"). In the present case, Dr. Wolf is not presenting scientific testimony. Instead, her testimony describes common features and behaviors of child abuse victims and is based on her specialized knowledge, gleaned from over a decade of on-the-job clinical experience, her academic studies, including obtaining a Ph.D., and her familiarity with professional literature.

The <u>Daubert</u> factors are inapplicable to Dr. Wolf's area of expertise and the sort of generalized testimony she will provide; principles of scientific methodology such as "control groups" and "error rates" are not especially relevant or appropriate to a psychologist's treatment of patients. Indeed, the Ninth Circuit rejected this very argument in <u>United States v. Bighead</u>, 128 F.3d 1329 (9th Cir. 1997), a pre-<u>Kumho</u> case. The <u>Bighead</u> court rejected the defendant's contention that the district court erred when it admitted the government's expert testimony about certain characteristics of child sexual abuse victims without conducting a <u>Daubert</u> analysis to inquire "whether her theories could be tested, were subjected to peer review and publication, had potential for error, and were generally accepted in the field." <u>Bighead</u>, 128 F.3d at 1330. The Ninth Circuit held that admitting the expert testimony on general characteristics of child sexual abuse victims was proper, stating that <u>Daubert's</u> tests for the admissibility of expert scientific testimony do not require exclusion of expert testimony that involves specialized knowledge to which the <u>Daubert</u> factors are inapplicable. <u>Bighead</u>, 128 F.3d at 1330.

In sum, Dr. Wolf's 'methodology' does not need to satisfy the <u>Daubert</u> factors. Her testimony is based on specialized knowledge to which the <u>Daubert</u> factors are not particularly applicable, rather than the sort of scientific theory discussed in <u>Daubert</u>. The issues that the defendant raises in his motion, such as false positives and error rates, even assuming arguendo that

they are relevant to Dr. Wolf's anticipated testimony, go to the weight, not the admissibility, of that testimony. The defense can choose to cross-examine Dr. Wolf about these issues, but they are not the standard used to determine the admissibility of her testimony. As the Court in <u>Daubert</u> stated: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of attacking evidence. 509 U.S. at 595; <u>see also</u> <u>Heller</u>, 801 F.3d at 272 (defendant's concerns about the conclusions to which the experts' experience led them go to the weight of the testimony, not its admissibility).

2.    <u>Dr. Wolf's Testimony Is Reliable and Admissible Under Rule 702</u>

Here, Dr. Wolf's anticipated testimony regarding patterns and symptoms of child sexual abuse, disclosure of child sexual abuse, memory of child sexual abuse, and the complex clinical needs of victims of child sexual abuse, clearly meets the reliability standard of Rule 702. First, her curriculum vitae establishes her qualification as an expert in these areas and the bases of her testimony. Dr. Wolf has been the Mental Health Director of Montgomery County's Child Advocacy Center since 2016, as well as the Clinical Supervisor of the program's Transitional Trauma Therapist Program. She has over a decade of experience treating child victims of sexual abuse, both in this capacity as well as at her own clinical practice. In addition to her clinical experience, Dr. Wolf has obtained a Ph.D. in clinical psychology, and she has other related research and academic experience as detailed in her curriculum vitae. She is a reviewer of the peer-reviewed Journal of Traumatic Stress and has given many professional presentations on the responses of child sexual abuse victims. Her testimony will be based both on her years of clinical experience, as well as on her extensive academic training and her knowledge of relevant professional literature and studies. <u>See, e.g.</u>, <u>Marshall</u>, 946 F.3d at 596 (child abuse pediatrician's medical training, on-the-job experience, and published articles and lectures clearly qualified her

as an expert in the nature and structure of a sex trafficking operation, including recruitment, grooming, manipulation, and control of sex trafficking victims).

Second, Dr. Wolf's testimony will address a subject on which the factfinder can be assisted by an expert. As discussed in the government's initial opposition, jurors likely have preconceived, and often inaccurate, notions about child sexual abuse victims and witnesses. For example, they may believe that all child sexual abuse victims and witnesses exhibit certain behaviors when discussing the abuse, or may believe that all children would immediately disclose sexual abuse, particularly when the abuse involves a severe form of abuse such as penetration. Hearing from someone with extensive academic and professional experience with these issues will help dispel preconceived misconceptions and allow jurors to put this evidence in context.

