UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| ) | Case No. 1:19-cr-00324 (BAH) |
| v. ) | Trial Date: October 18, 2021 |
| ) | |
| ) | |
| JOSEPH SMITH ) | |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE AND ELECTRONIC DATA
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Mr. Joseph Smith, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and the Fourth Amendment to the United States Constitution to suppress all evidence obtained from the unlawful search conducted on April 21, 2017. The warrant which authorized the search was overbroad, lacked probable cause and violated the Fourth Amendment's particularity requirement as set forth in *Burns v. United States*, 235 A. 3d 758 (D.C. 2020). A hearing is requested on this motion.[1]

I.   **BACKGROUND**

On September 25, 2019, Mr. Smith was charged by indictment with one count of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4), one count of Enticing a Minor, in violation of 18 U.S.C. § 2242, thirteen counts of First Degree Child Sexual Abuse, in violation of 22 D.C. Code §§ 3008, 3020(a)(2), two counts of Second Degree Child Sexual Abuse, in violation of 22 D.C. Code §§ 3009, 3020(a)(2), and one count of Misdemeanor Sexual Abuse of a Child, in violation of 22 D.C. Code § 3010.01. Trial is scheduled for October 18, 2021.

---

[1] Counsel reserves the right to supplement this motion upon disclosure of additional information.

According to police reports, on April 17, 2017, the complainant reported to the Metropolitan Police Department (MPD) that her stepfather, Mr. Joseph Smith, began forcing her to perform oral sex on him in May of 2016.[2] The complainant further alleged that Mr. Smith sent her text messages about the abuse on her cellular phone and that at his request, she sent nude photos of herself to him on his cellular phone.

On April 21, 2017, MPD Detective Alvarenga applied for a Search Warrant for Mr. Smith's apartment located at 1301 C Street SE, #32 Washington, D.C. The application contained an Affidavit in Support of a Search Warrant (Exhibit A) that requested the seizure of:

> "cellular phones, computers, digital storage devices, thumb drives, removable electronic devices such as external hard drives, and the extraction of all electronic data stored inside of them," and "any items or material related to the offense of 1st Degree Child Sexual Abuse."

MPD officers executed the warrant at Mr. Smith's home, the same day, and recovered twelve cell phones, three tablets, an X-box game console, an air mattress, a business card, and assorted handwritten documents.

On May 10, 2017, the Department of Forensic Services, Digital Evidence Unit (DFS-DEU) examined ten of the seized electronic devices and extracted data using Cellebrite UFED 4PC v6.1.0.140. Cellebrite UFED Physical Analyzer v6.1.5.28, Cellebrite UFED Touch 6.10.140, FTK Imager v3.4.3.3, EnCase Forensic v8.04, and Magnet Internet Evidence Finder v6.8.8.5013. On May 11, 2017, DFS-DEU examined six more electronic devices, seized pursuant to the Search Warrant and extracted data using Cellebrite UFED 4PC version

---

[2] The complainant, a minor, lived with her mother and sister at Mr. Smith's residence located at 1301 C Street SE Washington, D.C.

6.0.0.1010, UP-828P Universal Programmer version 2.0.1.8 #12/23/2016, Cellebrite Physical Analyzer version 6.0.0.126, and EnCase Forensic version 8.03.01. Prior to the DFS-DEU extractions,[3] the government **never** applied for an additional search warrant to extract electronic data from the fifteen seized devices.

Two years later, aware of the deficiencies in the April 2017 warrant, on May 6, 2019, Detective Alvarenga applied for a second Search Warrant (Exhibit B). The second warrant requested authorization to examine and extract data from "two electronic devices which were already in police custody." Both items had already been searched. In support of the second Application for a Search Warrant Detective Alvarenga stated:

> "As for the black Motoroala phone DEU performed a logical extraction of data—then existing on the phone, which revealed text message communication between the complainant and the defendant during the relevant time period. At the time of the *search* DEU did not have the software to perform a physical extraction which could potentially retrieve deleted data."
>
> "The Devices are currently in the lawful possession of the Metropolitan Police Department, Evidence Control Branch, at 17 DC Village Lane SW, Washington, DC, 20032.The Devices were seized by the Metropolitan Police Department pursuant to a search warrant, and after being analyzed by the Department of Forensic Sciences, were delivered to their present location. Therefore, while the Metropolitan Police Department might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that a further examination of the Devices will comply with the Fourth Amendment and other applicable laws."

