# EXHIBIT B

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**SEARCH WARRANT**

2019CSW2511

**TO:**  THE CHIEF OF POLICE OR ANY OTHER LAW ENFORCEMENT OFFICER

(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by  _____  Jenny Alvarenga, Badge #D2-1686

_____  that he has probable cause to believe

that on the ☐person ☐premises ☐vehicle ☐object, known as  _____  **See Attachment A**

in the District of Columbia, there is now being concealed certain property, namely  _____  See Attachment B

which is  _____  Evidence of an offense IN VIOLATION of DC CODE 22-3008  _____  and as I am satisified

(Alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated ☐person ☐premises ☐vehicle ☐object, and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime/at any time of the day or night, the designated ☐person ☐premises ☐vehicle ☐object, for the property specified and if the property be found there.

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE in an inventory of the property seized, to leave a copy of this warrant and return to file, a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this _____ day of _Mry_  , 20 _19_  _____
                                                        Judge, Superior Court of the District of Columbia

Dary A. Deyn

**RETURN**

I received the above detailed warrant on  _____  , 20 _19_ and have executed it as follows:
On  _____  , 20 _19_ , at  _____  ☐ AM ☐ PM. I searched the
the ☐person ☐premises ☐vehicles ☐object, described in the warrant and I left a copy of the warrant and return with

_____  properly posted.

(Name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:

_____
_____
_____
_____
_____
_____
_____
_____

This inventory was made in the presence of  _____

I swear that this is a true and detailed account of all property taken by me under this warrant.

_____
Executing Officer

Subscribed and sworn to before me this _____ day of  _____  , 20 _19_

_____
Judge, Superior Court of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION—SPECIAL PROCEEDINGS BRANCH

IN THE MATTER OF THE SEARCH OF **(1)
WHITE AND PINK IPHONE, MODEL
A1688, FCC ID BCG-E2946A, IC 579C-
E2946A, AND (2) BLACK MOTOROLA
PHONE WITH BLACK CASE,**
CURRENTLY LOCATED AT EVIDENCE
CONTROL BRANCH, 17 DC VILLAGE
LANE SW, WASHINGTON, DC 20032,
UNDER RULE 41

SW No. _2419 CdJ 2511_

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
### FOR A WARRANT TO SEARCH AND SEIZE

I, Jenny Alvarenga, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND



1.      I make this affidavit in support of an application under Rule 41 of the Superior

Court Rules of Criminal Procedure for a search warrant authorizing the examination of

property—two digital devices—which are currently in law enforcement possession (the

"Devices"), as described in Attachment A, and the extraction from that property of electronically

stored information as described in Attachment B.

2.      I am a Detective with the Metropolitan Police Department. I have been in this

position since July 2014. I have worked for the Metropolitan Police Department since MAY

2008. During the course of my tenure with the Metropolitan Police Department, I have served as

a uniformed patrol officer for approximately six years. I am currently assigned to the Youth and

Family Services Division. My responsibilities are to investigate sexual and physical abuse crimes

against infants, children and adolescents that occurred within the District of Columbia. Over the

years, I have obtained, assisted and executed arrest warrants of persons for violations of the District of Columbia Code. I have also assisted in executing numerous search warrants.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 22 D.C. Code § 3002 (First Degree Sexual Abuse), § 3006 (Misdemeanor Sexual Abuse), and related charges, have been committed by Joseph Smith. There is also probable cause to search the Devices, further described below and in Attachment A, for the things described in Attachment B.



## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.     The property to be searched is (1) A WHITE AND PINK IPHONE, MODEL A1688, FCC ID BCG-E2946A, IC 579C-E2946A, AND (2) A BLACK MOTOROLA PHONE WITH BLACK CASE, that is, the "Devices."