Indeed, trial courts routinely admit such testimony in child sexual abuse cases. See, e.g., United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993) (noting that "in the context of child sexual abuse cases, a qualified expert can inform the jury of characteristics of sexually abused children and describe the characteristics the alleged victim exhibits"); United States v. Kirkie, 261 F.3d 761, 766 (8th Cir. 2001) (permitting a qualified expert to testify "regarding characteristics of sexually abused children generally and as they compared with the characteristics exhibited by the victims in [the] case"); United States v. Charley, 189 F.3d 1251, 1264 (10th Cir.1999) (permitting expert testimony regarding characteristics of sexually abused children generally and permitting description of characteristics that the alleged victims exhibit); Bighead, 128 F.3d at 1330 (permitting expert testimony about certain characteristics of child sexual abuse victims); United States v. Hadley, 918 F.2d 848, 853-54 (9th Cir. 1990) (noting that expert testimony about general behavior characteristics may be exhibited in children who have been sexually abused was not improper as it assisted the trier of fact in understanding the evidence).

Third, Dr. Wolf's testimony is based on reliable principles and methods. As demonstrated in her curriculum vitae and discussed *supra*, Dr. Wolf is testifying based on her extensive, firsthand experience treating child sexual abuse victims.[2] In addition to this clinical experience, Dr. Wolf holds a Ph.D. in clinical psychology; her testimony will also be based upon her academic training and professional research in this field. Moreover, as noted in the government's expert notice, Dr. Wolf's testimony is informed by relevant professional literature, including articles by clinicians and scientifically-controlled studies, and is in line with well-established, recognized principles in the field of child psychology. In other words, her specialized knowledge is based upon her extensive experience, her training, and professional research. Federal courts have routinely found that this background provides the necessary measure of reliability for such testimony. See, e.g., Marshall, 946 F.3d at 596 (child abuse pediatrician's medical training, on-the-job experience, and published articles and lectures clearly qualified her as an expert in the nature and structure of a sex trafficking operation, including recruitment, grooming, manipulation, and control of sex trafficking victims); Bighead, 128 F.3d at 1330 (expert was qualified to discuss characteristics of child sexual abuse victims based on "many years of experience interviewing many, many persons, interviewed because they were purported victims of child sexual abuse").

Finally, Dr. Wolf's testimony fits the facts of the case. A.S. was sexually abused by her stepfather, a close caregiver, for over a year and did not disclose the defendant's abuse during this year-long period.  Dr. Wolf's testimony discussing the reasons why a child may fail to disclose

---

[2] The defendant seems to argue that Dr. Wolf cannot draw conclusions from her treatment of patients because she does not know if they were, in fact, sexually abused.  Not surprisingly, the defendant cites no authority to support this argument, and it flies in the face of the many cases cited herein holding that this type of expert testimony is admissible. In any event, the defendant's argument goes to the weight, not the admissibility, of Dr. Wolf's proposed testimony. The defendant can cross-examine Dr. Wolf about how she concluded that her patients were sexually abused. Furthermore, Dr. Wolf's anticipated testimony will rely not only on her clinical experience but also on her familiarity with relevant professional literature and research and on her academic background.

sexual abuse, as well as a child's often counterintuitive and unexpected behavior in response to such abuse, will provide jurors with an informed background to assess A.S.'s delayed disclosure and her behavior during and following the abuse.

In sum, Dr. Wolf's proposed testimony regarding specific characteristics of child sexual abuse victims is an area of specialized knowledge that meets Rule 702's reliability standard. See Fed. R. Evid. 702, Committee Notes – 2000 Amendments (for "generalized" background testimony, it is sufficient that (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case"); Kumho Tire, 526 U.S. at 152. Her testimony fits squarely within a routinely-admitted category of evidence, and the defendant is free to cross-examine her on the bases of her knowledge or opinions. Thus, Dr. Wolf's testimony is reliable under Rule 702, and should be admitted.