---

[3] DFS reports dated May 10, 2017, and May 11, 2017(Attachment C).

In the second Affidavit, which was more detailed but remained facially deficient,[4] the complainant never mentioned a black Motorola cellular phone. In fact, the cellular phone used by the defendant, as alleged by the complainant was identified as an iPhone 6+. The first Affidavit included no description of a cellular phone possessed by Mr. Smith. The government did not then and does not now have probable cause for a black Motorola cellular phone. Furthermore, the Affidavit fails to include a nexus between criminal activity by Mr. Smith and any specific electronic devices and fails to include *any* particularized time period.

## MEMORANDUM OF POINTS AND AUTHORITIES

**II.    THE SEARCH WARRANTS WERE INVALID BECAUSE THEY WERE OVERBROAD LACKED PROBABLE CAUSE AND CONSTITUTIONALLY REQUIRED PARTICULARITY**

Fundamentally, the scope of a search warrant is strictly bounded by probable cause that the items sought and particularly described are evidence of a specific crime and that such items will be found in the particularly described places to be searched. Here, this Court cannot conclude that the scope of the April 21, 2017 warrant was proper in the wake of *Riley v. California*, 573 U.S. 373 (2014). *Riley* requires a warrant to search a cell phone because cell phones are often "a digital record of nearly every aspect of their [owners'] lives—from the mundane to the intimate." *Id*. at 395. Cell phones hold personal information that is quantitatively and qualitatively different from anything that can be searched in the physical world. They have "immense storage capacity," hold "many distinct types of information," and any one category, let alone a composite of all of them, may chronicle and reveal private life in a manner never before possible in searches of physical spaces. *Id*. at 393–94. "An Internet search and browsing history,

---

[4] Mr. Smith challenges the second warrant on the basis that it is overbroad, lacks probable cause, and particularity as required by the Fourth Amendment and incorporates all arguments herein.

for example, . . . could reveal an individual's private interests or concerns—perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD." *Id*. at 395–96. Here, the Fourth Amendment basics were jettisoned. The warrants were wildly overbroad and lacked constitutionally required particularity.

Both search warrants and the Affidavits filed in support of the Search Warrants were facially deficient and wholly failed to provide "a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Indeed, the Affidavits fail to provide any specificity or basis to believe that evidence of a crime related to Mr. Smith would be located on either his cellular phone or computer. Instead, the Affidavits make only vague claims related to the general nature of electronic devices without any connection to suggest documentation of criminal activity would likely be found on a particular phone or computer in Mr. Smith's home.

As set forth in *Burns*, "It is not enough for police to show there is probable cause to arrest the owner or user of the cell phone, or even to establish probable cause to believe the phone contains some evidence of a crime. To be compliant with the Fourth Amendment, the warrant must specify the particular items of evidence to be searched for and seized from the phone and be strictly limited to the time period and information or other data for which probable cause has been properly established through the facts and circumstances set forth under oath in the warrant's supporting affidavit. 235 A.3d at 22.

The warrants here as in *Burns* were overbroad, lacking in probable cause and particularity, and the warrant judge should not have issued them. The warrants' deficiencies were so extreme and apparent that a reasonably well-trained police officer, with reasonable knowledge of what the law prohibits, would have known the warrants were invalid notwithstanding their

approval by a judge. *Id* at 43. The good faith exception to the exclusionary rule therefore does not apply, *id* at 5, and this Court should grant Mr. Smith's motion to suppress all of the data collected from the electronic devices. Because the warrants were overbroad, lacked probable cause and particularity and evidence was obtained in an unconstitutional manner, the warrants must be declared invalid and any evidence seized during their execution must be suppressed as fruit of the illegal action. *Wong Sun v. United States*, 371 U.S. 471 (1963).