6.     The Devices are currently located at EVIDENCE CONTROL BRANCH, 17 DC VILLAGE LANE SW, WASHINGTON, DC 20032.

## PROBABLE CAUSE

7.     The complainant in this case was forensically interviewed at the District of Columbia Child Advocacy Center. During the interview, the complainant disclosed that on Friday April 14, 2017, her mother and the suspect, Joseph Smith, were involved in a domestic violence incident. As a result of the incident, she, along with Witness 1 and Witness 2, left the

2

residence. The complainant disclosed that on April 18, 2017, when Witness 1 advised that they would be returning home, she became upset and disclosed to Witness 3 that the suspect was molesting her and she was afraid to return home. Witness 3 then notified Witness 4, who in turn notified Witness 1 of the complainant's disclosure.

8.  The complainant further disclosed that the suspect began forcing her to perform oral sex on him in May of 2016. The complainant believes that it was in May because she recalls that it was before her birthday, and as a birthday present, he bought her a cellphone. The complainant recalls the first time he forced her to perform oral sex was when her mother was in the hospital. She disclosed that the suspect approached her from behind and told her "put your pretty mouth on this." At that time the suspect forced his penis in and out her mouth as she resisted and cried. The complainant recalls that Witness 2 was in the back room and unable to hear or see anything.

9.  During the interview the complainant disclosed that the suspect would force her to perform oral sex on him every time Witness 1 was in the hospital. After some time, the suspect would have her perform oral sex when Witness 1 was in the residence; however, he would make sure that she was asleep and unable to hear anything. The complainant states that Witness 1 would be asleep in the bedroom while she was in her bed located in the living room area.

10.  When asked when was the worst moment she can recall with the suspect, she disclosed that it was when the suspect became very upset and cursed at her repeatedly. As retaliation she "bit him on the middle of his penis," the suspect then slapped her and continued to curse at her as he forced his penis back in her mouth while she cried. The complainant disclosed that this year the suspect began "connecting his mouth to my vagina." She stated she did not

know what to do or how to feel. She disclosed that the suspect had Witness 2 go to sleep in the bedroom with their mother and made sure they were asleep. She recalls being woken up by the suspect and him telling her he was going to "eat" her vagina. She states that she was moving because she did not know what to do and the suspect told her to stop moving, she obeyed out of fear. When asked what was the worst time she can recall him performing oral sex on her, the complainant disclosed that it was when "he kept biting my vagina and it hurt . . . . I thought I was bleeding but the next day I checked and I didn't bleed but it hurt."

11.     The complainant disclosed that the last time the suspect sexually abused her was in March of 2017. She stated that Witness 1 walked in the room and the suspect jumped up in the bed as if he was doing something else she adjusted herself and stated she was hot. She states she did not say anything at that time out of fear of getting in trouble.



12.     The complainant disclosed that at night, after sexually abusing her, the suspect would text her long paragraphs about the "next schedule." She described the "next schedule" as the suspect's expectations of their next sexual encounter. As a reply to his texts she states she would reply telling him that she was not going to do what he requested. She states that in one of the texts the suspect sent her, he told her that for her 14th birthday he was going to put his penis in her vagina and her anus.

13.     When asked in reference to any pictures of videos, the complainant disclosed that she would send the suspect nude pictures of herself at his request. She recalls a few occasions when she was in the bathtub that the suspect opened the door and took pictures of her nude with his cellphone. She described his phone as an iPhone 6 S+.

4

14.     The complainant stated that the suspect took pictures of her on his phone and texted her in reference to the sexual abuse. There was therefore reason to believe that digital evidence of the communication between the complainant and the suspect, and images of the complainant in reference to the sexual abuse, may be stored on the complaint's phone and/or the suspect's phone. The complainant also indicated that the suspect was in possession of her phone, which she described as a rose gold iPhone.  She also provided the device passcode.

15.     On April 21, 2017, members of the Metropolitan Police Department executed a search warrant at the suspect's home address, 1301 C Street SE, Apartment 32, Washington, D.C. During that search, officers seized the two Devices.

16.     Between April 27 and May 10, 2017, the Department of Forensic Sciences Digital Evidence Unit searched the Devices. At the time of the search, the Digital Evidence Unit did not utilize the complainant's passcode, and as such, they were unable to fully analyze the white and pink iPhone.