**B.      Rule 702 Does Not Require that Dr. Wolf Apply the Relevant Methods and Principles to A.S.'s Case.**

Next, the defendant argues that Dr. Wolf's testimony must be excluded because she has not reliably applied the principles and methods to the facts of the case pursuant to Rule 702(d). In support of this claim, the defendant faults Dr. Wolf for not personally examining A.S. or reviewing A.S.'s case. However, the defendant misconstrues the nature of Dr. Wolf's testimony. As noted multiple times in the government's initial opposition, Dr. Wolf is providing generalized information about the behaviors of child sexual abuse victims; she is not opining specifically on A.S. The defendant does not cite to any law in support of his claim that Dr. Wolf must have personally examined A.S. or must opine specifically on her case; indeed, such a requirement is expressly contradicted by the Advisory Committee Notes to Rule 702:

> If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably. Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. 702, Committee Note – 2000 Amendments; see also Hankey, 203 F.3d at 1168 (in considering the admissibility of testimony based on specialized knowledge, Rule 702 generally is "construed liberally"). This principle is supported by the numerous cases admitting such background testimony in child sexual abuse cases cited *supra* and in the government's initial opposition. Thus, the language of Rule 702 and the relevant case law make clear that Dr. Wolf is permitted to provide generalized information on child sexual abuse victims without specifically opining on A.S.'s case.

## C.     The Proposed Testimony Is Proper Expert Opinion.

Next, the defendant claims that Dr. Wolf's testimony regarding the behavior of parents who have been victims of child sexual abuse is inappropriate expert testimony, and that Dr. Wolf does not have the proper education, training, or experience to discuss this subject matter. The defendant provides no support for these wholly conclusory claims. As already discussed in the government's initial opposition, A.S. is expected to testify that her mother was aware of sexually

inappropriate and unusual behavior by the defendant and did not intervene. Dr. Wolf's anticipated testimony would provide helpful context for A.S.'s mother's otherwise counterintuitive response to the defendant's behavior and, as such, meets the requirements of FRE 702 and 403.[3] Moreover, Dr. Wolf's extensive clinical experience, academic training, and professional research clearly qualify her to speak on this specific response to child sexual abuse, and the defendant is free to cross-examine her on the bases for her testimony if he chooses.

The defendant also claims that Dr. Wolf's testimony is improper because it is not "beyond the ken" of the average juror that "some people are calm in stressful situations and others panic." Def. Mot. At 11. This is a misstatement of both the law and of Dr. Wolf's proffered testimony. First, the requirement that an expert's testimony be "beyond the ken" of jurors is a throwback to the Frye test and is contrary to the proper 702 analysis, which requires only that the testimony be reliable and helpful to the factfinder. See Fed. R. Evid. 702; Daubert, 509 U.S. at 591 (discussing Rule 702's helpfulness standard), Second, Dr. Wolf is not merely noting that people "react differently in different situations;" she is providing specialized information on specific responses of child sexual abuse victims that are likely counterintuitive and foreign to the average juror. As noted *supra*, such expert testimony is regularly permitted by federal courts as assisting the trier of fact.

Moreover, in addition to the routine admittance of this testimony by federal courts, the Court of Appeals for the District of Columbia (DCCA) has upheld the admission of expert testimony regarding behavioral characteristics of child sexual abuse victims, noting the helpfulness

---

[3] As also noted in the government's initial opposition, the government intends to elicit this testimony from Dr. Wolf only if information about prior sexual abuse of A.S.'s mother is presented at trial.

of such testimony to a jury.[4] For example, in Mindombe v. United States, 795 A.2d 39, 41 (D.C. 2002), the DCCA held that the trial court properly admitted the testimony of a clinical psychologist who provided expert testimony on "the range of behaviors exhibited by victims of child sexual abuse." The expert testified at trial "regarding children's inability to remember events in sequential order, the range of children's reactions to abuse, and their tendency not to report the abuse." Id. at 42. The DCCA found that the expert's testimony provided information that was helpful to the average lay juror, finding that "courts have allowed experts to testify regarding their observations of victims of abuse and the general behavior and conduct of persons belonging to such groups," so long as the expert does not opine on the ultimate issues in the case. Id.