### III.   THE WARRANTS WERE INVALID BECAUSE THEY FAILED TO PARTICULARLY DESCRIBE THE LEGITIMATE OBJECTS OF THE SEARCH

The Warrant Clause of the Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Its principal goal is to disable police officers' "unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009). "[I]ndiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). Besides the requirements of a neutral magistrate and the oath, the Clause's goals are accomplished through its probable cause and particularity requirements.

A search warrant must limit "the authorization to search to the specific areas and things for which there is probable cause to search," ensuring "that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978) (Clause requires "probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found" in the location searched). The command

that a warrant "set out with particularity" the "scope of the authorized search," *Kentucky v. King*, 563 U.S. 452, 459 (2011), was meant to "make[] general searches . . . impossible," by leaving "nothing" to "the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). The requirements of particularity and probable cause thus work together to prevent authorities' "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). Particularity about the object of the search also assures that "nothing is left to the discretion of the officer executing the warrant." *Marron*, 275 U.S. at 196.

The warrants issued here purported to authorize searches of all cell phones and the extraction of all electronic data stored inside of them so that police, in their discretion, could determine whether it had value as evidence, or was otherwise useful. They permitted a "general, exploratory rummaging." *Andresen,* 427 U.S. at 480. Such sweeping overbreadth and lack of any particularity rendered the warrants fundamentally invalid in two ways: First, the warrant authorized an examination of every bit of data when probable cause existed for only a tiny fraction and limited time, making the search authorization grossly overbroad as it related to probable cause. Second, the object of the search was vaguely described as "any evidence" of 1st Degree Child Sex abuse rather than specifying the limited evidence for which probable cause existed, giving the police carte blanche to scour all data for potential leads. This defect violated the particularity requirement.

The April 2017 warrant affidavit states that the complainant told police that the defendant sent her text messages to her cellular phone that she sent him nude photos to his cellular phone. Thus, if described with specificity and particularity, the police had probable cause to believe very limited data--texts and photos between the complaining witness and the defendant from a discreet time period existed on Mr. Smith's cell phone. The Affidavits here did not even purport

to establish probable cause to believe that evidence of Mr. Smith being involved in a crime would be found on Mr. Smith's cell phones or computer. Certainly, there is no plausible argument that the warrant affidavit established probable cause to believe that Mr. Smith's unlimited computer Internet search history, communications with all persons, all photographs, videos, contacts, emails, etc. evidence of the alleged abuse.

The objects of the search were described vaguely as "[a]ll data" or "any evidence" related to the sexual abuse. Such generic requests, untethered from any actual evidence of the crime, are hallmarks of invalid warrants. It was incumbent on police to describe with specificity the data for which the affidavit established probable cause, such as text messages between complainant and defendant or photos during a discreet time frame. The generic nature of the data to be seized underscores the fact that probable cause was lacking. Police could not particularly describe what they were looking for because they were not looking for anything in particular. They were looking for anything that might turn out to be inculpatory, exculpatory, or otherwise useful. The lack of particularity as to the legitimate object of the search also meant that the officer executing the warrant would perceive no limits on the search. In fact, the officers understood the warrant to permit unbounded scrutiny of all data on the phones and accordingly extracted every shred of data on them. Warrants with such "indiscriminate sweep" are "constitutionally intolerable." *Stanford v. Texas*, 379 U.S. 476, 486 (1965). An affidavit must establish that "there is reasonable cause to believe that that the legitimate object of a search is located in a particular place." *Steagald v. United States*, 451 U.S. 204, 213 (1981). An item is a "legitimate object of a search" only when there is probable cause to believe that it is proof of criminal behavior. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967).