17.     As for the black Motorola phone, the Digital Evidence Unit conducted a logical extraction of the data then-existing on the phone, which revealed text message communications between the complainant and the defendant during the relevant time period. At the time of the search, the Digital Evidence Unit did not have software available to conduct a physical extraction of the device, which could potentially retrieve deleted messages and data.

18.     The Devices are currently in the lawful possession of the Metropolitan Police Department, Evidence Control Branch, at 17 DC Village Lane SW, Washington, DC, 20032.The Devices were seized by the Metropolitan Police Department pursuant to a search warrant, and after being analyzed by the Department of Forensic Sciences, were delivered to their present

location. Therefore, while the Metropolitan Police Department might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that a further examination of the Devices will comply with the Fourth Amendment and other applicable laws.

TECHNICAL TERMS

Based on my training and experience, and information acquired from other law enforcement officials with technical expertise, I know the terms described below have the following meanings or characteristics:

a. "Digital device," as used herein, includes the following three terms and their respective definitions:

b. "Wireless telephone" (or mobile telephone, or cellular telephone), a type of digital device, is a handheld wireless device used for voice and data communication at least in part through radio signals and also often through "wi-fi" networks. When communicating via radio signals, these telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones, traditional "land line" telephones, computers, and other digital devices. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of applications and capabilities. These include, variously: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages, e-mail, and other forms of messaging; taking, sending, receiving, and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; utilizing global

6

positioning system ("GPS") locating and tracking technology, and accessing and downloading information from the Internet.

e.      "Computer passwords, pass codes, and data security devices" means information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

19.      Based on my training, experience, and research, I know that the Devices at issue in this search warrant have capabilities that allow the, to serve as a wireless telephone, including electronic messages, and digital camera. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and sometimes by implication who did not, as well as evidence relating to the commission of the offense(s) under investigation.

COMPUTERS, ELECTRONIC/MAGNETIC STORAGE, AND FORENSIC ANALYSIS

20.      As described above and in Attachment B, this application seeks permission to search for evidence, fruits, contraband, instrumentalities, and information that might be found within the Devices, in whatever form they are found. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this

investigation and in the forensic examination of digital devices, I respectfully submit that there is probable cause to believe that the records and information described in Attachment B will be stored in the Devices for at least the following reasons:

a. Individuals who engage in criminal activity, including first degree sexual abuse and misdemeanor sexual abuse, use digital devices, like the Devices, to access websites to facilitate illegal activity and to communicate with co-conspirators online; to store on digital devices, like the Devices, documents and records relating to their illegal activity, which can include logs of online chats with co-conspirators; email correspondence; text or other "Short Message Service" ("SMS") messages; contact information of co-conspirators, including telephone numbers, email addresses, identifiers for instant messaging and social medial accounts;

b. Individuals who engage in the foregoing criminal activity, in the event that they change digital devices, will often "back up" or transfer files from their old digital devices to that of their new digital devices, so as not to lose data, including that described in the foregoing paragraph, which would be valuable in facilitating their criminal activity.

c. Digital device files, or remnants of such files, can be recovered months or even many years after they have been downloaded onto the medium or device, deleted, or viewed via the Internet. Electronic files downloaded to a digital device can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. When a person "deletes" a file on a digital device such as a home computer, a smart phone, or a memory card, the data contained in the file does not actually disappear; rather, that data remains on the storage medium and within the device

unless and until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the digital device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a digital device's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of electronic storage medium space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve "residue" of an electronic file from a digital device depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer, smart phone, or other digital device habits.

21.    As further described in Attachment B, this application seeks permission to locate not only electronic evidence or information that might serve as direct evidence of the crimes described in this affidavit, but also for forensic electronic evidence or information that establishes how the digital device(s) were used, the purpose of their use, who used them (or did not), and when. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this investigation and in the forensic examination of digital devices, I respectfully submit there is probable cause to believe that this forensic electronic evidence and information will be in any of the Device(s) at issue here because:

a.    Although some of the records called for by this warrant might be found in the form of user-generated documents or records (such as word processing, picture, movie, or