In another child sexual abuse case, the DCCA affirmed the expert testimony of an FBI agent as an "education" witness on sexual victimization of children, where the agent described grooming, delayed reporting, inconsistencies, and other matters to educate the jury on the dynamics of child sexual abuse. Jones v. United States, 990 A.2d 970, 978 (D.C. 2010). Noting that jurors "cannot be presumed to have knowledge of these matters," the DCCA found that such testimony would be helpful for the jury in order to understand and evaluate the evidence. Id. In that case, the DCCA found it particularly helpful for the jury to hear about grooming techniques, in order to dispel myths and stereotypes from the jurors' minds. Id.

Similarly, in Oliver v. United States, 711 A.2d 70, 73 (D.C. 1998), the DCCA held that the proffered government expert—a licensed clinical social worker and child interview specialist at the U.S. Attorney's Office—was appropriately qualified as an expert in child sexual abuse. 711 A.2d at 72-73 & n.3. The DCCA found proper the expert's testimony about why a child victim

---

[4] Although these cases are not binding on the Court, they are particularly instructive given that 1) D.C. has adopted the Federal Rules of Evidence; and 2) Dr. Wolf's testimony relates to the D.C. Code child sexual abuse charges, which would typically be reviewed by the DCCA.

may recant testimony related to abuse, including the status of an abuser as a trusted individual, or questioning by a significant adult who disbelieves the child. Id. at 72. The DCCA noted that other courts have held that the behavioral characteristics and psychological dynamics of child sexual abuse victims are not subjects with which jurors are typically familiar. Id. at 73. Thus, "[the expert's] testimony was relevant because it assisted jurors in understanding the psychology of an abused child's recantation." Id. at 73.

In sum, Dr. Wolf's testimony plainly meets the 'helpfulness' requirement of Rule 702; both federal and state court decisions have recognized the usefulness of such information to a jury. As such, Dr. Wolf's testimony is proper expert opinion, and the defendant's argument to the contrary should be dismissed.

**D.    Dr. Wolf's Testimony Is Not An Improper Expert Opinion on an Ultimate Issue.**

Next, the defendant claims that Dr. Wolf's testimony "that specific reactions are consistent with child sexual abuse" usurps the jury's role to assess A.S.'s credibility because it improperly bolsters the complainant's testimony and "allows the government to elicit testimony…on whether or not sexual abuse occurred." Def. Mot. At 12.

Again, this argument mistakes both Dr. Wolf's proffered testimony and the relevant law. As noted in the government's initial opposition, Dr. Wolf is not opining on the credibility of the complainant, the complainant's reactions, or even discussing *anything* specific to the complainant. Her testimony is being offered as background testimony regarding sometimes counterintuitive child victim responses to sexual abuse. She will not opine specifically that A.S. was sexually abused or comment on A.S.'s credibility, nor does her general testimony about barriers to disclosure invite such speculation. The jurors will be left to decide whether or not any of those barriers applied to A.S. and whether or not they contributed to her delayed disclosure, in addition

to their judgment of her overall credibility as a witness. Such testimony has repeatedly been found to be educational and *not* to be improper bolstering. See, e.g., United States v. Johns, 15 F.3d 740, 743 (8th Cir. 1994) (expert psychologist testimony about characteristics of child sexual abuse victims was to educate rather than to usurp the role of the jury and thus properly admitted); Whitted, 11 F.3d at 785-86 (noting that a qualified expert who informs the jury of characteristics in sexually abused children does not invade the province of the jury, provided he or she does not opine on whether or not abuse occurred or comment on a victim's truthfulness); Kirkie, 261 F.3d at 766 (expert's testimony regarding characteristics of sexually abused children in general and as they compared with characteristics of the victim did not vouch for the victim's truthfulness). The cases cited by the defendant are inapposite; they discuss the principle that an expert cannot provide a mathematical estimate that a victim is telling the truth.[5] Dr. Wolf's testimony will not include this information, either explicitly or implicitly. Her testimony is limited to the background information about victim responses – testimony that has repeatedly been found to be appropriate.