Post-*Riley*, courts from around the country have routinely invalidated cell phone search

warrants, like the ones here, authorizing searches of broad categories of data where probable cause existed for only a more limited search, citing the constitutional infirmities of overbreadth and lack of particularity. *Morales v. United States*, 77 M.J. 567, 574 (A. Ct. Crim. App. 2017), is illustrative of the overwhelming authority invalidating warrants such as these. In that case, Morales's phone was lawfully seized and there was "probable cause to search the phone for text messages" between Morales and the complaining witness who had reported that he sexually assaulted her. 77 M.J. at 570. Yet the search warrant was not limited to a search of those text messages, instead permitting officers to search for "any [] materials that may assist in the resolution of this investigation." *Id*. at 572. Pursuant to that warrant, an officer "search[ed] all the contents of the device" and "extracted all the data from the phone," uncovering photographs that appeared to depict the sexual assault. *Id*. The court concluded that "there was probable cause to search for text messages," but not "to look for photographs," *id*. at 573, so that the trial court erred in failing to suppress the photographic evidence. It explained that "the government's search authorization runs afoul of the probable cause and particularity requirements of the Fourth Amendment," admonishing that warrants are invalid when they are "'so broad that they become the sort of free-for-all general searches the Fourth Amendment was designed to prevent.'" *Id*. at 575 (quoting *United States v. Richards*, 76 M.J. 365, 370 (C.A.A.F. 2017)). "A warrant," the court continued, "must describe the things to be seized with sufficiently precise language so that it informs the officers how to separate the items that are properly subject to seizure from those that are irrelevant." *Id*.

The identical defects exist here as in *Morales*. In the 'Requests' section, of the April 2017 Affidavit, the words 'text messages' and 'Internet web browser history' do not appear. It was obvious that such text messages would not be found by examining Internet browser data, web

history, photographs, contacts, communications with other people, and the like. Thus, the search authorized here grossly exceeded probable cause.

Relatedly, the warrants also utterly failed to limit the objects of the search to the data for which police could have but failed to demonstrate probable cause. The warrant vaguely authorized seizure of "any" and "all" evidence of 1st Degree Child Sexual abuse without describing what that evidence was, thereby permitting rummaging of all files for whatever might turn up, rather than limiting search and seizure to data for which probable cause was established.

In defending the all-inclusive breadth of the warrants and their failure to specify what evidence was sought, the government may argue that an all-data search was permissible, particularly in a child sexual abuse case, so long as there was probable cause to search the phones for some evidence connected to the crime. The government's argument is without merit. Such an argument is an admission that a warrant is invalid, and obviously so. When the police search Internet and web browser history, communications with all persons, photographs, and the like, police must have probable cause to believe that particularized sexual abuse-related evidence exists in such data, present that evidence to the Court, and obtain authorization to search for and seize it in the data files where it may be found. The point of the probable cause and particularity requirements is precisely to disable police officers from searching wherever they like for hypothetical evidence that may exist, but for which they have no probable cause.

The government may also argue that in the context of personal computer searches, to find specified data, police may have to examine many files because criminals may hide, mislabel, or alter file extensions to conceal contraband and evidence. However, the government cannot explain, how without a separate particularized warrant which includes a nexus between criminal activity by Mr. Smith and the electronic devices this principle applies here. The point of these

authorizations is not that when police have only a hunch that a computer may hold evidence of a crime and cannot articulate what particular evidence actually exists and where it will be found, they may search every computer file in case it holds something of interest. That is exactly what the search warrants in Mr. Smith's case authorized.

In cases where courts have observed that examiners may have to look at innocuous files to find the sought files, there is probable cause to search for specified data, and "the particularity requirement assumes even greater importance." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013). If it is true that many innocuous files have to be at least cursorily examined to eliminate them as the target files, courts bring "heightened sensitivity to the particularity requirement" to avoid having every electronic information warrant become "a general warrant, rendering the Fourth Amendment irrelevant." *Id.* at 447 (q*uoting United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc)). Here, the warrants' lack of particularity is stark because they say nothing about what specific evidence of the crime was sought.