9

texting files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials contained on the digital device(s) are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive, flash drive, memory card, or other electronic storage media image as a whole. Digital data stored in the Device(s), not currently associated with any file, can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on a hard



drive that show what tasks and processes on a digital device were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on a hard drive, flash drive, memory card, or memory chip that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times a computer, smart phone, or other digital device was in use. Computer, smart phone, and other digital device file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

b.      Forensic evidence on a digital device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, chats, instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the digital device at a relevant time, and potentially who did not.

c.      A person with appropriate familiarity with how a digital device works can, after examining this forensic evidence in its proper context, draw conclusions about how such digital devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital device evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on digital devices is evidence may depend on other information stored on the devices and the application of knowledge about how the devices behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.



e.      Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on the device. For example, the presence or absence of counter-forensic programs, anti-virus programs (and associated data), and malware may be relevant to establishing the user's intent and the identity of the user.

11

f.      I know that when an individual uses a digital device as an instrumentality to commit first degree sexual abuse and misdemeanor sexual abuse, the individual's device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The digital device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The digital device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a digital device used to commit a crime of this type may contain data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense and the identities of those perpetrating it.



## METHODS TO BE USED TO SEARCH DIGITAL DEVICES

22.     Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this investigation and in the forensic examination of digital devices, I know that:

a.      Searching digital devices can be an extremely technical process, often requiring specific expertise, specialized equipment, and substantial amounts of time, in part because there are so many types of digital devices and software programs in use today. Digital devices – whether, for example, desktop computers, mobile devices, or portable storage devices – may be customized with a vast array of software applications, each generating a particular form of information or records and each often requiring unique forensic tools, techniques, and expertise. As a result, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that

12

are being searched, and to obtain specialized hardware and software solutions to meet the needs of a particular forensic analysis.

      b.      Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data. Recovery of "residue" of electronic files from digital devices also requires specialized tools and often substantial time. As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is often essential to conducting a complete and accurate analysis of data stored on digital devices.



      c.      Further, as discussed above, evidence of how a digital device has been used, the purposes for which it has been used, and who has used it, may be reflected in the absence of particular data on a digital device. For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data or software on a digital device is not segregable from the digital device itself. Analysis of the digital device as a whole to demonstrate the absence of particular data or software requires specialized tools and a controlled laboratory environment, and can require substantial time.

      d.      Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user

13

can easily change the extension to ".txt" to conceal the image and make it appear as though the file contains text. Digital device users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. Digital device users may encode communications or files, including substituting innocuous terms for incriminating terms or deliberately misspelling words, thereby thwarting "keyword" search techniques and necessitating continuous modification of keyword terms. Moreover, certain file formats, like portable document format ("PDF"), do not lend themselves to keyword searches. Some applications for computers, smart phones, and other digital devices, do not store data as searchable text; rather, the data is saved in a proprietary non-text format. Documents printed by a computer, even if the document was never saved to the hard drive, are recoverable by forensic examiners but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. In addition, digital device users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography, a digital device user can conceal text in an image file that cannot be viewed when the image file is opened. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. A substantial amount of time is necessary to extract and sort through data that is concealed, encrypted, or subject to booby traps, to determine whether it is evidence, contraband, or instrumentalities of a crime.

e. Analyzing the contents of mobile devices, including tablets, can be very labor intensive and also requires special technical skills, equipment, and software. The large, and ever increasing, number and variety of available mobile device applications generate unique

$190825^{11}$

forms of data, in different formats, and user information, all of which present formidable and sometimes novel forensic challenges to investigators that cannot be anticipated before examination of the device. Additionally, most smart phones and other mobile devices require passwords for access. For example, even older iPhone 4 models, running IOS 7, deployed a type of sophisticated encryption known as "AES-256 encryption" to secure and encrypt the operating system and application data, which could only be bypassed with a numeric passcode. Newer cell phones employ equally sophisticated encryption along with alpha-numeric passcodes, rendering most smart phones inaccessible without highly sophisticated forensic tools and techniques, or assistance from the phone manufacturer. Mobile devices used by individuals engaged in criminal activity are often further protected and encrypted by one or more third party applications, of which there are many. For example, one such mobile application, "Hide It Pro," disguises itself as an audio application, allows users to hide pictures and documents, and offers the same sophisticated AES-256 encryption for all data stored within the database in the mobile device.