**E.    Dr. Wolf's Testimony Is Admissible Under Rule 403.**

Finally, the defendant argues that Dr. Wolf's testimony is inadmissible under Rule 403 because it is substantially more prejudicial than probative. The defendant claims that Dr. Wolf's testimony will not be helpful to the jury because her testimony does not relate to an element of one of the charged crimes, and that she is merely giving "her accredited opinion that A.S. is telling the truth." Def. Mot. at 13. Once again, the defendant's argument misstates both Dr. Wolf's testimony and the relevant law. As discussed *supra* in Part C and in the government's initial opposition, Dr. Wolf is not opining that A.S. is telling the truth. Moreover, neither Rule 702 nor Rule 403 requires

---

[5] Indeed, one of the cases relied on by the defendant, United States v. Magnan, 756 Fed. Appx. 807, 811-16 (10th Cir. 2018), undermines his position, as that court took no issue with the expert's testimony on the general characteristics of abusers and abuse victims, only with the expert's statement regarding a mathematical percentage.

that an expert's testimony be directly related to an element of the charged offense; rather, the testimony must "help the trier of fact understand the evidence or to determine a fact at issue" under Rule 702, and its probative value must not be substantially outweighed by its prejudicial value under Rule 403.

Here, Dr. Wolf's testimony will aid the factfinder in evaluating A.S.'s behaviors, and ultimately in determining the facts at issue, for all of the reasons already discussed *supra* and in the government's initial opposition. Hearing from someone with years of direct experience with child sexual abuse victims, as well as extensive academic and professional training, will help dispel jurors' preconceived notions and allow jurors to put A.S.'s testimony in context. Thus, Dr. Wolf's anticipated testimony raises no concerns under FRE 403.

### F.      Dr. Wolf's Testimony Is Admissible Without the Need for a Hearing.

As the Advisory Committee Notes to Rule 703 state, Daubert is "not intended to provide an excuse for an automatic challenge to the testimony of every expert." Indeed, in Kumho Tire, the Supreme Court noted that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." 526 U.S. at 152. "Although the Court must ensure that expert testimony is reliable and admissible, there is nothing in Kumho Tire or Daubert that requires the Court to conduct a pre-trial evidentiary hearing if the expert testimony is based on well-established principles." United States v. Cooper, 91 F. Supp. 2d 79, 82 (D.D.C. 2000) (citing Nichols, 169 F.3d at 1263 (pre-trial hearing not required because "the challenged evidence does not involve any new scientific theory and the testing methodologies are neither new nor novel")).

Here, Dr. Wolf's curriculum vitae establishes that she is qualified to testify about patterns and symptoms of child sexual abuse, disclosure of child sexual abuse, memory of child sexual abuse, and the complex clinical needs of victims of child sexual abuse, as discussed in Part A *supra.* Moreover, Dr. Wolf's proposed testimony regarding these general characteristics of child sexual abuse victims falls squarely within the parameters of Rule 702 and is routinely admitted by federal and state courts. There is nothing 'complex' or 'novel' about her testimony. Given Dr. Wolf's detailed curriculum vitae, the government's expert notice, and the established case law accepting the proposed testimony under Rule 702, there leaves little reason why such a hearing would be necessary – particularly given that the legal standard by which the defendant challenges Dr. Wolf's testimony is incorrect. As noted earlier, the defendant's objections to Dr. Wolf's testimony are, at most, bases for cross-examination, not requirements for the admissibility of specialized knowledge testimony under Rule 702, <u>Daubert</u>, and <u>Kumho</u>. Thus, the Court should deny the defendant's motion, and permit the government to call Dr. Wolf as a witness without the need for a <u>Daubert</u> hearing.

## **CONCLUSION**

In sum, the government submits that Dr. Wolf's proposed expert testimony more than satisfies the Rule 702 factors, is relevant under Rule 403, and should be admitted. The government further submits that a <u>Daubert</u> hearing is not required and requests that defendant's motion to exclude the witness's testimony be DENIED.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY


_____ /s/ Caroline Burrell_
AUSA Caroline Burrell
SAUSA Mona Sedky
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-6950; caroline.burrell@usdoj.gov
(202) 252-7122; Mona.Sedky2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by ECF upon defense counsel of record, Brandi Harden, on July 3, 2020.

*/s/ Caroline Burrell*
AUSA Caroline Burrell
SAUSA Mona Sedky
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-6950; caroline.burrell@usdoj.gov
(202) 252-7122; Mona.Sedky2@usdoj.gov