Moreover, in the case of cell phone searches (texts and photos) it is not true that overbroad searches cannot be avoided. DFS reports indicate that analysts copied all of the data on the phones. According to the 2017 Cellebrite report, the available search tools enabled authorities to sort and segregate digital files by category (such as text messages) and metadata (such as date, time, sender, and recipient) to bring to governmental view a targeted subset of data. Thus, had the warrants dictated a limited search, it was achievable. But the fundamental Fourth Amendment problem here is that the warrant did not command a limited search. Rather, it unjustifiably permitted the most expansive search possible for "any" thing related to 1st Degree Child Sexual Abuse.

## IV. THE GOOD-FAITH EXCEPTION DOES NOT APPLY.

While the good-faith exception to the exclusionary rule excuses objectively reasonable officer reliance on a duly authorized warrant, objectively reasonable reliance is lacking and suppression is required when, as relevant here: (1) the warrant is based on "an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (2) a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923 (1984). The Court employs an objective standard and asks "whether a reasonably well trained officer" with "a reasonable knowledge of what the law prohibits" "would have known that the search was illegal despite the magistrate's authorization." *Id*. at 919 n.20, 922 n.23. Here, the warrants' defects in failing to establish probable cause relative to the extreme breadth of the search authorization and lack of particularity about what specific evidence was sought were so elemental and obvious that the good-faith exception to the exclusionary rule does not apply.

As in *Morales,* the court held that officer reliance on a search warrant that was flawed in strikingly similar ways was unreasonable. Here, like in *Morales*, the Affidavits did not detail that the subject phone likely contained specific text messages between the victim and the defendant related to the offense, which may have rendered a limited search appropriate. Yet police obtained an all-data search warrant, perused everything, and found incriminating data that they had no business examining in the first place. The officer's reliance on the warrant was unreasonable because the affidavit "provided no factual predicate" supporting the affiant's request to search for photographs, and "no factual basis to conduct an open-ended search of the phone's entire

contents." 77 M.J. at 577. "The affidavit was bare bones with respect to such authorizations as the only nexus between the phone and the alleged crimes described was appellant's text message admissions." *Id*. A reasonable officer would not have relied on authorization to search for anything except "text messages sent between Mr. Smith and the complainant" and the metadata associated with these particular messages, and "would have known that probable cause was obviously lacking for "pictures and videos" or "an open-ended search." *Id*. Here, there was even less specificity than in *Morales*, because Detective Alvaregna's Affidavits lacked all factual support for a search of data such as text messages, Internet activity, photographs, and communications with persons other than the complainant. Additionally, there is no information that the Internet activity on Mr. Smith's computer or any texts or photographs inside of a particular phone was connected to the investigation of sexual abuse.

As in *Morales*, the court held that "the warrant was so facially and grossly overbroad in its description of the items to be seized that '[a] reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization.'" *Id*. at 924 (quoting *Leon*, 468 U.S. at 922 n.23). "[I]t was not objectively reasonable for [police] to think that a warrant was valid when it gave them unbridled discretion to search for and seize whatever they wished." *Id*. (citing *United States v. Leary*, 846 F.2d 952, 609 (10th Cir. 1988) ("A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized.")). "Simple common sense dictates that [police] did not need to look at every bit of data in the cell phone to find the pictures of young girls in swimsuits taken" at a particular time and place. *Id*. Such pictures could easily have been pinpointed during a limited search, and it was obvious they could not be found through examination of pictures taken months prior, or in call logs. *Id*. So too here, the police's error fell well outside the good-faith exception

where it took only "simple common sense" to know that authorization to scrutinize "every bit of data" is extraordinary and cannot be supported by probable cause to search a tiny fraction of that data. Because reasonable officers understand that the whole point of a search warrant is to limit their search authorization to particular items and places, they should have known that a warrant was invalid "when it gave them unbridled discretion to search for and seize whatever they wished." *Id*.; see also *State v. Castagnola*, 46 N.E.3d 638 (Ohio 2015) (rejecting good-faith exception where "[t]he affidavit was so lacking in indicia of probable cause and the warrant was so facially deficient in failing to particularize the items to be searched for on Castagnola's computer that the detective could not have relied on it in objective good faith").