      f.      Based on all of the foregoing, I respectfully submit that searching any digital device for the information, records, or evidence pursuant to this warrant may require a wide array of electronic data analysis techniques and may take weeks or months to complete. Any pre-defined search protocol would only inevitably result in over- or under-inclusive searches, and misdirected time and effort, as forensic examiners encounter technological and user-created challenges, content, and software applications that cannot be anticipated in advance of the forensic examination of the devices. In light of these difficulties, your affiant requests

15

19C8w251)

permission to use whatever data analysis techniques reasonably appear to be necessary to locate and retrieve digital information, records, or evidence within the scope of this warrant.

23.     In searching for information, records, or evidence, further described in Attachment B, law enforcement personnel executing this search warrant will employ the following procedures:

a.     The digital devices, and/or any digital images thereof created by law enforcement, sometimes with the aid of a technical expert, in an appropriate setting, in aid of the examination and review, will be examined and reviewed in order to extract and seize the information, records, or evidence described in Attachment B.



b.     The analysis of the contents of the digital devices may entail any or all of various forensic techniques as circumstances warrant.  Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files); conducting a file-by-file review by "opening," reviewing, or reading the images or first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

c.     In searching the digital devices, the forensic examiners may examine as much of the contents of the digital devices as deemed necessary to make a determination as to whether the contents fall within the items to be seized as set forth in Attachment B.  In addition,

16

the forensic examiners may search for and attempt to recover "deleted," "hidden," or encrypted data to determine whether the contents fall within the items to be seized as described in Attachment B. Any search techniques or protocols used in searching the contents of the Device(s) will be specifically chosen to identify the specific items to be seized under this warrant.

## AUTHORIZATION TO SEARCH AT ANY TIME OF THE DAY OR NIGHT

14. Because forensic examiners will be conducting their search of the digital devices in a law enforcement setting over a potentially prolonged period of time, I respectfully submit that good cause has been shown, and therefore request authority, to conduct the search at any  time of the day or night.

17

1 9C 8w 25 1

## ATTACHMENT A

*Property to be searched*

The property to be searched is (1) A WHITE AND PINK IPHONE, MODEL A1688,

FCC ID BCG-E2946A, IC 579C-E2946A, AND (2) A BLACK MOTOROLA PHONE WITH

That was seized during the search -

BLACK CASE, hereinafter the "Devices." The Devices are currently located at the Evidence

Control Branch, 17 DC Village Lane SW, Washington, DC 20032.

## ATTACHMENT B

### *Property to be seized*

1.     The items, information, and data to be seized are fruits, evidence, information relating to, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 22 D.C. Code § 3002 (First Degree Sexual Abuse), § 3006 (Misdemeanor Sexual Abuse), and related charges, as described in the search warrant affidavit, including, but not limited to:

> a.  Records and information relating to the sexual abuse of the complainant, including nude photographs of the complainant;
>
> b.  Records and information relating to the identity or location of perpetrators, aiders and abettors, coconspirators, and accessories after the fact;
>
> c.  Records and information relating to communications with Internet Protocol addresses 149.101.1.114;
>
> d.  Records and information that constitute evidence of the state of mind of Joseph Smith, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and
>
> e.  Records and information that constitute evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with Joseph Smith about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

f. evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

g. evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

h. evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

i. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

j. evidence of the times the Device(s) was used;

k. passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

l. documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

m. records of or information about Internet Protocol addresses used by the Device(s); and

n. records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite"

2

web pages, search terms that the user entered into any Internet search engine, and

records of user-typed web addresses.

Stored, sent, rec'd, generated or otherwise associated with the Devices. between January 1, 2016 and April 31, 2017

## CONCLUSION

15.     I submit that this affidavit supports probable cause for a warrant to search the

Devices described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

Jenny Alvarenga
Detective
Metropolitan Police Department

Subscribed and sworn to before me on May $\underline{4}$ , 2019

UNITED STATES MAGISTRATE JUDGE

AUSA Jennifer B. Loeb
May 2, 2019

18