## V.  THE EXCESSIVE DELAY IN SEEKING A WARRANT WAS UNREASONABLE UNDER THE FOURTH AMENDMENT

The prolonged seizure of the cell phone before it was searched was unreasonable and thus violated the Fourth Amendment. "The ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted)). Any delay in pursuing a warrant must be reasonable in light of all the circumstances. *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012).

In determining whether a prolonged seizure is reasonable, a court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (quoting *Place*, 462 U.S. at 703 (internal quotation marks omitted)). "Brevity of the invasion of the individual's Fourth Amendment interests is an important factor" to consider in this regard. *Place*, 462 U.S. at 709. The strength of the possessory interests is another factor to consider. *United States v. Mitchell*, 565 F.3d 1347, 1352

(11th Cir. 2009) (per curiam). It is difficult to think of personal property that has more possessory significance in this day and age than a person's phone.

On the other side of the balance is the government's interest in intruding on the individual's possessory interest. *Burgard*, 675 F.3d at 1033. Stronger evidence of guilt creates a more compelling government interest in seizure, and probable cause may justify a longer delay than reasonable articulable suspicion. *Id*. For example, the governmental interest might be particularly strong where the suspect admits that his property contains contraband. *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2012). No such justification existed here.

In this case, the delay in the police's application for a search warrant was unwarranted. The most significant factors in the analysis are "whether the police diligently pursued their investigation." *Place*, 462 U.S. at 709. "When police neglect to seek a warrant without any good explanation for that delay, it appears that the [government] is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Burgard*, 675 F.3d at 1033-34 (citing *Mitchell*, 565 F.3d at 1351); *Mitchell*, 565 F.3d at 1351, 1352. Here, there was absolutely no reason why the police were unable to apply for a search warrant for more than two years. Because the delay in obtaining a search warrant for the phone in this case was unreasonable, the tangible evidence obtained therein, namely the electronic data must be suppressed.

## CONCLUSION

This is not a close case on probable cause or lack of particularity. The authorization to search "all electronic data" and seize "any items or material related to the offense of 1st Degree Child Sexual Abuse" far exceeded existing probable cause to search for extremely limited data, such as texts between the complaint and the defendant, or photos during the time frame described

by the complainant. The Affidavits revealed no information that the cell phones were used to facilitate sexual abuse, that the complainant and Mr. Smith communicated by these cell phones or anything of the sort, yet police obtained search warrants that essentially said look at everything in case you find something. The vague description of what evidence was sought invited police to rummage at will. The warrant's overbreadth and lack of particularity rendered it a general warrant, the chief evil the Fourth Amendment prohibits. Here, the police obtained warrants that were the antithesis of how warrants are supposed to function—warrants that gave "unbridled discretion to search for and seize whatever they wished." *United States v. Winn*, 79 F. Supp. 3d at 924 (S.D. Ill. 2015). Police reliance here was well outside any conception of reasonableness, and the good-faith exception to the exclusionary rule does not apply. Based on the aforementioned reasons Mr. Smith requests that all evidence obtained from the April 21, 2017 Search Warrant be suppressed.

Respectfully submitted,
_____/s/_____
Brandi Harden
Bar No. 470706
Counsel for Joseph Smith
Harden|Pinckney, PLLC
400 7th Street Suite 604
Washington, DC 20004
hardenpinckney@gmail.com
(202) 390-0374

**CERTIFICATE OF SERVICE**

I, Brandi Harden, hereby certify that on May 27, 2021, I caused a true and correct copy of the foregoing Motion To Suppress Tangible Evidence and Electonic Data to be served via ECF on the parties of record.

_____/s/_____
Brandi Harden