```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES,                    )  Criminal Action
                                  )  No. 19-CR-324
vs.                               )
                                  )
JOSEPH SMITH,                     )  October 18, 2021
                                  )  9:10 a.m.
              Defendant.          )  Washington, D.C.
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF TRIAL**
**(Jury Selection Day 1)**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**


**<u>APPEARANCES</u>:**

FOR THE UNITED STATES:
          MONA SEDKY
          CAROLINE BURRELL
          U.S. Department of Justice
          CCIPS/DC USAO Cyber Crime Section
          1400 New York Avenue
          Washington, DC 20530
          (202) 514-1138
          Email: mona.sedky2@usdoj.gov
          Email: caroline.burrell@usdoj.gov

FOR THE DEFENDANT:
          BRANDI J. HARDEN
          Harden & Pinckney, PLLC
          400 7th Street, NW
          Washington, DC 20004
          (202) 390-0374
          Email: bharden@hardenpinckney.com

ALSO PRESENT:  DANIELLE SCHNUR, Case Agent
              ALEXIS SPENCER-ANDERSON, Paralegal Specialist


Court Reporter: Elizabeth Saint-Loth, RPR, FCRR
              Official Court Reporter

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1    THE COURTROOM DEPUTY:  United States District

2    Court for the District of Columbia is now in session.

3    Chief Judge Beryl A. Howell presiding.

4    THE COURT:  The defendant is on his way, so we

5    have to wait.

6    MS. HARDEN:  I am prepared to waive his

7    appearance.

8    THE COURT:  I prefer not to.

9    MS. HARDEN:  Very well.

10    THE COURT:  I appreciate that.

11    MS. HARDEN:  Your Honor, are we -- this is ours so

12    that we can write on it?

13    THE COURT:  Yes.  Yes.

14    MS. HARDEN:  Thank you.

15    (Whereupon, the defendant enters.)

16    THE COURTROOM DEPUTY:  Matter before the Court,

17    Criminal Case No. 19-324, United States of America versus

18    Joseph Smith.

19    Counsel, please state your names for the record,

20    starting with the government.

21    MS. SEDKY:  Thank you, Your Honor.

22    Mona Sedky and Caroline Burrell on behalf of the government.

23    THE COURT:  Okay.  Is the court reporter having

24    any difficulty hearing?

```
 1                 THE COURT REPORTER:  Yes.

 2                 THE COURTROOM DEPUTY:  They need to go up --

 3                 THE COURT:  Yes.  So, I think -- why don't you

 4       just both come up and stand at the podium while we get the

 5       preliminary matters done.

 6                 MS. SEDKY:  I will try to speak up, too.

 7                 THE COURT:  All right.

 8                 And, Ms. Harden, do you want to step up?

 9                 All right.  I know this is, like, a different

10       courtroom for all of us; we are just going to have to be a

11       little patient.  Let me know what is uncomfortable for

12       you-all, and what you prefer as well, because I want all of

13       you to be as comfortable as possible speaking in this

14       ceremonial courtroom; it is not the normal place to conduct

15       a voir dire.

16                 Okay.  So, in terms of preliminary matters, I know

17       I received Ms. Harden's motion to dismiss the indictment; I

18       think it was filed a little --

19                 MS. HARDEN:  An hour (sic) ago.

20                 THE COURT:  -- at about 1:00 a.m. today.  Okay.

21                 And are there any other preliminary matters I

22       should be aware of to address before we start seating the

23       jury?

24                 MS. SEDKY:  At some point today, we do think that

25       it would be worthwhile to put on the record the maximum
```

1    penalties.  I don't think it's going to have an impact; but,

2    at our last hearing, we discussed a criminal history

3    category 40, which would be after acceptance.  And the

4    preacceptance (sic) is a level 43, which is a life sentence;

5    and I don't believe we have anything on the record that I

6    have seen that actually states that as the maximum penalty.

7              THE COURT:  Okay.  Well, my standard procedure is

8    both to do the *Missouri v Frye* in the joint pretrial

9    statement -- to do it at the pretrial conference.  Are you

10   telling me that we didn't do it?

11             MS. SEDKY:  We did; but we made it clear that we

12   didn't know the criminal history category for sure at that

13   point.  It is in the pretrial statement --

14             THE COURT:  Okay.  We're going to do the

15   *Missouri v Frye* colloquy right now.  We are going to get

16   that done so -- by the time we start trial, I usually have

17   done it two to three times.

18             MS. HARDEN:  No problem, Your Honor.

19             THE COURT:  So let's proceed with the government

20   explaining, in Mr. Smith's presence -- and, Mr. Smith, you

21   may be seated.  Your attorney may have to stand up, but you

22   do not.  I will let you know or your attorney will let you

23   know when you are required to stand up; but, for right now,

24   you may remain seated.

25             So I am going to turn to the government counsel to

 1    explain the penalties that Mr. Smith would face if convicted

 2    at trial on all of the charges in the indictment -- of which

 3    there are now 10.

 4              So please proceed.

 5              MS. SEDKY:  So the maximum criminal history --

 6    assuming even Criminal History Category 1 -- and there is a

 7    dispute about whether it would be 1 or 2 -- his, after

 8    trial, total offense level is a 43; so he gets no minus 3

 9    for acceptance, and that does take him to a life sentence

10    under the guidelines.  And I just wanted to put that on the

11    record.

12              THE COURT:  All right.  And that -- without going

13    through the details of how the guidelines would apply to the

14    federal charges, and the local guidelines would apply to the

15    local charges -- the D.C. Code violations -- in the end,

16    that would be the result?

17              MS. SEDKY:  That's correct, Your Honor.

18              THE COURT:  All right.  And the plea offer in this

19    case was to something less than that?

20              MS. SEDKY:  It was 20 years.

21              THE COURT:  Capped?

22              MS. SEDKY:  Yes.

23              THE COURT:  All right.  It was an 11(c)(1)(C) plea

24    offer?

25              MS. SEDKY:  I believe so, an 11(c)(1)(C).

```
1                    THE COURT:  Okay.  You believe so, or do you know
2       so?
3                    MS. SEDKY:  I know so.  It was an 11(c)(1)(C)
4       plea.
5                    MS. HARDEN:  I believe it was not, but -- but --
6       but -- it was rejected.  It's been rejected on the record.
7       And so whether it was 20 years (c)(1)(C) or 20 years with
8       the opportunity for the Court to decide whether that was an
9       appropriate sentence, Mr. Smith has rejected it in open
10      court.
11                   THE COURT:  Okay.  And, Mr. Smith, now you may
12      stand.
13                   Having heard the comparison of the penalties you
14      would face if convicted on all the charges during the course
15      of this trial, and the outline of what the plea offer would
16      have been -- where you would have faced a maximum of 20
17      years in prison, as opposed to a maximum of life
18      imprisonment -- having heard all of that, do you reject that
19      plea?
20                   THE DEFENDANT:  I don't want the plea, ma'am.
21                   THE COURT:  I don't -- I didn't hear.
22                   MS. HARDEN:  He said, "I don't want the plea."
23                   But I would -- if I could just have a moment to
24      talk with him for a second?
25                   THE COURT:  Yes.
```

```
 1                    (Whereupon, counsel and the defendant confer.)
 2               MS. HARDEN:  Thank you, Your Honor.
 3               So the Court can inquire of him again.
 4               THE COURT:  So you do not want --
 5               THE DEFENDANT:  I reject it.
 6               THE COURT:  You reject the plea.  All right.
 7     Thank you.  You may be seated.
 8               Okay.  Having completed the Missouri v Frye
 9     colloquy, what else is on the agenda that you think we
10     should discuss other than or in addition to Ms. Harden's
11     motion to dismiss?
12               MS. SEDKY:  Before jury selection, we don't have
13     anything.  We have some suggestions for this afternoon or
14     evening.
15               One of the things that we wanted to bring up with
16     the Court was some possible agreed-upon DFS-related inquiry
17     to some upcoming DFS witnesses; but we certainly don't need
18     to do that now.
19               THE COURT:  Okay.  We will put that off until
20     later on this afternoon.  Hopefully, we'll be back in my
21     courtroom.
22               MS. HARDEN:  I do have one preliminary matter.  I
23     think it's sort of related to DFS.
24               As the Court knows, we have had this litigation
25     surrounding DFS.  And on Friday the government disclosed
```

1      that, in fact, one of the witnesses -- the actual witness in

2      this case -- was named in the Q-CARs that were unnamed.  And

3      that, in fact, Mr. Muhangi, if I've got his name correct,

4      was the subject of one of those disciplinary Q-CARs.

5              And so, at this juncture, I move to dismiss the

6      indictment for failure to disclose *Brady*.  The government

7      has been in possession of this information for quite some

8      time.  There was corrective action; he was placed on a

9      period of, essentially, probation; ordered to do

10     re-training, and have a certain period of time to do that.

11             My entire defense strategy could have been

12     different, may have been different, if the government had

13     timely disclosed this.  And I move to dismiss based on the

14     fact that I am just getting it two days before the trial.

15             THE COURT:  Although, I did issue my ruling --

16             MS. HARDEN:  Yes.

17             THE COURT:  -- that you were allowed to use the

18     Q-CARs.

19             MS. HARDEN:  If I may just discuss it with the

20     Court for one minute.

21             THE COURT:  Yes.

22             MS. HARDEN:  The prejudice to Mr. Smith -- in

23     reality, Your Honor, the government came to the Court and

24     said:  It's not really important because this -- none of

25     these Q-CARs really relate to the work in question here.

1              Upon further review, not only does it relate to

2       the specific examiner who did the extractions here, it goes

3       directly to his credibility.  So the government -- when we

4       continued the trial the last time, I said:  I don't see how

5       the government can tell this Court that they have adhered to

6       their *Brady* disclosures if they don't know who it is.  And

7       two days before we're starting the trial it completely

8       throws Mr. Smith's defense off to have information that

9       could have structured his defense in a different way.  And

10      so, for all of those reasons, he is prejudiced and --

11              THE COURT:  But it is Q-CARs that you have had in

12      discovery for some time.  There has been -- based on the

13      motions that I have seen -- a lot of analysis of those

14      Q-CARs and, in fact, detailed exposition of what's on the

15      Q-CARs and what it means by the government.

16              The Court, even without knowing -- although we all

17      knew it was a risk given the DFS management's decision to

18      omit names from Q-CARs, that possibly some of the witnesses

19      in this case might have been associated with some of those

20      Q-CARs.  So there was always a potential that we are all

21      aware of that unfortunately, from the government's

22      perspective I am sure, came to fruition.

23              So it's -- given all of the preparation,

24      discussion, motion practice that has already been

25      surrounding these Q-CARs that you successfully litigated

1    and, Ms. Harden, have known that you can examine any witness

2    about them, if they're relevant to that witness, it's hard

3    for me to see prejudice.

4              MS. HARDEN:  Very well.

5              THE COURT:  But I will hear from the government.

6              MS. SEDKY:  Your Honor, we would agree.

7              THE COURT:  Why is it that you just told her on

8    Friday?

9              MS. HARDEN:  That's correct, Your Honor.

10             MS. SEDKY:  Your Honor, there are supervisors at

11   the U.S. Attorney's Office who liaison with DFS.  And they

12   have known our witnesses and they have known that we have

13   this trial with DEU; and they have been putting out

14   inquiries repeatedly.  And there are -- DFS made a

15   production to us in June, and we scoured that database.  Our

16   supervisor didn't learn until Friday.  He sent it to us and,

17   within moments, we sent it to defense counsel.

18             And let me just back up and talk about what this

19   Q-CAR is.  This is a Q-CAR that --

20             THE COURT:  I don't actually need to know that --

21             MS. SEDKY:  It goes to prejudice.

22             THE COURT:  Okay.  Well, if it goes to prejudice,

23   go ahead and make your record.

24             MS. SEDKY:  It goes to prejudice.

25             So the Q-CAR relates to Mr. Muhangi -- and it's

1    not clear he even knows that there was a Q-CAR.

2            MS. HARDEN:  Can I just interrupt on that one

3    point?

4            He actually signed the Q-CAR.  I mean, the

5    government's evidence is that he actually signed the Q-CAR.

6    The government made that representation in an email; I then

7    re-scoured the DFS database.  He has signed it, so that's

8    just not correct.

9            MS. SEDKY:  I will have to find the signed Q-CAR.

10   It is not clear to me that he remembers this; but let me

11   tell you a little bit about what the Q-CAR is.

12           So DFS, as -- DEU, in particular, is a cell phone

13   extraction unit in the main (sic).  They extract the data,

14   and they hand it over to the investigators.

15           They are not into any detailed analysis of the ins

16   and outs of which database is where on a cell phone.  And so

17   the Q-CAR was resolved that way because he missed one -- one

18   question on a proficiency exam; he passed the proficiency

19   exam.  And the question relates to where inside the depths

20   of the phone is a database for alarms; and he missed it.

21   And so -- or maybe it was how many alarms are there? -- and

22   he missed that question.

23           And so the reviewer -- realizing that this --

24   these proficiency tests are brought in by outside bodies;

25   they are not internal.  So the reviewer is, like:  This

1    isn't what we do; this is beyond the scope of what these

2    people do.  This test does not match up with the

3    functionality of these technicians.  So there was no

4    suspension; there was no -- to their credit, they decided

5    that they -- in order to prepare them for, perhaps, the next

6    test, they would train them on where these alarm databases

7    are.

8                  THE COURT:  Okay.  All right.  So I understand.

9                  I remember, from your exposition of that

10   particular Q-CAR, why you think that it's not relevant; it's

11   not probative; it's certainly not prejudicial or at all

12   disparaging of DEU.  But it's going to be free game for

13   cross-examination.

14                 You can bring out whatever points you want before

15   the jury.  The jury will decide just how probative it is,

16   and so on.

17                 Okay.  Is there -- but your motion -- to the

18   extent you are seeking to -- did you ask for dismissal of

19   the indictment for a *Brady* violation?

20                 MS. HARDEN:  That's correct, Your Honor.

21                 THE COURT:  That is denied, given the full set --

22   the totality of the circumstances here involving these eight

23   Q-CARs --

24                 MS. HARDEN:  Very well.  Understood.

25                 THE COURT:  -- and the amount of attention that

1    has been focused on these Q-CARs now for some time.

2              All right.  Any other preliminary matters before

3    we turn to the defendant's other motion to dismiss the

4    indictment?

5              MS. SEDKY:  No.

6              MS. HARDEN:  This is really just administrative.

7              How does Mr. Smith participate in jury selection?

8              I mean, I understand that they're here.  But in

9    terms of strikes, and the like, are we able to do that

10   together prior to sending up the list of strikes?

11             I am not sure how the Court exactly exercises

12   them?  How we tell the Court we move to --

13             THE COURT:  It's very easy.  Very easy.

14             You are talking about peremptories, not

15   for-causes?

16             MS. HARDEN:  That's correct, peremptories.

17             THE COURT:  For peremptories, my courtroom -- all

18   the jurors will be here, sitting here quietly, while you all

19   are deciding how you want to exercise your peremptories.

20             Ms. Gumiel, my courtroom deputy, will hand you the

21   sheet of paper where you can mark down which peremptories

22   you want to exercise.  So you will be sitting there, with

23   the piece of paper, able to consult with Mr. Smith before

24   you exercise any peremptories.

25             MS. HARDEN:  Okay.  Very well.

```
 1              THE COURT:  Once you exercise your peremptory, you
 2      alert Ms. Gumiel that you are done with that round; she will
 3      collect the piece of paper from you, and go to the
 4      government.  The government will then go through its
 5      process, alert Ms. Gumiel that round is done; it will go
 6      back to you.
 7              MS. HARDEN:  And will I know who the government
 8      struck?
 9              THE COURT:  Yes, because it will be listed on the
10      piece of paper.  No talking, all quiet.  All quietly done,
11      all on the piece of paper handed to you.
12              MS. HARDEN:  Okay.  Very well.  Understood.
13              THE COURT:  It will be all fully transparent.
14              MS. HARDEN:  Thank you, Your Honor.
15              THE COURT:  Okay.
16              MS. HARDEN:  And I do have one other question
17      about the for-cause strikes.
18              I did read the standing order; but I am just
19      unclear about what we say to Your Honor to indicate that we
20      are moving to strike someone for cause.
21              THE COURT:  You just make the motion:  I move to
22      strike for cause because this person is a *Washington Post*
23      reporter, or -- which we have one.
24              MS. HARDEN:  Do you just say it out loud and --
25              THE COURT:  You say it into your phone.
```

```
 1              MS. HARDEN:  I was thinking -- sure.  I was very
 2    confused.
 3              THE COURT:  Yes.  You say it into your phone so
 4    only we -- I hear you.  And then, if both parties agree that
 5    this person should be struck for cause, I simply put my
 6    phone down, I turn off the husher; and I say to the juror:
 7    Thank you so much for your service, you are excused; you may
 8    leave the courthouse.
 9              MS. HARDEN:  I was a thinking a little too -- Your
10    Honor, I didn't know if we were just going to do it in front
11    of them.
12              THE COURT:  No.  No.  It's all much more polite
13    and civil than that.
14              MS. HARDEN:  I appreciate it.  Thank you.
15              I have nothing further.
16              THE COURT:  Okay.  So let's turn to your
17    wee-hours-of-the-morning motion to dismiss the indictment.
18              So let me just start by saying I want to make sure
19    I am totally understanding.
20              You can collect whatever paper you need.
21              MS. HARDEN:  I just got this gender report this
22    morning.
23              THE COURT:  Right.  So you are seeking to dismiss
24    the indictment against Mr. Smith, but you are not asking for
25    a continuance of the trial at all.  You just want to dismiss
```

1    the indictment as it is now.

2         MS. HARDEN:  Well, I haven't discussed that with

3    Mr. Smith.  I don't think he wants to be between deciding

4    whether or not he has a constitutionally protected jury and

5    whether he has the right to go forward with respect to his

6    speedy trial; but I haven't discussed it with him.  So my

7    motion did not request that because obviously it was eight

8    hours ago, Your Honor.

9         THE COURT:  Well, I guess I am just trying to

10   understand.  I just want to make sure I -- because I will

11   tell you how I was viewing your motion, which is -- it

12   doesn't comply with the jury act because you don't have the

13   sworn statement.  You have your footnote saying you would

14   ask for additional time to produce your sworn statement;

15   that's required.

16        MS. HARDEN:  Sure.  Yes.

17        THE COURT:  The case law is fairly clear.  I think

18   that absent a sworn statement I don't even have to consider

19   your motion.  But it puts defense attorneys in this awkward

20   position of having to file a timely motion at a time when

21   they haven't been able to get their sworn statement.

22        So I understood your motion as filing a timely

23   motion asking for additional time to file your sworn

24   statement so that it can be ripe --

25        MS. HARDEN:  Yes.

1          THE COURT:  -- you know, a cognizable motion.

2          MS. HARDEN:  Right.

3          THE COURT:  And, essentially, it's to preserve

4     your appeal rights --

5          MS. HARDEN:  Absolutely, Your Honor.

6          THE COURT:  -- and for consideration.

7          Okay.  So I just wanted to be clear that that's

8     how I am viewing it; and then ask you a few questions as

9     you're putting together your sworn statement to perfect your

10    motion, as required under 28 U.S.C. 1867(d) --

11         MS. HARDEN:  Yes.

12         THE COURT:  -- which is what requires a sworn

13    statement before courts need to consider the motion.

14         I just want to make it clear, for the record, my

15    understanding of the factual background -- so the record is

16    clear on this -- you sent a letter, Ms. Harden, first to

17    Regina Larry, head of our jury office, on March 31, 2021,

18    posing about 32 fairly extensive questions and comprehensive

19    requests for jury selection data, as you are totally

20    entitled to do.  It will run -- Ms. Larry answered your

21    questions; gave you files containing the master jury wheel

22    data, so you have had that since about April 1.

23         MS. HARDEN:  Absolutely.

24         THE COURT:  On April 5, you sent additional

25    correspondence, either by email or letter --

```
1                MS. HARDEN:  Yes.

2                THE COURT:  -- with new requests because of the

3     new trial date and more updated information about the

4     venire.

5                MS. HARDEN:  That's correct.

6                THE COURT:  October 7, Ms. Larry sent you data

7     files that showed the list of summonses; those who responded

8     to demographics.  And so this data, on October 7th, included

9     demographic data on the full set of jurors that were

10    qualified for the two-week call list; is that right?

11               MS. HARDEN:  Yes.  Demographics that did not,

12    however, include race.

13               THE COURT:  Is that right?

14               MS. HARDEN:  That's correct.

15               THE COURT:  I see.  Okay.

16               So then, on October 8, you requested the

17    individuals that will be on the jury panel for today; and

18    Ms. Larry responded, since we use the one-step process as

19    opposed to the two-step process set out in the jury act --

20    where we summon and qualify jurors simultaneously, as

21    opposed to in a two-step process --

22               MS. HARDEN:  Yes.

23               THE COURT:  -- Ms. Larry responded that we're not

24    going to know that until we know who is coming.  So then, on

25    October 14th, you sent -- last Thursday, you reminded
```

1    Ms. Larry of the request for the panel information.  And on

2    October 15th, Friday, Ms. Larry sent to you the data files

3    showing the demographics of the prospective jurors expected

4    to report today --

5              MS. HARDEN:  That's correct.

6              THE COURT:  -- with all of the demographic race

7    data.

8              MS. HARDEN:  Including race, that's correct.

9              THE COURT:  Okay.  So we have all of those facts

10   sort of agreed to.

11             MS. HARDEN:  I totally agree --

12             THE COURT:  I wanted to make sure I had that right

13   for the record.

14             So I -- from reading your brief, it looks like the

15   master wheel data that was sent, as you state in your

16   brief -- you say that that was carefully calibrated to

17   produce a fair cross-section of the community.

18             MS. HARDEN:  I don't state that, but I do think

19   that that's what the intent of the jury plan act is to do.

20             THE COURT:  Okay.  So do I correctly understand --

21   I just want to make sure about this -- based on that

22   statement -- that you are not challenging the composition of

23   the master jury wheel?

24             MS. HARDEN:  The Court should not understand the

25   motion to say that.

1          I was making a comment as it relates to what the

2     jury plan sets out to do.  I was not referencing this master

3     wheel that I had previously been given.  I am glad the Court

4     is giving me an opportunity to explain it because I am

5     not -- double negative here -- not challenging.

6          I am still challenging the composition.

7          The problem is there is no way I can do all of

8     this.  I have spoken with experts.  There is no way I can

9     compile all of the data, look at what happened in the weeks

10    before -- through the 15th -- and give the Court an answer

11    by the 18th.  So I was just talking about the jury plan

12    intent is to have a carefully crafted jury panel.

13         And so the Court should not -- and I am asking the

14    Court not to consider it as a nonchallenge.  I do still

15    intend to challenge it; and that's why I am asking for the

16    additional time, in some way, to perfect and obtain the

17    affidavit.

18         THE COURT:  And are you challenging the jury

19    wheel, the master wheel, because you think that there is

20    some demographic discrepancy in the master wheel?

21         MS. HARDEN:  So I am not prepared to answer that;

22    that's what I think is so unique about this position.  I am

23    not in a position to say that there is that kind of a

24    problem.

25         To be honest, I need an expert.  Look, I am just

1   not well versed enough in all of these different things that

2   come in the master wheel to tell this Court that there is in

3   fact a deficiency.  It seemed like I just needed to preserve

4   the issue; I mean, I am required to.  If I don't do it now,

5   then the issue is definitely not preserved.

6           THE COURT:  I know.

7           MS. HARDEN:  So that's really my --

8           THE COURT:  It's a peculiar statute, in terms of

9   the timing.  I appreciate the difficulty that it puts

10  defense counsel in, except that -- you know, I think it's

11  set up -- the jury act is set up to prepare for challenges

12  to the master jury wheel.

13          MS. HARDEN:  I think that's right.

14          THE COURT:  There is no promise in the jury act

15  that people are going to get either a venire or a petit jury

16  that satisfies them in terms of the demographic makeup.

17          MS. HARDEN:  I think that's right.  Based on what

18  the experts have told me, I think that's right.  I

19  think it's not -- sorry.

20          THE COURT:  And so -- sorry to interrupt you.

21          So the master trial -- the master wheel data has

22  been sent to you as of October 7th; but what you are telling

23  me is that it didn't include all of the demographic data

24  that you needed.

25          MS. HARDEN:  That's correct.

1        THE COURT:  The problem, of course, is, I don't

2   think -- based on the sources for the wheel, income tax

3   records, voter lists --

4        MS. HARDEN:  DMV.

5        THE COURT:  -- DMV records, I don't know that we

6   have demographic data for who those are in the wheel.  We

7   just know it's a fairly comprehensive series of lists that

8   we use to feed the master wheel.

9        MS. HARDEN:  I would agree with that.  I mean, I

10  would agree with that.  Again --

11       THE COURT:  Anyway -- okay.  So let me just -- all

12  right.  So I think what you are really asking for is time to

13  perfect this timely-filed motion --

14       MS. HARDEN:  That is correct, Your Honor.

15       THE COURT:  -- when you are able to deal --

16       MS. HARDEN:  See it.  Right.

17       THE COURT:  Okay.  So I don't think that there is

18  anything ripe for me to consider at this point at all.

19       Okay.  Is Ms. Larry here?  No.

20       Okay.  I am just going to check because -- my law

21  clerk, who looked at the October 7th data file, believes

22  that it does include race demographic data.

23       MS. HARDEN:  Okay.  Very well.

24       I mean, the reason I followed up with Ms. Larry up

25  through Friday was because I was saying I don't have the

```
1    racial composition.  I did want her -- then if that's

2    correct, then that's correct.  And I --

3               THE COURT:  Can we just ask Ms. Larry to come down

4    for a moment --

5               THE COURTROOM DEPUTY:  Yes, Your Honor.

6               THE COURT:  -- or speak to us on the phone?

7               Could you just put her on the speakerphone?  I am

8    just going to ask her that simple question.

9               MS. HARDEN:  Sure.  Sure.

10              THE COURT:  And then --

11              MS. HARDEN:  There were several follow-ups, back

12   and forth, with Ms. Larry; she was great.  And so --

13              THE COURT:  I would expect nothing less.  And then

14   I will hear from the government after I --

15              THE COURTROOM DEPUTY:  She stepped out, Your

16   Honor.

17              THE COURT:  She stepped out.  Okay.

18              MS. HARDEN:  She did ask me, Your Honor, if I

19   needed anything; and I said no.

20              THE COURT:  Yes.  Well, she asked me the same

21   thing; I gave her the same answer.

22              Okay.  Well, we'll just wait on that.

23              I will get a clarification from her later.

24              THE COURTROOM DEPUTY:  Should she come up?

25              THE COURT:  No.  We're going to move ahead.
```

1          THE COURTROOM DEPUTY:  Thank you.  That's fine.

2          THE COURT:  Ms. Sedky.

3          MS. SEDKY:  I think the government -- I mean, we

4    agree with the government (sic) that this motion is

5    premature.  I don't think that the data --

6          THE COURT:  You agree with the defense?

7          MS. SEDKY:  Well, I thought that's where the Court

8    was going to; but I didn't mean to be putting words in the

9    Court's mouth at all.

10          Going forward, I can preview for the Court what

11    we're going to be arguing is the third prong of the Duren

12    test which is -- the case law is pretty clear on two fronts

13    here.  First of all, a particular venire and its makeup will

14    not establish a violation of either the service act or the

15    Sixth Amendment.

16          Secondly, courts look for a long history of data;

17    this is not just a few weeks.  We've only had -- I don't

18    know how many jury -- I don't know how many venires have

19    come through the courts since we've opened the court back up

20    for business.  So the data typically needs to be a very

21    persistent period over a long period of time; that goes to

22    the second Duren factor.

23          The third Duren factor which, I think, is going to

24    be ultimately fatal to this and many other challenges, is it

25    can't be because of a pandemic.  There has to be a causal

1    length between whatever infirmity there is in the jury

2    pool -- and let's just assume that there is for the sake of

3    argument -- it has to be causally linked to the jury

4    selection process, not a pandemic.

5          There were a bunch of cases that were in the wake

6    of Hurricane Katrina where the courts have made it very

7    clear that that is an external factor.  And it's not

8    something -- the challenges that have been successful under

9    the Duren test -- it's what the Court was alluding to

10   earlier; it's like you missed an entire borough when you

11   were trying to pull from your jury pool.  You didn't -- you

12   forgot three counties in your district, and so you didn't

13   have a representational pool.

14         Here, at court -- and just to preview what our

15   opposition is going to be -- to the extent that there are

16   demographic issues here, which there may be, there is no

17   indication that it would be causally linked to some

18   infirmity in the jury selection process itself.  So that's a

19   preview for why we think that this argument isn't ultimately

20   ripe.

21         THE COURT:  Right.  I mean, it is of some concern,

22   Ms. Harden.  I mean, your brief is replete with polling data

23   and, you know, how some demographic groups are particularly,

24   you know, reluctant to participate during a pandemic because

25   of the particular vulnerabilities during a pandemic.  And, I

1    mean, you know, I read all of that data.  Whether it's true

2    or not, I mean, I've read some of the same polling data;

3    some of the same analyses by social researchers.

4              But the result of that is -- what? -- zero

5    indictments -- all indictments in this court dismissed for a

6    year and a half of a pandemic?  I mean --

7              MS. HARDEN:  I am going to say something in that

8    nature.  I think, Your Honor, I am just in a difficult

9    position.

10             I am looking at the spreadsheet that was sent by

11   Ms. Larry, Your Honor, on the 14th.  There is a column that

12   says "race code."  And in the Excel spreadsheet that I am

13   looking at, there are no answers underneath the race code.

14   But, again, this is what I mean -- I am not equipped.  An

15   expert -- this is an Excel spreadsheet.  Maybe I am not --

16             THE COURT:  You know what, I asked the same

17   question:  What does that mean?  And "1" means Black; "3"

18   means White; and then, if it's Hispanic you just have a "Y."

19             MS. HARDEN:  So I got that on Friday.

20             So, I guess, my issue really is timeliness and the

21   ability to argue this at some point; I don't want to waive

22   the issue for Mr. Smith.  I want this motion to be properly

23   filed; I want the opportunity to obtain an affidavit.

24             If it's correct that I need a history of problems

25   with the master wheel in order for this to be cognizable,

1   then I'd ask for the opportunity to -- have an opportunity

2   to do that.  I think 2 days, or even the 7 from -- or the

3   11, from the time that Ms. Larry provided the first master

4   wheel is not sufficient time.  And I would ask, for all of

5   those reasons, that the Court here extend that time at least

6   to obtain the affidavit or allow me based on the filing of

7   the motion to, at some point, obtain whatever data is

8   necessary to support my --

9           THE COURT:  And how much time do you think,

10  Ms. Harden -- recognizing that you are in trial -- will you

11  need to supplement your motion --

12          MS. HARDEN:  I am talking about --

13          THE COURT:  -- with the requisite sworn statement?

14          MS. HARDEN:  I'm sorry.  What was the last part?

15          THE COURT:  I said how much time will you need to

16  be able to perfect or supplement your motion with the

17  requisite sworn statement?

18          MS. HARDEN:  I am not as prepared to answer all

19  questions -- Your Honor, I really am not prepared to answer

20  that.  I think 30 days; although -- I mean, I just don't

21  even know.

22          I am in touch with my expert.  We have been

23  discussing the master wheel; we had been discussing this as

24  of this morning.  So I would defer to the Court in terms of

25  what amount of time the Court would be willing to give me

1    for something like this.  I'd start with 30 days, knowing

2    that that's just probably not realistic.

3              THE COURT:  Well, I was going to say 48 hours.

4              MS. HARDEN:  Then it's reduced from 30 days to 48

5    hours, Your Honor.  What I need to do --

6              THE COURT:  Just because -- I mean, the statute --

7    I don't even know that the statute says I can do this.

8    Right?

9              MS. HARDEN:  I understand.  But I would take the

10   48 hours.  I haven't yet identified an expert; I have been

11   in contact with an expert, and he is reviewing those

12   materials.  So he is somewhere close --

13             THE COURT:  Okay.

14             MS. HARDEN:  -- and if I say I have 48 hours, then

15   he and I will get together.  At a minimum, the issue will be

16   properly preserved.

17             THE COURT:  Okay.  Let's say 48 hours to see the

18   sworn statement, to perfect the motion; and we'll take it

19   from there.  Once we see all of that, I will hear from the

20   government about response time; and, you know, usually these

21   motions are resolved before you pick the jury.

22             MS. HARDEN:  That's correct.

23             THE COURT:  We are not going to do that.  And I

24   understood -- and I understood from your papers -- and I am

25   glad that I did understand that correctly -- that you were

 1   preserving your right to do this without delaying the trial.

 2            MS. HARDEN:  Yes.  So as to avoid any future

 3   problems that something wasn't properly preserved.

 4            THE COURT:  Right.  Got it.

 5            Okay.  So we now have a schedule for that.

 6            Anything else before we start seating the jury?

 7            MS. HARDEN:  Nothing further.

 8            THE COURT:  Okay.  And you all understand 50 are

 9   going to be seated in here -- according to this really

10   lovely seating chart that our court staff did for us -- with

11   the remaining jurors -- 65 seated -- in Courtroom 16 right

12   down the hall.

13            Perhaps we will get our qualified 32 jurors from

14   the 50 in here without ever having to even deal with the

15   jurors, prospective jurors, sitting in Courtroom 16; but

16   we'll see how this goes.

17            MS. HARDEN:  Sure.

18            THE COURT:  Are we ready?

19            MS. SEDKY:  May I ask a really stupid question?

20            THE COURT:  There are no stupid questions.

21            MS. SEDKY:  I have to confess, I have done jury

22   selection in other federal courts, but this is my first time

23   in D.C.

24            Does the person who is being questioned -- what

25   kind of privacy do they have when they're answering

1    follow-up questions?  Are all of the other jurors here?  Is

2    the husher on?

3              THE COURT:  No, no.  No, this is what is going to

4    happen --

5              MS. HARDEN:  I didn't understand that either,

6    Judge.

7              THE COURT:  Okay.  Let me just explain.  I firmly

8    believe in transparency throughout the entire court process,

9    including voir dire.

10              So, when we finish doing the collective questions,

11    all of the jurors in this room will be escorted out; they

12    will be sitting in the chairs outside in the hallway or in

13    Courtroom 16, with the remaining jurors out there.

14              We will bring in, for individual voir dire, each

15    individual prospective juror; they will stand at that

16    podium.  So you will be able to see them; and I will ask

17    them questions just like I am talking to you now.

18              The video connection between our courtroom and

19    Courtroom 16 will be turned off.  The public access

20    courtroom, which is Courtroom 1 --

21              THE COURTROOM DEPUTY:  Courtroom 1, 2nd floor.

22              THE COURT:  -- will be on.  We are only going to

23    be using the name -- the juror numbers of the jurors.  The

24    public access telephone lines are not being used during this

25    trial.  So the only people who will hear the answers from

1    each individual juror are us in this room and anybody in the

2    public access courtroom.

3           I would also just -- this is as good a time as

4    any.  For the public access courtroom -- please make sure

5    none of your prospective witnesses at the trial go to the

6    public access courtroom because they will be able then to

7    hear everything.  I just want to make sure --

8           MS. HARDEN:  And what about -- I did note to the

9    government, I have an expert witness with respect to the

10   forensics in this case who will need an opportunity to

11   listen to their experts.  So will the Court allow him to sit

12   in your courtroom, or does he just have permission to sit in

13   the public courtroom?

14          And it doesn't need to be addressed now.

15          THE COURT:  Yes.  Have you conferred with the

16   government about that?  I mean, if you-all agree on

17   something, then please let me know.

18          MS. HARDEN:  I just told them that, so maybe at

19   lunch -- that might be one thing we can agree on, Your

20   Honor.

21          THE COURT:  Why don't you confer.

22          MS. SEDKY:  We did want to just confront the

23   issue -- we feel like when we're listing the names of the

24   witnesses for conflict purposes that we are going to have to

25   use our victim's first and last name.  I mean, we just

1    didn't want that to come as a surprise to the Court.

2           We have been talking to people at our shop about

3    whether there is a way to avoid that.  Because we need to

4    know whether anybody knows her, we feel like we are

5    obligated to give her full name.

6           THE COURT:  Well, I would disagree with that

7    advice.  I think that we should do everything we can to

8    protect that person's name.

9           MS. SEDKY:  Okay.

10          THE COURT:  And, as a consequence, just use "A.S."

11   They will be able to see that person.  And so if they know

12   that person, they will be able to recognize that person.

13          MS. SEDKY:  After they are --

14          THE COURT:  I will be describing the facts.  And

15   if they know something about the facts, they're going to

16   hear about it that way.  So I still don't appreciate why you

17   think we need to use A.S.'s full name.

18          MS. SEDKY:  I guess our concern is that if there

19   is somebody in the prospective jury pool who has some

20   connection to her, they won't see her photograph until after

21   the jury has been impaneled.  We're just trying to avoid a

22   later determination that somebody knows her.  But I

23   understand and -- this is not our choice.  I mean, it's not

24   our first choice; but we were feeling like balancing the

25   concerns.  But I suppose you are right.

1        Perhaps they'll know enough about the case -- they

2   obviously know the defendant's name.  So, presumably, if

3   they knew her it would be through her time here with him.

4        MS. HARDEN:  So that certainly I don't think is

5   correct, that they would know her through Mr. Smith.  And I

6   do agree, unless the Court rules otherwise, that the

7   government should use the whole name; but I respect the

8   Court's ruling.  Whatever way the Court rules, I am fine

9   with it.

10        MS. SEDKY:  I know.  We're struggling with it too.

11        THE COURT:  In all of these cases they actually

12  just lay out the -- all of the precautions that have been

13  taken just to use initials, they actually lay out the

14  person's full name?

15        MS. SEDKY:  At this stage -- apparently, at this

16  stage -- I know.  We have been asking the handful of people

17  who have been consulting with us on this.

18        MS. HARDEN:  I'd defer to the Court's ruling.

19        THE COURT:  No.  We are going to continue to use

20  the initials "A.S."  There are so many other ways that if

21  anybody really had some information about this case that

22  they will be able to let us know, both from the fairly

23  detailed statement of the case -- from being able to see and

24  hear the full name of Mr. Smith; then, when she testifies,

25  they're going to see her testifying and will be able to know

1    whether they recognize her or not.  I appreciate that that

2    might be a little bit of a late date; but we have

3    alternates, and this is not that long of a trial.

4              MS. SEDKY:  And relatedly, we are actually -- our

5    plan was to refer to her by her first name only to --

6    because that -- we don't want to put her off by calling her

7    by her initials; and so we are obviously not ever going to

8    use her last name.  But we did want to flag for the Court

9    that now that we're in trial and not doing our pleadings, we

10   don't want the stilted feelings of having us refer to her by

11   her initials.

12             THE COURT:  I appreciate that.

13             MS. HARDEN:  One more thing, Your Honor.

14             What about with respect to opening statements?  I

15   thought I read something that the Court indicated that we

16   should be using her full name.  Maybe I am just completely

17   wrong.  Well, I guess that's not right.

18             THE COURT:  No.

19             MS. HARDEN:  Very well.

20             So if I want to say the complainant's name in the

21   opening, I need to be saying "A.S." as well.

22             THE COURT:  Yes.

23             MS. HARDEN:  Very well.

24             I do have an objection to that.  I understand the

25   Court's position.

1            I would ask that, in the event that the Court is

2    going to require us to use "A.S.," the Court give some kind

3    of cautionary discussion and explain it doesn't go -- not

4    say this -- but that it doesn't go to her status as a

5    victim, it goes to her status as juvenile.  Because, I mean,

6    again, I think it imputes that something has happened

7    potentially, that it's victim status that she's getting by

8    "A.S." and not just juvenile status.  So, for those reasons,

9    I would ask that the Court give some kind of cautionary or

10   limiting instruction if the Court is going to require

11   something which is sort of out of the ordinary by using

12   someone's initials.

13            THE COURT:  All right.

14            MS. SEDKY:  And we were planning on using her

15   first name throughout, never her last name.

16            THE COURT:  So you were planning, in your opening

17   statements, not to refer to her as "A.S." but to refer to

18   her by her first name?

19            MS. SEDKY:  Correct.

20            MS. HARDEN:  Can I ask for a brief indulgence to

21   ask her something?

22            THE COURT:  Well, I mean, are both sides then

23   wishing to use her first name?

24            MS. SEDKY:  Yes.  We did discuss this in advance;

25   and we are going to be agreeing to use her first name and

1    not her last name.

2              MS. HARDEN:  I can do that.

3              THE COURT:  Why is it -- why is it then, in the

4    statement of the case, I am just referring to her as "A.S."

5    as opposed to her first name?

6              MS. SEDKY:  Well, I know this seems like splitting

7    hairs; but in our filings we have been referring to her as

8    "A.S."  As you know, the difficulty here is that her mother

9    happens to have the same last name as the defendant.

10             MS. HARDEN:  Right.  Which does -- I mean, which

11   does create -- right? -- a serious complication of sorts

12   because he would -- yes, it is a whole other --

13             MS. SEDKY:  It's not by marriage.  She had that

14   name as her last name before they got married.

15             THE COURT:  Okay.  All right.  So I am confronted

16   with a situation where we have been taking enormous

17   precautions during the duration of this whole case to refer

18   to a juvenile by her initials "A.S.," and now both sides

19   want to at least use the juvenile's first name.

20             All right.  When you read your witness list, don't

21   use her last name; just say first name, with the last

22   initial beginning with "S," and then we'll leave it at that.

23   And in openings you can use her first name.

24             MS. HARDEN:  Very well.

25             MS. SEDKY:  Thank you, Your Honor.

1          THE COURT:  Because, I mean, if both sides are

2    going to be doing that during the course of the examination

3    of her -- we'll do that.

4          MS. HARDEN:  I do have one last thing.  I forgot.

5          THE COURT:  Yes.

6          MS. HARDEN:  Your Honor, I asked for the Court to

7    give a more comprehensive statement of the case, and that

8    request was denied.

9          My statement of the case was not -- it seemed like

10   it was not included in what I saw, in terms of the final

11   order, other than:  Mr. Smith denies these charges.  And I

12   am asking that the Court -- rather than give:  Mr. Smith

13   denies these charges, which sounds a little shifty on him --

14   that the Court simply say:  Mr. Smith is presumed innocent.

15   That is my statement of the case.  That is what I am asking

16   the Court to give.

17         I know the Court said the Court is not going to

18   interweave the law, which is what I had asked.  But I would

19   ask that the Court give that statement:  Mr. Smith is

20   presumed innocent, rather than:  Mr. Smith denies the

21   charges.  And I started to develop something at three

22   o'clock this morning; but then I thought better against

23   that, and to just make the oral request.

24         THE COURT:  Could you explain the reason for that?

25         MS. HARDEN:  That is my statement of the case,

1    Your Honor.  I mean, Mr. Smith shouldn't be -- he doesn't

2    have to prove anything.  He doesn't have to deny or defend

3    against anything; he just is presumed in this case to be

4    innocent.  That, I am hoping, is not going to cause too much

5    problem in terms of changing it; it should be five words.

6              MS. SEDKY:  Your Honor, could we be heard?

7              THE COURT:  Yes.

8              MS. SEDKY:  My recollection is this is virtually

9    the same argument that the defendant already raised and the

10   Court ruled on --

11             MS. HARDEN:  I am changing my statement of the

12   case is what I am saying.

13             MS. SEDKY:  But the statement of the case is our

14   statement of our case; and so it's our burden of proof, and

15   we are laying out for the jury what our case is.

16             As the Court -- when the Court was earlier denying

17   the defense request to put in legal aspects to the statement

18   of the case and whose burden, and who is presumed what, I

19   think the Court made the appropriate --

20             THE COURT:  All right.  Can I just tell you

21   something?  We're not going to waste much time on this.

22             The statement of the case is not that big a deal.

23   To be quite honest, it's really to elicit people who are

24   going to be fair and impartial who don't know anything about

25   the case before they came into the room.

```
1              If the defense is requesting that instead of
2    saying:  Mr. Smith denies each and every charge, they really
3    want to just simplify that to say:  Mr. Smith is presumed
4    innocent -- which is your request correct, Ms. Harden?
5              MS. HARDEN:  That's right.  That's correct.
6              THE COURT:  It does sort of start mixing up a
7    little bit of the law with what is a factual statement;
8    but -- and they are going to be hearing he is presumed
9    innocent several times after my preliminary instructions,
10   through the questions, but that's -- I just don't want to
11   waste any more time on this.
12             MS. SEDKY:  Fair enough.
13             MS. HARDEN:  Very well.
14             THE COURT:  All right.  So that motion is granted.
15             MS. HARDEN:  Thank you, Your Honor.
16             I have nothing else prior to voir dire.
17             THE COURT:  Okay.  Are we ready to bring the jury
18   in --
19             MS. SEDKY:  Yes, Your Honor.
20             THE COURT:  -- the prospective jurors in?
21             MS. HARDEN:  Yes, Your Honor.
22             THE COURT:  All right.
23             MS. HARDEN:  Thank you.
24             THE COURT:  Thank you.
25             (Whereupon, the prospective jurors join the
```

1    proceeding, 9:44 a.m.)

2              THE COURT:  We have to seat a number of people in

3    a particular order, so thank you for your patience while the

4    courtroom deputies are taking care of doing that.  We also

5    have some prospective jurors sitting in another courtroom;

6    so give us a couple more minutes to get them seated.

7              THE COURTROOM DEPUTY:  Okay.  Your Honor,

8    everybody is seated in their respective places.

9              (Whereupon, the Court and staff confer.)

10             THE COURT:  All right.  Good morning, ladies and

11   gentlemen.  Welcome to the federal courthouse.

12             I am going to begin by introducing myself.  I am

13   Beryl Howell.  I am the Chief Judge of the United States

14   District Court for the District of Columbia, which is the

15   courthouse we are sitting in.

16             I want to make sure, first of all, that part of

17   the prospective -- group of prospective jurors sitting in

18   Courtroom 16 are able to hear me and see me.  If you can,

19   could you all raise your hands in Courtroom 16?

20             Excellent.  Okay.  And I can see you too.

21             All right.  You all have been called to this court

22   this morning for possible selection as jurors in a criminal

23   case entitled United States v. Joseph Smith.

24             We have designed the jury selection process this

25   morning in a way to avoid any unnecessary contact among

1       jurors, and to allow social distancing as much as possible.

2       So, to this end, the prospective jurors for this case are

3       separated into two different courtrooms, as you have just

4       heard, to limit the number of people in each of the rooms,

5       and so that we can ensure and protect all of our health and

6       safety with social distancing.

7              I am in the Ceremonial Courtroom for this court,

8       which is on the 6th floor of the Prettyman side of the

9       courthouse with about 50 prospective jurors; and then

10      another group of prospective jurors is sitting in

11      Courtroom 16, which is right down the hallway from the

12      Ceremonial Courtroom.

13             Members of court staff are in both courtrooms to

14      help if you need any assistance or have any questions.  So I

15      will ask Ms. Gumiel, who is my courtroom deputy, sitting in

16      the Ceremonial Courtroom, to stand and wave so you can see

17      the court staff if you have any questions.  So that is

18      Ms. Gumiel.

19             In Courtroom 16, I think, Mr. Cramer is there, who

20      is also a member of the court staff.

21             Mr. Cramer, could you just stand and wave to the

22      jurors so that they can see you there.  And there he is.

23             Okay.  So every one of you is required to wear a

24      face mask throughout the day.  I know it's not particularly

25      comfortable for all of us, but it is necessary for all of

1    our health and safety.  I am going to be wearing a face

2    mask.  I am wearing a plexiglas one because I find that

3    prospective jurors find it helpful to see when I'm speaking

4    rather than wearing my dark mask, a paper mask, which is a

5    little bit more comfortable; but hopefully you will find

6    this helpful.

7              As I mentioned, I am sitting in the Ceremonial

8    Courtroom, and I will be speaking to all of the prospective

9    jurors simultaneously whether you are in the Ceremonial

10   Courtroom with me or in Courtroom 16.  Those of you in

11   Courtroom 16 will be able to see and hear me using the video

12   stream on the video screens in the courtroom in front of

13   you.

14             As I will explain in more detail later:  No matter

15   which room you are in you, will be able to speak privately

16   with me as necessary.

17             So I am going to begin with some introductions,

18   and then a description of the health and safety protocols

19   that we're using in the courthouse.  And, finally, I will

20   describe the process we are going to be using today for the

21   jury selection.

22             So assisting me is Ms. Teresa Gumiel, who my

23   courtroom deputy, who has already stood for you in the

24   Ceremonial Courtroom.

25             Elizabeth Saint-Loth is my court reporter, she is

1    sitting to my left.  And she is the person who takes down

2    all of the words spoken in the courtroom during the course

3    of the trial to keep a record of the proceedings.

4         At the bench with me are Mary Ella Simmons and

5    Nathan Lange; they are my law clerks.  And you are going to

6    be seeing them on and off during the course of the trial.

7         I am going to introduce the parties and the

8    lawyers in just a moment.  But, first, I just want to

9    reassure you-all about the safety precautions we have been

10   taking in the courthouse now for a year and a half to

11   protect everyone's health and safety.  We have taken these

12   precautions in consultation with epidemiologists, medical

13   health and safety experts, air flow experts, and

14   engineers -- all to make sure that you should be assured

15   that you are safe being here during the jury selection and

16   for jury service if you are selected to serve as a juror on

17   this case.

18        We have described these many precautions on a

19   video that's available on our website, if you want to review

20   any of those at some point.

21        So in addition to us requiring everybody in the

22   courthouse to wear a mask and maintain social distancing, we

23   have also improved air circulation; we have updated all of

24   our air filters to the highest quality.  We have enhanced

25   cleaning for high-touch areas, like all of the elevator

1    buttons, in the bathrooms, and the courtrooms that are being

2    used during the day.  Please keep your mask on while you are

3    using the restrooms, and maintain a social distance of six

4    feet while you are in line for the restrooms.  The elevators

5    and the restrooms are limited to two people at a time; we

6    have positions marked on the floor.

7              Inside the courtroom, you will see we have

8    plexiglas barriers that also help for people who are

9    speaking to do so behind a plexiglas mask.

10             If you need a mask and if you would like to wear a

11   face shield in addition to a mask, the Court will provide

12   that for you; you just have to ask Ms. Gumiel.

13             We do have our cafeteria open.  And so, at lunch,

14   you can eat in the court's cafeteria that's on the first

15   floor of the courthouse, and maintain social distancing

16   while you are there.

17             Those are only some of the measures we have taken

18   to protect your health and safety during the jury selection

19   and service if you are selected.  We have really worked hard

20   to make this experience as safe as possible for you and for

21   everyone working in the courtroom and in the courthouse, and

22   to make sure we can continue with what is a critical

23   government function of jury trials.  If at any time during

24   your jury service you have any questions or concerns, don't

25   hesitate to ask Ms. Gumiel for more information, or our jury

1     office.

2              I am now going to explain the jury selection

3     process that we're going to be proceeding with for the next

4     part of today.

5              You are here because we must select from among you

6     14 people to serve as jurors to hear a criminal case.

7     Twelve of the jurors will deliberate, and two additional

8     jurors will serve as alternates in case they are needed

9     during deliberations.  You will not be told who the

10    alternates are.

11             The purpose of jury selection is to select jurors

12    who have no prior knowledge of the case and no bias toward

13    either side in the case.  Your role as jurors is a

14    fundamental part of our system of justice dating back to

15    medieval England where trial by jury provided a method to

16    blunt the power of the king or the queen over individual

17    freemen.

18             Over 200 years ago, when the framers of our

19    Constitution designed our judicial system -- they guaranteed

20    the right to a jury trial in criminal cases.  This right to

21    a jury is so important it is mentioned twice in our

22    Constitution, first in Article III's provision that the

23    trial of all crimes shall be by jury and, again, in the Bill

24    of Rights in our Sixth Amendment.

25             Our system of justice is designed so that the

1    decision of guilt or innocence is to be made by fair and

2    impartial citizens in the community based upon the evidence

3    presented in the courtroom and the law as the judge

4    instructs.

5         Serving on a jury is one of the most important

6    duties and services that we perform as citizens, in addition

7    to voting, serving in the military, paying taxes -- this is

8    more fun than paying taxes, I would think.

9         I want to begin by thanking all of you for being

10   here to do your civic duty.

11        The lawyers and I have lists, lists showing -- the

12   list that looks like this, a jury panel sheet -- no surprise

13   there -- it shows your name, your address, your juror

14   number, your age, and your occupation.  To help the parties

15   learn more about you so they are able to select the jurors

16   who will hear this case, I am going to be asking you

17   questions.  There are no right or wrong answers to any of

18   the questions I am going to be asking you; we only expect to

19   hear truthful answers.

20        You should all have a sheet of paper and a pencil.

21   So, right now, please write the last three digits of your

22   juror number in the upper right-hand corner of your paper --

23   just the last 3 digits.

24        I am going to be asking you a series of 38

25   questions that can be answered with a simple yes or no.  If

1    you have a "yes" answer to a particular question I ask, just

2    put a checkmark next to the number of the question.  You do

3    not have to put down why you have a yes answer.  I will hear

4    your reason for any yes answer after I have finished asking

5    all 38 questions.  At that time I will follow up with each

6    of you individually, outside the presence of all of the rest

7    of the prospective jurors sitting in the courtroom you are

8    sitting in.

9          What will happen is:  You will give me your sheet

10   of paper with your juror number in the right-hand corner

11   with any yes answers that you might have checked by the

12   number of the question; and I will ask you why you answered

13   that question yes, and you will explain it to me.  You will

14   have an opportunity at that time to provide details to the

15   lawyers and to me, as I said, outside the presence of other

16   prospective jurors.

17         We are going to be asking you what may appear to

18   you to be some personal questions in an attempt to get your

19   viewpoints about things; and it is important that you be

20   entirely straightforward with us in your responses so that

21   we may more easily select the jury for this case.

22         During the course of this jury selection process,

23   I will be calling upon you by your juror number, not by your

24   name.  We have found that many jurors prefer having just

25   their number used in open court; and it is easier for us to

1    keep track of the answers by just writing the number rather

2    than your full name.

3         During this process, I will determine whether any

4    prospective juror should be excused, and then the lawyers

5    will have a chance to make their selection.  We will then

6    impanel or swear in the jury to hear the case.

7         The jurors selected will receive more instructions

8    about the trial before it begins.  Those who are not

9    selected may be excused and leave the courthouse; and I will

10   make that clear to you.

11        Before we begin the questioning, I will administer

12   the oath.  So I will ask all of the prospective jurors in

13   the Ceremonial Courtroom and in Courtroom 16 -- all of you

14   please stand, raise your right hand.

15        (Whereupon, the jury was sworn.)

16        THE COURT:  All right.  Thank you.  You may be

17   seated.

18        Now that you have all been sworn, we are about to

19   begin a procedure called "voir dire."  The term "voir dire"

20   is a legal term that comes from the French language that

21   means to speak truthfully.  As I mentioned before, I will be

22   asking you questions that the lawyers and I think will be

23   helpful to us in selecting a fair and impartial jury.

24        You are bound by the oath you have just taken to

25   speak truthfully in response to those questions.  As I

1    mentioned, some of the questions I ask may seem to address

2    matters that are very personal to you.  Please understand,

3    ladies and gentlemen, it is not my intention or desire --

4    nor is it the desire or intention of the lawyers, the

5    government, the defendant -- to invade your privacy or

6    embarrass you.  Our only wish is to select the fairest, most

7    impartial jury possible.

8            Each of the parties in this case has a vital

9    interest in this matter and wants to be assured that jurors

10   will have no biases or prejudices about this case, and that

11   the verdict will be based only on the law and the evidence.

12   Thus, it is important that you be entirely straightforward

13   with us in your responses so that we can select a fair and

14   impartial jury in this case.

15           As I mentioned, you will have the opportunity to

16   speak to me individually about personal matters outside the

17   presence of the rest of the prospective jurors.

18           Please feel free, while you are waiting, as I am

19   speaking to prospective jurors individually, to read any

20   book or magazine you may have brought; but please do not

21   talk about the case or about the voir dire questions I am

22   about to ask you with anybody else.

23           I also want to alert you that, unfortunately,

24   there will be times during today and during the trial, if

25   you are selected as a juror, that you will be waiting.  I

1    will try my best to keep your waiting to a minimum, but it

2    cannot always be helped.  And I thank you in advance for

3    your patience with the process.

4         So let me begin by briefly describing the case to

5    you.  This is a criminal case.  The defendant, Joseph Smith,

6    is charged with violating several federal and local D.C.

7    code criminal laws, including for production and possession

8    of child pornography, enticing a minor, and child sexual

9    abuse with aggravating circumstances.

10        The government contends that:  From about May 2016

11   until April 2017, Mr. Smith repeatedly sexually abused his

12   stepdaughter, whose initials are A.S., when A.S. was 12 and

13   13 years old.  At the time, A.S. was living with her mother,

14   younger sister, and Mr. Smith at Mr. Smith's apartment in

15   Washington, D.C.

16        The government alleges that, on multiple

17   occasions, Mr. Smith made A.S. perform oral sex on him and

18   made A.S. submit to oral sex by him.

19        The government further alleges that Mr. Smith took

20   sexual photographs of A.S., and also directed A.S., both

21   verbally and through text messages, to take six close-up

22   photographs of her own genitals, and to transfer those

23   photographs to Mr. Smith's cell phones.

24        The government alleges that Mr. Smith stored these

25   sexually explicit photographs on his cell phones and

1    computer.

2              Mr. Smith is presumed to be innocent.

3              Now I am going to begin asking you the

4    38 questions, so please get your pencils and your paper

5    ready.  Again, if you answer yes to any question that I ask,

6    please mark the number of the question on your sheet of

7    paper.  Just to remind you, after I finish asking the

8    questions, both of you in the Ceremonial Courtroom will be

9    re-seated in the chairs outside of the courtroom or in

10   Courtroom 16 to wait while I bring each of you individually

11   into this courtroom to stand at the podium you see right

12   there, to my right, and I will ask you to explain any yes

13   answer that you give.

14             After we've finish speaking individually to those

15   of you sitting in the Ceremonial Courtroom, we will then

16   bring in prospective jurors sitting in Courtroom 16 to speak

17   to me individually.

18             I am going to ask each question twice to make sure

19   you hear it.  And since I am wearing a mask, sometimes it's

20   a little bit more difficult to hear.

21             And I am going to repeat -- so I am going to

22   repeat each question twice, and I am going to tell you the

23   number just so you can keep track of where we are.

24             So Question No. 1:  Do you feel so uncomfortable

25   being in a room with other jurors and trial participants due

1    to the COVID-19 pandemic that it would be difficult for you

2    to pay attention or otherwise serve as a juror in this case?

3              Question No. 1 again:  Do you feel so

4    uncomfortable being in a room with other jurors and trial

5    participants due to the COVID-19 pandemic that it would be

6    difficult for you to pay attention or otherwise serve as a

7    juror in this case?

8              Question 2:  Are you currently caring for a

9    relative or close friend who has been infected by or exposed

10   to persons infected with COVID-19 such that it would be

11   difficult for you to pay attention or otherwise serve as a

12   juror in this case?

13             Question 2 again:  Are you currently caring for a

14   relative or close friend who has been infected by or exposed

15   to persons infected with COVID-19 such that it would be

16   difficult for you to pay attention or otherwise serve as a

17   juror in this case?

18             Question 3:  Based on the information I have given

19   you about this case, have you heard or read about this

20   matter before coming to court today or do you believe you

21   know anything about the facts and circumstances of this

22   case?

23             Question 3 again:  Based on the information I have

24   given you about this case, have you heard or read about this

25   matter before coming to court today or do you believe you

1   know anything about the facts and circumstances of this

2   case?

3            Question 4:  The United States is represented in

4   this case by Assistant United States Attorney Caroline

5   Burrell and Special Assistant United States Attorney Mona

6   Sedky from the U.S. Attorney's Office for the District of

7   Columbia, and they are being assisted by Federal Bureau of

8   Investigation Agent Danielle Schnur and Paralegal Alexis

9   Spencer-Anderson.

10           Ms. Burrell, and Miss -- could you please stand?

11           And, Ms. Sedky, could you please stand?

12           And is your Paralegal Alexis Spencer-Anderson

13   here?

14           MS. SEDKY:  She is not here.

15           THE COURT:  Not here yet.

16           And Danielle Schnur, not here?

17           MS. SEDKY:  Not here.

18           THE COURT:  All right.  So do you know or have you

19   had any contact with these Assistant U.S. Attorneys or

20   recognize the names of Danielle Schnur or Alexis

21   Spencer-Anderson?

22           I am going to repeat that question.

23           The United States is represented in this case by

24   Assistant United States Attorney Caroline Burrell and

25   Special Assistant Attorney Mona Sedky from the U.S.

1    Attorney's Office for the District of Columbia, and they are

2    being assisted by Federal Bureau of Investigation Special

3    Agent Danielle Schnur and Paralegal Alexis Spencer-Anderson.

4         Do you know or have you had any contact with these

5    individuals?

6         THE COURTROOM DEPUTY:  Courtroom 16 cannot see the

7    government --

8         THE COURT:  Yes.  And for Courtroom 16, I know

9    this is more difficult for you to see the individuals who

10   are standing.

11        (Whereupon, the Court and staff confer.)

12        THE COURT:  Okay.  Sorry.  We are doing a

13   technological thing.  Right now, for Courtroom 16, we are

14   showing you the Assistant U.S. Attorneys.

15        Please raise your hands in Courtroom 16 if you can

16   see them.

17        Excellent.  Thank you so much.

18        So for Question 4:  Do you know or have you had

19   any contact with these individuals?  All right.

20        Question 5:  The defendant at trial is Joseph Smith.

21        Mr. Smith, could you please stand.

22        And the question is:  Do you know or have you had

23   any contact with Joseph Smith?

24        And I am going to give my courtroom deputy time to

25   do her camera work.

```
1              All right.  So the question is, Question 5:  The
2      defendant at trial is Joseph Smith.
3              Do you know or have you had any contact with
4      Joseph Smith?
5              All right.  Mr. Smith, please resume your seat.
6              Question 6:  Joseph Smith is represented in this
7      case by Brandi Harden of the law firm Harden & Pickney,
8      400 7th Street Northwest, Washington, D.C.
9              Do you know or have you had any contact with
10     Brandi Harden?
11             And she's standing at the podium.
12             Ms. Gumiel, are you showing?
13             THE COURTROOM DEPUTY:  Yes.  Yes, Your Honor.
14             THE COURT:  Okay.  Question 6 again:  Joseph Smith
15     is represented in this case by Brandi Harden of the law firm
16     Harden & Pickney, 400 7th Street Northwest, Washington, D.C.
17             Do you know or have you had any contact with
18     Brandi Harden?
19             Question 7:  During the course of the trial you
20     may hear testimony from or about a number of people.  The
21     attorneys will now identify for you the names of people who
22     may testify or about whom you may hear testimony.
23             Listen carefully.  And if you recognize or know
24     any of the people named, please mark your paper beside the
25     No. 7.
```

```
1              The government's counsel may go first.  And if

2     Ms. Harden, defense counsel, has any additional names, she

3     may list them.

4              Let me repeat that question one more time; and

5     then I will turn the microphone over to you, the government,

6     to list the names.

7              Question 7 again:  During the course of the trial

8     you may hear testimony from or about a number of people.

9     The attorneys will now identify for you the names of people

10    who may testify or about whom you may hear testimony.

11             Listen carefully.  And if you recognize or know

12    any of the people named, please mark your paper beside the

13    No. 7.

14             I will ask the government to list the names first.

15             MS. SEDKY:  So the following are our list of

16    potential witnesses --

17             THE COURT:  You need to speak up.  Move the

18    microphone closer.

19             MS. SEDKY:  -- Daniel Ogden, Harry Lee,

20    Akil Muhangi, Angelica S., Wanda Smith, Jeremiah Johnson.

21    And for two they have such common names I was going to give

22    a little bit of an identifier about them or -- with the

23    Court's --

24             THE COURT:  Just say the names, please.

25             MS. SEDKY:  Say the names, okay.
```

1              You heard Special Agent Danielle Schnur, Stephanie

2      Wolf, Jerrell Carter, Brittany Williams, Tiffany McIlvaine,

3      Alysha Stevens.

4              THE COURT:  Could you please repeat that list.

5              MS. SEDKY:  Yes.  Daniel Ogden, Harry Lee, Akil

6      Muhangi, Angelica S., Wanda Smith, Jeremiah Johnson,

7      Danielle Schnur, Stephanie Wolf, Jarrell Carter, Brittany

8      Williams, Tiffany McIlvaine, and Alysha Stevens.

9              THE COURT:  Thank you.  You may be seated.

10              Ms. Harden, do you have any additional names to

11      list?

12              MS. HARDEN:  Yes.  Your Honor, should I just --

13              THE COURT:  Yes.  If you can go to the podium.

14              MS. HARDEN:  Good morning.

15              You may hear about or from Ella Smith, Kyree

16      Joelle Smith [sic], Dale Vaughn, Lindella Hopkins, Tony

17      Smith, and/or Michael Coleman.

18              THE COURT:  Could you repeat your list again,

19      Ms. Harden.

20              MS. HARDEN:  Sure.

21              You may hear from or about Ella Smith, Kyree

22      Joelle Smith, Dale Vaughn, Lindella Hopkins, Tony Smith, and

23      Michael Coleman.

24              THE COURT:  Thank you.

25              Question No. 8:  Please look around you.

1          Do you know or recognize any other member of the

2     prospective jury panel, the courtroom staff, or me?

3          And you are welcome to stand up to make sure you

4     are able to see everybody.

5          Question 8 again:  Please look around you.

6          Do you know or recognize any other member of the

7     prospective jury panel, the courtroom staff, or me?

8          Question 9:  The lawyers have predicted that the

9     presentation of evidence in this trial should last about one

10    week, but could last a little longer.  The jury will sit

11    Monday through Thursday, generally, from 9:30 a.m. to

12    5:00 p.m., although the starting and ending times may vary.

13         The length of jury deliberations following the

14    presentation of evidence at trial will be determined by the

15    jury itself.

16         Do you have an urgent or extremely important

17    matter to attend to this week and next such that you could

18    be faced with a hardship if selected to serve on the jury in

19    this case?

20         Question 9 again:  The lawyers have predicted that

21    the presentation of evidence in this trial should last about

22    one week, but it could run longer.  The jury will sit Monday

23    through Thursday, generally, from 9:30 a.m. to 5:00 p.m.,

24    although the starting and ending times may vary.

25         The length of jury deliberations following the

1    presentation of evidence at trial will be determined by the

2    jury itself.

3              Do you have an urgent or extremely important

4    matter to attend to this week and next such that you could

5    be faced with a hardship if selected to serve on the jury in

6    this case?

7              Question 10:  Do you have any vision, language, or

8    hearing problems, or any other physical or medical problems

9    that might interfere with your ability to hear or understand

10   what the witnesses say in this case, to view exhibits and

11   photographs, or to give your full attention to this case?

12             Question 10 again:  Do you have any vision,

13   language, or hearing problems, or any other physical or

14   medical problems that might interfere with your ability to

15   hear or understand what the witnesses say in this case, to

16   view exhibits and photographs, or to give your full

17   attention to this case?

18             Question 11:  Do you have any moral, religious, or

19   ethical beliefs that prevent you from sitting in judgment of

20   another person?

21             Again, Question 11:  Do you have any moral,

22   religious, or ethical beliefs that prevent you from sitting

23   in judgment of another person?

24             Question 12:  Have you, any member of your family,

25   or close friend ever studied law or been employed by a

1    lawyer or law firm, worked in a courthouse, been a

2    paralegal, served as a legal secretary, or performed legal

3    investigative work?

4            Question 12 again:  Have you, any member of your

5    family, or close friend ever studied law or been employed by

6    a lawyer or a law firm, worked in a courthouse, been a

7    paralegal, served as a legal secretary, or performed legal

8    investigative work?

9            Question 13:  Have you, any member of your family,

10   or any close friend ever been employed by a local, state, or

11   federal law enforcement agency or a private security firm?

12           Law enforcement agencies include any police

13   department inside or outside the District of Columbia; a

14   special police officer or correctional officer; a Department

15   of Justice employee; U.S. Attorney's Office; District

16   Attorney's Office; U.S. Marshals; sheriff's department;

17   Internal Revenue Service; U.S. Secret Service; FBI; Bureau

18   of Alcohol, Tobacco, and Firearms; DEA; Department of State;

19   Park Police; CIA; probation office, or parole officer.

20           A PROSPECTIVE JUROR:  Excuse me.  That's No. 13,

21   right?

22           THE COURT:  I'm sorry?

23           A PROSPECTIVE JUROR:  No. 13?

24           THE COURT:  No. 13, yes.  Thank you.

25           No. 13 again:  Have you, any member of your

1    family, or any close friend ever been employed by a local,

2    state, or federal law enforcement agency or a private

3    security company?

4            Question 14:  Have you, any member of your family,

5    or any close friend had any experiences with any law

6    enforcement agency or the government that might cause you to

7    favor or disfavor the government or law enforcement?

8            Question 14 again:  Have you, any member of your

9    family, or any close friend had any experiences with any law

10   enforcement agency or the government that might cause you to

11   favor or disfavor the government or law enforcement?

12           Question 15:  Have you, any member of your family,

13   or any close friend ever done any work for or with any

14   person or organization that does criminal defense work, such

15   as the Federal Public Defender, the Public Defender's

16   Office, defense attorneys, a private law firm, or as a

17   private investigator?

18           Question 15 again:  Have you, any member of your

19   family, or any close friend ever done any work for or with

20   any person or organization that does criminal defense work,

21   such as the Federal Public Defender, the Public Defender's

22   Office, defense attorneys, a private law firm, or as a

23   private investigator?

24           Question 16:  If you have ever served as a juror

25   at a civil or criminal trial, or on a grand jury, was there

1    anything about your service that might affect your ability

2    to serve fairly, impartially at this trial?

3            Question 16 again:  If you have ever served before

4    as a juror at a civil or criminal trial, or on a grand jury,

5    was there anything about your service that might affect your

6    ability to serve fairly and impartially at this trial?

7            Question 17:  Have you, any member of your family,

8    or any close friend ever been arrested or convicted of a

9    crime, been a victim of a crime, been a witness to a crime,

10   testified in court or before a grand jury as a witness to a

11   crime, or been required to appear in court for any reason?

12           Question 17 again:  Have you, any member of your

13   family, or any close friend ever been arrested or convicted

14   of a crime, been a victim of a crime, been a witness to a

15   crime, testified in court or before a grand jury as a

16   witness to a crime, or been required to appear in court for

17   any reason?

18           Question 18:  Do you, a family member, or any

19   close friend belong to any organizations or volunteer groups

20   whose mission is to prevent crime, assist law enforcement,

21   assist or support victims of crime, or address past or

22   present abuse of children by family, teachers, or persons in

23   a position of trust with children?

24           Paragraph 18 again:  Do you, a family member, or

25   any close friend belong to any organizations or volunteer

1   groups whose mission is to prevent crime, assist law

2   enforcement, assist or support victims of crime, or address

3   past or present abuse of children by family, teachers, or

4   persons in a position of trust with children?

5            Question 19:  In this case, law enforcement

6   officers will be witnesses.  Would you tend to believe or

7   not believe the testimony of a law enforcement officer

8   simply because he or she is a law enforcement officer?

9            In other words, would you tend to give more or

10  lesser weight to the testimony of a law enforcement officer

11  than to the testimony of other witnesses?

12           Again, Question 19:  In this case, law enforcement

13  officers will be witnesses.  Would you tend to believe or

14  not believe the testimony of a law enforcement officer

15  simply because he or she is a law enforcement officer?

16           In other words, would you tend to give more or

17  lesser weight to the testimony of a law enforcement officer

18  than to the testimony of other witnesses?

19           Question 20:  The prosecution has the burden of

20  proof.  This means that the jury cannot return a guilty

21  verdict against the defendant unless the prosecution has

22  proven beyond a reasonable doubt that the defendant is

23  guilty of the crime charged.

24           Would you have any difficulty accepting and

25  applying this legal instruction?

1    Question 20 again:  The prosecution has the burden

2    of proof.  This means that the jury cannot return a guilty

3    verdict against the defendant unless the prosecution has

4    proven beyond a reasonable doubt that the defendant is

5    guilty of the crime charged.

6          Would you have any difficulty accepting or

7    applying this legal instruction?

8          Question 21:  The defendant in this case, just as

9    every defendant in a criminal trial, is presumed innocent,

10   and, therefore, has no obligation to testify or present any

11   evidence in the case.

12         Would you have any difficulty accepting and

13   applying this legal instruction?

14         Question 21 again:  The defendant in this case,

15   just as every defendant in a criminal trial, is presumed

16   innocent and, therefore, has no obligation to testify or

17   present any evidence in the case.

18         Would you have any difficulty accepting and

19   applying this legal instruction?

20         Question 22:  To reach a verdict on a particular

21   charge, every juror must agree on the verdict.  That is, any

22   verdict must be unanimous.  In deliberations you must

23   consider the opinions and points of your fellow jurors, but

24   you must also follow your own conscience and be personally

25   satisfied with any verdict.

1          Would you have any -- would you have difficulty

2    expressing your own opinions and thoughts about the case to

3    your fellow jurors?

4          Question 22 again:  To reach a verdict on a

5    particular charge, every juror must agree on the verdict.

6    That is, any verdict must be unanimous.  In deliberations

7    you must consider the opinions and points of your fellow

8    jurors, but you must also follow your own conscience and be

9    personally satisfied with any verdict.

10         Would you have difficulty expressing your own

11   opinions and thoughts about this case to your fellow jurors?

12         Question 23:  Do you believe that if a person

13   wants to view child pornography it is none of the

14   government's business and, therefore, the government should

15   not make illegal the possession of child pornography?

16         Question 23:  Do you believe that if a person

17   wants to view child pornography it is none of the

18   government's business and, therefore, the government should

19   not make illegal the possession of child pornography?

20         Question 24:  Would you have any difficulty

21   following an instruction from the Court that pornography

22   depicting minors under the age of 18 and sexually explicit

23   conduct is illegal and is not, as a matter of law, protected

24   by the First Amendment of the United States Constitution or

25   by any other provision of the Constitution?

1          Question 24 again:  Would you have any difficulty

2     following an instruction from the Court that pornography

3     depicting minors under the age of 18 and sexually explicit

4     conduct is illegal and is not, as a matter of law, protected

5     by the First Amendment to the United States Constitution or

6     by any other provision of the Constitution?

7          Question 25:  Have you, a family member, or close

8     friend ever been accused of sexual abuse, sexual assault,

9     sexual harassment, or any child pornography-related offense,

10    such as production, receipt, distribution, or possession of

11    child pornography?

12         Question 25 again:  Have you, a family member, or

13    a close friend ever been accused of sexual abuse, sexual

14    assault, sexual harassment, or any child pornography-related

15    offense, such as production, receipt, distribution, or

16    possession of child pornography?

17         Question 26:  Are you so uncomfortable with

18    hearing about, viewing, or discussing sexually explicit

19    materials, including purported child pornography, that you

20    could not serve as a fair and impartial juror in this case?

21         Question 26 again:  Are you so uncomfortable with

22    hearing about, viewing, or discussing sexually explicit

23    materials, including purported child pornography, that you

24    could not serve as a fair and impartial juror in this case?

25         Question 27:  This case involves an adult male who

1    allegedly directed the alleged child victim to take one or

2    more sexually explicit photographs of herself and give the

3    photographs to him.

4         Would you have difficulty following an instruction

5    from the Court that, even if a child took a sexually

6    explicit photograph of herself at an adult's suggestion,

7    that is not a defense to a charge of production of child

8    pornography?

9         Question 27 again:  This case involves an adult

10   male who allegedly directed the alleged child victim to take

11   one or more sexually explicit photographs of herself and

12   give the photographs to him.

13        Would you have any difficulty following an

14   instruction from the Court that, even if a child took a

15   sexually explicit photograph of herself at an adult's

16   suggestion, that is not a defense to a charge of production

17   of child pornography?

18        Question 28:  Would you have difficulty following

19   an instruction from the Court that a minor's consent is not

20   a defense to a charge of sexual enticement of a minor or

21   production of child pornography despite what a minor says or

22   what actions she takes?

23        Question 28 again:  Would you have difficulty

24   following an instruction from the Court that a minor's

25   consent is not a defense to a charge of sexual enticement of

1    a minor or production of child pornography despite what a

2    minor says or what actions she takes?

3              Question 29:  Do you have difficulty believing

4    that a child victim of sexual exploitation could be

5    persuaded, enticed, or coerced into engaging in sexually

6    explicit conduct without the use of force or threats?

7              Question 29 again:  Do you have difficulty

8    believing that a child victim of sexual exploitation could

9    be persuaded, enticed, or coerced into engaging in sexually

10   explicit conduct without the use of force or threats?

11             Question 30:  Have you, a family member, or a

12   close friend ever been the victim of sexual abuse?

13             Question 30 again:  Have you, a family member, or

14   a close friend ever been the victim of sexual abuse?

15             Question 31:  Have you ever had any experience

16   with a person who has been accused of or have engaged in

17   criminal sexual activity with a minor under 18 years of age

18   that might affect your ability to serve as a fair and

19   impartial juror in this case?

20             Question 31 again:  Have you ever had any

21   experience with a person who has been accused of or have

22   engaged in criminal sexual activity with a minor under 18

23   years of age that might affect your ability to serve as a

24   fair and impartial juror in this case?

25             Question 32:  You may hear testimony in this case

1    about the sexual abuse of a child by an adult male,

2    including having the child perform oral sex on the adult

3    male and submitting to oral sex by the adult male.

4              Would hearing that testimony make you so

5    uncomfortable that you could not serve as a fair and

6    impartial juror in this case?

7              Question 32 again:  You may hear testimony in this

8    case about the sexual abuse of a child by an adult male,

9    including having the child perform oral sex on the adult

10   male and submitting to oral sex by the adult male.

11             Would hearing that testimony make you so

12   uncomfortable that you could not serve as a fair and

13   impartial juror in this case?

14             Question 33:  You may hear testimony in this case

15   that the child did not immediately disclose her allegations

16   of sexual abuse.

17             Would hearing about a delayed disclosure of sexual

18   abuse affect your ability to serve as a fair and impartial

19   juror in this case?

20             Question 33 again:  You may hear testimony in this

21   case that the child did not immediately disclose her

22   allegations of sexual abuse.

23             Would hearing about a delayed disclosure of sexual

24   abuse affect your ability to serve as a fair and impartial

25   juror in this case?

1    Question 34:  Do you have any specialized training

2    or knowledge of computers, computer programming, social

3    media and social networking, cellular telephones and their

4    functionality, or computer or cellular telephone analysis or

5    forensics?

6    Question 34 again:  Do you have any specialized

7    training or knowledge of computers, computer programming,

8    social media and social networking, cellular telephones and

9    their functionality, or computer or cellular telephone

10   analysis or forensics?

11   Question 35:  Do you have children or

12   stepchildren?

13   Question 35 again:  Do you have children or

14   stepchildren?

15   Question 36:  You may hear allegations of domestic

16   violence in this case.

17       Do you have such strong feelings about domestic

18   violence that hearing about domestic violence would affect

19   your ability to serve as a fair and impartial juror in this

20   case?

21   Question 36 again:  You may hear allegations of

22   domestic violence in this case.

23       Do you have such strong feelings about domestic

24   violence that hearing about domestic violence would affect

25   your ability to serve as a fair and impartial juror in this

1   case?

2            Question 37:  Is there anything about the nature

3   of the case or about the parties involved that would make it

4   difficult for you to render a verdict based solely upon the

5   evidence presented?

6            Question 37 again:  Is there anything about the

7   nature of the case or about the parties involved that would

8   make it difficult for you to render a verdict based solely

9   upon the evidence presented?

10           The last question, Question 38:  Do you know of

11   any reason or has anything occurred to you during this

12   questioning that might in any way prevent you from following

13   my instructions on the law and being completely fair and

14   impartial as a juror in this case?

15           Question 38 again:  Do you know of any reason or

16   has anything occurred to you during this questioning that

17   might in any way prevent you from following my instructions

18   on the law and being completely fair and impartial as a

19   juror in this case?

20           Okay.  Ladies and gentlemen, that completes the

21   questions.  So you can now relax and await your turn to be

22   called up individually.  Those of you sitting in

23   Courtroom 16 just stay right where you are.  You may have a

24   wait of a couple of hours as we go through all of the

25   prospective jurors sitting in the Ceremonial Courtroom.  So

1       while you are sitting there, please feel free to use the

2       restrooms outside, read your books, and so on.

3              But you-all in Courtroom 16 are going to have the

4       longest wait -- I have to let you know now -- because,

5       first, I am going to finish speaking individually to the

6       prospective jurors in the Ceremonial Courtroom, and then I

7       will turn to the prospective jurors in Courtroom 16.

8              Those of you in the Ceremonial Courtroom with me,

9       you-all are going to be escorted out by my courtroom deputy

10      and seated outside in the order you are on the venire list.

11      Again, feel free to use the restrooms, read, sit

12      comfortably.

13             Let me just say that, at some point, only 32 of

14      you will be brought back into the Ceremonial Courtroom for

15      the final stages of the jury selection.  That means that

16      those of you -- both in Courtroom 16 and in the Ceremonial

17      Courtroom -- who are not going to be among those 32 will not

18      see me again.

19             So if you turn out to be -- I don't know which 32

20      those will be.  So for those of you who don't -- who are now

21      leaving and are not going to be among the 32 who turn out to

22      be qualified, I am going to say good-bye to you now.  You

23      are not going to see me.  I am going to thank you for your

24      service.  My courtroom deputy will tell you in a few hours

25      when we have the 32 jurors for the final selection process,

1    and the rest of you can be excused.

2            So, with that, I am going to ask my courtroom

3    deputy to take the people in the Ceremonial Courtroom and

4    re-seat you outside.

5            While that's going on, we will have a five-minute

6    recess for the rest of us, and for me to have a glass of

7    water.

8            (Whereupon, a recess was taken.)

9            THE COURT:  Is counsel ready to proceed?

10           MS. SEDKY:  Yes, Your Honor.

11           THE COURT:  Okay.  Good morning.

12           You can just hand your sheet to my courtroom

13   deputy, who will hand it up to me.

14           You can put your purse down on the chair behind

15   you, if you like.

16           THE PROSPECTIVE JUROR:  Great.

17           THE COURT:  Juror 892, how are you this morning?

18           THE PROSPECTIVE JUROR:  I am doing good.

19           How are you?

20           THE COURT:  I am good.

21           All right.  So I see that you have marked

22   Questions 9, 12, 17, and 19; and I am just going to review

23   those with you.

24           Question 9 is whether or not you have an urgent or

25   extremely important matter to attend to this week or next.

1          Could you explain that?

2          THE PROSPECTIVE JUROR:  I am 12 weeks pregnant

3     with my first child, and I have my first ultrasound on

4     Monday, next Monday.

5          THE COURT:  Okay.  And do you know what time your

6     appointment is?

7          THE PROSPECTIVE JUROR:  I can't remember.  I think

8     midday, but I can't remember offhand.  I can check on my

9     phone, if you want.

10         THE COURT:  Well, let's see.  Do you think it

11    would be possible for you to try and switch it to the first

12    thing in the morning before the trial or during the lunch

13    break?

14         THE PROSPECTIVE JUROR:  I am honestly not sure.  I

15    mean, we scheduled it a month out; so I don't know -- I

16    don't know.  I have never done this before, so I don't

17    really know.

18         THE COURT:  All right.  Very exciting.

19    Congratulations.

20         THE PROSPECTIVE JUROR:  Thanks.

21         THE COURT:  Could you just check your phone?

22         THE PROSPECTIVE JUROR:  Yes.

23         I have two appointments in a row; one is at 10:00,

24    one is at 11:00 a.m.

25         THE COURT:  I see.  Okay.

1          Okay.  You also marked Question 12:  Whether you,

2     a member of your family or a close friend has ever studied

3     the law or been employed in various legal environments.

4          Could you explain that?

5          THE PROSPECTIVE JUROR:  My sister is an attorney;

6     a lot of my close friends are attorneys.

7          THE COURT:  Okay.  And who is the first person you

8     said?

9          THE PROSPECTIVE JUROR:  My sister.

10          THE COURT:  Your sister.

11          And do you talk to your sister and your close

12     friends about their legal work?

13          THE PROSPECTIVE JUROR:  Yeah.  I mean, in broad

14     terms, I guess.

15          THE COURT:  Okay.  And do any of them work on

16     criminal matters?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  And is there anything about the

19     conversations that you have had with your friends or sister

20     about legal work in a general way that you think would have

21     any impact on your ability to be fair and impartial?

22          THE PROSPECTIVE JUROR:  No, I don't think so.

23          THE COURT:  Okay.  And then you also said that --

24     you marked Question 17:  Whether you, a member of your

25     family, or a close friend has ever been arrested, convicted

1   of a crime, been a victim, or a witness to a crime or

2   testified in court.  What about that?

3          THE PROSPECTIVE JUROR:  I got arrested for

4   underage drinking when I was 17, 18.

5          THE COURT:  For underage drinking?

6          THE PROSPECTIVE JUROR:  Um-hum.

7          THE COURT:  And what happened with that case?

8          THE PROSPECTIVE JUROR:  I don't know.  I think

9   there was a fee; it ended up being expunged because I was a

10  minor.  I don't know.  Nothing really.

11         THE COURT:  And is there anything about that

12  experience that you think would affect your ability to be

13  fair and impartial here?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Okay.  Do you think you were treated

16  fairly in that situation?

17         THE PROSPECTIVE JUROR:  Yeah, I think so.

18         THE COURT:  Okay.  Question 19 asked about, you

19  know, whether -- the fact that there will be law enforcement

20  witnesses in the case and whether you would tend to believe

21  or not to believe the testimony of a law enforcement officer

22  simply because the person is a law enforcement officer.

23         THE PROSPECTIVE JUROR:  I think I would probably

24  assume they were telling the truth just because they are

25  supposed to serve the public.  But I would -- know they lie,

1    too, so I don't know.

2              THE COURT:  Right.

3              So would you tend to give more or less weight to

4    the testimony of a law enforcement officer than to the

5    witnesses -- to other witnesses who are not law enforcement

6    officer?

7              THE PROSPECTIVE JUROR:  I don't think more weight;

8    but I think that I think that they were telling the truth.

9              THE COURT:  Well, you know, I am going to give you

10   instructions on the law about different ways to evaluate

11   testimony; and I am going to tell you to apply those

12   criteria the same to any witness who testifies in front of

13   you.

14             THE PROSPECTIVE JUROR:  Okay.

15             THE COURT:  Are you going to be able to follow

16   that instruction?

17             THE PROSPECTIVE JUROR:  I think so.

18             THE COURT:  And what do you do for a living, Juror

19   No. 892?

20             THE PROSPECTIVE JUROR:  I am a patent examiner at

21   the U.S. Patent and Trademark Office.

22             THE COURT:  And how long have you worked there?

23             THE PROSPECTIVE JUROR:  Like 13 years.

24             THE COURT:  All right.  Okay.  Just give me a

25   second.

1              (A bench conference was held as follows:)

2          MS. HARDEN:  Good morning, Your Honor.

3              I move to strike Juror 19 for cause.  I don't

4     think she can be rehabilitated from the fact that she thinks

5     police officers start out by telling the truth.  I

6     understand she said they also lie; but she said twice, I

7     think, that she has reason to believe they're telling the

8     truth.  So I would strike her for cause.

9          THE COURT:  I will hear from the government.

10         MS. BURRELL:  Your Honor, we would not move to

11    strike this juror.  Once the Court inquired further as to

12    whether she would the follow instructions on the law and

13    evaluate testimony the same as any other witnesses, she said

14    that she could.

15         THE COURT:  Okay.  I am not going to strike her

16    for cause.

17             Do you have any other follow-up questions?

18         MS. HARDEN:  Yes.  Yes, Your Honor.  I couldn't

19    hear her.

20             She said something about somebody being a lawyer,

21    but she said also her sister is a lawyer.  Who else does she

22    have in her family that is in the law?  I couldn't hear her.

23             I would just ask, is the Court inclined to --

24    strike that.  I would ask the follow-up question of whether

25    she's involved in law.

```
 1              THE COURT:  Who else?  She said friends.
 2              MS. HARDEN:  Okay.  With respect to this issue
 3      about police officers, Your Honor, can the Court ask a
 4      follow-up question as it relates to the juror saying she
 5      thinks they're telling the truth?
 6              The Court would give an instruction.  What does
 7      she mean when she thinks they're starting out, quote,
 8      Telling the truth?  I would ask the Court to follow up in
 9      that way.
10              THE COURT:  Could you put that into a question?
11              MS. HARDEN:  Could you tell us how -- what you
12      mean when you say you tend to believe that police officers
13      are telling the truth -- start out telling the truth?
14              THE COURT:  Okay.  I am just going to ask her some
15      follow up.
16              MS. HARDEN:  Thank you.
17              (Whereupon, the bench conference concludes.)
18              THE COURT:  Juror 892, you said that your
19      sister -- and you have some friends who were lawyers?
20              THE PROSPECTIVE JUROR:  Um-hmm.
21              THE COURT:  Are the friends who are lawyers close
22      friends?
23              THE PROSPECTIVE JUROR:  Yes.
24              THE COURT:  And how many?
25              THE PROSPECTIVE JUROR:  Probably close to ten.
```

1          THE COURT:  And are some of those working at the

2     patent office where you work?

3          THE PROSPECTIVE JUROR:  Actually, they're not, no.

4     Not my friends, no.

5          THE COURT:  Okay.  All right.  But none of them do

6     criminal work?

7          THE PROSPECTIVE JUROR:  Right.

8          THE COURT:  All right.  And in terms of your

9     response that you might tend to give more weight to a law

10    enforcement officer's testimony, would that -- you also said

11    that you would also follow my instructions to weigh each

12    witness's testimony fairly?

13         THE PROSPECTIVE JUROR:  Right.  Well, originally

14    it gives them more weight; but I would assume they're

15    telling the truth because they're supposed to be, I guess.

16         THE COURT:  Would you assume that any witness

17    testifying would tell the truth until it was established in

18    your mind that perhaps they were not?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  So, in some ways, you would treat the

21    law enforcement officer the same way that you would treat

22    any other witness's testimony?

23         THE PROSPECTIVE JUROR:  Right.

24         THE COURT:  All right.  Thank you.

25         (A bench conference was held as follows:)

```
 1                    MS. SEDKY:  She has two --
 2                    THE COURT:  She has two doctor's appointments.
 3                    MS. SEDKY:  What should we do about that?  I am a
 4         little worried she's going to -- it's her first ultrasound.
 5                    THE COURT:  I think I'll follow up and see how
 6         soon she can get here if she's selected for the jury.  It
 7         means that we might have to start a little bit later on
 8         Monday.  I don't know what other alternative we have, but I
 9         am not going to strike somebody because --
10                    MS. SEDKY:  I understand.  Would you be willing to
11         tell her that we're trying to accommodate her so she's not
12         angry and hostile?
13                    THE COURT:  Yes.  I will do that.  Thank you.
14                    (Whereupon, the bench conference concludes.)
15                    THE COURT:  So if you are selected for the jury --
16         and I know you have these very important medical exams on
17         Monday morning --
18                    THE PROSPECTIVE JUROR:  Um-hmm.
19                    THE COURT:  -- we are not going to be sitting on
20         Friday.  So would it be possible -- and I sometimes make
21         phone calls -- to see if they can fit you in on Friday?
22                    THE PROSPECTIVE JUROR:  Um, I --
23                    THE COURT:  Would you be willing to do that?
24                    THE PROSPECTIVE JUROR:  I would -- that would be
25         really nice, and I would appreciate it.  The only thing is I
```

1    don't know what my husband's work schedule is either, and if

2    he will be able to be there.

3              THE COURT:  Of course.

4              THE PROSPECTIVE JUROR:  So he took off Monday to

5    be able to go with me.

6              THE COURT:  Okay.  So I think -- because we are

7    not sitting on Friday, one -- if you are selected to be on

8    the jury, one thing to do is for you to explain the

9    situation to your doctor's offices to have them rearrange it

10   for a Friday.  And I will be happy to make a phone call as

11   to the fact that we need you.

12             THE PROSPECTIVE JUROR:  Okay.

13             THE COURT:  And -- otherwise we can -- if you are

14   selected for the jury, we can start a little late on Monday

15   to accommodate your doctor's appointment.

16             THE PROSPECTIVE JUROR:  Okay.  Yeah.  That would

17   be great.  Yeah.

18             THE COURT:  All right.  You can resume your seat

19   outside.  Thank you.

20             THE PROSPECTIVE JUROR:  Thank you.

21             (Whereupon, the prospective juror was excused.

22   Another prospective juror enters.)

23             THE COURT:  Juror No. 051, please come stand at

24   the lectern that is right there.  And feel free to put your

25   papers down on the chair behind you.

1           Juror No. 051, how are you today?

2           THE PROSPECTIVE JUROR:  Okay.

3           THE COURT:  Good.

4           So I see you have marked Question 12, which asked

5    whether you, a member of your family, or a close friend have

6    ever studied law or been employed by a lawyer or a law firm

7    or in a legal environment.

8           Could you explain your answer to me?

9           THE PROSPECTIVE JUROR:  One of my best friends and

10   college roommate and frat brother, who was a lawyer -- he is

11   with the Merit System Protection Board.  I think he is now

12   with education -- the Department of Education.

13          THE COURT:  Okay.

14          THE PROSPECTIVE JUROR:  And he was with the

15   military -- started with the military, and ended with MP --

16   MSPB, and then education.

17          THE COURT:  Okay.  And is this one person who was

18   your best friend, your frat brother, and roommate --

19          THE PROSPECTIVE JUROR:  Yes.  Just one person.

20          THE COURT:  Okay.  It's one person.

21          Do you talk to your friend about his legal work?

22          THE PROSPECTIVE JUROR:  Not too often.  Not -- not

23   often.

24          THE COURT:  And to the best of your knowledge,

25   does he do any criminal work?

1          THE PROSPECTIVE JUROR:  Not that I am aware of.  I

2     don't think so.

3          THE COURT:  And is there anything about the fact

4     that you have this good friend who is a lawyer and that you

5     sometimes may talk to him a little bit about his work -- do

6     you think that would affect your ability to be fair and

7     impartial in this case?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Okay.  And, Juror No. 051, what do you

10     do for a living?

11          THE PROSPECTIVE JUROR:  Community planner for the

12     Department of Transportation.

13          THE COURT:  For the Department of Transportation.

14     And how long have you worked for the Department of

15     Transportation?

16          THE PROSPECTIVE JUROR:  23 years.

17          THE COURT:  23 years.  Okay.  Thank you.

18          Hold on one second while I talk to counsel.

19          (A bench conference was held as follows:)

20          MS. HARDEN:  Can you ask him what fraternity, Your

21     Honor?

22          THE COURT:  What?

23          MS. HARDEN:  Can you ask him what fraternity, Your

24     Honor?

25          THE COURT:  I will.

1          Any follow up?

2          MS. BURRELL:  No follow up from the government.

3          (Whereupon, the bench conference concludes.)

4          THE COURT:  What fraternity were you in?

5          THE PROSPECTIVE JUROR:  Alpha Phi Alpha.

6          THE COURT:  Could you say that again?

7          THE PROSPECTIVE JUROR:  Alpha Phi Alpha.

8          THE COURT:  Alpha Phi Alpha.  Okay.

9          (A bench conference was held as follows:)

10          THE COURT:  Any follow up?

11          MS. HARDEN:  No.

12          MS. BURRELL:  No.

13          (Whereupon, the bench conference concludes.)

14          THE COURT:  Thank you, Juror No. 051.

15          THE PROSPECTIVE JUROR:  Thank you.

16          THE COURT:  You may resume your seat outside.

17  Thank you.

18          (Whereupon, the prospective juror was excused.

19  Another prospective juror enters.)

20          THE COURT:  Please come stand at the lectern

21  that's right there, Juror No. 696.  And feel free to put

22  your purse down in the chair behind you if you feel more

23  comfortable.

24          How are you this morning?

25          THE PROSPECTIVE JUROR:  Doing well.

1              How are you?

2              THE COURT:  I'm good.

3              All right.  I see, Juror No. 696, that you have

4    marked Questions 9, 12, 13, 17, 20, 21, 25, 26 -- whoa --

5    30, 31, 32, 33, 36, and 35; so I am just going to review

6    those with you.

7              Starting with Question 9, which asks whether

8    service on this jury this week and next would pose a

9    hardship to you in some way.

10             Could you explain that?

11             THE PROSPECTIVE JUROR:  Sure.  So I serve on a

12   board for a national leadership organization, and their

13   annual conference is in a week.  And I --

14             THE COURT:  In one week, meaning next week?

15             THE PROSPECTIVE JUROR:  Next week.  I am scheduled

16   to moderate a panel for their kind of opening conference of

17   several thousand people.  So we have been planning this for

18   several months; and I don't know that they could have a

19   replacement in time for me to do that.  So --

20             THE COURT:  And would that speech -- moderating

21   the panel, would that occur on Monday?

22             THE PROSPECTIVE JUROR:  It occurs on Wednesday.

23             THE COURT:  Wednesday.  Okay.

24             THE PROSPECTIVE JUROR:  But prior to that we have

25   planning conversations scheduled with me -- because I'm

1    moderating a panel of four college students.  And so this

2    week there is a plan for me to be talking about the

3    questions I'll ask next week.

4              THE COURT:  And what is the national conference

5    called?

6              THE PROSPECTIVE JUROR:  EDUCAUSE.

7              THE COURT:  Say that again.

8              THE PROSPECTIVE JUROR:  EDUCAUSE.  So it's

9    E-D-U-C-A-U-S-E.  It's all in Philadelphia, by the way.

10             THE COURT:  And it's in Philadelphia?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And were you planning on going down

13   there, to Philadelphia, this weekend?

14             THE PROSPECTIVE JUROR:  On Monday.  So I serve on

15   the EDUCAUSE board of directors also.  So Monday is a board

16   meeting; Tuesday is the conference; Wednesday is the

17   meeting.

18             THE COURT:  All right.  You also said, in response

19   to Question 12, that you, a member of your family, or a

20   close friend had studied law or had been employed in the

21   legal environment.

22             Could you explain that?

23             THE PROSPECTIVE JUROR:  Sure.  I have a twin

24   sister, and she is an attorney.

25             THE COURT:  Okay.  And where does she work?

1              THE PROSPECTIVE JUROR:  She works for White &

2      Case, which is a law firm in Tampa.

3              THE COURT:  We all know White & Case.

4              But she's in Tampa, the Tampa office?

5              THE PROSPECTIVE JUROR:  Yes.  Yes.

6              THE COURT:  And does she do any criminal work?

7              THE PROSPECTIVE JUROR:  No.  She is a conflicts

8      attorney.  So she works -- does conflicts across multiple

9      types of litigation.

10             THE COURT:  I see.  And do you talk to her about

11     her legal work?

12             THE PROSPECTIVE JUROR:  Oh, all the time -- well,

13     not about the nature of the cases.  But she oftentimes tells

14     me about, you know, what it's like to be an attorney.  She

15     just took this position two months ago.  But, before that,

16     she spent about 12 years as a clerk for the reemployment

17     appeals commission -- Reemployment Assistance Appeals

18     Commission in Florida.  So those who have been denied

19     unemployment claims, she would be over the clerk for that.

20     Before that, she was hearing the cases for those who had

21     been denied on a claim.

22             THE COURT:  I see.

23             All right.  Okay.  Just a second, let me just talk

24     to the lawyers.

25             (A bench conference was held as follows:)

```
 1              THE COURT:  Okay.  So I am not sure that this case
 2      is going to be over by Monday, so I don't know how much
 3      longer to ask her about other questions.  But do I have a
 4      motion just based on her obligations next week?
 5              MS. HARDEN:  I will move to strike her, Your
 6      Honor.
 7              MS. BURRELL:  We would agree.
 8              THE COURT:  Okay.  I am just going to
 9      short-circuit this, and excuse her for cause.
10              MS. HARDEN:  I'm sure the Court doesn't want to
11      long-circuit her answers.
12              THE COURT:  Excuse me?  I didn't hear you.
13              MS. HARDEN:  Nothing.  It was a joke to lighten
14      the mood.
15              I move to excuse her.
16              THE COURT:  Okay.
17              (Whereupon, the bench conference concludes.)
18              THE COURT:  Okay.  Juror Number --
19              THE PROSPECTIVE JUROR:  Yeah -- I was thinking
20      about the questions.  When you asked me if we talked about
21      her job, I did not mean to imply that she was giving me the
22      details of any of her cases or anything like that.
23              THE COURT:  I understood.  I understood.
24              THE PROSPECTIVE JUROR:  Okay.
25              THE COURT:  Okay.  But, Juror No. 696, given your
```

1    obligations next week and your leadership role in this

2    organization at the national conference, I am going to

3    excuse you.

4              THE PROSPECTIVE JUROR:  Okay.

5              THE COURT:  I think this case may very well -- at

6    the least have jury deliberations next week; so I don't want

7    you preoccupied with having to struggle and being here.

8              THE PROSPECTIVE JUROR:  Yeah.  I know that they

9    probably -- would definitely say thank you.  We have been

10   planning it for a while, so I really appreciate that.

11             THE COURT:  All right.  You are excused, and you

12   may leave the courthouse.

13             THE PROSPECTIVE JUROR:  All right.  Thank you.

14             THE COURT:  Thank you.

15             MS. HARDEN:  Your Honor, I just said, I'm sure the

16   Court didn't want to long-circuit her answers.

17             THE COURT:  She did have a lot.

18             MS. HARDEN:  Yes.  Right.  Almost all --

19             THE COURT:  I'd rather not get into all the

20   personal details.

21             (Whereupon, the prospective juror was excused.

22   Another prospective juror enters.)

23             THE COURT:  All right.  Good morning, Juror

24   No. 819.  If you could just come stand at the lectern.

25   Right here.  And put your bag down, get comfortable.

1              How are you this morning, Juror 819?

2              THE PROSPECTIVE JUROR:  Good.  Thanks.

3              THE COURT:  Good.

4              I see you have marked Questions 17 and 30 --

5              THE PROSPECTIVE JUROR:  Yeah.

6              THE COURT:  -- so I'm just going to review those

7        with you.

8              Question 17 asks whether you, a member of your

9        family, or a close friend have ever been arrested, convicted

10       of a crime, been a victim or a witness to a crime,

11       et cetera.

12             So could you explain your answer to 17?

13             THE PROSPECTIVE JUROR:  It was about 12 years ago.

14       I was a victim of a simple assault on New Year's Eve.  I

15       had -- my cell phone was knocked down, and cell phone

16       grabbed.

17             THE COURT:  Okay.  And how long ago was that?

18             THE PROSPECTIVE JUROR:  Over ten years ago.

19             THE COURT:  Did you have an interaction with the

20       police as a result of that incident?

21             THE PROSPECTIVE JUROR:  Yes.  Yes.

22             THE COURT:  And was there any resolution to it?

23             THE PROSPECTIVE JUROR:  It was a -- just a -- he

24       grabbed onto me on New Year's Eve.  It was a -- it was a

25       very busy night.  I talked to a police officer.  And they

1    asked me if -- they had some other kids that they had

2    arrested, they asked me if it looked like one of them.  I

3    said I didn't know, and that was the end of it.

4              THE COURT:  I see.

5              So you never got your cell phone back?

6              THE PROSPECTIVE JUROR:  No.  No.

7              THE COURT:  Okay.  And you never were able to

8    identify --

9              THE PROSPECTIVE JUROR:  No.  That's it.

10             THE COURT:  And was there anything about your

11   interaction with the police, or anything about that incident

12   that you think would make it difficult for you to be fair

13   and impartial at all?

14             THE PROSPECTIVE JUROR:  No.  Not at all.  No.

15             THE COURT:  Okay.  And did that occur in

16   Washington, D.C.?

17             THE PROSPECTIVE JUROR:  Yes, it did.

18             THE COURT:  You also marked Question 30, which

19   asked whether you, a family member, or a close friend has

20   ever been a victim of sexual abuse.

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  And could you explain that?

23             THE PROSPECTIVE JUROR:  I have several friends who

24   have been victims of sexual abuse as children.  One of them

25   who stands out was my closest friend as a child; he didn't

1    confide in me until many years later.  And this is also

2    quite a long time ago that it happened, but it made an

3    impression on me.  And you asked the question, so that's the

4    answer.

5              THE COURT:  I see.

6              So one close friend, and other friends of yours?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Okay.  How many other friends?

9              THE PROSPECTIVE JUROR:  My first partner.  I can't

10   think of anyone else in particular right now, but there have

11   been others.  It's not --

12             THE COURT:  Okay.  And having talked to these

13   friends about what happened to them in the past, do you

14   think that that would have an impact on your ability to

15   listen carefully to the evidence --

16             THE PROSPECTIVE JUROR:  I will --

17             THE COURT:  -- in this case based on the evidence

18   presented here?

19             THE PROSPECTIVE JUROR:  I don't think so.  But

20   yet, again, the question was asked, and that's the answer.

21             THE COURT:  Okay.  Let me just talk to the

22   lawyers.  Let me -- what do you do for a living?

23             THE PROSPECTIVE JUROR:  I am an architect.

24             THE COURT:  Your office is in Washington, D.C.?

25             THE PROSPECTIVE JUROR:  My office is in Washington

```
 1    D.C.  My -- it's in my basement.  I am self-employed.

 2              THE COURT:  I see.  Okay.

 3              (A bench conference was held as follows:)

 4              THE COURT:  Follow up?

 5              MS. HARDEN:  Yes, Your Honor.

 6              Can the Court ask:  Do you tend to believe that

 7    someone was sexually abused because they have been

 8    charged -- or charges have been brought to trial?

 9              THE COURT:  Tend to believe whether someone is

10    guilty just because they have been charged?

11              MS. HARDEN:  Yes.  Guilty of sexual abuse based on

12    that question that he answered, yes, Your Honor.

13              THE COURT:  Follow up from the government?

14              MS. BURRELL:  If Your Honor asked that question,

15    the government would ask that the Court follow it up with:

16    If you were instructed that a defendant is to be presumed

17    innocent until proven guilty beyond a reasonable doubt,

18    would you be able to follow that instruction in this case?

19              THE COURT:  Okay.  Thank you.

20              (Whereupon, the bench conference concludes.)

21              THE COURT:  All right.  Juror No. 819, do you have

22    any tendency, do you think, to believe that simply because

23    somebody is charged with sexual abuse that they are actually

24    guilty as charged?

25              THE PROSPECTIVE JUROR:  I -- I don't think so
```

95

```
1    because that's why we're here; the evidence is going to be

2    presented one way or the other.  So --

3                 THE COURT:  And do you understand that everybody

4    charged with a crime is presumed to be innocent --

5                 THE PROSPECTIVE JUROR:  Right.  Yes.

6                 THE COURT:  -- until the government proves guilt

7    beyond a reasonable doubt?

8                 THE PROSPECTIVE JUROR:  Yes.  Yes.

9                 THE COURT:  All right.

10                (A bench conference was held as follows:)

11                MS. HARDEN:  No follow up.

12                MS. BURRELL:  Nothing from the government.

13                (Whereupon, the bench conference concludes.)

14                THE COURT:  All right.  Juror 819, if you could

15   just resume your seat.  Thank you.

16                (Whereupon, the prospective juror was excused.

17   Another prospective juror enters.)

18                THE COURT:  Juror 683, if you could stand at the

19   lectern, and feel free to put your bag down so you'll be

20   more comfortable.

21                I see that you have checked Nos. 8, 13, and 19, so

22   I am just going to review those with you.

23                THE PROSPECTIVE JUROR:  Okay.

24                THE COURT:  How are you doing this morning?

25                THE PROSPECTIVE JUROR:  Good.  How are you?
```

```
 1                    THE COURT:  I am good.

 2                    Okay.  So Question 13 asks whether you, a member

 3        of your family, or a close friend have been employed by a

 4        local, state, or federal law enforcement agency or private

 5        security firm.

 6                    So could you explain that?

 7                    THE PROSPECTIVE JUROR:  Yeah, sure.

 8                    So I currently work at the Department of State in

 9        the Intelligence Bureau.  So that is kind of part of the

10        intelligence community which kind of sometimes works with

11        law enforcement, so I wanted to make sure to flag that.  And

12        then, before that, I did do some work for the bureau that

13        focuses on international law and narcotics.

14                    And I also was previously involved in UNICEF in a

15        volunteer capacity, which is, like, an international

16        organization that focuses on children and also advocating

17        against human trafficking, which sometimes touches on sexual

18        assault and abuse of minors.  So I just wanted to...

19                    THE COURT:  And at UNICEF, did you talk to

20        children or --

21                    THE PROSPECTIVE JUROR:  No.  I was more involved

22        in the advocacy side and kind of speaking with members of

23        Congress to advocate for appropriations for their efforts.

24                    THE COURT:  I see.

25                    And in connection with your work for the
```

1    Intelligence Bureau, do you have opportunities to look at

2    evidence and make -- draw conclusions from evidence?

3              THE PROSPECTIVE JUROR:  Not really, no.

4              THE COURT:  What is your role there?

5              THE PROSPECTIVE JUROR:  I am a cartographer.  So I

6    use data from various sources to focus on international

7    issues only, nothing domestic.  And I create maps and

8    infographics and other graphics that take, like, the source

9    intelligence and turn it into information for policymakers.

10             THE COURT:  In the form of maps?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Interesting.

13             Okay.  And is there anything that you can think of

14   about your work making maps or previously in the

15   international narcotics arena or at UNICEF that you think

16   would have an impact on your ability to be fair and

17   impartial in this case?

18             THE PROSPECTIVE JUROR:  I don't think so.

19             THE COURT:  Okay.  Question 19, which you also

20   checked, talks about law enforcement officers being

21   witnesses and whether or not you would tend to believe or

22   not believe the testimony of a law enforcement officer

23   simply because the person is a law enforcement officer.

24             Could you explain that?

25             THE PROSPECTIVE JUROR:  Yeah.  So in my personal

1     time, I do participate in organizations that ask -- call for

2     criminal justice reform, such as the Stop Police Terror

3     Project and the Defund MPD project, that calls for reform or

4     abolition of police -- the system in the current form.  So I

5     feel like that tends to -- a lot of those organizations in

6     that -- were involved calling out cops who are performing

7     their duties badly or abusive in the system.  So I just --

8     sometimes I think that gives me a bias against -- when I see

9     these articles and things like that against law enforcement

10    officers, but -- yeah.

11              THE COURT:  Well, do you think -- having a

12    healthy -- you know, being skeptical about police officers,

13    would you, in this environment, look at and evaluate the

14    testimony of a police officer the same as you would any

15    other witness and, you know, ascertain whether or not there

16    are things corroborating what they're saying as in all the

17    other ways in your daily life you evaluate the credibility

18    of another person -- do you think that you could do that

19    fairly in this case?

20              THE PROSPECTIVE JUROR:  Yeah, I think I can.

21              THE COURT:  And whether it's a law enforcement

22    officer or somebody who has no connection to law

23    enforcement, do you think that you will evaluate the

24    witness's testimony using the same criteria, whether it's a

25    law enforcement officer or not?

```
1                    THE PROSPECTIVE JUROR:  Yes, I do.

2                    THE COURT:  Okay.  And how long have you worked

3        with the Department of State?

4                    THE PROSPECTIVE JUROR:  Two and a half years.

5                    THE COURT:  Two and a half years.  All right.

6        Thank you.

7                    (A bench conference was held as follows:).

8                    THE COURT:  Any follow up, Ms. Harden?

9                    MS. HARDEN:  Yes, Your Honor.

10                   I don't have any questions.

11                   THE COURT:  And does the government?

12                   MS. BURRELL:  Your Honor, we would move to strike

13       her given that she stated that she has a bias against police

14       officers.

15                   MS. HARDEN:  Your Honor, she didn't say -- she

16       said:  I am a member of some organizations, and that tends

17       to give me a bias against police officers.  Then the Court

18       followed up with a string of questions that she answered

19       appropriately.  So I object to the motion to strike her.

20                   THE COURT:  Do you want to say anything else

21       because I am going to deny the motion to strike otherwise?

22                   MS. BURRELL:  Understood.

23                   THE COURT:  It's denied.

24                   (Whereupon, the bench conference concludes.)

25                   THE COURT:  All right.  Thank you, Juror 683.  You
```

```
1          can resume your seat outside.

2                    THE PROSPECTIVE JUROR:  Thank you.

3                    (Whereupon, the prospective juror was excused.

4          Another prospective juror enters.)

5                    THE COURT:  Yes.  Good morning, Juror 086.

6          How are you this morning?

7                    THE PROSPECTIVE JUROR:  Pretty good.  And you?

8                    THE COURT:  I'm good.

9                    All right.  So, Juror 86, I see you have marked

10         Questions 13 and 34, so I am just going to review those with

11         you.

12                   Question 13 asks whether you, a member of your

13         family, or a close friend has ever been employed by federal

14         or local law enforcement.

15                   Could you explain that?

16                   THE PROSPECTIVE JUROR:  Yes.  A family friend who

17         is now retired, but growing up was a member of -- an officer

18         for the Phoenix Police Department.

19                   THE COURT:  Phoenix, okay.

20                   Is that where you grew up?

21                   THE PROSPECTIVE JUROR:  Yes.

22                   THE COURT:  Okay.  And did you spend a lot of time

23         talking to your family friend about his police work?

24                   THE PROSPECTIVE JUROR:  Not much.

25                   THE COURT:  Not much, okay.
```

```
 1                And is there anything about the fact that you have
 2     a family friend who was a police officer that you think
 3     would make you believe a police officer more than any other
 4     witness, or would you evaluate witnesses the same whether
 5     they are a law enforcement officer or not?
 6                THE PROSPECTIVE JUROR:  I believe the same no
 7     matter what.
 8                THE COURT:  Okay.  And then you also marked
 9     Question 34 --
10                THE PROSPECTIVE JUROR:  Yes.
11                THE COURT:  -- which asked whether you have
12     specialized training or knowledge of computers, computer
13     programming, social media, social networking, cell phones,
14     et cetera.
15                Could you explain that?
16                THE PROSPECTIVE JUROR:  I am employed as a data
17     engineer at a social media site -- company.  So --
18                THE COURT:  So you cover a lot of those.
19                THE PROSPECTIVE JUROR:  Yes.
20                THE COURT:  So a data engineer, is that what you
21     said?
22                THE PROSPECTIVE JUROR:  Yes.
23                THE COURT:  At a social media, social
24     networking --
25                THE PROSPECTIVE JUROR:  Yeah.  Social media,
```

1       Inspire.com social media site.

2                       THE COURT:  Okay.  How long have you done that?

3                       THE PROSPECTIVE JUROR:  I have been employed with

4       the company for three years.  Only since January have I been

5       a data engineer; I was a back-end developer before that.

6                       THE COURT:  I see.

7                       Okay.  And in your work, do you do any kind of

8       forensic work when -- meaning, if there is a cybersecurity

9       breach or anything like that --

10                      THE PROSPECTIVE JUROR:  Yes.

11                      THE COURT:  -- do you do forensic work where you

12      work with law enforcement officers?

13                      THE PROSPECTIVE JUROR:  No.  Not with law

14      enforcement officers.

15                      THE COURT:  Okay.  So what kind of forensic work

16      would you say that you do?

17                      THE PROSPECTIVE JUROR:  Looking through logs.  If

18      there is an issue, like a bug, or something like that,

19      trying to reproduce in a tech environment, that type of

20      thing.

21                      THE COURT:  Yeah.  And do you think that there

22      is -- but do you work with cellular telephones or do any

23      kind of computer forensics?

24                      THE PROSPECTIVE JUROR:  Not with cellular, with

25      the mobile ops or anything like that.

1          What do you mean by computer forensics, just so

2     I understand?

3          THE COURT:  Looking -- doing forensic work on

4     computers.

5          THE PROSPECTIVE JUROR:  I have been trying to find

6     out --

7          THE COURT:  What happened?  Why?  And so on.

8          THE PROSPECTIVE JUROR:  Yes.  All -- all the time.

9          THE COURT:  And who did it?

10         THE PROSPECTIVE JUROR:  Yes.  All the time.

11         THE COURT:  All the time.  All right.

12         And do you think there is anything about your

13    special expertise and your knowledge that you think would

14    make it difficult for you to listen and accept the evidence

15    presented in this case that may involve some computer and

16    cellular forensics?

17         THE PROSPECTIVE JUROR:  I don't think so.  I'm

18    not -- I can't imagine why.

19         THE COURT:  Okay.

20         (A bench conference was held as follows:)

21         THE COURT:  Any follow up?

22         MS. HARDEN:  Yes.  Can the Court ask -- can the

23    Court ask him what social media site?

24         MS. SEDKY:  He said Inspire.com.

25         MS. HARDEN:  Okay.  What is Inspire.com?

```
1              THE COURT:  Okay.  I will ask.

2              MS. SEDKY:  I think I heard that right.

3              THE COURT:  Any follow up?

4              MS. BURRELL:  Nothing from the government.

5              MS. HARDEN:  Thank you.

6              (Whereupon, the bench conference concludes.)

7              THE COURT:  Could you just remind me, what was the

8     site -- the social media site that you are working on?

9              THE PROSPECTIVE JUROR:  Inspire --

10             THE COURT:  Inspire?

11             THE PROSPECTIVE JUROR:  -- dot com.

12             THE COURT:  Is it Inspire.com?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  And what exactly does that site do?

15             THE PROSPECTIVE JUROR:  We are a social media site

16    around health-related -- people who are caregivers -- of

17    various health issues come together and find their groups,

18    and whatnot, and post their medical experiences, and support

19    each other.

20             THE COURT:  I see.  Okay.  And it's people who are

21    ill or --

22             THE PROSPECTIVE JUROR:  Or caregivers of people

23    who are ill.  There are some that are more -- not

24    necessarily ill.  There's patient groups, that type of

25    thing; but the vast majority is people with health issues.
```

1          THE COURT:  I see.  Okay.

2          Thank you, Juror No. 086.  You can step outside

3     and resume your seat.

4          THE PROSPECTIVE JUROR:  Thank you.

5          (Whereupon, the prospective juror was excused.

6     Another prospective juror enters.)

7          THE COURT:  Good morning, Juror 936.

8          If you could just stand at the lectern.  Feel free

9     to put your bag down on the chair so you'll be able to stand

10    more comfortably.  Oh, my goodness.  I just saw you have

11    something on your foot.  Is it more comfortable for you to

12    sit down?

13         THE PROSPECTIVE JUROR:  I think I am okay.

14         THE COURT:  Are you okay?  Well, just let me know.

15    Because I can give you a microphone and you can sit in the

16    chair.

17         THE PROSPECTIVE JUROR:  Okay.

18         THE COURT:  Okay.  You have marked Questions 9,

19    10, 12, 13, 17, 30, and 35, so I am just going to review

20    those with you in order; starting with Question 9, which

21    asks whether service on the jury this week and next would

22    prove a hardship to you.

23         Could you explain that?

24         THE PROSPECTIVE JUROR:  So I have two doctor's

25    appointments that I have scheduled, one for Thursday morning

1    and one for Monday morning.  The one Thursday morning is for

2    my foot, which is a recent injury.

3              THE COURT:  And, for the record, let me just

4    reflect that he has a bandaged foot.

5              THE PROSPECTIVE JUROR:  Yes.  My left foot is --

6    has an open wound.

7              And then I am kind of leading into the next

8    question, which was about visual issues.  I have a large

9    bleed in my left eye.  Currently, I am kind of looking

10   through a film; so I didn't know the answer to the question

11   of whether that would impair my ability to see exhibits or

12   anything.

13             THE COURT:  I see.  And is that something that

14   causes you discomfort?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  I see.  Okay.  And does your foot

17   cause you discomfort?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  And your appointment on Monday, is

20   that also for your foot?

21             THE PROSPECTIVE JUROR:  No.  That's for my eye --

22             THE COURT:  I see.

23             THE PROSPECTIVE JUROR:  -- with my

24   ophthalmologist.

25             THE COURT:  Okay.  All right.  Give me a second to

1    talk to the lawyers.

2              (A bench conference was held as follows:)

3              THE COURT:  Okay.  So he probably is going to need

4    to go to the doctor.

5              MS. HARDEN:  Yes.  I move to strike him for cause.

6    I don't think -- it's not appropriate to have him coming

7    back and forth.

8              THE COURT:  Yes.  Is that okay?  What is the

9    government's view?

10             MS. BURRELL:  No objection from the government.

11             THE COURT:  Okay.  I am going to grant that motion

12   to strike him for cause in order to get him the medical help

13   he needs without interruption from court proceedings.

14             Okay.  Thanks.

15             MS. HARDEN:  Thank you.

16             (Whereupon, the bench conference concludes.)

17             THE COURT:  Okay.  Juror No. 936, thank you very

18   much for coming in today.  I am going to excuse you.

19             THE PROSPECTIVE JUROR:  Okay.

20             THE COURT:  And you can leave the courthouse.  And

21   good luck with your medical appointments and your medical

22   issues.

23             THE PROSPECTIVE JUROR:  Thank you.

24             THE COURT:  Thank you.

25             (Whereupon, the prospective juror was excused.

1    Another prospective juror enters.)

2              THE COURT:  Good morning, Juror 975.

3              If you could come stand by that lectern.  Please

4    feel free to put your items down on the chair so you can

5    stand more comfortably.

6              And, Juror 975, how are you this morning?

7              THE PROSPECTIVE JUROR:  Good.

8              THE COURT:  Good.

9              I see you have marked Questions 12 and 17; and I

10   am just going to review those with you.

11             THE PROSPECTIVE JUROR:  Okay.

12             THE COURT:  Question 12 asks whether you, a member

13   of your family, or a close friend has ever studied law or

14   been employed by a lawyer, or in a legal environment.

15             Could you explain that?

16             THE PROSPECTIVE JUROR:  Yeah.  I have a close

17   friend, she went to law school.  She is currently a lawyer.

18   She works in Philadelphia for a law firm doing adoption and

19   family advocacy-type of work.

20             THE COURT:  Okay.  She doesn't do criminal law?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  I see.  And do you talk to your friend

23   about her work?

24             THE PROSPECTIVE JUROR:  Just general things,

25   nothing --

1          THE COURT:  I see.  And is there anything about

2     your conversations that you have with her about her legal

3     work that you think would have any impact on your ability to

4     be fair and impartial in this case?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  All right.  And then you also marked

7     17, about whether you, a member of your family, or a close

8     friend ever has been arrested or convicted of a crime, a

9     victim, or a witness to a crime.

10          Could you explain that?

11          THE PROSPECTIVE JUROR:  Yeah.  My sister was

12     arrested some years back.  I don't know all the details.  I

13     believe she had a DUI; and then there was parole issues, and

14     she was in jail for several weeks.

15          THE COURT:  Okay.  And do you know how many years

16     ago that occurred?

17          THE PROSPECTIVE JUROR:  Maybe four or five years.

18          THE COURT:  And were you involved in helping to

19     talk to her or giving her support through that process?

20          THE PROSPECTIVE JUROR:  Not really.  I did see her

21     during that time but, other than that, there wasn't much

22     communication.

23          THE COURT:  And do you have any view of whether

24     she was treated fairly or not?

25          THE PROSPECTIVE JUROR:  No.  I have no view.

1           THE COURT:  Okay.  And was there anything about

2      your sister's experience that you think would have any

3      impact on your ability to be fair and impartial here?

4           THE PROSPECTIVE JUROR:  No.

5           THE COURT:  Okay.  And what do you do for a

6      living?

7           THE PROSPECTIVE JUROR:  I am a mechanical

8      engineer.

9           THE COURT:  Okay.  And where do you work?

10          THE PROSPECTIVE JUROR:  Setty & Associates.

11          THE COURT:  Is that a private firm?

12          THE PROSPECTIVE JUROR:  It's a -- yeah.  It's a

13     small family-owned business.

14          THE COURT:  I see.  And how long have you done

15     that?

16          THE PROSPECTIVE JUROR:  In my career, since 2011;

17     so about ten years.

18          THE COURT:  Okay.  One second.

19          (A bench conference was held as follows:)

20          MS. HARDEN:  Thank you, Your Honor.

21          Can the Court follow up and ask him if he said

22     something about parole?  I am not sure --

23          THE COURT:  Yes.  She had parole violations.  I

24     can follow up.

25          MS. HARDEN:  Can you also follow up with why he

```
1    didn't have communication with his sister at that time and
2    why he doesn't have any opinion on whether or not she was
3    treated fairly?
4              THE COURT:  No.  I am not going to ask him that.
5              Any follow up from the government?
6              MS. BURRELL:  No, Your Honor.
7              (Whereupon, the bench conference concludes.)
8              THE COURT:  Okay.  Did I understand you correctly
9    that your sister -- after her arrest, you think, for a
10   DUI -- I think you said that she had some parole issues?  Do
11   you know what those were?
12             THE PROSPECTIVE JUROR:  Yeah.  I think she was --
13   you know, she didn't go to court when she was supposed or
14   she didn't pay her fines, legal fees.  I don't know the
15   details, though.
16             THE COURT:  All right.  And you saw your sister
17   during that time when she was going through this or dealing
18   with this?
19             THE PROSPECTIVE JUROR:  Yes.
20             THE COURT:  Did you talk to her about her
21   situation?
22             THE PROSPECTIVE JUROR:  Not really.  Not about the
23   specifics of it.
24             THE COURT:  And was there a reason why you didn't
25   talk to her about it?
```

```
1              THE PROSPECTIVE JUROR:  I mean, we are not very

2    close in that sense, and I try to give her her space.  I

3    think she gets enough advice, if you will, from my parents

4    so I just try to support her in other ways.

5              THE COURT:  I see.  Okay.  Thank you.

6              Let me just make sure -- see if there are any

7    other questions.

8              (A bench conference was held as follows:)

9              MS. HARDEN:  I have nothing.

10             MS. SEDKY:  Would the Court inquire whether his

11   sister's interaction with law enforcement was in the

12   District of Columbia?

13             MS. HARDEN:  And if the Court is going to ask

14   that, I would follow up with:  Can you tell us why you are

15   not really answering the Court's question about whether you

16   don't have an opinion, one way or the other, about whether

17   she was treated fairly?

18             He didn't answer the Court's question.

19             THE COURT:  He doesn't really have an opinion

20   about it.  I will find out where it happened.

21             MS. BURRELL:  Thank you, Your Honor.

22             (Whereupon, the bench conference concludes.)

23             THE COURT:  And was your sister's situation in

24   Washington, D.C., or elsewhere?

25             THE PROSPECTIVE JUROR:  Pennsylvania.
```

```
1              THE COURT:  In Pennsylvania.  All right.

2              Thank you.  You may step outside --

3              THE PROSPECTIVE JUROR:  Okay.  Thank you.

4              THE COURT:  -- and resume your seat.

5              (Whereupon, the prospective juror was excused.

6    Another prospective juror enters.)

7              THE COURT:  And, Juror 591, if you could, please

8    stand at the podium.  And feel free to put your purse down

9    so you can stand more comfortably.

10             And how are you this morning?

11             THE PROSPECTIVE JUROR:  I am well.  Thank you.

12             THE COURT:  Okay.  I see you have marked Questions

13   17, 28, and 35.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  I am going to review those with you in

16   order.

17             THE PROSPECTIVE JUROR:  Yes, Your Honor.

18             THE COURT:  Question 17 asks whether you, a member

19   of your family, or a close friend has been arrested or

20   convicted of a crime, a victim, or a witness to a crime.

21             So could you explain that?

22             THE PROSPECTIVE JUROR:  Explain?

23             THE COURT:  Yes.

24             THE PROSPECTIVE JUROR:  I am having a hard time

25   hearing you.  I don't...
```

1          THE COURT:  I am going to -- I will switch to this

2     mask.  It's more uncomfortable, so sometimes I take it off.

3          THE PROSPECTIVE JUROR:  Thank you.

4          THE COURT:  So let me switch.  Hold on.

5          I think people can hear me a little better --

6          THE PROSPECTIVE JUROR:  Yes.  Thank you.

7          THE COURT:  But it's a little bit more

8     uncomfortable.

9          So let me ask again.  For Question 17, if you

10    could explain your answer, why you marked yes to the

11    question of whether you, a member of your family, or close

12    friend has ever been arrested or convicted of a crime, a

13    victim, or a witness to a crime.

14         THE PROSPECTIVE JUROR:  I was a witness and

15    testified before a grand jury.  I was in my home, heard a

16    loud noise, ran to the window.  A young man jumped out of

17    the car after he had hit another car -- so it was obviously

18    a stolen car, and took off down an alley.  And I made a

19    9-1-1 call, and then was called in to testify.

20         THE COURT:  Were you able to identify the person?

21         THE PROSPECTIVE JUROR:  I was not.

22         THE COURT:  Okay.  I see.  You just testified

23    about what you saw --

24         THE PROSPECTIVE JUROR:  I gave a description from

25    what I saw, that it was -- I guess because I made the 9-1-1

1    call, I was called.

2            THE COURT:  I see.  And did you have any other

3    involvement in that?

4            THE PROSPECTIVE JUROR:  I did not.  I was excused.

5            THE COURT:  And do you know if anything happened?

6            THE PROSPECTIVE JUROR:  I don't.  I didn't follow

7    it.

8            THE COURT:  I see.  And during that experience,

9    did you have interaction with law enforcement officers and

10   with prosecutors?

11           THE PROSPECTIVE JUROR:  Did I -- say --

12           THE COURT:  Did you have interactions with police

13   officers --

14           THE PROSPECTIVE JUROR:  Did I --

15           THE COURT:  -- and/or several prosecutors -- or

16   prosecutors?

17           THE PROSPECTIVE JUROR:  Just the questioning.

18           THE COURT:  Okay.  That was --

19           THE PROSPECTIVE JUROR:  Asking -- asking me,

20   essentially, what you are asking me to describe, what I saw.

21   And was I able to identify the person in the courtroom, and

22   I was not.

23           THE COURT:  Okay.  How long ago did this occur?

24           THE PROSPECTIVE JUROR:  I want to say about 15

25   years.

1          THE COURT:  And was it in Washington, D.C.?

2          THE PROSPECTIVE JUROR:  It was.  Southeast.

3          THE COURT:  And was there anything about that

4    experience that you think would affect your ability to be

5    fair and impartial in this case?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Okay.  You also marked Question 28

8    which asked whether you would have difficulty following an

9    instruction from the Court that a minor's consent is not a

10   defense to a charge of sexual enticement of a minor or

11   production of child pornography despite what a minor says or

12   what actions she takes.

13         THE PROSPECTIVE JUROR:  And I -- I guess I am not

14   sure I completely understood that.

15         My question is if I -- the way I understood it is

16   that -- I do think a child might consent to something if --

17   if an adult is involved because of an intimidation factor,

18   or something like that.  Am I understanding that?

19         THE COURT:  Yeah.  But, you know, it's a question

20   that you are going to have to evaluate whether there was

21   consent or not consent based on what the minor says or what

22   actions you take --

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  But in evaluating sexual enticement or

25   production of child pornography, you know, the real legal

1    issue is a minor can't really give consent; so that would be

2    the legal instruction.  So you could evaluate what the minor

3    is saying; you can evaluate what action she's taking in

4    terms of deciding --

5                THE PROSPECTIVE JUROR:  Yes.

6                THE COURT:  -- is the person is telling the truth.

7    But in terms of making the determination of whether the

8    minor is legally capable of giving consent, you have to be

9    able to follow my instruction that a minor can't give legal

10   consent.

11               THE PROSPECTIVE JUROR:  Yes.  I think I -- I think

12   I am okay with that.  I just wasn't sure that I completely

13   understood that.  And the question before was also -- I was

14   able to process that a little bit better.

15               THE COURT:  You know, frankly, as I am looking at

16   that question, I can see why there would be confusion;

17   because you would certainly have to listen to a minor --

18   whenever a witness testifies --

19               THE PROSPECTIVE JUROR:  I agree.

20               THE COURT:  -- you have to evaluate what they're

21   saying and what they're doing, whether they're telling the

22   truth.

23               THE PROSPECTIVE JUROR:  Yes.  And I do -- I am a

24   mother, and I -- my children are adults.  But I do know

25   that, yeah, kids lie sometimes, but sometimes they don't;

1    and sometimes there is a reason.

2              THE COURT:  Okay.  And then you also marked

3    Question 35.

4              THE PROSPECTIVE JUROR:  Which is that -- do you

5    have children?

6              THE COURT:  Right.

7              THE PROSPECTIVE JUROR:  And I do.

8              THE COURT:  And how many children do you have?

9              THE PROSPECTIVE JUROR:  I two grown daughters, and

10   I have four grandchildren -- no -- I have three

11   grandchildren.

12             THE COURT:  Wishful thinking.

13             THE PROSPECTIVE JUROR:  Yeah; but that's not going

14   to happen.

15             THE COURT:  Okay.  And are your grandkids -- what

16   sexes are your grandkids?

17             THE PROSPECTIVE JUROR:  I'm sorry?

18             THE COURT:  What -- granddaughters or grandsons?

19             THE PROSPECTIVE JUROR:  I have one granddaughter,

20   and two grandsons.

21             THE COURT:  I see.  Okay.  All right.

22             (A bench conference was held as follows:)

23             MS. HARDEN:  No follow up, Your Honor.

24             MS. SEDKY:  Could you repeat that?

25             MS. HARDEN:  No follow up, Your Honor.

1        MS. BURRELL:  No follow up from the government.

2        (Whereupon, the bench conference concludes.)

3        THE COURT:  Okay.  Juror No. 591, if you could,

4    resume your seat outside.  Thank you.

5        THE PROSPECTIVE JUROR:  Thank you.

6        (Whereupon, the prospective juror was excused.)

7        THE COURT:  I think we'll break for lunch at

8    12:30.  Is that amenable, or do you-all feel that you need

9    to break earlier?

10       MS. HARDEN:  I'm sorry, Your Honor?

11       THE COURT:  I just said that I think we'll break

12   for lunch at about 12:30.  Is that amenable?

13       MS. HARDEN:  It is.

14       (Whereupon, a prospective juror enters.)

15       THE COURT:  And, Juror No. 384.  There we go.

16       All right.  Juror No. 384, could you come stand at

17   the lectern.  Oh.  I see you are using a cane.  Would you

18   prefer to be seated?

19       THE PROSPECTIVE JUROR:  No.  I prefer standing;

20   it's probably a little better.

21       THE COURT:  Okay.  Fine.

22       How are you this morning?

23       THE PROSPECTIVE JUROR:  Good.

24       THE COURT:  Okay.

25       THE PROSPECTIVE JUROR:  How are you?

```
 1                    THE COURT:  I'm good.

 2                    THE PROSPECTIVE JUROR:  Good.

 3                    THE COURT:  I see, Juror 384, that you have marked

 4      Questions 1, 10, and 30, so I am going to review those with

 5      you.

 6                    THE PROSPECTIVE JUROR:  Okay.  Thank you.

 7                    THE COURT:  Question 1 is, Do you feel

 8      uncomfortable even being in the room with all of the

 9      precautions we have taken in the courthouse --

10                    THE PROSPECTIVE JUROR:  Yeah.

11                    THE COURT:  -- so that you would be so nervous

12      that you would not be able to pay attention?

13                    THE PROSPECTIVE JUROR:  I have -- I have several

14      health conditions that -- you know, I have a weaker immune

15      system than most, so I get uncomfortable around a lot of

16      people.

17                    THE COURT:  Okay.  And is this making you

18      uncomfortable this morning?

19                    THE PROSPECTIVE JUROR:  A little.

20                    THE COURT:  Okay.  And is that -- if you are

21      selected for the jury, you will be sitting with 14 other

22      people in another courtroom -- not as big as this one, but a

23      big space.  And then, during the trial, you will be sitting

24      not in this courtroom, but another big courtroom, socially

25      distanced from the trial participants and the jurors.  So
```

1    it's going to be a much smaller crowd than the 50

2    prospective jurors who are sitting here.

3            Would that make you feel better?

4            THE PROSPECTIVE JUROR:  Probably not.

5            THE COURT:  Okay.

6            THE PROSPECTIVE JUROR:  It all makes me nervous.

7            THE COURT:  It all makes you nervous.  I see.

8            And is there anything that you would make you feel

9    less nervous?

10            THE PROSPECTIVE JUROR:  I don't know.  No.

11            THE COURT:  Because we can give you a face shield.

12            THE PROSPECTIVE JUROR:  No.  I don't think that

13    would help.

14            THE COURT:  Okay.  And does this worry take up so

15    much of your attention that you think it would be difficult

16    for you to pay attention during the trial?

17            THE PROSPECTIVE JUROR:  I don't know if it would

18    have anything to do with paying attention.

19            THE COURT:  Okay.  All right.  So how do you think

20    it would affect your service if you were selected to serve

21    on a jury?

22            THE PROSPECTIVE JUROR:  I -- I don't know.  I just

23    think it would make me feel uncomfortable.  I probably

24    wouldn't be able to pay as good attention as I would want

25    to.

1          THE COURT:  I see.  And is it comfortable for you

2     to sit for periods of time?

3          THE PROSPECTIVE JUROR:  No.  I have had my second

4     hip replacement not too long ago, so walking and sitting for

5     long distances is very uncomfortable.

6          THE COURT:  Okay.

7          THE PROSPECTIVE JUROR:  I brought a doctor's note;

8     I don't know if that will help.

9          THE COURT:  All right.  And what does the doctor's

10    note say?

11         THE PROSPECTIVE JUROR:  Basically, that I am not

12    able to sit or stand for long periods of time; and if you

13    have any questions, you can give him a call.

14         THE COURT:  Okay.  Let me just talk...

15         (A bench conference was held as follows:)

16         MS. HARDEN:  Move to strike.  I move to strike the

17    juror for cause, Your Honor.  I just think it's not fair to

18    Mr. Smith to have a juror who is overly concerned about a

19    pandemic -- rightfully so.  And I think he doesn't really

20    want to say what the Court asked him, if he can't really pay

21    attention -- and then he said he can't really pay attention.

22         THE COURT:  What is the government's view?

23         MS. BURRELL:  No objection to that from the

24    government.

25         THE COURT:  Okay.  Let's have a position here.

1          I just noticed I let you-all say "no objection,"

2     but I want a clear position.  When you say "no objection,"

3     do you join in the motion?

4          MS. BURRELL:  Yes.

5          THE COURT:  Okay.  I am going to grant the motion

6     for cause.  He appears to me to be uncomfortable on his

7     cane, and has some discomfort standing up.  And he needs to

8     be able to sit through the testimony, and he says that will

9     make him uncomfortable; so I am going to excuse him for

10    cause.

11         Thanks.

12         MS. HARDEN:  Thank you.

13         (Whereupon, the bench conference concludes.)

14         THE COURT:  All right.  Juror No. 384, thank you

15    so much for coming in today.  I know it was not easy for you

16    to come in.  I am going to excuse you --

17         THE PROSPECTIVE JUROR:  Thank you.

18         THE COURT:  -- completely; and you can leave the

19    courthouse.  Thank you very much.

20         THE PROSPECTIVE JUROR:  Thank you.

21         Do I need to call back for the rest of the week or...

22         THE COURT:  That, you can ask my courtroom deputy.

23         To be honest, I am not sure about the answer.  I

24    think you might, but you are excused from this jury.

25         THE PROSPECTIVE JUROR:  Oh, okay.  Thank you, Your

1      Honor.

2              THE COURT:  Thank you.

3              (Whereupon, the prospective juror was excused.

4      Another prospective juror enters.)

5              THE COURT:  Good morning, Juror 090.

6              Please stand at the lectern.  Feel free to put

7      your bag down so you can be more comfortable.  Great.

8              How are you this morning?

9              THE PROSPECTIVE JUROR:  I am fine.  Thank you,

10     Your Honor.

11             THE COURT:  Good.

12             All right.  Juror No. 090, I see you have marked

13     13, 17, 29, 30, and 35, so I am just going to review those

14     with you in order.

15             THE PROSPECTIVE JUROR:  I understand.

16             THE COURT:  Question 13 asks whether you, a member

17     of your family, or a close friend has been employed by a

18     local, state, or federal law enforcement agency.

19             Could you explain that?

20             THE PROSPECTIVE JUROR:  Well, I have done security

21     work as well as a correction officer.  I got a military

22     background, four years.

23             THE COURT:  Could you talk a little bit more

24     slowly?  With the masks, it can be a little bit harder to

25     hear.

1               So you have worked in security.  And you also

2       worked as a correctional officer?

3               THE PROSPECTIVE JUROR:  Two years at D.C. jail.

4               THE COURT:  Two years.  And how long ago did you

5       work as a correction officer at D.C. jail?

6               THE PROSPECTIVE JUROR:  I believe that was 1984,

7       and '86 -- 1986.

8               THE COURT:  I see.  So quite some time ago.

9               THE PROSPECTIVE JUROR:  Yes, ma'am, it was.  Yeah.

10              THE COURT:  Right.  And are you currently working?

11              THE PROSPECTIVE JUROR:  No, ma'am.  I am not, Your

12      Honor.

13              THE COURT:  And are you retired?

14              THE PROSPECTIVE JUROR:  I'm sorry?

15              THE COURT:  Are you retired?

16              THE PROSPECTIVE JUROR:  I -- I receive Social

17      Security, yes.

18              THE COURT:  Okay.  And is there anything about

19      your experience working as a correctional officer at the

20      D.C. jail that you think would have an impact on your

21      ability to be fair and impartial in this case?

22              THE PROSPECTIVE JUROR:  Basically, what I can say

23      is, my experience -- I only worked there a couple of years,

24      we mainly set the example for the -- for the residents, so

25      lead by example.

```
 1                    THE COURT:  Right.
 2                    THE PROSPECTIVE JUROR:  By our basic training, our
 3        actions.
 4                    THE COURT:  All right.  So you also -- has that
 5        been the extent of your experience in working for a law
 6        enforcement agency, the security guard and working as a
 7        correctional officer at D.C. jail?
 8                    THE PROSPECTIVE JUROR:  Yeah.  I basically
 9        consider myself an average officer, basically.
10                    THE COURT:  Okay.
11                    THE PROSPECTIVE JUROR:  Yeah.
12                    THE COURT:  Okay.  But no other law enforcement --
13                    THE PROSPECTIVE JUROR:  No.  Not at all.
14                    THE COURT:  Okay.  What other jobs did you have?
15                    THE PROSPECTIVE JUROR:  I'm sorry?
16                    THE COURT:  What other jobs have you had?
17                    THE PROSPECTIVE JUROR:  I guess I can say cleaning
18        jobs.  I worked at restaurants as a cook.
19                    THE COURT:  And why did you leave working at the
20        D.C. jail?
21                    THE PROSPECTIVE JUROR:  We had HR problems there.
22        And evidently they was under the impression I was working
23        undercover.  And I felt that that always was more of a --
24        how should I say? -- a handicap than a help; so I decided
25        that it was in my best interest to leave at that time.
```

```
 1                    THE COURT:  I see.

 2                    THE PROSPECTIVE JUROR:  We had a serious drug

 3       problem there, and it was out of control.  And I just

 4       thought that it wasn't suitable for me at that time, that

 5       I -- that I did what I felt in the best interest of the

 6       Department of Corrections --

 7                    THE COURT:  Okay.  You said that people thought

 8       you were working undercover?

 9                    THE PROSPECTIVE JUROR:  Yeah.  So I found out

10       that -- I had a half brother that worked there, too, and we

11       looked alike.  So there was a possibility that maybe he was

12       working there, but I have no knowledge of it; had nothing to

13       do with it.

14                    THE COURT:  All right.

15                    THE PROSPECTIVE JUROR:  Yeah.  So it was just

16       circumstantial -- so I just gave it up.  It was in the best

17       interest of the Department of Corrections.  It was a tough

18       choice.

19                    THE COURT:  Okay.  You also checked Question 17,

20       whether you, a member of your family, or any close friend

21       has ever been arrested or convicted of a crime, been a

22       victim of a crime or a witness to a crime -- or testified in

23       court or before grand jury --

24                    THE PROSPECTIVE JUROR:  I probably would be

25       referring to myself.
```

1           THE COURT:  Okay.  And could you explain that?

2           THE PROSPECTIVE JUROR:  I caught a charge of DUI,

3    and I guess it would be driving while drunk; but I was

4    cleared of that -- of the charge.

5           THE COURT:  And how long ago were you charged with

6    that?

7           THE PROSPECTIVE JUROR:  I am not really sure, Your

8    Honor.  I think it was -- it's been -- it's been quite a few

9    years.

10          THE COURT:  Okay.

11          THE PROSPECTIVE JUROR:  Yes, it has been.

12          THE COURT:  Did you go to trial on that charge?

13          THE PROSPECTIVE JUROR:  I did; and I was on

14   probation for one year.  And I went and had requested that

15   it be expunged, and everything went well.

16          THE COURT:  Okay.  All right.  Was it more than

17   ten years ago?

18          THE PROSPECTIVE JUROR:  I think it might have been

19   more than ten years ago.

20          THE COURT:  I see.  Okay.  And do you think you

21   were treated fairly in that process?

22          THE PROSPECTIVE JUROR:  Yes.  Yes, I was.

23          The way it was set up -- I believe it mentioned

24   something about 00.8; I had met that criteria at that time,

25   but that criteria no longer applies now.  So you cannot have

```
1    any alcohol in your system at all.

2            THE COURT:  All right.  You also checked

3    paragraph -- or Question 29.  And 29 was:  Do you have

4    difficulty believing that a child victim of child

5    exploitation could be persuaded, enticed, or coerced into

6    engaging in sexually explicit conduct without the use of

7    force or threats?

8            So you checked that.  Could you explain your

9    answer to that?

10           THE PROSPECTIVE JUROR:  I believe that that's

11   true; I believe that they can be influenced in that way.

12           THE COURT:  So you believe that they could be

13   persuaded without the use of force or threat?

14           THE PROSPECTIVE JUROR:  Yes.  Based on my

15   knowledge and experience, yes, I agree with that, that

16   possibility.

17           THE COURT:  And your knowledge and experience is

18   based on what?

19           THE PROSPECTIVE JUROR:  I've -- I've worked a lot

20   of security.  I have had a couple of years of experience in

21   working corrections.  I have been exposed to a lot of

22   people --

23           THE COURT:  Right.

24           THE PROSPECTIVE JUROR:  -- as you know, judges,

25   lawyers.  So I have been exposed to a lot, so I understand
```

1    things a lot.

2            THE COURT:  Okay.  And then -- in terms of

3    Question 30, it asks whether you, a family member, or a

4    close friend has ever been the victim of sexual abuse.

5            Would you explain that?

6            THE PROSPECTIVE JUROR:  Yes.  My daughter -- I

7    took my daughter to the hospital, Children's Hospital, and

8    she had a sexually transmitted disease.  But no one was

9    convicted, but they did want me to charge a family member;

10   but they did not have the necessary evidence so, therefore,

11   we could not press charges -- because that's not proper

12   [sic] grounds; it was illegal.

13           THE COURT:  And how old was your daughter at the

14   time?

15           THE PROSPECTIVE JUROR:  I am not sure.  She might

16   have been around five -- five or six; she was really young.

17           THE COURT:  And at that time she had a sexually

18   transmitted disease?

19           THE PROSPECTIVE JUROR:  Yes.  What happened in

20   that situation was that there was a different strand, I

21   did -- there was an investigation.  And I found out that the

22   strand that she had -- based on what my brother-in-law had

23   was a different strand so, therefore, I didn't have grounds

24   to press -- to agree to press charges.

25           THE COURT:  And so did you have a suspect?

1          THE PROSPECTIVE JUROR:  He was considered a

2     suspect, but I didn't have any evidence.

3          THE COURT:  And who was that suspect, it was

4     your --

5          THE PROSPECTIVE JUROR:  Brother-in-law.

6          THE COURT:  Your brother-in-law.

7          THE PROSPECTIVE JUROR:  Right.  I was married to

8     his sister.

9          THE COURT:  I see.  And did you take steps after

10     that to make sure your child didn't go near your

11     brother-in-law?

12          THE PROSPECTIVE JUROR:  I had to remove her from

13     the environment, yes.

14          THE COURT:  I see.  And were you satisfied with

15     how law enforcement dealt with that situation at the time?

16          THE PROSPECTIVE JUROR:  No.  I wasn't satisfied.

17     But the thing was they -- you have to understand, it's a

18     very, very sensitive area when you are dealing with

19     children.  You are dealing with adults, you are dealing with

20     people that are not very cooperative.  When you have a lack

21     of communication, that job can be very difficult to make --

22     make a good decision.

23          THE COURT:  Right.  Well, do you think this

24     experience that you had with your daughter when she was so

25     young -- do you think that would affect your ability to

1    limit your decision-making in this case -- solely to the

2    evidence presented in this case?

3              THE PROSPECTIVE JUROR:  No, ma'am.  Like I said

4    before, when it comes down to communication, I -- I

5    communicate with a lot of different people.  I have been

6    exposed to a lot of things.  And I have come to a great

7    understanding about a lot of things, so I've learned to be

8    more objective about my actions.

9              THE COURT:  Okay.  Well, let me repeat my question

10   in a different way.

11             You know, when you make a decision in this case

12   you have to base it only on the evidence in this case and

13   not your own personal prior experience.  Do you understand

14   that?

15             THE PROSPECTIVE JUROR:  Yes, ma'am.  That -- that

16   is very true, Your Honor.  You are absolutely correct.

17             THE COURT:  And are you going to be able to do

18   that in this case?

19             THE PROSPECTIVE JUROR:  I always make it a

20   practice -- all my life -- to be truthful, always.

21             THE COURT:  Okay.

22             MS. HARDEN:  Your Honor, I didn't hear the last

23   part of the answer.

24             THE COURT:  Could you repeat the last part of your

25   answer?

1           THE PROSPECTIVE JUROR:  I make it a practice to

2    always try to be objective about what I think.  I always try

3    to be fair.  It's not easy to do, but all you can do is do

4    the best you can.

5           THE COURT:  Right.

6           Okay.  And then you also responded to Question 35

7    of:  Do you have children or stepchildren?

8           So we know you have one daughter.  How many

9    children in total do you have?

10           THE PROSPECTIVE JUROR:  I have three daughters.  I

11    have a stepson by marriage.  It wasn't easy, but it turned

12    out very well.

13           THE COURT:  I see.  Okay.  Good.

14           THE PROSPECTIVE JUROR:  I didn't lie about that.

15    I never -- I never -- I wasn't planning on having any

16    children; but I was helping my best friend at the time and

17    we ended up getting married, so you can understand my

18    discretion there.

19           THE COURT:  Yeah.  Okay.

20           Let me talk to the lawyers.

21           (A bench conference was held as follows:)

22           MS. HARDEN:  I would like to strike the juror for

23    cause.  I am not sure he is clear on the questions.

24    Sometimes the answers are not in line with how the -- what

25    the Court is asking, so I move to strike him for cause.

1              MS. BURRELL:  We would join in that motion.  We

2    also had a hard time following his answers.

3              THE COURT:  All right.  I will agree.  I will

4    grant that motion.

5              Okay.  Thank you.

6              (Whereupon, the bench conference concludes.)

7              THE COURT:  Juror No. 090, thank you so much for

8    coming in today.  I am going to excuse you with much thanks

9    for --

10             THE PROSPECTIVE JUROR:  Okay.  No problem.

11             You-all just keep up with the good job.  I know

12   it's difficult.  But I am familiar with it, so I'm going to

13   say that.

14             THE COURT:  Okay.  Well, thank you so much.  You

15   may leave the courthouse.

16             THE PROSPECTIVE JUROR:  Okay.  Thank you.

17             THE COURT:  Thank you.

18             (Whereupon, the prospective juror was excused.

19   Another prospective juror enters.)

20             THE COURT:  Yes.  Good morning, Juror No. 665.

21             Please come stand at the lectern, and feel free to

22   put your briefcase down.  Thank you.

23             How are you this morning?

24             THE PROSPECTIVE JUROR:  I am fine.  Thank you.

25   Yourself?

```
1                     THE COURT:  I am good.

2                     THE PROSPECTIVE JUROR:  Good.

3                     THE COURT:  I see you have marked Question 35, so

4         I am just going to ask you questions about that.

5                     How many children or stepchildren do you have?

6                     THE PROSPECTIVE JUROR:  I have four children.

7                     THE COURT:  Four children.  And are they girls or

8         boys?

9                     THE PROSPECTIVE JUROR:  I didn't hear you.

10                    THE COURT:  Are they girls or boys?

11                    THE PROSPECTIVE JUROR:  One girl, and three boys.

12                    THE COURT:  All right.  Are they grown up?

13                    THE PROSPECTIVE JUROR:  They are all grown, yes.

14                    THE COURT:  Okay.  And what do you do for a

15        living?

16                    THE PROSPECTIVE JUROR:  Retired.

17                    THE COURT:  What did you retire from?

18                    THE PROSPECTIVE JUROR:  I did two things.  I was a

19        statistician and a lab technologist.

20                    THE COURT:  Okay.  And what kind of lab

21        technologist were you?  What did you do in a lab?

22                    THE PROSPECTIVE JUROR:  Clinical lab, hematology,

23        chemistry, bacteriology, blood banking.

24                    THE COURT:  I see.  Okay.  And when did you

25        retire?  How long ago?
```

```
 1                THE PROSPECTIVE JUROR:  Let's see, I retired from
 2      the lab in 2000.  I retired from the government as a
 3      statistician in '94, I think.
 4                THE COURT:  Okay.  Let me just see if we have
 5      follow-up questions.
 6                (A bench conference was held as follows:)
 7                MS. HARDEN:  Thank you, Your Honor.
 8                He said he was a statistician; with whom exactly?
 9                THE COURT:  I can find out.  Some government
10      agency.
11                MS. HARDEN:  I know what a statistician does,
12      generally; but what did he do?
13                MS. BURRELL:  Your Honor, we would ask how long
14      he's lived in D.C. for.
15                THE COURT:  Okay.
16                (Whereupon, the bench conference concludes.)
17                THE COURT:  Okay.  And, Juror No. 665, I think you
18      said you retired as a statistician from the government in
19      1994.
20                THE PROSPECTIVE JUROR:  Yes.
21                THE COURT:  Were you working for a particular
22      government agency?
23                THE PROSPECTIVE JUROR:  Yeah.  I was working -- at
24      the time I retired, I was working for U.S. Civil Service.
25      At the time I retired, I was working at the Surgeon
```

1   General's Office in Virginia.

2          THE COURT:  I see.  And so the statistics that you

3   were taking account of, could you describe a little bit more

4   what you were working with, the numbers --

5          THE PROSPECTIVE JUROR:  How statistics -- let's

6   see.  I started at the NIH, and I was working on different

7   scientific projects.  One was -- I was at NIH.  I was

8   working on -- what was it? -- fetal -- fetal syndrome.  When

9   I was at the Office of the Surgeon General, I was working on

10  statistics.

11         THE COURT:  Okay.  So statistics as applied to

12  different medical questions?

13         THE PROSPECTIVE JUROR:  That is correct.

14         THE COURT:  I see.  And how long have you lived in

15  Washington, D.C.?

16         THE PROSPECTIVE JUROR:  '68.  So 53 years, I

17  guess.

18         THE COURT:  53 years, good.

19         All right.  Thank you.  You may resume your seat

20  outside.  Thank you.

21         (Whereupon, the prospective juror was excused.

22  Another prospective juror enters.)

23         THE COURT:  Juror No. 169, please step forward and

24  come to this lectern.  And feel free to put your backpack

25  and your things down on the chair if you want --

```
 1                    THE PROSPECTIVE JUROR:  Okay.

 2                    THE COURT:  -- so you can be more comfortable.

 3               And how are you this morning?

 4                    THE PROSPECTIVE JUROR:  Good.  How are you?

 5                    THE COURT:  Good.

 6               So you have marked Questions 9, 12, 26, 32, and

 7     36, so I am just going to review those with you.

 8                    THE PROSPECTIVE JUROR:  Okay.

 9                    THE COURT:  Question 9 asks about whether it would

10     be a hardship for you to serve on the jury this week and

11     next.

12               Could you explain that?

13                    THE PROSPECTIVE JUROR:  Next Friday, the 29th --

14     and I -- I am very certain that I can only serve Monday

15     through Thursday, but I just wanted to be transparent about

16     that number.  Friday, the 29th, I have a wedding that I am

17     traveling for; it would be difficult to not attend.

18                    THE COURT:  Okay.  I think we're all thinking the

19     trial is going to be over by then.

20                    THE PROSPECTIVE JUROR:  Okay.  That's fine.  I

21     just wanted to be sure.

22                    THE COURT:  And are you traveling very far away?

23                    THE PROSPECTIVE JUROR:  To California.

24                    THE COURT:  And is it during the day or later?

25                    THE PROSPECTIVE JUROR:  Friday -- I'm sorry?
```

```
 1              THE COURT:  How late in the day on Friday, the
 2    29th?
 3              THE PROSPECTIVE JUROR:  I think I leave at
 4    9:30 a.m. on Friday.
 5              THE COURT:  9:30 a.m.
 6              THE PROSPECTIVE JUROR:  Yep.  And then I get back
 7    Sunday evening, I think, at like 11:00 p.m.
 8              THE COURT:  Okay.  And then you also marked 12,
 9    which is about whether you, a family friend, or a member of
10    your family have ever studied law or been employed in a
11    legal environment.
12              Could you explain that?
13              THE PROSPECTIVE JUROR:  My boyfriend is in law
14    school at University of Baltimore right now.
15              THE COURT:  Okay.  And what year is he?
16              THE PROSPECTIVE JUROR:  His first year.
17              THE COURT:  First year.  All right.
18              And is there anything about your boyfriend being
19    in law school that you think would have any impact on your
20    ability to serve on this jury?
21              THE PROSPECTIVE JUROR:  No.  I don't think, yeah.
22              THE COURT:  All right.  And you have also marked
23    Question 26, which is whether you are so uncomfortable
24    hearing about, viewing, or discussing sexually explicit
25    materials, including purported child pornography, you could
```

1     not serve as a fair and impartial juror.

2               Could you explain that?

3               THE PROSPECTIVE JUROR:  It just makes me very

4     uncomfortable.  I have experienced sexual assaults before,

5     and it just makes me uncomfortable.

6               THE COURT:  Okay.  And that goes to -- you

7     personally have experienced sexual assault before?

8               THE PROSPECTIVE JUROR:  Um-hmm.  Yes.

9               THE COURT:  How long ago?

10              THE PROSPECTIVE JUROR:  Probably eight years ago,

11    nine years ago.

12              THE COURT:  And was it on more than one occasion?

13              THE PROSPECTIVE JUROR:  Yes.  Not by the same

14    people.  By, honestly, strangers in public, reaching

15    underneath my clothes and touching me.

16              THE COURT:  I see.

17              THE PROSPECTIVE JUROR:  And that has happened

18    on --

19              THE COURT:  This is going to and from work or

20    something?

21              THE PROSPECTIVE JUROR:  In, like, restaurant

22    settings, bar settings -- but yes, directly.  One time in a

23    house it happened.  I don't know these people, but it has

24    happened on more than one occasion.

25              THE COURT:  What is your job?

1          THE PROSPECTIVE JUROR:  I am an accountant.  I

2     work in finance right now.

3          THE COURT:  You work in finance?

4          THE PROSPECTIVE JUROR:  Um-hmm.

5          THE COURT:  So on how many occasions?

6          THE PROSPECTIVE JUROR:  Two that I can think of

7     distinctly off the top of my head.  One, at a house.  And it

8     was a friend of a friend of a friend who was there; and he

9     walked by and reached under my dress at the time and touched

10    me.

11         Another time was at a very crowded bar/restaurant.

12    And I don't know who it was -- just walking by, reached

13    underneath and touched me, and then continued to walk away.

14         THE COURT:  All right.  And I would say, you know,

15    looking at purported child pornography is not comfortable

16    for anybody; but the real question is:  Would you be able to

17    look at it, to evaluate it, to make a decision in this case?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  All right.  You also marked

20    Question 32 which asks:  You may hear testimony in this case

21    about the sexual abuse of a child by an adult male,

22    including having the child perform oral sex on the adult

23    male and submitting to oral sex by the adult male.  Would

24    hearing that testimony make you so uncomfortable that you

25    could not serve as a fair and impartial juror in this case?

1              Could you explain that?

2              THE PROSPECTIVE JUROR:  I probably don't have very

3    much to add, other than the last question.  It just makes me

4    uncomfortable and makes me think of things that have

5    happened to me in the past.

6              THE COURT:  Yes.

7              THE PROSPECTIVE JUROR:  Yeah.  I don't have

8    anything really more specific than that.

9              THE COURT:  But as with your follow-up questions

10   to the last question, it's not pleasant hearing for anybody;

11   but would you be able -- despite your past two occasions, at

12   least that you can remember where people inappropriately

13   touched you, would you be able to listen to the evidence,

14   evaluate the credibility of the witnesses testifying --

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  -- to make a decision in this case?

17             THE PROSPECTIVE JUROR:  I could do that, yeah.

18             THE COURT:  Could you say that again?

19             THE PROSPECTIVE JUROR:  Yes.  I can do that, yes.

20             THE COURT:  All right.  And Question 36:  You may

21   hear allegations of domestic violence in this case.  Do you

22   have such strong feelings about domestic violence that

23   hearing about it could affect or would affect your ability

24   to serve as a fair and impartial juror?

25             Could you explain that?

1          THE PROSPECTIVE JUROR:  I don't have any personal

2     connection to this question.  Just that I have strong

3     feelings of discussing this topic and reading, and studying

4     about it; and I have strong feeling about it being a

5     precursor to other things, and usually not being isolated

6     incidents of just domestic violence.

7          THE COURT:  All right.  And is there something

8     about your academic study or personal interest where you

9     have read a lot about domestic violence?

10         THE PROSPECTIVE JUROR:  No formal academic study,

11    I think.  My friends work in public health settings, and we

12    discuss these topics pretty openly and frequently.

13         THE COURT:  And you understand that, if you are

14    selected to be a juror in this case, you would have to make

15    your decisions in this case based on evidence presented

16    here, your personal evaluation of the credibility of the

17    witnesses and whether they're telling the truth about what

18    they saw and heard -- or not, and that that has to be the

19    basis of your decision and not any extracurricular reading

20    you have done?

21         Do you understand that?

22         THE PROSPECTIVE JUROR:  Yes, I do.

23         THE COURT:  And would you be able to make a

24    decision here based on what you see and hear in the

25    courtroom?

```
 1                THE PROSPECTIVE JUROR:  Yes.

 2                THE COURT:  All right.  Okay.  Where do you work?

 3                THE PROSPECTIVE JUROR:  I work at George

 4     Washington University right now.

 5                THE COURT:  And how long have you done that?

 6                THE PROSPECTIVE JUROR:  Three years.  2018, yeah.

 7                THE COURT:  Okay.  And remind me, what do you do

 8     there?

 9                THE PROSPECTIVE JUROR:  I work in finance.  My

10     background is accounting -- accounting/finance background.

11                THE COURT:  All right.

12                (A bench conference was held as follows:)

13                MS. HARDEN:  I would like to strike the juror for

14     cause.  From here -- I can see the witness's body language

15     from a different perspective than the Court; she's shifting

16     her body anytime she's answering these follow-up questions.

17                I think she has expressed on three separate

18     occasions, by answering the questions, that she cannot be a

19     fair and impartial juror, so I move to strike her for cause.

20                THE COURT:  Government?

21                MS. BURRELL:  We would oppose that, Your Honor.

22                I think she clearly stated that on these three

23     topics -- child pornography, domestic violence, and child

24     sexual abuse -- she is uncomfortable hearing about that; but

25     she was unequivocal when she stated she could evaluate the
```

1    evidence fairly in this case and without drawing upon any of

2    her past experiences.  She didn't hesitate.  She didn't say,

3    "I think."  So she said very firmly, "I can."

4              MS. HARDEN:  But, Your Honor, the second set of

5    questions, which was a follow-up, she told the Court that it

6    already made her feel uncomfortable to answer the first set

7    of questions.  She answered three sets of questions; the end

8    part of the question was whether you can be fair and

9    impartial.  She said already -- when she was asked the

10   follow-up questions, she said she could not.  It's not fair

11   to Mr. Smith.  I would move to strike her for cause.

12             THE COURT:  I am not going to strike this juror

13   for cause.  I mean, I think that she has, in the follow-up

14   questions, explained or answered the way she did.  And as

15   the government says, she has very strongly and unequivocally

16   said she would base any decision on what she hears in the

17   testimony here.

18             Are there any other follow-up questions?

19             MS. HARDEN:  Yes, Your Honor.

20             I would ask the Court follow up with respect to

21   all three of these areas separately.  If she hears testimony

22   about any of these things in the trial, can you ask her

23   whether or not she thinks it would make her have a certain

24   type of reaction that would not allow her to be fair in this

25   case?

```
 1              How do I put that into a question?

 2              If you were to hear about either sexual assault or

 3      child porn -- child pornography in this case, would it tend

 4      to make you have a reaction so severe that you would not be

 5      able to be a fair or impartial juror based on what she hears

 6      in this case?

 7              THE COURT:  All right.  Any follow up from the

 8      government?

 9              MS. BURRELL:  No, Your Honor.  And we would oppose

10      asking that question.  That's what has already been asked.

11      She has already been asked if she heard testimony on these

12      topics would she still be able to evaluate the evidence

13      fairly based on her experiences; and she said yes, she

14      could.

15              THE COURT:  Okay.

16              MS. HARDEN:  No, Your Honor, she has not said

17      that.  In fact, the first question that the Court asked she

18      said no.  Upon follow-up questions, she appeared to be

19      fidgety.

20              THE COURT:  Okay.  I heard that.

21              MS. HARDEN:  Very well.  Very well.

22              (Whereupon, the bench conference concludes.)

23              THE COURT:  Okay.  Juror No. 169, if, during the

24      course of the trial, you do hear testimony about the three

25      topics we have talked about because of your checked answers
```

1    about sexual assault, domestic violence, or child

2    pornography -- do you think that your reaction to hearing

3    about that testimony is going to be so strong that it's

4    going to make it difficult for you to be fair and impartial,

5    or will you still be able to evaluate the credibility of the

6    witnesses testifying and make a decision based on that

7    evidence in this case?

8               THE PROSPECTIVE JUROR:  I think I would be able to

9    evaluate the credibility of the witness and evidence.

10              THE COURT:  Okay.  Thank you.

11              All right.  You may resume your seat outside until

12   we take our lunch break.  Thank you.

13              THE PROSPECTIVE JUROR:  Okay.  Thank you.

14              (Whereupon, the prospective juror was excused.

15   Another prospective juror enters.)

16              THE COURT:  And, Juror No. 435, please step

17   forward to the podium, and feel free to put your bag down on

18   the chair.

19              Okay.  How are you this morning?

20              THE PROSPECTIVE JUROR:  I'm fine.

21              THE COURT:  It's the afternoon already.

22              I see you have checked Nos. 12, 15, 17, 30, and

23   35, so I am just going to review those with you in order.

24              Question 12 asks about whether you, a member of

25   your family, or a close friend has studied law or been

1    employed by a law firm.

2              Could you explain that?

3              THE PROSPECTIVE JUROR:  I worked for a while --

4    until about three years ago, for two to three years -- for a

5    company that did background investigations, was employed

6    sometimes by law firms to check into the veracity of

7    people's claims during jury selection and during cases.

8              THE COURT:  Okay.  And that was two or three years

9    ago that you stopped working for that company?

10             THE PROSPECTIVE JUROR:  It was in -- not local.

11   It was in Charleston, South Carolina, until about three

12   years ago.

13             THE COURT:  Okay.  All right.  And what precisely

14   did you do at that company?

15             THE PROSPECTIVE JUROR:  We -- I did background

16   checks on people.  They would get jury pools, for example --

17   and it might be, for example, a case involving a DUI, and

18   people had indicated they had no experience with it.  And we

19   could look at social media and other background reports and

20   see whether that was true or not true.

21             THE COURT:  How did you get training to do that?

22             THE PROSPECTIVE JUROR:  I worked for 20 years at

23   *The Washington Post* as a reporter and editor.  I founded a

24   small company that employed journalists who had been laid

25   off to do this sort of work --

1          THE COURT:  I see.

2          THE PROSPECTIVE JUROR:  -- mostly for corporate

3     clients.

4          THE COURT:  I see.  And are you working for a

5     newspaper organization now?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Okay.  What are you doing for a job

8     now?

9          THE PROSPECTIVE JUROR:  My wife and I own a group

10    psychology practice with offices in D.C. and Virginia; I run

11    the operations.

12         THE COURT:  Okay.  And is there anything about

13    your past experience doing background investigation checks

14    that you think would give you expert experience in

15    evaluating the credibility of witnesses testifying at a

16    trial?

17         THE PROSPECTIVE JUROR:  We -- I have no experience

18    with any cases like this one, so I would say no.

19         THE COURT:  Okay.  Question 15 asks whether you, a

20    member of your family, or a close friend has done work for

21    any person or organization that does criminal defense work,

22    like the Federal Public Defender or the Public Defender's

23    Office or private law firms.

24         Is that basically the same answer that you gave

25    before?

1          THE PROSPECTIVE JUROR:  Yes.  Right.

2          THE COURT:  Okay.  Question 17 asks whether you, a

3     member of your family, or a close friend has ever been

4     arrested or convicted of a crime, a victim of a crime, or a

5     witness to a crime.

6          Could you explain that?

7          THE PROSPECTIVE JUROR:  Yes.  My stepson had his

8     coat stolen.  Two young men on a moped pulled up to him on

9     the street in front of our house, displayed a gun, and took

10    his coat.

11         THE COURT:  And how long ago did this happen?

12         THE PROSPECTIVE JUROR:  He was -- this was about

13    two years ago; he was 17 at the time.

14         THE COURT:  And did you have interactions with the

15    police after that?

16         THE PROSPECTIVE JUROR:  I did not.  They took him

17    to do a search of the neighborhood to see if they could find

18    them before they got out of the neighborhood.  And he filed

19    a complaint and, really, nothing came of it after that.

20         THE COURT:  Okay.  And is there anything about

21    that experience that you think would affect your ability to

22    be fair and impartial here?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Okay.  And then you also marked

25    Question 30, which asks whether you, a family member, or a

1    close friend has been a victim of sexual abuse.

2              THE PROSPECTIVE JUROR:  My ex-wife to whom I was

3    married for, like, 24 years until four years ago had been

4    abused by a nonfamily member/caregiver when she was between

5    the ages of five and eight.

6              THE COURT:  And did you have discussions with her

7    about that?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And is there -- you know, do you think

10   that that experience with your ex-wife, you think -- would

11   that have an impact on your ability to be fair and impartial

12   here and to make your decision in this case based solely on

13   the evidence presented here?

14             THE PROSPECTIVE JUROR:  I don't think so, no.

15             THE COURT:  And did you talk about the sex abuse

16   with your ex-wife frequently?

17             THE PROSPECTIVE JUROR:  Not frequently; but we did

18   talk about it, yes.

19             THE COURT:  Okay.  And how many children or

20   stepchildren do you have?

21             THE PROSPECTIVE JUROR:  I have a daughter who is

22   30, and then a stepson who I referenced earlier; he is now

23   19.

24             THE COURT:  Let me just talk to counsel for a

25   second.

```
 1                    (A bench conference was held as follows:)

 2              MS. HARDEN:  I have nothing, Your Honor.

 3              MS. SEDKY:  I would like to disclose, Your Honor,

 4       I don't know this man.  I live on the street -- he looks

 5       like he lives about three blocks -- I am on a different

 6       block on First Street.  I don't know what to do with that

 7       information.  I have never seen him before; I wanted you to

 8       know that.

 9              THE COURT:  Well, he has not identified you, so

10       we're good.

11              MS. HARDEN:  Why don't you strike him because of

12       that?  Okay.

13              MS. SEDKY:  I just wanted to let everybody know.

14              THE COURT:  Okay.  Thank you.

15              (Whereupon, the bench conference concludes.)

16              THE COURT:  All right.  Juror No. 435, you can

17       step outside and resume your seat.  Thank you.

18              THE PROSPECTIVE JUROR:  Okay.

19              THE COURT:  All right.  Ms. Gumiel, I think we're

20       going to take a break for --

21              Do you need a full hour, or can we do 45 minutes?

22              MS. HARDEN:  Please, an hour.

23              THE COURT:  An hour, okay.

24              MS. HARDEN:  I need it.  I know you're going to

25       say no; but that's how much I need, an hour.
```

```
 1                THE COURT:  I'm sorry, say that again.
 2                MS. HARDEN:  I just need an hour, please.
 3                THE COURT:  Okay.  We're going to take a break for
 4      one hour.  So if you could tell the jurors that they're
 5      excused for one hour.
 6                The jurors in Courtroom 16...
 7                THE COURTROOM DEPUTY:  They went -- they were
 8      going to go down to get lunch; they were getting hungry.
 9      Your Honor said two hours -- about two hours, so they --
10                THE COURT:  Okay.  So if you could tell certainly
11      the next ten people on the list, if you could make sure that
12      they're back here by 2 -- 1:45.
13                THE COURTROOM DEPUTY:  1:45, okay.
14                THE COURT:  So that we could start immediately.
15                I wish we could speed this up.  There is nothing
16      we can do?
17                THE COURTROOM DEPUTY:  They are sitting right
18      outside.  They move slowly.
19                THE COURT:  They move slowly.  Okay.  But then
20      other people, you know, they can come back at, like, 2:30.
21                THE COURTROOM DEPUTY:  Okay.  Very good, Your
22      Honor.
23                THE COURT:  Okay.  So we will all be excused for
24      one hour and come back at 1:45 -- or a little bit earlier
25      than 1:45 so we can move along.
```

1          MS. HARDEN:  Thank you, Your Honor.

2          (Whereupon, a luncheon recess was taken.)

3          THE COURT:  Can we bring the defendant out,

4    please?  Deputies, can we bring the defendant out, please?

5          THE DEPUTY MARSHAL:  Sure.

6          THE COURT:  I just want to put one thing on the

7    record because we've checked with Regina Larry, the jury

8    administrator, and clarified where there might have been

9    some misunderstanding about what was given to you on

10   October 7, 2021.  You were given two files.

11         MS. HARDEN:  On what?  I'm sorry.

12         THE COURT:  On October 7, 2021.

13         MS. HARDEN:  Okay, yes.  Yes.

14         THE COURT:  You were actually given two files.

15   One file contained entries for each person sent a summons

16   but who did not return a questionnaire.  That file has

17   incomplete demographics and didn't contain race information

18   for most summons recipients because we never received the

19   responses, so we don't know.

20         The other file contained entries for each juror

21   who did respond to the questionnaire; and that file

22   indicated whether each juror was deferred, disqualified,

23   excused or qualified, and included demographic information

24   on race and gender.

25         So today's venire was drawn from the group of

1      qualified jurors from that file; so as of October 7th, you

2      could see all of the demographic information.

3              MS. HARDEN:  Very well.

4              THE COURT:  Okay.

5              MS. HARDEN:  I don't know, Your Honor, if I need

6      to make any further requests.  But assuming that the

7      seven-day time period would have run starting at that time,

8      and then I would have needed to file this motion within the

9      seven days or before the jury venire panel was selected, I

10     would ask the Court allow me -- based on the information

11     that I have given the Court, and the fact that I have

12     attempted to enlist an expert -- to still allow me to have

13     the 48 hours that the Court talked about earlier to attempt

14     to prepare an affidavit in support of my motion.

15             THE COURT:  Does the government have any view?

16             MS. SEDKY:  The government doesn't object.

17             THE COURT:  The scheduling order we entered

18     earlier stands.

19             MS. HARDEN:  Very well, Your Honor.  Thank you.

20             THE COURT:  We have 10 qualified jurors.  We only

21     need 12 more -- no, 22 more.  Okay.

22             MS. HARDEN:  If only 10, Your Honor.

23             THE COURT:  Okay.  Please be seated.

24             Let's bring in the next juror, No. 234.

25             (Whereupon, a prospective juror enters.)

1           THE COURT:  Good afternoon, Juror No. 234.

2           Please stand at the lectern.  Thank you for your

3    patience.  I know it's been a bit of a long morning already.

4           THE PROSPECTIVE JUROR:  Hello.

5           THE COURT:  How are you?

6           THE PROSPECTIVE JUROR:  I am fine.  Thank you.

7           THE COURT:  Good.

8           I see you have marked Questions 9, 17, and 35; so

9    I am just going to go over those with you as promptly as

10   possible.

11          THE PROSPECTIVE JUROR:  Sure.

12          THE COURT:  9 asked whether or not it would be a

13   hardship for you if you were selected to serve on this jury.

14          Do you have something important this week or next?

15          THE PROSPECTIVE JUROR:  Well, this -- this is

16   permanent for me.  I have two grand kids.  And since I have

17   retired, I took the responsibility of getting them to school

18   and back home safely because my spouse -- she works.  Their

19   dad -- which they live with us.  Their dad, he works in

20   construction.  And since school starts at 8:15 to 3, here I

21   am.

22          THE COURT:  Well, we usually are not going to

23   start court until about 9:30, that shouldn't pose a problem

24   for you to take the kids to school in the morning.  Is there

25   an after-school program that they can be in?

1          THE PROSPECTIVE JUROR:  No.  At one time they used

2     to be in aftercare, but since -- with the pandemic, things

3     have changed.  So they weren't eligible at the time to --

4     enrollment to aftercare.

5          THE COURT:  And there is nobody else, if you are

6     selected for this jury, who can help take care --

7          THE PROSPECTIVE JUROR:  No.  I'm permanent right

8     now.  It puts a burden on my wife and my son.

9          THE COURT:  How old are they?

10         THE PROSPECTIVE JUROR:  Nine and six.

11         THE COURT:  And you don't have a neighbor --

12    nobody else you can turn to to help you if you were selected

13    for this jury?

14         THE PROSPECTIVE JUROR:  No.  I mean, the whole

15    reason why it's bad -- they came from a bad environment.

16    And so we took the responsibility and said, No, we'll take

17    them; we're going to bring them up the right way.  And

18    since -- like I said, I had just retired a year ago.  And I

19    said, Okay, I can do it.  I can manage them, get them ready

20    for school, and what have you.  Nothing took into account

21    anything like this, or anything forthcoming --

22         THE COURT:  All right.

23         (A bench conference was held as follows:)

24         MS. HARDEN:  No objection to -- I move to excuse

25    the juror for cause.  I move to excuse the juror for cause.

1          MS. BURRELL:  The government would join.  I don't

2     really know what else to do with this information.

3          THE COURT:  I will go ahead and grant it.  He is

4     not particularly flexible about finding an alternative.

5          MS. HARDEN:  Thank you, Your Honor.

6          (Whereupon, the bench conference concludes.)

7          THE COURT:  All right.  Juror 234, I will excuse

8     you.  I do hope that in the future you will be able to

9     perform this civic duty of doing jury service, but I will

10    excuse you now.  You can leave the courtroom --

11         THE PROSPECTIVE JUROR:  Okay.  Thank you.

12         THE COURT:  -- and the courthouse.

13         THE PROSPECTIVE JUROR:  Right.  So I need -- I

14    have spoken to my wife.  It's something we have to talk

15    about because we don't have a contingency plan.

16         THE COURT:  You need a contingency plan.

17         THE PROSPECTIVE JUROR:  Right.  Exactly.  Because

18    the neighborhood -- I wouldn't trust -- you know, you will

19    see why; it leads to another answer that I respond to.

20         THE COURT:  Well, I am going to excuse you before

21    we get to that.

22         THE PROSPECTIVE JUROR:  Oh, okay.

23         THE COURT:  Thank you.

24         THE PROSPECTIVE JUROR:  All right.  Thank you.

25         (Whereupon, the prospective juror was excused.)

```
 1              THE COURT:  Okay.  We're taking somebody out of
 2    order -- Line 29, Juror No. 260 -- who is crying because her
 3    son is having a breakdown at school.  She needs to talk to
 4    me to be excused, so we're going to take her out of order.
 5              All right.  Please bring her in.  I can't have a
 6    crying juror.
 7              MS. HARDEN:  The number again, please?
 8              THE COURT:  No. 260.
 9              (Whereupon, a prospective juror enters.)
10              THE COURT:  Hello, Juror No. 260.
11              Please stand at the lectern.  You can -- please,
12    put your bag down so you can be more comfortable.
13              I understand that you are having an issue where
14    your son needs to be picked up from school.
15              Can you explain that?
16              THE PROSPECTIVE JUROR:  So he's -- this weekend he
17    just came -- he is having these mental problems, and it's
18    not good, and we're in the midst of getting a psychiatric
19    appointment.  He went off to school today, and he was very
20    upset.  And he called into the counseling office, and he's
21    like:  I am sitting here alone, I am going home after
22    school.  Normally, he has crew practice.  And when he is
23    with people, it's like -- this all kind of happened on
24    Thursday.  He has a therapist; he's gone on and off.  And
25    he's like -- you know, he has been having some suicidal
```

1      thoughts.  He is like he is okay; we're going to get to see

2      a psychiatrist.  You know, when he's doing things, he is

3      fine; that's, like, the time he's great, like all is great.

4              But he is a senior, and he's applying for college.

5      And all of this kind of snowballed in the last two weeks,

6      and we didn't know about it.  And he seemed okay going to

7      school Friday, he was good over the weekend; we were working

8      on his work.  And then this morning he was just breaking

9      down, crying.

10             And I called in and tried to talk to the school

11     clerk's office, and they said:  You have to wait until he

12     talks to us.  And it's just -- he called when I was at

13     lunch.  And he said:  I am in the counselor's office, and I

14     think I am just going to go home after school.  I just don't

15     want him home alone.

16             THE COURT:  I understand.  And is this the first

17     time you think that he has been having suicidal ideations?

18             THE PROSPECTIVE JUROR:  Yes.  He says he's been

19     having it, like, since the end of the summer, and he just

20     didn't want to worry us, and all this stuff; and so he

21     finally came to us and he was just really upset.  He had one

22     session with his therapist that he had had a while ago just

23     when he was having trouble with social stuff and --

24             THE COURT:  Okay.  Let me just talk to the

25     lawyers.

```
 1                  (A bench conference was held as follows:)
 2                  MS. HARDEN:  Your Honor --
 3                  THE COURT:  Do I have a motion?
 4                  MS. HARDEN:  I move to strike her for cause.
 5                  MS. BURRELL:  We join.
 6                  THE COURT:  I will do that.
 7                  (Whereupon, the bench conference concludes.)
 8                  THE COURT:  Okay.  Juror No. 260, you are excused.
 9      You can leave the courthouse.  You don't have to come back.
10      And good luck with your son.
11                  THE PROSPECTIVE JUROR:  Thank you.  And do I have
12      to keep calling in?
13                  THE COURT:  Please talk to Ms. Gumiel; she knows
14      better what the needs are of the jury office.  Thank you.
15                  THE PROSPECTIVE JUROR:  Okay.  Thank you.
16                  (Whereupon, the prospective juror was excused.)
17                  MS. HARDEN:  Your Honor, may I have the husher for
18      a moment?  The husher.
19                  THE COURT:  Do you want me to put the husher on?
20                  MS. HARDEN:  Yes.
21                  (Whereupon, counsel confer.)
22                  MS. HARDEN:  Thank you, Your Honor.
23                  THE COURT:  Where is Juror 595?
24                  THE COURTROOM DEPUTY:  Your Honor, there is
25      another problem, 0135.
```

```
1              THE COURT:  0135.  What number?

2              THE COURTROOM DEPUTY:  It's Line No. 35.

3              (Whereupon, the Court and staff confer.)

4              THE COURT:  Okay.  I have a juror -- Juror 0135,

5     Line No. 35, is having a panic attack.  I think we're going

6     to take that person out of order because I don't want the

7     rest of the jurors --

8              MS. HARDEN:  Yes.

9              THE COURT:  -- implicated or seeing this --

10             MS. HARDEN:  Do we need to say this to you for the

11    record because most of the jurors that we are having

12    problems with, I don't have any objection if the Court

13    excuses them.

14             Do we need to make a motion?  Is that procedurally

15    how this needs to work?

16             THE COURT:  Procedurally, I want a motion.  It

17    doesn't always have to be from you but, you know, I want a

18    clear position so that the record is absolutely clear who is

19    staying, who is going, and why.

20             MS. HARDEN:  Very well.

21             THE COURT:  So let's bring the person in.

22             (Whereupon, a prospective juror enters.)

23             THE COURT:  Okay.  Juror No. 135, please stand at

24    the podium.

25             Ms. Gumiel, could you please give me his paper --
```

1      his questionnaire.

2              And, Juror No. 135, I understand you are having a

3      bit of an issue.  Do you want to explain that to me?

4              THE PROSPECTIVE JUROR:  Yes, Your Honor.

5              In regard to the question about sexual assault, I

6      was sexually assaulted when I was 22.  And trying to think

7      about this question and to be prepared to talk about it is

8      proving kind of difficult.

9              THE COURT:  Are you breaking out in hives?  I see

10     you are itching a lot.

11             THE PROSPECTIVE JUROR:  I mean, it's just sort of

12     a rare response that I have to stress.

13             THE COURT:  To stress, all right.

14             Do you feel like you are feeling a little panicky?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And because of this prior experience

17     and how you're reacting just to hearing about the case, is

18     this something that is going to be difficult for you to

19     maintain your attention to the evidence and participate as a

20     juror in this trial if you are selected?

21             THE PROSPECTIVE JUROR:  If -- that's how it feels.

22     Like when -- when you were going through the particulars of

23     the case, I was having trouble staying at attention when you

24     were discussing any of the -- you know, any of the questions

25     related to the case specifically were sort of difficult to

```
 1    stay on --

 2              THE COURT:  Yes.  Well, I can tell from looking at

 3    you that you are very nervous and very uncomfortable.

 4              Let me just talk to the lawyers.

 5              (A bench conference was held as follows:)

 6              THE COURT:  Do I have a motion?

 7              MS. SEDKY:  The government moves to strike.

 8              MS. HARDEN:  The defense agrees.

 9              THE COURT:  For cause?

10              MS. HARDEN:  I don't know that we should say

11    exactly, but we agree to strike the juror for cause.

12              THE COURT:  Okay.  Thank you.

13              (Whereupon, the bench conference concludes.)

14              THE COURT:  Okay.  Juror No. 135, thank you for

15    coming today.  I'm sorry this has been an upsetting

16    experience for you.  And I will excuse you so that you do

17    not have to continue with this difficult experience.

18              THE PROSPECTIVE JUROR:  Okay.  Thank you.

19              THE COURT:  You may leave the courthouse.

20    Thank you.

21              THE PROSPECTIVE JUROR:  Thank you.

22              (Whereupon, the prospective juror was excused.

23    Another prospective juror enters.)

24              THE COURT:  Good afternoon, Juror No. 595.

25              THE PROSPECTIVE JUROR:  Yes.
```

1          THE COURT:  Please put your bag down so you can

2    stand more comfortably, it looks pretty heavy.

3          THE PROSPECTIVE JUROR:  Thank you.

4          THE COURT:  How are you this afternoon?

5          THE PROSPECTIVE JUROR:  I am good.  How are you?

6          THE COURT:  I am good.

7          All right.  I see you've marked Questions 12 and

8    17; I am just going to review those with you in order.

9          12 asked whether you, a member of your family, or

10   a close friend has ever been employed by a local, state, or

11   federal law enforcement agency.

12          Could you explain that?

13          THE PROSPECTIVE JUROR:  I may have done that

14   wrong.  I think that question was meant for the practicing

15   law question.

16          THE COURT:  Oh.  You know what, I read Question 13

17   as opposed to 12; you are absolutely right.

18          THE PROSPECTIVE JUROR:  Okay.

19          THE COURT:  So 12 is whether you or a family

20   friend or -- family or friend has worked in the law.

21          THE PROSPECTIVE JUROR:  Sure.  Sure.  Yeah.  I

22   have a close friend that is in law school now.

23          THE COURT:  Okay.  And what year?

24          THE PROSPECTIVE JUROR:  I'm sorry?

25          THE COURT:  What year of law school?

1    THE PROSPECTIVE JUROR:  I believe third year.

2    THE COURT:  Okay.  And do you talk to your friend

3    about their legal work or their summer job as a lawyer?

4    THE PROSPECTIVE JUROR:  No.

5    THE COURT:  No.

6    THE PROSPECTIVE JUROR:  No, not often.

7    THE COURT:  So that -- having a friend in law

8    school wouldn't have any affect on your service as a juror

9    here?

10   THE PROSPECTIVE JUROR:  No.

11   THE COURT:  Okay.  And then you also marked 17,

12   whether you, a member of your family, or a close friend has

13   ever been arrested, convicted of a crime, a victim of a

14   crime, or a witness to a crime, or testified in court.

15   Could you explain that?

16   THE PROSPECTIVE JUROR:  Yes.  So a close friend of

17   mine was a victim of an assault in D.C. several months ago,

18   and a cousin was convicted of some drug offenses several

19   years ago.

20   THE COURT:  Do you know what kind of drugs?

21   THE PROSPECTIVE JUROR:  I believe marijuana.

22   THE COURT:  Okay.  And where was that conviction?

23   THE PROSPECTIVE JUROR:  That was in Pennsylvania.

24   THE COURT:  Were you very close to your cousin?

25   THE PROSPECTIVE JUROR:  No.

1          THE COURT:  And have you talked to your cousin

2     about that experience?

3          THE PROSPECTIVE JUROR:  I have not, no.

4          THE COURT:  I'm sorry.  Say that again.

5          THE PROSPECTIVE JUROR:  I have not, no.

6          THE COURT:  You have not.  And when your cousin

7     was going through the experience of the legal process

8     leading up to the conviction, did you provide support to the

9     cousin or have any conversations with the cousin about it?

10          THE PROSPECTIVE JUROR:  No, not really.  I really

11     haven't engaged him at all kind of on this; it's kind of a

12     loose family cousin.

13          THE COURT:  I see.

14          Okay.  And with respect to your friend who was a

15     victim of an assault, have you provided support or had

16     conversations with your friend about that experience?

17          THE PROSPECTIVE JUROR:  A little bit.  Just after

18     it happened, making sure that he was okay.

19          THE COURT:  All right.  And did your friend

20     express to you any experiences with law enforcement during

21     the course of that event?

22          THE PROSPECTIVE JUROR:  Not really, no.

23          THE COURT:  Okay.  And is there anything about

24     that experience or your experience with your cousin that you

25     think would have an impact on your ability to be fair and

1    impartial in this case?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  All right.  What do you do for a

4    living?

5              THE PROSPECTIVE JUROR:  I work for the federal

6    government, for the Department of Defense.

7              THE COURT:  Department of Defense.  And what do

8    you do for DoD?

9              THE PROSPECTIVE JUROR:  I manage foreign military

10   sales programs with foreign countries.

11             THE COURT:  You mean selling foreign countries

12   our --

13             THE PROSPECTIVE JUROR:  Yes, arms.

14             THE COURT:  -- arms, missiles?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Got it.  And how long have you done

17   that?

18             THE PROSPECTIVE JUROR:  In my current role, about

19   two years, but I have been in that business for about five

20   or six.

21             THE COURT:  All right.  Okay.  One second.

22             (A bench conference was held as follows:)

23             MS. HARDEN:  Can the Court ask him what he did --

24   can the Court ask him what he did prior to his service at

25   DoD?

```
 1                 THE COURT:  Okay.  Any other follow up?
 2                 MS. BURRELL:  Not from the government.
 3                 (Whereupon, the bench conference concludes.)
 4                 THE COURT:  And prior to your service at DoD, what
 5    did you do?
 6                 THE PROSPECTIVE JUROR:  I was a DoD contractor.
 7                 THE COURT:  Doing, basically, the same thing?
 8                 THE PROSPECTIVE JUROR:  Doing, basically, the same
 9    thing, since graduating college.
10                 THE COURT:  Okay.  What did you study in college?
11                 THE PROSPECTIVE JUROR:  International terrorism.
12                 THE COURT:  I see.  Okay.
13                 Thank you.  You may have a seat outside.
14                 THE PROSPECTIVE JUROR:  Okay.  Thank you.
15                 (Whereupon, the prospective juror was excused.
16    Another prospective juror enters.)
17                 THE COURT:  And, Juror 091, could you please come
18    stand at that podium.
19                 No, no.  Do you see the standing lectern right
20    there?  Here, just follow my finger.  There you go.
21                 How are you this afternoon?
22                 THE PROSPECTIVE JUROR:  Doing good, Your Honor.
23    How are you doing?  Good?
24                 THE COURT:  I am good.  Thank you for asking.
25                 I see you have marked Questions 12, 13, 17, and
```

1    you have some scribbles down on 18; so I will just review

2    that with you.  30, 33 -- and 34 is a maybe.  So I am just

3    going to start with 12 --

4              THE PROSPECTIVE JUROR:  Sure.

5              THE COURT:  -- which asked whether you, a member

6    of your family, or a close friend have ever studied law or

7    worked in a law environment.

8              THE PROSPECTIVE JUROR:  I have a friend who is an

9    attorney.  I think he's is self-employed, but he has a JD

10   from American and has done bankruptcy cases previously, I

11   believe.

12             So, Your Honor, the question in which there was

13   detailed numeration of the agencies which are defined as

14   having law enforcement.

15             THE COURT:  No.  That was the next one.

16             THE PROSPECTIVE JUROR:  That was the next one,

17   okay.

18             THE COURT:  So with respect to your friend who --

19             THE PROSPECTIVE JUROR:  So -- and, also, my

20   cousin, with whom I hardly speak, is an ADA in the Bronx,

21   and has been for some years.

22             THE COURT:  A cousin, okay.  And you say you

23   hardly speak to your cousin who is an ADA.  But is there

24   anything about the fact that you have a cousin who is an ADA

25   that you think might affect your ability to be fair and

1    impartial here?

2              THE PROSPECTIVE JUROR:  Absolutely not, Your

3    Honor.

4              THE COURT:  Okay.  So let's move on to 13, which

5    is whether you, a member of your family, or a close friend

6    has been employed by a local, state, or federal law

7    enforcement agency.

8              Could you explain that?

9              THE PROSPECTIVE JUROR:  Sure.  And this may be a

10   case -- excuse me -- of my inadvertently driving the scope

11   of the question.

12             So there are two instances:  One is that one

13   summer, in graduate school, I worked as a summer intern at

14   the Oklahoma Department of Environmental Quality which, as a

15   state agency, does have regulatory authority -- as just an

16   intern, I don't know the details -- but we did have lawyers.

17   And part of my responsibility was to go around to various

18   courthouses -- various county courthouses throughout the

19   state of Oklahoma obtaining deed -- I forget the term, the

20   deed -- the documents that require specific land use

21   practices to be performed for environmental reasons on

22   various pieces of land, such as a dry cleaner, needing to

23   keep X percent of the vicinity of the store paved because of

24   hazardous chemicals.

25             THE COURT:  Right.

1          THE PROSPECTIVE JUROR:  And part of my task was to

2     write a report basically answering all of these deed

3     restrictions being followed, and that was to inform

4     leadership.  I don't know what happened as a result of

5     the --

6          THE COURT:  Okay.

7          THE PROSPECTIVE JUROR:  The second is -- although

8     I do not work for the CIA, I do work for the intelligence

9     community.  I do not do anything with domestic intelligence;

10    I am not FBI.  And so, I mean, I don't handle anything in

11    the United States that would be a violation of federal

12    law -- if I wanted to.  But I just answered that partly

13    since I figured CIA, intelligence community may be

14    considered something for the purpose of the question.

15         THE COURT:  Okay.  All right.  And is there

16    anything about your current job that involves enforcement of

17    U.S. law abroad?

18         THE PROSPECTIVE JUROR:  Absolutely not, Your

19    Honor.

20         THE COURT:  Okay.  And can you think of anything

21    about your current job that would have an affect on your

22    ability to be fair and impartial in this case?

23         THE PROSPECTIVE JUROR:  Nothing based on my daily

24    duties, Your Honor.  I work a different part of the world.

25    I -- as an analyst, I do have reporting responsibilities to

1    the higher-ups, but such reporting is, again, only on

2    various foreign overseas assets.

3              THE COURT:  Okay.

4              THE PROSPECTIVE JUROR:  And I have mandatory

5    annual training that I must perform on -- on whistleblowing,

6    IC awareness, as well as policies regarding U.S. persons if,

7    indeed, they get caught up in anything that I may do.

8              THE COURT:  Okay.  Thank you.

9              And then 18, you sort of said no; but it looks

10   like you were a little concerned, so I am just going to

11   review No. 18 with you --

12             THE PROSPECTIVE JUROR:  I appreciate it.

13             THE COURT:  -- which asks:  Do you, a family

14   member, or any close friend belong to any organizations or

15   volunteer groups whose mission is to prevent crime, assist

16   law enforcement, assist or support victims of crime, or

17   address past or present abuse of children by family,

18   teachers, or persons in a position of trust with children?

19             THE PROSPECTIVE JUROR:  Okay.  On that one, I had

20   meant -- I had gotten the numbers mixed up.  I had meant the

21   answer I just gave to the previous question.

22             THE COURT:  Okay.

23             THE PROSPECTIVE JUROR:  That was to apply to that,

24   so I apologize.

25             THE COURT:  No, that's okay.

1          All right.  And Question 30, which is:  Have you,

2     a family member, or a close friend ever been the victim of

3     sexual abuse?

4          THE PROSPECTIVE JUROR:  Yes.  This may be a bit

5     painful, so I apologize.

6          THE COURT:  It's all right.  Take your time.

7          THE PROSPECTIVE JUROR:  I have not told anyone

8     this before.  When I was in graduate school, on a snowy day

9     I helped someone carry in his groceries.  The person invited

10    me in, and we talked a bit -- excuse me, I'm just adjusting

11    my mask -- and then suddenly I felt his hand in between my

12    genitals; and I did a double-take.  I -- I didn't run

13    because I was shocked.  It started again.  I snapped back.

14          He said, Oh, too aggressive.  I said, Yes.

15          What's your name?  I gave him a fake name, and got

16    the heck out of there.

17          He gave me his name and address.  His name was

18    also a fake name.

19          I didn't report it because I didn't know what was

20    going on.  I didn't know if this was technically a crime

21    under federal or Oklahoma statutes.  Maybe he felt because

22    he had touched me first and I didn't run away that I was

23    giving consent; I don't know.

24          My point is, that is why I indicated it.  And,

25    again, I have not told anybody including my parents.

1                    The second case is --

2                    THE COURT:  And how old were you?

3                    THE PROSPECTIVE JUROR:  How old was I?  I was an

4       adult.  I was 25-ish, give or take.  25 to 28, I'd say.

5                    THE COURT:  Okay.

6                    THE PROSPECTIVE JUROR:  And this adult was a male;

7       I don't know if that matters.  I know it was an older male.

8       He claimed he was a retired psychiatrist from the San

9       Francisco Bay area.

10                   The other case -- again, I don't know if this was

11      a crime, per se, I just didn't want to get wrapped up into

12      it -- is, I had a friend who conned me out of money claiming

13      his car broke down.  I did a search on the Oklahoma court

14      website and found that he had been arrested various times on

15      more than one occasion for, I guess, defrauding.  And there

16      was a special -- I don't know if it's extenuating

17      circumstance or a law in Oklahoma -- they said defrauding

18      senior citizens.

19                   And it ended up being -- he had told me that he

20      had been -- gotten -- gotten high on painkillers.  He

21      literally fell off a hill while doing psychology research in

22      Costa Rica, and they -- then they stuffed him with

23      painkillers; and -- yeah, he didn't go back to what he was.

24      And I thought, okay, he told me he was over it.  He was over

25      it.  I gave him a few bucks and a place to sleep that night.

1    And then I came back the next morning to his house to check

2    on him, as a good friend, and his parents said yes,

3    that's -- basically, you don't want to get involved with

4    this; stay away for your own protection.  We know you are a

5    good friend, do not get wrapped up.

6              I don't know what he did with the money.  He could

7    have gone to Burger King.  I think he was using it to buy

8    prescription drugs illegally in my vicinity.

9              Again, I don't know if that's officially what is

10   meant as a "crime" in this case.  I thought it would be

11   important, in the interest of transparency, to direct the

12   Court's attention.

13             THE COURT:  Okay.  Well, I thank you for telling

14   me about that -- and being thorough in explaining these

15   prior situations.

16             Having been in a situation where somebody

17   inappropriately touched you without your consent, do you

18   think that that would have an affect on your ability to be

19   fair and impartial in this case, or could you evaluate the

20   evidence and make a decision in this case based solely on

21   the evidence presented here?

22             THE PROSPECTIVE JUROR:  I trust my ability to make

23   a decision based on the evidence --

24             THE COURT:  Okay.

25             THE PROSPECTIVE JUROR:  -- while understanding, of

1    course, the gravity and significance of such -- of such a --

2    of such a crime.  I will phrase it that way.

3            THE COURT:  Okay.  And you also marked 33.  That

4    says:  You may hear testimony in this case that the child

5    does not immediately disclose her allegation of sexual

6    abuse.  Would hearing about delayed disclosure of sexual

7    abuse affect your ability to serve as a fair and impartial

8    juror in this case?

9            THE PROSPECTIVE JUROR:  My answer -- apologies to

10    the Court.  My answer is based on, I guess, a technicality;

11    so I wasn't sure about needs for answering it.

12            To me it would make a difference if the minor is 4

13    or 5 or elementary school versus a minor -- if that person

14    is 16 or 17; that was the pure reason why I wrote yes,

15    because that differentiation would be -- I would -- I would

16    consider it based on the circumstances and based on the

17    evidence.

18            THE COURT:  But you would evaluate the credibility

19    and the circumstances of the situation based on all of the

20    evidence you have heard before you in this case?

21            THE PROSPECTIVE JUROR:  I would -- I would

22    evaluate based on the totality of the evidence understanding

23    that if the victim is much younger in age versus closer to

24    adulthood I may be taking credibility with just a little bit

25    of skepticism.  I am not saying I would ignore it.  I am not

1    saying I wouldn't wholeheartedly jump at it.  I am just

2    saying I would consider it differently than I would for

3    someone younger.

4              THE COURT:  Okay.  And then you put a "maybe" next

5    to Question 34.  And 34 says:  Do you have any specialized

6    training or knowledge of computers, computer programming,

7    social media and social networking, cellular telephones and

8    their functionality, or computer or cellular telephone

9    analysis and forensics?

10             Could you explain what your specialized training

11   or knowledge is?

12             THE PROSPECTIVE JUROR:  Absolutely.

13             My degree is in Earth science, physical

14   oceanography and geography, hydrology.  But I have taken

15   courses over the lab, read various books concerning computer

16   security simply because, as a federal employee -- you know,

17   just we get told about it every single day.  But being aware

18   of not just what we can and can't do, but I need to

19   understand why something is the way it is or else I am going

20   to be confused and not understand -- understand what I am

21   supposed to be doing.

22             And as such -- so I have a back -- a bit of a

23   background in the mathematical underpinnings of phone

24   technology, of the handshake between a phone and of various

25   wireless carriers, an understanding of computers, security

1    bases, based on prime numbers, based on my -- based on

2    division, number theories, and majors.

3              I wouldn't call myself an expert on it; but if

4    someone were to start talking about public key encryption on

5    the web, I would understand it completely.  They need to be

6    able to draw out the process.

7              Computer programming, again -- I mean, one of the

8    skills I have to have is computer programming; I have taken

9    some courses in it.

10             Am I an expert programmer?  No.  Do I consider

11   myself a programmer?  No.  But, yes, I have programmed in a

12   few different languages for work and just for general

13   knowledge, through school, in order to get through.

14             THE COURT:  Okay.  Thank you.

15             All right.  Let me just hear from the lawyers.

16             THE PROSPECTIVE JUROR:  Apologies if that was a

17   little too much.  I just wanted to --

18             THE COURT:  It's all right.

19             (A bench conference was held as follows:)

20             MS. HARDEN:  I would like to strike the juror for

21   cause.

22             THE COURT:  Okay.  Why is that?

23             MS. HARDEN:  Your Honor, I think -- based on the

24   witness's answers, they weren't really responsive to the

25   Court.  His questions -- there were several times the

1   witness answered things outside of it, the Court's question.

2   Specifically, when it came to the question of the delayed

3   disclosure of abuse, I am not clear that he either

4   understands the question or the answer was responsive based

5   on the fact that --

6          THE COURT:  It's a bad question.

7          MS. HARDEN:  Definitely not a bad question.

8          Your Honor, I think at this juncture I move to

9   strike the juror for cause.

10         THE COURT:  What's the government's position?

11         MS. BURRELL:  We join.

12         And an additional basis for the motion is it

13  appears he, essentially, has a bias towards an older child

14  who made a delayed disclosure, that he would start out with

15  a skepticism towards that child.

16         MS. HARDEN:  I wasn't clear.  Based on the answer,

17  Your Honor, I just wasn't clear.  He seemed to say he would

18  evaluate that.

19         But, again, I think that the way in which --

20  consistent with the other juror that I moved to strike on

21  the same basis, I am just not clear -- based on some of the

22  rambling bases of the answers -- that he is able to

23  understand and/or answer the Court's question, which would

24  go along with following the Court's instructions as it

25  relates to this case as well.

```
 1              THE COURT:  All right.  I have a for-cause motion
 2    from both sides for different reasons, I think; but I will
 3    grant the motion because, for the record, I do think that
 4    he -- there is something a little off about this juror in
 5    terms of his responses to questions.  I will grant the
 6    motion.
 7              (Whereupon, the bench conference concludes.)
 8              THE COURT:  All right.  Juror No. 091, thank you
 9    so much for coming today and for the completeness of your
10    answers.  And I know some of them were not easy to answer.
11    I am going to excuse you, and you may leave the courthouse.
12    Thank you very much.
13              THE PROSPECTIVE JUROR:  Thank you, Your Honor.
14              I appreciate your taking the time to really listen
15    to my thoughts and long answers.
16              THE COURT:  Thank you.
17              THE PROSPECTIVE JUROR:  No problem.
18              Have a nice day.
19              THE COURT:  You are excused.  You have a nice day,
20    too.
21              THE PROSPECTIVE JUROR:  Thank you.
22              (Whereupon, the prospective juror was excused.
23    Another prospective juror enters.)
24              THE COURT:  Juror No. 981, I hope.
25              THE PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  Please come stand at the lectern.  And
 2    feel free to put your belongings down on the chair or on the
 3    floor, whichever you prefer.
 4              How are you this afternoon?
 5              THE PROSPECTIVE JUROR:  All right.  How are you?
 6              THE COURT:  I'm good.  Thank you very much for
 7    your patience.  I know it's been a long day already.
 8              I see you have marked Questions 8, 12, 17, and 30.
 9    Starting with Question 8, which asks:  Do you recognize
10    other members of the prospective jury panel?
11              Well, who do you recognize?
12              THE PROSPECTIVE JUROR:  I actually recognize you,
13    Your Honor.  I work for the Administrative Office of the
14    U.S. Courts.
15              THE COURT:  Oh, okay.
16              THE PROSPECTIVE JUROR:  So I give chief judge
17    orientations, and that kind of thing.
18              THE COURT:  Oh, my God.  That was a long time ago.
19              THE PROSPECTIVE JUROR:  Okay.  An introduction,
20    yes.
21              THE COURT:  Okay.  Well, I didn't recognize you,
22    but I am horrible with faces.  Okay.  Well, great.
23              THE PROSPECTIVE JUROR:  Like I said, we have met.
24              THE COURT:  Okay.  So we have met.  I'm sorry I
25    don't remember.
```

1        THE PROSPECTIVE JUROR:  No, no, no.

2        THE COURT:  Anybody else?

3        THE PROSPECTIVE JUROR:  No.

4        THE COURT:  Okay.  Good.

5        Did we have a lot of conversations?

6        THE PROSPECTIVE JUROR:  No.

7        THE COURT:  Embarrass me, go ahead.

8        THE PROSPECTIVE JUROR:  No.  You know, this is one

9   of those days where you saw probably 50, 60 AO employees.

10        THE COURT:  Okay.  Yes, probably.

11        THE PROSPECTIVE JUROR:  Yeah.

12        THE COURT:  Okay.  Well, thank you for sharing

13   that.

14        Okay.  And then 12, you -- whether you, a member

15   of your family, or a close friend have studied law or been

16   employed by a lawyer or in a legal environment.

17        So you work at the AO?

18        THE PROSPECTIVE JUROR:  I work at the AO, yes.

19        THE COURT:  Okay.  All right.  What precisely is

20   your job at the AO?

21        THE PROSPECTIVE JUROR:  I am Lee Ann Bennett's --

22   the deputy director's chief of staff.

23        THE COURT:  Okay.  But you are not a lawyer

24   yourself?

25        THE PROSPECTIVE JUROR:  I am not.

1          THE COURT:  Okay.  And is there anything about the

2     fact that you work around judges all the time -- and

3     lawyers, that you think would make it difficult for you to

4     be a fair and impartial juror in this case?

5          THE PROSPECTIVE JUROR:  No.  I don't think so.

6          THE COURT:  Okay.  And then Question 17 is whether

7     you, a member of your family, or any close friend has ever

8     been arrested or convicted of a crime, been a victim of a

9     crime, or a witness to a crime, or testified in court or

10    before a grand jury?

11         THE PROSPECTIVE JUROR:  So yes, in terms of victim

12    of a crime.  I have had my house broken into a couple of

13    times and a car broken into, that kind of thing.

14         THE COURT:  All in D.C.?

15         THE PROSPECTIVE JUROR:  Not all in D.C., but some,

16    yes.

17         THE COURT:  Okay.

18         THE PROSPECTIVE JUROR:  And I did testify before a

19    grand jury in D.C. Superior Court probably six or seven

20    years ago.

21         THE COURT:  Okay.  And this was because of being a

22    witness to a crime?

23         THE PROSPECTIVE JUROR:  Yeah.  I was like a 9-1-1

24    caller.

25         THE COURT:  Okay.  And in connection with that

1   grand jury testimony you had interactions with the police

2   and/or Assistant U.S. Attorneys?

3           THE PROSPECTIVE JUROR:  Police mostly, and a

4   little bit with Assistant U.S. Attorneys, yes.

5           THE COURT:  And do you know what happened as a

6   result of your grand jury testimony?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  Okay.  You were never called to

9   testify at trial?

10          THE PROSPECTIVE JUROR:  No, I was not.

11          THE COURT:  And what kind of crime were you

12  testifying about?

13          THE PROSPECTIVE JUROR:  There was a shooting, said

14  somebody was shot sort of on the street outside of the

15  house.

16          THE COURT:  Did you see the shooting?

17          THE PROSPECTIVE JUROR:  No.  I saw it afterwards,

18  though.  And so --

19          THE COURT:  And were you satisfied with the

20  conduct of the law enforcement and prosecutors in that case?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  All right.  And is there anything

23  about that experience that you think would have an impact on

24  your ability to be fair and impartial in this case?

25          THE PROSPECTIVE JUROR:  No.  I don't think so.

1           THE COURT:  Okay.  You also marked No. 30, which

2    says -- asked whether you, a family member, or a close

3    friend has been a victim of sexual abuse.

4           THE PROSPECTIVE JUROR:  Right.  So my fiancée was

5    a victim, both as a child and as an adult, of sexual

6    assault.

7           THE COURT:  Of sexual assault?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  And how old was she when it happened

10   when she was a child?

11          THE PROSPECTIVE JUROR:  I am not certain.  I think

12   she was probably around 10 when she was a child, and then

13   she was probably around 25 as an adult.

14          THE COURT:  And have you talked about both of

15   those experiences with her?

16          THE PROSPECTIVE JUROR:  Not in detail, but yes.

17          THE COURT:  And do you know that -- the

18   circumstances of the sexual assault when she was a child?

19          THE PROSPECTIVE JUROR:  Only that it was a

20   caregiver.  I don't really know --

21          THE COURT:  It was a what?

22          THE PROSPECTIVE JUROR:  A caregiver.

23          THE COURT:  A caregiver.

24          THE PROSPECTIVE JUROR:  Like a babysitter.  I

25   don't know exactly what happened and how things got all

1    sorted out.

2           THE COURT:  And did both of these -- well,

3    certainly the incident when she was a child happened before

4    you knew her.  But the other sexual assault, when she was 24

5    I believe you said, were -- did you know her then?

6           THE PROSPECTIVE JUROR:  Before -- before I knew

7    her.

8           THE COURT:  Before you knew her, okay.

9           And having talked to a loved one about those

10   experiences, do you think that that could have an impact on

11   whether you could be fair and impartial in this case?

12          THE PROSPECTIVE JUROR:  I suppose it could.  You

13   know, I mean, it's just something that you are aware of.

14   But I think --

15          THE COURT:  Well, do you have any question in your

16   own mind whether you could follow my instruction to make a

17   decision in this case based solely on the evidence presented

18   in this case?

19          THE PROSPECTIVE JUROR:  I could definitely follow

20   your instruction and go by the evidence in this case.

21          THE COURT:  And make a decision -- sorry.  Do you

22   have any concern that you would be unable to make a decision

23   in this case based on your evaluation of the credibility of

24   the witnesses who are testifying in this case?

25          THE PROSPECTIVE JUROR:  If I understand correctly,

1    I would be able to base my decision or my input on what I

2    see in this case from the witnesses and my assessment of

3    their credibility.

4              THE COURT:  Okay.  And how long have you worked at

5    the AO?

6              THE PROSPECTIVE JUROR:  Almost 20 years.

7              THE COURT:  Okay.  Give me one second.

8              (A bench conference was held as follows:)

9              MS. HARDEN:  Thank you, Your Honor.

10             Could the Court follow up and ask him, What is in

11   your mind that you thought -- that you would be thinking

12   about with respect to your fiancée's sexual assault

13   vis-a-vis this case?

14             THE COURT:  I am not going to ask him that.  I

15   have already followed up with two different questions.

16             MS. HARDEN:  Very well.

17             THE COURT:  Does the government have anything?

18             MS. BURRELL:  No, Your Honor.

19             MS. HARDEN:  I have nothing further.

20             (Whereupon, the bench conference concludes.)

21             THE COURT:  Well, thank you, Juror 981.  You can

22   resume your seat outside.

23             THE PROSPECTIVE JUROR:  Thank you.

24             (Whereupon, the prospective juror was excused.)

25             MS. HARDEN:  Your Honor, with respect to the way

1    in which the jurors are being asked questions by the Court,

2    sometimes you will ask them if they can fairly evaluate

3    something and sometimes the Court asks whether they can

4    follow your instructions.  If I were asked that by the

5    Court -- if I could follow your instruction, I would say

6    yes.  I think every person who is asked that is going to say

7    yes.

8              So I would just ask the Court to consider asking

9    the person -- when the Court is following up about it in

10   that way, the Court ask:  Can you fairly evaluate -- rather

11   than asking if they can follow your instruction.  The

12   intended question, I think, is a problem.  I think they're

13   going to answer in the affirmative where they may otherwise

14   feel hesitant in some way.  That's the problem, Your Honor.

15             THE COURT:  All right.  Well, I ask it in

16   different ways; but I think people have been pretty honest

17   if they can follow my instructions or not.

18             MS. HARDEN:  Sure.  Thank you, Your Honor.

19             THE COURT:  Okay.  Let's bring the next person in.

20             (Whereupon, a prospective juror enters.)

21             THE COURT:  All right.  Juror 743, please come

22   stand at the lectern.

23             How are you this afternoon?

24             THE PROSPECTIVE JUROR:  Fine, thanks.

25             THE COURT:  If you want to take your bag off, you

1    are welcome to.  If you want, you can put it on the chair or

2    whatever you want.

3              THE PROSPECTIVE JUROR:  Here is fine.

4              THE COURT:  Okay.  You have marked Questions 12,

5    13, 17, and 35.  I am going to go right through those.

6              12 asks whether you, a member of your family, or a

7    close friend has ever studied law or been employed by a

8    lawyer or worked in a legal environment.

9              So why did you check that?

10             THE PROSPECTIVE JUROR:  I am a lawyer.

11             THE COURT:  And where do you work?

12             THE PROSPECTIVE JUROR:  I currently work at the

13   DEA.  I also used to work at main DOJ, and also CIA.  So

14   that should answer your next question, I think.

15             THE COURT:  Okay.  And what do you do at the DEA?

16             THE PROSPECTIVE JUROR:  I am a regulatory lawyer

17   now.

18             THE COURT:  You're a regulatory lawyer?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  I see.  And at main justice.

21             THE PROSPECTIVE JUROR:  A lawyer in the civil

22   division.

23             THE COURT:  In the civil division.  Got it.

24             All right.  And do you think that the fact that

25   you work for a federal law enforcement agency would make you

1    favor law enforcement witnesses in this case?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Okay.  So how long have you worked for

4    both main justice and DEA?

5              THE PROSPECTIVE JUROR:  I started in -- so

6    actually -- yes, so I actually worked in a court before

7    that.  I was a clerk for a federal judge.  And then I came

8    to DOJ --

9              THE COURT:  In this court?

10             THE PROSPECTIVE JUROR:  No, in New York.  And then

11   I was at DOJ from 1999 to 2006, and again from 2007 to 2015;

12   and then DEA from 2015 until now.

13             THE COURT:  Okay.  And at DEA, you don't really --

14   do you work for any -- on any criminal cases per se?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  Okay.  Then Question 13, whether you

17   have been employed by a local, state, or federal law

18   enforcement agency --

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  -- is that the same answer that you

21   gave for Question 12?

22             THE PROSPECTIVE JUROR:  Yes.  Yes, Your Honor.

23             THE COURT:  Okay.  And then Question 17 is whether

24   you, a member of your family, or a close friend has ever

25   been arrested or convicted of a crime, been a victim of a

1    crime or a witness to a crime, or testified in court.

2              THE PROSPECTIVE JUROR:  My sister and my husband

3    were both mugged at different times.

4              THE COURT:  And were they mugged here in D.C.

5    or --

6              THE PROSPECTIVE JUROR:  No.  Well, I think they

7    were both in New York actually.

8              THE COURT:  And how long ago was that?

9              THE PROSPECTIVE JUROR:  Years.

10             THE COURT:  Okay.  And is there anything about

11   that experience that you think would have an impact on your

12   ability to be fair and impartial here?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Okay.  And then Question 35 asks

15   whether or not you have children or stepchildren.

16             Do you have children?

17             THE PROSPECTIVE JUROR:  I have a daughter who is

18   13.

19             THE COURT:  And given what you know about the --

20   from the statement of the case in this case, which involved

21   A.S., who, at the time of the allegation offense conduct,

22   was 12 to 13, do you think that would have an affect or come

23   too close to home for you?

24             THE PROSPECTIVE JUROR:  I want to say no, but I

25   think it might.

1          THE COURT:  Okay.  And do you think that that

2     would make it difficult for you to hear the testimony?

3          THE PROSPECTIVE JUROR:  I don't -- I don't know if

4     it would make it difficult for me to hear the testimony so

5     much as I am afraid that I would prejudge the defendant.

6          THE COURT:  Okay.  All right.  Thank you.

7          (A bench conference was held as follows:)

8          THE COURT:  And --

9          MS. HARDEN:  Your Honor, move to strike the juror

10    for cause.

11         THE COURT:  And --

12         MS. HARDEN:  I think she can't be fair to

13    Mr. Smith.

14         THE COURT:  And what's the government's position?

15         MS. BURRELL:  Your Honor, I would ask that the

16    Court ask -- tell the juror that she will be instructed that

17    the defendant is presumed innocent and --

18         THE COURT:  She is a lawyer; she knows that.  I am

19    not going to waste my time.

20         MS. BURRELL:  I understand then.  Nothing further.

21         THE COURT:  And your position on the strike for

22    cause?

23         MS. BURRELL:  We would join.

24         THE COURT:  Okay.  I will grant it.

25         (Whereupon, the bench conference concludes.)

1              THE COURT:  Okay.  Juror No. 743, thank you for

2     your honesty.  You are excused.

3              You may leave the courtroom, and the courthouse.

4              THE PROSPECTIVE JUROR:  Thank you.

5              (Whereupon, the prospective juror was excused.

6     Another prospective juror enters.)

7              THE COURT:  Juror No. 933, if you could come stand

8     at the lectern.  Yes.  Right here.  Thank you very much.

9              How are you this afternoon?

10             THE PROSPECTIVE JUROR:  Good.  How are you?

11             THE COURT:  I am good.

12             So you have marked Questions 9, 12, 13, 15, 17,

13    30, 32, 35, 36, and 38.  I am just going to go through all

14    of those with you.

15             9 asked whether or not it would be a hardship if

16    you were chosen to serve on this jury.  Do you have

17    something planned that's very important between this week

18    and next week?

19             THE PROSPECTIVE JUROR:  Yes.  I had hip

20    replacement surgery in July.  I have been back and forth to

21    the plastic surgeon three times because the incision keeps

22    getting infected.  I had a staph infection this weekend; it

23    opened up again, so they want to see me tomorrow.

24             THE COURT:  Okay.  And when you go to the doctor's

25    appointment, do they keep you?

1            THE PROSPECTIVE JUROR:  Well, normally, what she

2     would have to do is just open it back up, remove more stuff,

3     and then resew it back up, and the antibiotic, but I would

4     need the excuse for tomorrow.

5            THE COURT:  Okay.  And you think that's just one

6     doctor's appointment?

7            THE PROSPECTIVE JUROR:  As far as I know --

8     because every time they have to re-stitch it, they have me

9     come back in ten days.

10            THE COURT:  Okay.  All right.  And where is the

11     incision?  I am afraid to ask that.

12            THE PROSPECTIVE JUROR:  You mean where I have to

13     go to?

14            THE COURT:  Yeah.

15            THE PROSPECTIVE JUROR:  To the hospital.

16            THE COURT:  Okay.  And is the incision someplace

17     that's going to be uncomfortable for you to be sitting --

18            THE PROSPECTIVE JUROR:  No.  I just didn't want to

19     have to not make the appointment because they want to make

20     sure I -- the staph infection didn't come back.

21            THE COURT:  Okay.  And do you have an infection

22     right now?

23            THE PROSPECTIVE JUROR:  I don't know.  That's why

24     she wants me to come and see her tomorrow, at 1:10.

25            THE COURT:  And if you do have an infection?

1           THE PROSPECTIVE JUROR:  They will give me

2     medication, and I can serve; that's fine.

3           THE COURT:  Okay.  And what time is your

4     appointment tomorrow?

5           THE PROSPECTIVE JUROR:  1:10.

6           THE COURT:  At 1:10?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Okay.  Would it be possible for you to

9     move your appointment to either before court or --

10          THE PROSPECTIVE JUROR:  She has surgeries Tuesdays

11    until 12, so they're fitting me in at 1:10.

12          THE COURT:  I see.  Okay.  Let me...

13          (A bench conference was held as follows:)

14          MS. HARDEN:  Move to strike the juror for cause.

15    I don't know if it's actually safe for her -- how do we know

16    she doesn't have an infection now?  I move to strike.

17          THE COURT:  Does the government -- I think it's

18    difficult to work around a doctor's appointment tomorrow.

19          MS. BURRELL:  I join the motion.

20          THE COURT:  You join the motion, okay.  I will

21    excuse her for cause then.

22          MS. HARDEN:  Thank you.

23          (Whereupon, the bench conference concludes.)

24          THE COURT:  All right.  Juror 933, given the

25    seriousness of -- and need for your doctor's appointment

1    tomorrow, I am going to excuse you.

2              You can leave the courthouse.  And good luck.

3              THE PROSPECTIVE JUROR:  Okay.  Thank you.

4              THE COURT:  Thank you.

5              (Whereupon, the prospective juror was excused.

6    Another prospective juror enters.)

7              THE COURT:  And, Juror No. 844, please come stand

8    at the lectern.  Right there.  Feel free to put your bag

9    down on the chair.

10             And I see that you have marked Questions 9, 12,

11   19, 20, 26, 30, 32, 35, 36, 37, and 38.  I am just going to

12   work my way through those.

13             9 asked whether or not you have some important

14   meeting between this week and next week that would make

15   service on the jury --

16             THE PROSPECTIVE JUROR:  Actually, that one I just

17   made a phone call; I am finished with that.

18             THE COURT:  You are good.  Okay.  Excellent.

19             Let's move on to 12.  12 asks whether you, a

20   family member, or a close friend --

21             THE PROSPECTIVE JUROR:  My domestic partner is a

22   lawyer.

23             THE COURT:  Okay.  Thank you.

24             And what kind of lawyer, do you know?

25             THE PROSPECTIVE JUROR:  Pardon?

```
 1              THE COURT:  What kind of lawyer?

 2              THE PROSPECTIVE JUROR:  She works for Earth

 3    Justice, it's an environmental law firm.

 4              THE COURT:  As a what?

 5              THE PROSPECTIVE JUROR:  I'm sorry.  She's an

 6    environmental attorney for an environmental law firm.

 7              THE COURT:  Environmental law firm, okay.

 8    So has your partner ever done criminal work?

 9              THE PROSPECTIVE JUROR:  A long, long, long, long

10    time ago.

11              THE COURT:  Okay.  And do you talk to your partner

12    about her legal work?

13              THE PROSPECTIVE JUROR:  We both do climate change.

14    Because she does climate change and I do climate change --

15    but in a different setting -- so, yes, we talk all the time.

16              THE COURT:  I see.  Well, is there anything about

17    the legal-oriented conversations that you have with your

18    partner that you think would in any way --

19              THE PROSPECTIVE JUROR:  No.

20              THE COURT:  -- affect your ability to be --

21              THE PROSPECTIVE JUROR:  No.

22              THE COURT:  -- a fair and impartial juror?

23              THE PROSPECTIVE JUROR:  No.

24              THE COURT:  Okay.  And Question 19 states that law

25    enforcement officers will be witnesses and ask whether you
```

1    tend to believe or not believe the testimony of a law

2    enforcement officer --

3              THE PROSPECTIVE JUROR:  In cases like this, I

4    tend to believe --

5              THE COURT:  Let me just finish.  One second.

6              -- just because the person is a law enforcement

7    officer?

8              THE PROSPECTIVE JUROR:  In cases like this, yes

9    indeed.

10             THE COURT:  Yes, indeed, you would tend --

11             THE PROSPECTIVE JUROR:  I would tend to believe --

12             THE COURT:  Tend to believe the law enforcement

13   officer?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Why is that?

16             THE PROSPECTIVE JUROR:  Because bringing charges

17   like this -- this is a young girl, this is an older man;

18   it's just like totally -- it's repulsive, it's -- you know.

19             THE COURT:  So --

20             THE PROSPECTIVE JUROR:  So law --

21             THE COURT:  Excuse me, just one second.

22             Having heard the allegations in the case, have you

23   already --

24             THE PROSPECTIVE JUROR:  Yes, Your Honor.

25             THE COURT:  -- basically decided --

1         THE PROSPECTIVE JUROR:  Yes.

2         THE COURT:  -- that the defendant is guilty?

3         THE PROSPECTIVE JUROR:  Yes, I have.

4         THE COURT:  All right.

5         THE PROSPECTIVE JUROR:  And I would add --

6         THE COURT:  That's okay.  Just one second.

7         (A bench conference was held as follows:)

8         MS. HARDEN:  I am making a big motion to strike

9    this juror.  But I think she is honest, and said she's

10   already prejudged the case.  Without hearing one piece of

11   evidence, she's decided that Mr. Smith is guilty.

12        THE COURT:  Let me just hear the government's

13   position.

14        MS. BURRELL:  We join the motion.

15        THE COURT:  Okay.  I am going to grant the motion

16   for obvious reasons.  Thank you.

17        MS. HARDEN:  Thank you.

18        (Whereupon, the bench conference concludes.)

19        THE COURT:  Okay.  Juror 844, I am going to excuse

20   you, and you may leave the courthouse.  Thank you very much

21   for coming today.

22        THE PROSPECTIVE JUROR:  Thank you, Judge.

23        (Whereupon, the prospective juror was excused.)

24        THE COURT:  All right.  Let me say, Counsel, that

25   your experience in these cases and why I needed a bigger

```
 1      venire panel is proving correct.
 2                 (Whereupon, a prospective juror enters.)
 3                 THE COURT:  Juror 555, please come stand at the
 4      podium.  And feel free to take your bag off, if you wish,
 5      and put it on the chair or on the floor, wherever you like.
 6                 And how are you this afternoon?
 7                 THE PROSPECTIVE JUROR:  Good.  How are you?
 8                 THE COURT:  I am good.
 9                 Okay.  I see you have marked Questions 17 and 35.
10                 Question 17 asked whether you, a member of your
11      family, or a close friend has ever been arrested or
12      convicted of a crime, a victim of a crime, a witness to a
13      crime, or testified in court about a crime.
14                 THE PROSPECTIVE JUROR:  Yes.
15                 THE COURT:  Could you explain that?
16                 THE PROSPECTIVE JUROR:  Yes.  I was arrested for
17      an open container violation, at age 21, here in D.C.  That
18      was it.
19                 THE COURT:  Okay.  And how many years ago was
20      that?
21                 THE PROSPECTIVE JUROR:  16.
22                 THE COURT:  16.  Okay.
23                 THE PROSPECTIVE JUROR:  I wasn't sure if it was
24      worth mentioning, but...
25                 THE COURT:  I know.  Thank you for being thorough.
```

1    And what was the resolution of that case?

2    THE PROSPECTIVE JUROR:  Just a citation and a

3    fine.

4    THE COURT:  Okay.  All right.  Was there anything

5    about that experience, being arrested, that you think would

6    have an impact on your ability to be fair and impartial in

7    this case?

8    THE PROSPECTIVE JUROR:  No, Your Honor.

9    THE COURT:  Okay.  And 35 asks whether you have

10   children or stepchildren.

11   THE PROSPECTIVE JUROR:  Yes.

12   THE COURT:  And how many children do you have?

13   THE PROSPECTIVE JUROR:  Two four-year-old twins.

14   THE COURT:  Two four-year-old twins, okay.

15   And are they girls or boys?

16   THE PROSPECTIVE JUROR:  Boy and a girl.

17   THE COURT:  Oh.  Okay.  And is there anything

18   about having children in a case involving allegations of

19   sexual abuse of a minor that you think would have an affect

20   on your ability to be fair and impartial in this case?

21   THE PROSPECTIVE JUROR:  No, ma'am.

22   THE COURT:  Okay.  What do you do for a living?

23   THE PROSPECTIVE JUROR:  I am a product manager at

24   a --

25   THE COURT:  Say that again.

1          THE PROSPECTIVE JUROR:  A product manager

2      at Capital One.

3          THE COURT:  Okay.  A product manager.  And where?

4          THE PROSPECTIVE JUROR:  Capitol One.

5          THE COURT:  Capitol One, okay.  And how long have

6      you worked there?

7          THE PROSPECTIVE JUROR:  About a year and a half.

8          THE COURT:  Okay.  And what did you do before

9      then?

10          THE PROSPECTIVE JUROR:  I was a project manager at

11     a company called Interfolio, a higher end tech company.

12          THE COURT:  A higher end --

13          THE PROSPECTIVE JUROR:  Higher education, excuse

14     me.

15          THE COURT:  Higher education.

16          THE PROSPECTIVE JUROR:  Sorry.  I am getting over

17     a cold.

18          THE COURT:  All right.  Thank you.  Just a second.

19          (A bench conference was held as follows:)

20          THE COURT:  Any follow--up?

21          MS. HARDEN:  No, Your Honor.

22          MS. BURRELL:  No, Your Honor.

23          (Whereupon, the bench conference concludes.)

24          THE COURT:  Okay.  Juror No. 555, if you could

25     resume your seat outside.  Thank you.

1          THE PROSPECTIVE JUROR:  Okay.

2          (Whereupon, the prospective juror was excused.

3     Another prospective juror enters.)

4          THE COURT:  And, Juror No. 591, if you could just

5     stand at the podium.  Feel free to take your backpack off;

6     it looks like it is very heavy.

7          All right.  And, Juror 591, I see you have marked

8     Question No. 35 which asks whether you have children or

9     stepchildren.

10          And how many children do you have?

11          THE PROSPECTIVE JUROR:  One seven-year-old boy.

12          THE COURT:  A seven-year-old boy.

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  And is there anything about having a

15     child, given the nature of the allegations in this case,

16     that you think would affect your ability to be fair and

17     impartial?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  And what do you do for a living, Juror

20     No. 555?

21          THE PROSPECTIVE JUROR:  I am a reporter at *The*

22     *Washington Post*; I cover the Department of Transportation.

23          THE COURT:  Department of Transportation?

24          THE PROSPECTIVE JUROR:  Yeah.

25          THE COURT:  Okay.  So this is a new venue for you.

 1                    THE PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  All right.  And how long have you been

 3         a reporter?

 4                    THE PROSPECTIVE JUROR:  Twenty-five years.

 5                    THE COURT:  And have you covered -- have you

 6         always covered transportation-related issues, or have you

 7         ever covered a courthouse?

 8                    THE PROSPECTIVE JUROR:  In 2012, I had a six-month

 9         stint in Montgomery County covering the courthouse.

10                    THE COURT:  I see.  Okay.  And did you have to

11         hear cases similar in facts to this?

12                    THE PROSPECTIVE JUROR:  There were -- even before

13         that, in the early 2000s, I covered one case that involved

14         more -- that was similar to this, in like 2005.  In that

15         later six-month period, there were a series of domestic

16         violence-related things, but nothing like this case

17         specifically that I remember.

18                    THE COURT:  All right.  Well, one of the things

19         that's sacrosanct about serving on a jury is keeping

20         confidential -- not talking to people about what you are

21         hearing in the court so that you might be influenced by

22         people's reactions.  As a reporter, are you going to find

23         that as a difficult role?

24                    THE PROSPECTIVE JUROR:  No.  I have -- I have

25         confidential sources, so I know about confidentiality.

```
1              THE COURT:  All right.  Okay.

2              (A bench conference was held as follows:)

3              MS. HARDEN:  No follow up.

4              MS. BURRELL:  No follow up.

5              (Whereupon, the bench conference concludes.)

6              THE COURT:  Okay.  Juror No. 591, you can resume

7    your seat.  Thank you.

8              THE PROSPECTIVE JUROR:  Okay.  Cool, thanks.

9              (Whereupon, the prospective juror was excused.

10   Another prospective juror enters.)

11             THE COURT:  Next, Juror 420, if you could come

12   stand at the lectern.  And feel free to put your backpack

13   down on the chair, someplace, so you can stand more

14   comfortably.

15             How are you this afternoon?

16             THE PROSPECTIVE JUROR:  Very well.  How are you?

17             THE COURT:  I am good.

18             So I see you have marked Questions 9, 12, 13, 15,

19   and 30.  I am just going to go through those in order.

20             Starting with Question 9, which asks whether it

21   would be a hardship to serve this week or next if you were

22   selected to be on this jury.

23             Could you explain that?

24             THE PROSPECTIVE JUROR:  So I work in the Office of

25   the U.S. Surgeon General directly working on COVID response.
```

1    Given where we are with vaccine possibilities for 5 to 11

2    year olds, where I work in the office of the surgeon

3    general, I manage relationships with the regional health

4    departments as well as state and local health officials.  So

5    rolling out that information, as we receive it from the CDC,

6    is what I'd be doing for the next couple of weeks.

7              THE COURT:  Okay.  Well, that's very important.

8    And no one can cover for you?

9              THE PROSPECTIVE JUROR:  My immediate boss is on

10   paternity leave.

11             THE COURT:  I see.  And that's expected in the

12   next couple of weeks?

13             THE PROSPECTIVE JUROR:  Without knowing the

14   exact -- from the CDC, I would say within the next month is

15   a real possibility, but I can't confirm when exactly that

16   would take place.

17             THE COURT:  Okay.  And is it something that you

18   can do during breaks from the trial if you were selected to

19   be a juror?

20             THE PROSPECTIVE JUROR:  Possibly.  I would have

21   to -- I mean, I think it depends on how -- if it's that week

22   exactly, I would probably have a number of calls; but it's

23   something that I could definitely discuss with my

24   supervisor.

25             THE COURT:  Okay.  And do you have people who work

1      under you who might be able to help?

2              THE PROSPECTIVE JUROR:  I could.  It depends on

3      how sensitive the information is, but that's definitely a

4      possibility.

5              THE COURT:  Okay.  Because, I mean, we don't start

6      trial until 9:30, so you can do a lot of talking before

7      9:30 -- speaking from experience, I can tell you that you

8      can do that.  And then we have a lunch break, you can talk a

9      lot during that.  We have breaks in the afternoon; and we

10     end at probably about 5:00, so you can talk after that.

11             THE PROSPECTIVE JUROR:  Okay.  Yeah.

12             THE COURT:  Okay.  I mean, the Surgeon General's

13     Office is a pretty big place.  So anyway -- okay.

14             Question 12 asks whether you, a member of your

15     family, or a close friend has ever studied law or been

16     employed as a lawyer or a law firm, or other legal

17     environment.

18             Could you explain that?

19             THE PROSPECTIVE JUROR:  I have a number of friends

20     who went to law school, and my future father-in-law was an

21     attorney.  And that answers another question, he was a

22     public defender in Manahawkin [sic], New Jersey.

23             THE COURT:  Okay.  And do you -- your friends who

24     are lawyers -- let's start with them -- are any of them

25     practicing criminal law?

1          THE PROSPECTIVE JUROR:  One in particular, in

2     Northern New Jersey.

3          THE COURT:  Okay.  In addition to your

4     father-in-law?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Is it your father-in-law?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  And do you talk to your friends who

9     are practicing criminal law about their work?

10          THE PROSPECTIVE JUROR:  I mean, I ask them, like,

11     I guess what type of crime has gone up since COVID, things

12     like that; but I would say a very high level [sic].

13          THE COURT:  Okay.  And is there anything about the

14     conversations that you have with your friends, including

15     your future father-in-law, about their legal work that you

16     think would have an impact on your ability to be fair and

17     impartial in this case?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  Okay.  13 asks whether you, a member

20     of your family, or a close friend has been employed by

21     local, state, or federal law enforcement agencies.

22          THE PROSPECTIVE JUROR:  Yeah.  I have a number of

23     family members who are police officers in New Jersey and

24     New York.

25          THE COURT:  And are members of your immediate

1    family police officers?

2           THE PROSPECTIVE JUROR:  First cousins; I don't

3    know if that qualifies.

4           THE COURT:  Okay.  And do you talk to them about

5    their work as police officers?

6           THE PROSPECTIVE JUROR:  I would say similarly to

7    my friends who are attorneys.

8           THE COURT:  Right.  And have you ever talked to

9    them about a case that involves allegations like the ones

10   that you heard about in this case?

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  Okay.  And so is there anything about

13   those conversations that you have had with them that you

14   think would affect your ability to be fair and impartial

15   here?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  Okay.  And then 15 asks whether you, a

18   member of your family, or a close friend has ever done any

19   work with any person that does criminal defense work.

20          Is the only answer to that your father-in-law --

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  -- who worked for a public defender --

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  -- in New Jersey?

25          THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  And then you also responded to 30,

2     which asked whether you, a family member, or a close friend

3     has ever been the victim of sexual abuse.

4          THE PROSPECTIVE JUROR:  Yeah.  My older sister.

5          THE COURT:  And could you tell me a little bit

6     more about that?

7          THE PROSPECTIVE JUROR:  She was sexually abused by

8     a cousin when she was in high school.

9          THE COURT:  And when did you learn about it?

10         THE PROSPECTIVE JUROR:  When I was in high school,

11    which was probably eight years after the fact.

12         THE COURT:  Did she tell you about it?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  And have you talked to her about it

15    since then?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  And have you provided support to her

18    as she has been thinking through that experience?

19         THE PROSPECTIVE JUROR:  The only way a younger

20    brother could, I guess.  I mean, I have definitely spoken to

21    her about it just to see how she copes with it, but...

22         THE COURT:  And was that ever reported to anybody?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Okay.  And do you understand why it

25    was never reported?

1          THE PROSPECTIVE JUROR:  Probably because it was a

2     family member, and she didn't feel the need to share it

3     based on the family dynamics.

4          THE COURT:  And is there anything about the fact

5     that you've had these conversations with your sister and you

6     know what she went through that you think would have an

7     affect on your ability to listen carefully and evaluate the

8     evidence in this case?

9          THE PROSPECTIVE JUROR:  I would like to say no;

10    but if the details were very similar to her immediate

11    circumstance, I could say possibly.  But I'd like to think

12    that I could separate the two, but...

13         THE COURT:  Well, based on what you have heard

14    from your sister about what happened to her and the summary

15    in the statement of the case that I gave you about the

16    allegations in this case, do you think that there might be

17    similarities?

18         THE PROSPECTIVE JUROR:  Not to my knowledge.

19         THE COURT:  Well, do you understand that, if you

20    are selected to be a juror in this case, you would have to

21    make a decision --

22         THE PROSPECTIVE JUROR:  Um-hmm.

23         THE COURT:  -- in this case based solely on what

24    you hear in this case and your evaluation of the credibility

25    of the witnesses testifying here?

1           Do you understand that?

2           THE PROSPECTIVE JUROR:  Um-hum.

3           THE COURT:  Do you think you can do that?

4           THE PROSPECTIVE JUROR:  I think so, yes.

5           THE COURT:  Do you have shaky confidence in

6    yourself on that question?

7           THE PROSPECTIVE JUROR:  I mean, I don't know if

8    "shaky confidence" is the way I'd explain it.  But I would

9    say it's -- I have all the confidence in the world in me

10   right now.  But I think in that situation I am unsure, but I

11   think I -- I think I would be able to.

12          THE COURT:  You think you would be able to?

13          THE PROSPECTIVE JUROR:  Yeah.

14          THE COURT:  All right.

15          (A bench conference was held as follows:)

16          MS. HARDEN:  Move to strike for cause, Your Honor.

17   I think he's making it clear -- he is trying to be honest

18   with the Court.  He's making it clear he is not sure he can

19   do whatever is necessary.

20          THE COURT:  Do you have any follow-up questions?

21          MS. HARDEN:  I don't.  I think it's clear.  He has

22   made it clear, he can't be fair.

23          THE COURT:  And the government's position?

24          MS. BURRELL:  I would note that he did not answer

25   "yes" to Question 38, whether there would be anything that

1    would prevent him to follow the instructions on the law and

2    being a fair and impartial juror in this case.

3              THE COURT:  Do you have any follow-up questions?

4              MS. BURRELL:  I do not.

5              THE COURT:  To put -- you know, because -- and so

6    what is your position on the motion to strike for cause?

7              MS. BURRELL:  We oppose the motion.  I think he

8    made it clear that he would consider the evidence, that he

9    takes this very seriously, and that he would follow

10   instructions on the law.

11             MS. HARDEN:  Except the Court followed up and

12   said, Do you have shaky confidence in yourself?  The

13   response was, I wouldn't say it's that; but he's unsure.  He

14   didn't go as far as "shaky confidence."

15             We shouldn't have an unsure juror on panel.  He's

16   made it clear he can't be fair.

17             THE COURT:  Okay.  I am going to see if I can do

18   some follow up.  Thank you.

19             MS. HARDEN:  Thank you, Your Honor.

20             (Whereupon, the bench conference concludes.)

21             THE COURT:  All right.  So, Juror No. 420, you

22   appreciate that this is a case that's important to both

23   sides, right?

24             THE PROSPECTIVE JUROR:  Um-hum.

25             THE COURT:  And both sides want a fair and

1    impartial juror.

2              THE PROSPECTIVE JUROR:  True.

3              THE COURT:  Who can listen to the evidence,

4    evaluate the credibility of the witnesses, and decide this

5    case solely based upon what is presented in this courtroom.

6              Do you understand that?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  And if you were in the position of one

9    side or the other, you, too, would want that, wouldn't you?

10             THE PROSPECTIVE JUROR:  Of course.

11             THE COURT:  And given that circumstance, would you

12   prefer if you were not a juror -- in your own case -- if you

13   were sitting here, on one side or the other?

14             THE PROSPECTIVE JUROR:  Yeah.  I think that would

15   probably be the best case.

16             THE COURT:  You would probably not want you --

17             THE PROSPECTIVE JUROR:  Recommend not, yeah.

18             THE COURT:  All right.  Okay.  I am going to grant

19   the motion.

20             I am going to excuse you.  Thank you for coming.

21             THE PROSPECTIVE JUROR:  Thank you.

22             THE COURT:  Good luck with what might be a hard

23   week, but an exciting week for the country.

24             You can leave the courthouse.

25             THE PROSPECTIVE JUROR:  I appreciate your time.

1      Thank you.

2                     THE COURT:  Thank you.

3                     (Whereupon, the prospective juror was excused.)

4                     THE COURT:  Just so the record is clear, I granted

5      the motion to strike for cause.

6                     MS. HARDEN:  Also, just for the record, Your

7      Honor, I just want to say that I have asked for the Judge to

8      ask a question like that on several occasions.  I think

9      that's absolutely the best question that could ever be asked

10     of a juror.

11                    THE COURT:  Well, I am not sure I agree with that,

12     but sometimes it's appropriate.

13                    (Whereupon, a prospective juror enters.)

14                    THE COURT:  Okay.  Juror No. 887, please stand at

15     the lectern.

16                    How are you this afternoon?

17                    THE PROSPECTIVE JUROR:  Good.

18                    THE COURT:  Thank you very much for your patience.

19     I know it's already been a long day for all of us.

20                    So I see that you have marked Questions 13, 17,

21     and 34.  I am just going to run right through those.

22                    THE PROSPECTIVE JUROR:  Okay.

23                    THE COURT:  Question 13 asks whether you, a member

24     of your family, or a close friend has ever been employed by

25     a local, state, or federal law enforcement agency.

```
 1                    Could you explain that?

 2                    THE PROSPECTIVE JUROR:  Yes.  I worked for

 3      National Geospatial-Intelligence Agency for 11 years now.

 4      And I have been detailed -- I have spent six years at the

 5      Department of Homeland Security.  I was also stationed with

 6      the U.S. Secret Service.

 7                    THE COURT:  And where are you working now?  I'm

 8      sorry.

 9                    THE PROSPECTIVE JUROR:  National

10      Geospatial-Intelligence Agency.

11                    THE COURT:  The National --

12                    THE PROSPECTIVE JUROR:  Geospatial.

13                    THE COURT:  Geospatial, okay.  That was the word I

14      was missing.

15                    THE PROSPECTIVE JUROR:  Yeah.

16                    THE COURT:  National Geospatial Agency.

17                    Okay.  That is not a law enforcement agency,

18      right?

19                    THE PROSPECTIVE JUROR:  No, it is not.

20                    THE COURT:  What do you do there?  Maps?

21                    THE PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  Excellent.

23                    Okay.  But you also worked at DHS, and the Secret

24      Service; is that right?

25                    THE PROSPECTIVE JUROR:  I was detailed as an NGA
```

1    employee to the Secret Service, and DHS.

2              THE COURT:  I see.  And did you perform a law

3    enforcement function there, or were you actually helping

4    them do location and mapping?

5              THE PROSPECTIVE JUROR:  More location and mapping,

6    intel analysis.

7              THE COURT:  I see, okay.  And when was the last

8    time you worked at either DHS or the Secret Service?

9              THE PROSPECTIVE JUROR:  2017.

10             THE COURT:  2017.  Okay.  So it's been some time?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.  And is there anything about

13   your experience working there that you think would make it

14   difficult for you to be a fair and impartial juror in this

15   trial?

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  You've also marked 17, which asked

18   whether you, a member of your family, or a close friend have

19   ever been arrested or convicted of a crime, been a victim of

20   a crime, a witness to a crime, or have testified in court.

21             Could you explain that?

22             THE PROSPECTIVE JUROR:  Victim of crimes.  The

23   victim of an armed robbery with a firearm in 2010; a hit and

24   run through a car to my car, I believe in 2015; and, in

25   between that, a victim of identity theft involving bank

1     accounts, and IRS tax return.

2               THE COURT:  Oh, my goodness.

3               Let's start with 2010.  You personally were a

4     victim of a holdup with a gun?

5               THE PROSPECTIVE JUROR:  Um-hum.

6               THE COURT:  And where was that?

7               THE PROSPECTIVE JUROR:  That was in Crystal City,

8     Virginia.

9               THE COURT:  Okay.  And was there ever a resolution

10    of finding the person who did that?

11              THE PROSPECTIVE JUROR:  It's my understanding,

12    from the detective in charge, that, yes, they were

13    apprehended; but I did not have to testify in court or

14    anything like that.

15              THE COURT:  Okay.  And did you ever identify that

16    person?

17              THE PROSPECTIVE JUROR:  I did not, no.

18              THE COURT:  And then there is the 2015

19    hit-and-run.  Were you in your car?

20              THE PROSPECTIVE JUROR:  I was in the car, yes.  I

21    had a bad rear-end, and the car kept on driving.  This was

22    late at night, here in D.C.

23              THE COURT:  Here in D.C., okay.  And was there

24    ever any resolution to that?

25              THE PROSPECTIVE JUROR:  No.  Not to my knowledge.

1       I filled out a police report, but nothing beyond that.

2                   THE COURT:  Okay.  Then you mentioned a stolen ID?

3                   THE PROSPECTIVE JUROR:  Identity theft, bank

4       accounts, fraud, things of that nature.  The culprits filed

5       false tax returns -- tax returns, so I had to deal with that

6       for, like, two years.

7                   THE COURT:  Wow, okay.

8                   THE PROSPECTIVE JUROR:  Yeah.

9                   THE COURT:  You have had quite the spate of issues

10      there.  And did that stop --

11                  THE PROSPECTIVE JUROR:  That did as well.  I don't

12      have any understanding as to who the culprits were or

13      anything like that.  Hasn't been any since then.

14                  THE COURT:  Okay.  And in the course of these

15      incidents, have you had interactions with law enforcement?

16                  THE PROSPECTIVE JUROR:  Not since those, no.

17                  THE COURT:  Okay.  And when was the last time you

18      had an ID theft --

19                  THE PROSPECTIVE JUROR:  Actually, probably

20      somewhere around that 2015 time frame.

21                  THE COURT:  Okay.  And in these experiences, were

22      you satisfied with the performance of law enforcement?

23                  THE PROSPECTIVE JUROR:  I guess I don't know if I

24      have an opinion one way or the other.

25                  THE COURT:  Okay.  All right.

 1          And is there anything about being the victim of a

 2    crime -- several -- that you think would affect your ability

 3    to be fair and impartial in this case?

 4          THE PROSPECTIVE JUROR:  I would like to think not.

 5          THE COURT:  You would like to think not, or how

 6    could it affect your ability here?

 7          THE PROSPECTIVE JUROR:  I guess I don't really

 8    know.

 9          THE COURT:  Okay.  And the last question is 34,

10    whether you have specialized training or knowledge of

11    computers, computer programming, social media and social

12    networking, or cellular telephones.

13          THE PROSPECTIVE JUROR:  Yes.  Through my job,

14    doing intelligence, I just have some of the basic

15    understandings of things like forensic phone analysis,

16    computer network analysis, things of that nature.

17          THE COURT:  Have you ever performed any forensic

18    cellular analysis?

19          THE PROSPECTIVE JUROR:  I have not performed any

20    of that, no.

21          THE COURT:  Do you see the results of forensic

22    analyses?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Okay.  But you never had any

25    specialized training to do it yourself?

1              THE PROSPECTIVE JUROR:  No.  Not the specialized

2      training, no.

3              THE COURT:  Okay.

4              (A bench conference was held as follows:)

5              MS. HARDEN:  Your Honor, as a person who deals

6      with law enforcement, whether or not he tends to think that

7      because people are charged -- that they're guilty.

8              THE COURT:  Okay.  Any follow up from the

9      government?

10             MS. BURRELL:  No, Your Honor.

11             (Whereupon, the bench conference concludes.)

12             THE COURT:  And given your experience working in

13     different law enforcement-related agencies, do you have any

14     concern that you view a person charged with crime as guilty?

15             THE PROSPECTIVE JUROR:  I'd like to think not, no.

16             THE COURT:  Well, could you explain that?

17             THE PROSPECTIVE JUROR:  I personally would like

18     the law to give everyone the right to be innocent until

19     proven guilty based on the evidence.

20             THE COURT:  Right.  And is that the role you want

21     to perform as a juror?

22             THE PROSPECTIVE JUROR:  If selected, yes.

23             THE COURT:  All right.  Okay.  Thank you.

24             You may step out and resume your seat.

25             MS. SEDKY:  May we request a very brief break

```
 1    to --
 2                THE COURT:  Yes.  We will take a ten-minute break.
 3                Ms. Gumiel, we're going to take a ten-minute
 4    break.
 5                THE COURTROOM DEPUTY:  Okay.
 6                (Whereupon, a recess was taken.)
 7                THE COURT:  Good afternoon, Juror No. 283.
 8                If you could just put your things down on that
 9    chair, and stand at the lectern.  Thank you for your
10    patience.  I know it's been a long day.
11                THE PROSPECTIVE JUROR:  Yes.
12                THE COURT:  I see that you have marked Questions
13    14, 17, 20, and 38.  I am just going to run right through
14    those.
15                THE PROSPECTIVE JUROR:  Sure.
16                THE COURT:  Question 14 asks whether you, a member
17    of your family, or a close friend have any experience with a
18    law enforcement agency or government that might cause you to
19    favor or disfavor the government or law enforcement?
20                Could you explain that?
21                THE PROSPECTIVE JUROR:  Yeah.  I thought -- I
22    don't know if it would cause me to favor or disfavor, I
23    thought in the sake of honesty --
24                THE COURT:  Could you slow down?
25                THE PROSPECTIVE JUROR:  Yes.  Sorry.
```

1          I was just saying I don't know if it would cause

2     me to favor or disfavor; but I figured, in the sake of

3     honesty, I should point out that my mother actively

4     volunteers for the reelection campaign for the sheriff in

5     her town, in Talbot County, Southern Maryland.  It's not in

6     D.C.  It doesn't particularly taint me at all; but she is a

7     member of my family, so I figured I would at least point it

8     out.

9          THE COURT:  Right, okay.  And do you know that

10    sheriff?

11         THE PROSPECTIVE JUROR:  Only in passing, she

12    is very good friends with my -- they're -- they're very good

13    friends, my mother and that sheriff; but I don't -- that's

14    more their relationship, not mine.

15         THE COURT:  Got it.  Well, thank you for sharing

16    that.

17         Question 17 asks whether you, a member of your

18    family, or a close friend has ever been arrested or

19    convicted of a crime, a victim of a crime, witness to a

20    crime or testified in court.

21         THE PROSPECTIVE JUROR:  Oh, I have testified -- I

22    checked that one off.  I have testified in court, but only

23    as a child in my parents' divorce proceedings.  They made

24    all the kids go in and testify on the -- on behalf of each

25    parent's personality.  But that was it.

1          THE COURT:  And how many years ago was that?

2          THE PROSPECTIVE JUROR:  20.

3          THE COURT:  Okay.  Do you still remember that

4     experience, or not really?

5          THE PROSPECTIVE JUROR:  Yes.  I was 13, and I had

6     to go to court and pick a parent's sides.

7          THE COURT:  Oh, my goodness.  Okay.

8          If there is a minor who testifies in this case, do

9     you think that your experience of having testified as a

10    13-year-old will have any affect on your --

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  -- sympathy for a person --

13         THE PROSPECTIVE JUROR:  No.  I would definitely

14    empathize with them a little bit more; but I don't think it

15    will affect my ability to -- to be as a juror in that sense.

16         THE COURT:  -- and evaluate the person's

17    credibility --

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  -- just like anybody else?

20         THE PROSPECTIVE JUROR:  Right.

21         THE COURT:  Okay.  And then 20 asks:  The

22    prosecution has burden of proof; this means the jury cannot

23    return a guilty verdict against the defendant unless the

24    prosecution has proven beyond a reasonable doubt the

25    defendant is guilty of the crime charged.  Would you have

1    any difficulty accepting and applying this legal

2    instruction?

3              THE PROSPECTIVE JUROR:  I checked that because I

4    just wanted to -- I guess I have -- like there was a lot of

5    talk in the -- when you were explaining the brief

6    information about the case about, you know, alleged

7    photographs.  And I know I was -- that's totally fine.  And

8    I know that because of that everything has "alleged"

9    connected to it.

10             But I just had a problem with, like -- obviously

11   there must be photos, obviously you would not have brought

12   them up.  You know what I mean?  They must exist.

13             And I just don't know, like -- if there were

14   photos found, they must have been in the possession of this

15   gentleman because the cops didn't arrest anybody else.  They

16   didn't arrest me, they --

17             THE COURT:  Well, you haven't heard any evidence

18   yet about the circumstances.

19             THE PROSPECTIVE JUROR:  Right.  That's -- no, no,

20   I understand.  I just thought -- I just thought if they

21   existed -- and this gentleman is here, I don't understand --

22   I have concerns about that.  I don't -- I don't know.  If

23   there was going to be a defense, like, maybe they were

24   planted.  I don't -- I don't -- the photos for me presented,

25   like, questions for me; so that's why I checked it off.  You

1    know what I mean?

2            THE COURT:  But having a photo doesn't explain

3    anything about the circumstances under which the photos were

4    made --

5            THE PROSPECTIVE JUROR:  Right.

6            THE COURT:  -- the circumstances under which the

7    photos were found --

8            THE PROSPECTIVE JUROR:  Right.

9            THE COURT:  -- where they were found, how they

10   were found, who found them, who made them, who took them.

11           THE PROSPECTIVE JUROR:  That's right.

12           THE COURT:  Would you be able to have -- despite

13   the fact there are photographs, would you be able to --

14           THE PROSPECTIVE JUROR:  Right.

15           THE COURT:  -- listen impartially to the testimony

16   and make an evaluation of that testimony describing all of

17   the surrounding circumstances?

18           THE PROSPECTIVE JUROR:  Yeah.  I mean, obviously,

19   I would be open to listening to -- to everything, yeah.

20           THE COURT:  Okay.  And then you also responded to

21   Question 38, which says:  Do you know of any reason or has

22   anything occurred to you during the questioning that might,

23   in any way, prevent you from following my instructions on

24   the law and being completely fair and impartial as a juror

25   in the case?

1          THE PROSPECTIVE JUROR:  The only reason I checked

2     that is because there was a previous question where you

3     asked if we recognized anybody else -- any of the potential

4     jurors --

5          THE COURT:  Yes.

6          THE PROSPECTIVE JUROR:  -- but there were a bunch

7     of jurors in the other courtroom that I couldn't see, so I

8     couldn't answer that honestly.

9          THE COURT:  I see.

10          THE PROSPECTIVE JUROR:  I couldn't -- I couldn't

11     see them, so I couldn't say yes or no whether I

12     recognized any of them.

13          THE COURT:  Okay.  Well, if there are jurors from

14     Courtroom 16 who end up being on the jury and you happen to

15     know them, just bring it to my attention then.

16          THE PROSPECTIVE JUROR:  Okay.  I just wanted to --

17          THE COURT:  Okay.  Good.  Thank you.

18          And what do you do for a living?

19          THE PROSPECTIVE JUROR:  I am a general manager of

20     a coffee shop.

21          THE COURT:  Okay.  How long have you done that?

22          THE PROSPECTIVE JUROR:  This particular job, since

23     January of last year; two months post-pandemic, January

24     2020.

25          THE COURT:  And what did you do before that?

1          THE PROSPECTIVE JUROR:  I have been in hospitality

2     my whole adult life; either serving or managing or general

3     managing restaurants or cafes or -- yeah, hospitality.

4          THE COURT:  Got it.  Okay.

5          (A bench conference was held as follows:)

6          THE COURT:  Okay.  Any follow up?

7          MS. HARDEN:  With respect to the answer that the

8     witness gave if there are photos and they're found in

9     defendant's possession and the police didn't arrest anybody

10    else -- whether he tends to think based on that -- his

11    answer -- that the person is guilty.

12          I understand the Court followed up, I think he

13    made it clear first how he feels.  I would ask the Court to

14    follow up in that way.

15          THE COURT:  Well, I think I have already followed

16    up with him about those photos and put in context what his

17    concern was.

18          MS. HARDEN:  Your Honor, if I may, the Court told

19    him having a photo doesn't explain anything about the

20    circumstances -- how they were taken, where they were found,

21    and the like -- which was good follow up with respect to

22    this juror -- but he said if photos were found in this

23    defendant's possession and the police didn't arrest anybody

24    else...  Can the Court ask him what he meant by that?

25          Because I think what he's saying is that he infers

1    guilt, and I'd like to get to the root of whether he's

2    inferring guilt.

3                 THE COURT:  Anything else?

4                 MS. HARDEN:  No, Your Honor.

5                 THE COURT:  Did you say yes?

6                 MS. HARDEN:  I'm sorry.  I am saying no; I don't

7    have anything further.

8                 THE COURT:  Does the government have any follow

9    up?

10                MS. BURRELL:  No, Your Honor.

11                (Whereupon, the bench conference concludes.)

12                THE COURT:  Juror No. 1283, I want to make sure

13   about your views on one thing.  Just because a person is

14   charged with a crime, do you believe that that person is

15   guilty?

16                THE PROSPECTIVE JUROR:  No.

17                THE COURT:  Okay.  Thank you.

18                You may resume your seat.

19                THE PROSPECTIVE JUROR:  Thank you.

20                (Whereupon, the prospective juror was excused.

21   Another prospective juror enters.)

22                THE COURT:  And, Juror 605, feel free to put your

23   briefcase down on the chair, and stand at the lectern

24   please.

25                THE PROSPECTIVE JUROR:  This one or this one?

```
 1              THE COURT:  No.  Right there (indicating).

 2              THE PROSPECTIVE JUROR:  This one?

 3              THE COURT:  You are at the right place.

 4              Thank you very much for your patience.  I know

 5     it's been a long day.

 6              THE PROSPECTIVE JUROR:  You're welcome.

 7              THE COURT:  I see you have checked 12, 17, and 30,

 8     so I am just going to run right through those.

 9              12 asks whether you, a member of your family, or a

10     close friend has ever studied law or been employed at a law

11     firm or worked in a law environment.

12              Could you explain that?

13              THE PROSPECTIVE JUROR:  Yeah.  My cousin -- my

14     first cousin is a lawyer who works for the D.C. Probate

15     Court here in the District of Columbia.

16              THE COURT:  Okay.  And do you talk to your cousin

17     about his or her legal work?

18              THE PROSPECTIVE JUROR:  Occasionally, when I am

19     looking for advice about wills and so forth.  But not --

20              THE COURT:  Yes.

21              THE PROSPECTIVE JUROR:  -- not at length.

22              THE COURT:  Okay.  And is there anything about

23     your conversations with your cousin about legal matters that

24     you think would affect your ability to be fair and impartial

25     here?
```

1        THE PROSPECTIVE JUROR:  No.

2        THE COURT:  Okay.  You also marked 17, whether

3    you, a member of your family, or a close friend has ever

4    been arrested or convicted of a crime, been a victim or a

5    witness to a crime, or testified in court.

6        THE PROSPECTIVE JUROR:  Yeah.  My -- it was a -- I

7    am thinking -- about 30 years ago my wife was -- was held up

8    at gunpoint outside of our apartment in northwest.

9        THE COURT:  And what was the resolution of that?

10       THE PROSPECTIVE JUROR:  She lost her purse and her

11   sunglasses, but nothing else.

12       THE COURT:  Okay.  And did you have interaction

13   with the police in connection with that incident?

14       THE PROSPECTIVE JUROR:  No.  She did.

15       THE COURT:  But no one was ever caught?

16       THE PROSPECTIVE JUROR:  Not that I believe, no.

17       THE COURT:  Okay.  And it was 30 years ago?

18       THE PROSPECTIVE JUROR:  Yes.  29.  I think 1992 is

19   the year --

20       THE COURT:  Okay.  You also checked 30, which

21   asked whether you, a family member, or a close friend has

22   ever been the victim of sexual abuse.

23       THE PROSPECTIVE JUROR:  Yeah.  This one is a

24   little more recent, unfortunately, and the details remain a

25   bit murky.  My sister's informed me that her son, my nephew,

1    was allegedly molested by his father.

2              THE COURT:  And how recent was that?

3              THE PROSPECTIVE JUROR:  I was -- I do not know the

4    date of the alleged offense.  I was informed of this about

5    two months ago.  It was -- I'm guessing -- based on what my

6    sister told me -- some years in the past.

7              THE COURT:  I see.  And is your sister still

8    married to your brother-in-law?

9              THE PROSPECTIVE JUROR:  For now, yes.

10             THE COURT:  And have you ever talked to the nephew

11   about it?

12             THE PROSPECTIVE JUROR:  No.

13             THE COURT:  And you say it was "alleged."  So do

14   you have some concern about the veracity of that allegation?

15             THE PROSPECTIVE JUROR:  The lack of -- of detail

16   and the lack of follow-up conversations with my sister, and

17   the fact that it's still quite painful, honestly, leaves me

18   kind of open-ended about it.

19             THE COURT:  All right.

20             THE PROSPECTIVE JUROR:  I can't -- you know,

21   without getting into too many details, my nephew is -- is --

22   has some minor mental health issues.  So to what extent that

23   plays into it, I don't know; but it raises questions both

24   ways really.

25             THE COURT:  And based on this information that

1    you've just learned about your own family member, do you

2    think that that would have an affect on how you evaluate the

3    evidence in this case?

4            THE PROSPECTIVE JUROR:  I would have to say

5    possibly.  I don't think that --

6            THE COURT:  And how -- could you explain that?

7            THE PROSPECTIVE JUROR:  Well, I mean, I go back

8    and forth between thinking -- knowing about my nephew's

9    mental state, that this may have been something that he

10   invented or imagined.  My initial response was:  My

11   brother-in-law -- and knowing him, not being capable of

12   that.  But, unfortunately, he has his own mental issues --

13   not "mental issues" -- he has issues, drinking.  And it's

14   theoretically possible that something could have happened

15   between the two of them when he was in a --

16           THE COURT:  Okay.  But it sounds like you have

17   some analytical skepticism, shall I say?

18           And so will you bring to your evaluation of the

19   evidence in this case an unbiased, impartial view, and

20   evaluate the witness testimony here and the evidence

21   presented to you here with an open mind?

22           THE PROSPECTIVE JUROR:  I think I could.  I can't

23   say that that wouldn't be in the back of my mind, but I

24   think I could.  I mean, I -- there is -- there is a

25   possibility of -- you know, further evidence materializing;

1    not within the next week or so.

2           Right now I am taking a hands-off kind of posture

3    to the whole event or the whole issue with -- with my -- my

4    nephew, my sister, and her now-husband.  So I'm trying not

5    to be too involved or pursue it too closely unless my sister

6    wants me -- wants to discuss it with me, which I don't think

7    she will.

8           THE COURT:  Okay.

9           (A bench conference was held as follows:)

10          THE COURT:  Do you have any follow up questions?

11          MS. HARDEN:  None.  I have none.  I'm sorry.

12          THE COURT:  You have none?

13          MS. HARDEN:  No, Your Honor.  I have no follow up

14   questions.

15          MS. BURRELL:  Your Honor, we move to strike for

16   cause.  Even when the Court asked him whether he could kind

17   of set aside from what happened with his nephew and focus on

18   this case, he kept going back to talking about his nephew,

19   talking about his family situation.

20          I mean, quite frankly, it doesn't seem like that's

21   something that's he's going to be setting aside; and that's

22   something that -- when asked how he'd view the evidence in

23   this case, he couldn't even answer the question --

24          MS. HARDEN:  We would object to the motion, Your

25   Honor.  This is no different than the motion made for the

236

```
1    juror who said she was a victim of assault.
2           The question is whether or not he can set it aside
3    and judge the evidence in this case; and he said he could.
4           THE COURT:  Do you have any follow up questions if
5    you have any concerns about that -- from the government?
6           MS. BURRELL:  I would ask how old the nephew is
7    and the nature of the sexual abuse; and also whether --
8           MS. SEDKY:  We would ask -- inquire about the
9    nature of the mental health issue he thinks the nephew has.
10          THE COURT:  Okay.
11          (Whereupon, the bench conference concludes.)
12          THE COURT:  Okay.  Juror No. 605, how old is your
13   nephew now?  And how old was your nephew at the time of the
14   alleged sexual abuse --
15          THE PROSPECTIVE JUROR:  He is -- he is 28 years
16   old now.
17          THE COURT:  And how old was he when --
18          THE PROSPECTIVE JUROR:  That, I don't know.  My
19   sister was vague about when the alleged, you know, abuse
20   occurred.  Whether he was -- he was under 18 or not, I do
21   not know.  She said, you know -- she suggests it was some
22   years ago, so I take that to mean ten, plus or minus.  But
23   I -- I don't have any further details on the timing,
24   unfortunately.
25          THE COURT:  And you don't know whether it was when
```

1      the nephew was a minor?

2              THE PROSPECTIVE JUROR:  No, I do not.

3              THE COURT:  And you referenced that your nephew

4      has some mental issues.  Could you explain that a little bit

5      more?

6              THE PROSPECTIVE JUROR:  He has been -- I don't

7      know how much detail you want, but -- he has had mild

8      psychotic or psychosis episodes, occasional suicidal

9      tendencies.  He is currently in treatment for suicidal

10     tendencies right now, been there for about a month or so.

11     And it was his recent exacerbation that -- during that

12     exacerbation he confessed or informed my sister about this

13     alleged abuse.

14             THE COURT:  And you don't know -- you don't have

15     any more detail about precisely what the nature of the abuse

16     was --

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  -- and how long it --

19             THE PROSPECTIVE JUROR:  No.  I don't know whether

20     it was just physical, mental, or sexual.  She did not go

21     into any details, obviously.  My nephew is probably

22     reluctant to -- well, unable, at this point, to be too

23     forthcoming about it -- at least with someone like myself,

24     even with my sister.

25             THE COURT:  Okay.  So with this going on in your

1    family right now, do you think that this would be

2    preoccupying you while you are listening to testimony in

3    this case?

4             THE PROSPECTIVE JUROR:  I think I am more

5    preoccupied with my sister, as she is going through a

6    divorce with her husband for reasons which are somewhat

7    separate from the alleged abuse.  I am probably more

8    concerned and preoccupied with that process right now and

9    supporting my sister than the separate perhaps related, you

10   know, abuse allegation because, again, I just -- it's hard

11   for me to believe that it happened, but it could have,

12   obviously.

13            THE COURT:  Okay.

14            (A bench conference was held as follows:)

15            THE COURT:  Well, that's the follow up.

16            Do you persist in your motion to strike for cause?

17            MS. BURRELL:  I do, Your Honor.

18            THE COURT:  And defense?

19            MS. HARDEN:  Defense objects.

20            THE COURT:  Okay.  I am not going to strike him

21   for cause.  I mean, I think he has made it clear that it's a

22   separate incident; he's somewhat skeptical.  He understands

23   these are allegations arising during the context of a

24   divorce between the sister and the brother-in-law.  He

25   doesn't have much detail.

1           I just -- I think he's going to provide the same

2    analytical skepticism to the evidence presented in this case

3    and make a decision based on the evidence, so I am not going

4    to strike him for cause.  All right.

5                (Whereupon, the bench conference concludes.)

6                THE COURT:  All right.  Thank you.

7                Juror No. 605, you may resume your seat.

8                THE PROSPECTIVE JUROR:  Thank you.

9                THE COURT:  Juror 87, please come to the lectern

10   so you can stand more comfortably.

11               Thank you very much for your patience.  I know

12   it's been a long day already.

13               I see that you have checked Questions 12 and 17,

14   so I am just going to review those with you in order.

15               Question 12 asks whether you, a member of your

16   family, or a close friend have ever studied law or been

17   employed by a lawyer or a law firm or worked in a legal

18   environment.

19               Could you explain that?

20               THE PROSPECTIVE JUROR:  I graduated from law

21   school in 1981.  I went to Golden Gate University School of

22   Law at night, and I worked during the daytime for various

23   legal publishing companies.

24               THE COURT:  Okay.

25               THE PROSPECTIVE JUROR:  I -- I switched into

1    working on websites in the mid-'90s; but I did work as an

2    office administrator for a legal research company here in

3    the District from 2016 to 2017.

4              THE COURT:  Okay.  And are you currently working?

5              THE PROSPECTIVE JUROR:  No.  I am retired now.

6              THE COURT:  You are retired.  And did you retire

7    from the legal research company?

8              THE PROSPECTIVE JUROR:  Well, they got bought,

9    and they merged, so they laid me off.  I decided to retire

10   then.

11             THE COURT:  I see.  And have you ever actually

12   practiced law representing clients?

13             THE PROSPECTIVE JUROR:  No, I never have.  I have

14   always been a researcher.

15             THE COURT:  I see.  Okay.  And is there anything

16   about your legal education and work on doing legal research

17   that you think would pose any impediment to your following

18   my instructions on the law in this case?

19             THE PROSPECTIVE JUROR:  No.  The judge tells the

20   jury what the law is.  And even -- my research was in civil

21   law, so I don't know much about criminal law.

22             THE COURT:  Okay.  With respect to Question 17, it

23   asks whether you, a member of your family, or a close friend

24   has ever been convicted or arrested for a crime, a victim of

25   a crime, or a witness to a crime, or testified in court.

```
 1              THE PROSPECTIVE JUROR:  I was mugged in, like,
 2      1986, 1987.  I was a victim of a crime.
 3              THE COURT:  Okay.  And was that in Washington,
 4      D.C.?
 5              THE PROSPECTIVE JUROR:  Yes.  Well, Cheverly Metro
 6      Station.  Is that D.C. or --
 7              THE COURT:  What did you just say?
 8              THE PROSPECTIVE JUROR:  Cheverly Metro Station.
 9              THE COURT:  I can't hear you.
10              THE PROSPECTIVE JUROR:  Cheverly Metro Station.
11              THE COURT:  Oh.  Oh, the metro station.  Gosh, I
12      don't know.
13              THE PROSPECTIVE JUROR:  I don't know.  It might be
14      Prince George's County.  I'm not sure.
15              THE COURT:  Yeah.  Okay.  So --
16              THE PROSPECTIVE JUROR:  Metro.
17              THE COURT:  It's close enough.  Thank you.
18              And was there ever anybody caught in connection
19      with that mugging?
20              THE PROSPECTIVE JUROR:  No.
21              THE COURT:  Okay.  And it was some time ago?
22              THE PROSPECTIVE JUROR:  '86, '87.  I was trying to
23      remember after you asked the question.
24              THE COURT:  Right.  Exactly.
25              Okay.  So how long have you been retired?
```

```
 1              THE PROSPECTIVE JUROR:  Since the end of 2017.
 2              THE COURT:  Okay.  Thank you.
 3              (A bench conference was held as follows:)
 4              THE COURT:  Follow up from the government?
 5              MS. BURRELL:  No, Your Honor.
 6              MS. HARDEN:  Your Honor, I don't think I caught
 7     where she retired from.
 8              THE COURT:  It was a legal research company.
 9              MS. HARDEN:  I have no follow up.
10              THE COURT:  Okay.  Thank you.
11              (Whereupon, the bench conference concludes.)
12              THE COURT:  Thank you, Juror 87.  You can resume
13     your seat in the hallway.  Thank you.
14              THE PROSPECTIVE JUROR:  Thank you.
15              (Whereupon, the prospective juror was excused.
16     Another prospective juror enters.)
17              MS. HARDEN:  Your Honor, 18 qualified jurors.
18              THE COURT:  Yes.  That's what I am up to.
19              Good afternoon, Juror 71.
20              If you could come stand at the lectern.  Please
21     feel free to put your bags down on the chair --
22              THE PROSPECTIVE JUROR:  Okay.
23              THE COURT:  -- so you can stand more comfortably.
24              How are you this afternoon?
25              THE PROSPECTIVE JUROR:  I am okay.  Thanks.
```

1          THE COURT:  Thank you for your patience.  I know

2     it's been a long day.

3          And you have checked Questions 12, 13, 17 --

4     question mark next to 26, so I will review that with you --

5     30, 31, 35, and 38.

6          Starting with 12, which asked about whether you, a

7     member of your family, or a close friend has ever studied

8     law or worked for a lawyer or a law firm or in a legal

9     context.

10         THE PROSPECTIVE JUROR:  Right.

11         THE COURT:  Could you explain that?

12         THE PROSPECTIVE JUROR:  My sister is a lawyer.

13         THE COURT:  And do you know where she practices?

14         THE PROSPECTIVE JUROR:  Well, she's actually not

15    practicing anymore.  She was practicing in Boston.

16         THE COURT:  Okay.  Did she ever do criminal law?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  Okay.  And is there anything about the

19    conversations you may have had with your sister --

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  -- during her legal career that you

22    think could have an impact on your ability to be fair and

23    impartial as a juror?

24         THE PROSPECTIVE JUROR:  No.  No.

25         THE COURT:  Okay.  And then Question 13 asks

1    whether you, a member of your family, or a close friend has

2    been employed by a local, state, or federal law enforcement

3    agency.

4                THE PROSPECTIVE JUROR:  My father was with the

5    CIA.  I've had a lot of friends in the State Department.

6                THE COURT:  Okay.  And same question:  Anything

7    about conversations you may have had with your father or

8    your friends at the State Department -- about their work

9    that you think could affect your ability to be a fair and

10   impartial juror --

11               THE PROSPECTIVE JUROR:  No.

12               THE COURT:  Okay.  And then Question 17 asks

13   whether you, a member of your family, or close friend has

14   ever been arrested or convicted of a crime, victim or a

15   witness to a crime, or testified in court.

16               THE PROSPECTIVE JUROR:  Yeah.  I mean, I have been

17   a victim to a crime.  I have never pressed charges; but if

18   you want me to give you details, I can.

19               THE COURT:  Yes.

20               THE PROSPECTIVE JUROR:  I have been assaulted.

21               THE COURT:  And how many times have you been

22   assaulted?

23               THE PROSPECTIVE JUROR:  Depending on your

24   definition of "assault," I have been attacked and physically

25   assaulted a number of times.  Other ways would be more

1    exposure to witnessing an assault many times in my life as a

2    kid, and as an adult.

3                THE COURT:  Okay.  And were these assaults and the

4    exposure by the same person?

5                THE PROSPECTIVE JUROR:  No.

6                THE COURT:  By people you knew, or strangers?

7                THE PROSPECTIVE JUROR:  No.  Strangers.

8                THE COURT:  Okay.  And --

9                THE PROSPECTIVE JUROR:  Just an incredibly number

10   of times to me -- at me.

11               THE COURT:  Okay.  What -- well, any one time

12   might be too many.  But when you say an incredible number of

13   times --

14               THE PROSPECTIVE JUROR:  I mean, it just seems like

15   when I was young, four or five times.  As an adult, a few

16   times.  The latest was a guy on my street.  And I do have a

17   daughter, and she was behind me, when I was on the street,

18   and there he was on that street in D.C.  So, you know,

19   take -- they're masturbating, is what they've been doing.

20   To me, or saying:  Come over.  Can I -- can I get directions

21   from you?  And they're there doing that.  It's all purposely

22   done to have the effect that it had.

23               THE COURT:  All right.  And have you reported any

24   of this to the -- these assaults --

25               THE PROSPECTIVE JUROR:  No.

```
1              THE COURT:  -- or exposures to the police?
2              THE PROSPECTIVE JUROR:  No.  I didn't.  I didn't.
3    I don't think any of those -- I might have mentioned
4    something when I called for another reason, just for --
5    some -- there was a robbery near my house -- that's another
6    thing I have seen; but I might have mentioned that at the
7    time to someone in the area, but...
8              THE COURT:  Have you treated these assaults of
9    grabbing your wrist -- and, for the record, the juror was
10   grabbing her wrist -- or the exposures, have you treated
11   that as the price of living in the city?
12             THE PROSPECTIVE JUROR:  I've treated that as,
13   yeah, probably the price of living in the city and just
14   wanting to put things behind me, I mean, yeah.  Yeah.  I
15   mean, the assault grabbing -- I don't think that's the price
16   of living in the city.  I mean, I -- I don't -- I don't --
17             THE COURT:  And when did that happen?
18             THE PROSPECTIVE JUROR:  That happened a number of
19   years ago, like, 20 years ago.
20             THE COURT:  And it was a stranger --
21             THE PROSPECTIVE JUROR:  It was a stranger, yeah.
22   All of these were strangers.  Yeah.  Well, all of what I
23   have mentioned so far have been strangers.
24             THE COURT:  Okay.  And do you think having had
25   these experiences that that is going to in some way affect
```

1     your ability to be fair and impartial --

2              THE PROSPECTIVE JUROR:  You know, I want to say I

3     can be very objective, and I view myself as a very

4     open-minded and objective person.  But when I first came in

5     here and you told me what the case is about, I -- you know,

6     I was tense.  And I'd -- I'd like to say I can be totally

7     objective.  I want to think that I can be, but I feel tense

8     even standing here right now.

9              THE COURT:  Okay.  Well, let's move on to

10    Question 26, which asks:  Are you so uncomfortable with

11    hearing about, viewing or discussing sexually explicit

12    materials, including purported child pornography, that you

13    could not serve as a fair and impartial juror in this case?

14             THE PROSPECTIVE JUROR:  I mean, again, I want to

15    say yes, I can serve as a fair and impartial juror; but

16    honestly, I -- I hope so.  But I can't -- I can't -- I want

17    to be 100 percent sure, but I -- I -- you know, I am trying

18    to be as -- as 100 percent as I can, but I can't fairly say

19    I can be 100 percent; but I want to say that.

20             Does that make sense?  I am -- I am trying.

21             THE COURT:  Well, do you think that simply because

22    somebody might be charged with the charges that I have

23    described to you that are at issue in this case that that

24    person is guilty without having a trial?

25             THE PROSPECTIVE JUROR:  Is that person guilty

1    without having a trial?  No.  Definitely not guilty without

2    having a trial, no.

3               THE COURT:  So do you think that you would be able

4    to sit and listen to the evidence even though --

5               THE PROSPECTIVE JUROR:  Yeah.

6               THE COURT:  -- it's always a subject matter that

7    makes many of us uncomfortable, but it's not unusual.

8               THE PROSPECTIVE JUROR:  No.  I could sit and

9    listen to the subject matter, yeah.

10              THE COURT:  And could you keep an open mind and

11   listen to the evidence and evaluate it to determine whether

12   or not the government has --

13              THE PROSPECTIVE JUROR:  Yeah, I think so.  I think

14   I could.

15              THE COURT:  Okay.  You have also marked 30,

16   whether you, a family member, or a close friend has ever

17   been the victim of sexual abuse.

18              THE PROSPECTIVE JUROR:  Yeah.  I mean, I -- I --

19   one time I was -- once, when I was pre-18 -- both times I

20   was under 18.  I -- once I was cornered in a room, and it

21   was somebody I knew, and he exposed himself and pushed

22   himself at me when I was a young teen.

23              THE COURT:  Were you able to get out of that

24   situation?

25              THE PROSPECTIVE JUROR:  I was able to get out and

1    run away, yeah.  And no other -- you know, I just ran from

2    him.

3             THE COURT:  Right.  And there was a second

4    instance?

5             THE PROSPECTIVE JUROR:  The second instance was --

6    was a couple different -- different -- two more instances

7    where I was also cornered in a room.  There was no exposure.

8    I didn't know what they were going to do, but it didn't --

9    it wasn't -- it wasn't good; they sort of threatened things.

10   And I also -- one, I talked my way out of one; and, two, I

11   ran away from one.  I got out of those situations.

12            THE COURT:  And all three of those situations were

13   when you were under 18?

14            THE PROSPECTIVE JUROR:  The third one I was not

15   under 18.

16            THE COURT:  All right.  I don't know how old you

17   are, but was it more than ten years ago that these instances

18   happened?

19            THE PROSPECTIVE JUROR:  Yes.  Yes.

20            THE COURT:  All right.  And do you think that you

21   will be able to keep those instances out of your mind as

22   you're evaluating the evidence in this case?

23            THE PROSPECTIVE JUROR:  I -- no.  I can't keep

24   those instances out of my mind.  I mean -- no.  I can -- I

25   don't know if that means I can't be objective; but they're

1    not -- they're there -- everything is in there, yeah, you

2    know, to some extent.

3              THE COURT:  Okay.  All right.  And Question 31

4    asks whether you have ever had any experience with a person

5    who has been accused of or have engaged in criminal sexual

6    activity with a minor under 18 years of age that might

7    affect your ability to serve as a fair and impartial juror

8    in this case.

9              Is your answer to 31 --

10             THE PROSPECTIVE JUROR:  Yeah --

11             THE COURT:  -- the same as your answer --

12             THE PROSPECTIVE JUROR:  Yeah.

13             THE COURT:  -- that you already gave me to 30?

14             THE PROSPECTIVE JUROR:  Exactly.

15             THE COURT:  Okay.  And so, in your answer to 31,

16   you responded that it might affect your ability to serve as

17   a fair and impartial juror in this case.  And so do you

18   think that your prior experiences that you described would

19   make it difficult for you to be a fair and impartial juror

20   in this case?

21             THE PROSPECTIVE JUROR:  It -- it could make it

22   difficult, yeah.  I -- you know, I wouldn't really know

23   until I know what's going on.  But I -- I just -- in

24   answering those questions, disputing it in my body, I -- you

25   know, I am just trying to be as open -- as open and honest

1       as I can.

2               THE COURT:  Right.  Okay.  Let me talk to the

3       attorneys.

4               (A bench conference was held as follows:)

5               THE COURT:  Follow up?

6               MS. HARDEN:  I move to strike for cause.  She's

7       made her position clear.

8               THE COURT:  And the government's position?

9               MS. BURRELL:  We join the motion.

10              THE COURT:  Okay.  I will strike her for cause.

11              (Whereupon, the bench conference concludes.)

12              THE COURT:  Okay.  Juror No. 71, thank you so much

13      for coming in today, and thank you for your patience.  I am

14      going to excuse you.  You may leave the courthouse.

15              THE PROSPECTIVE JUROR:  I get to leave the

16      courthouse, you said?

17              THE COURT:  Yes.  You can leave the courthouse.

18              THE PROSPECTIVE JUROR:  Okay.  Okay.

19              THE COURT:  You are excused from this jury

20      selection.

21              THE PROSPECTIVE JUROR:  Okay.  Okay.  Thank you.

22              (Whereupon, the prospective juror was excused.

23      Another prospective juror enters.)

24              THE COURT:  And, Juror 761, if you could stand at

25      the lectern.

1              How are you this afternoon?

2              THE PROSPECTIVE JUROR:  Good.  Good.  Thank you.

3              THE COURT:  And thank you very much for your

4      patience.  I know it's been a long day.

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  I see that you have checked questions

7      8, 9, 12, 13, and, 17; I will just run right through those.

8              Question 8 asks whether you know or recognize any

9      other member of the prospective jury panel, the courtroom

10     staff, or me.

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And who do you recognize?

13             THE PROSPECTIVE JUROR:  You.

14             THE COURT:  Okay.  How do you know me?

15             THE PROSPECTIVE JUROR:  The last jury that I

16     served on in 2019, you were the --

17             THE COURT:  I was the judge?

18             THE PROSPECTIVE JUROR:  You were the judge.

19             THE COURT:  You have a very good memory.

20             Okay.  And you were just -- you just have a lucky

21     magnet for the jury wheel, don't you?  Okay.  Every two

22     years.

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Okay.  And other than that, do you

25     recognize anybody else?  Probably my courtroom deputy.

```
 1                    THE PROSPECTIVE JUROR:  Yes.  Of course.

 2                    THE COURT:  Ms. Gumiel.

 3                    THE PROSPECTIVE JUROR:  Yes.

 4                    THE COURT:  Right.  Okay.  Well, you have a very

 5        good memory.  Thank you.

 6                    And I have had so many trials, I don't remember

 7        which --

 8                    THE PROSPECTIVE JUROR:  It was the trial in which

 9        supporters of the Maduro regime who occupied the embassy and

10        refused to leave.

11                    THE COURT:  Got it.  Yes, I do remember that trial.

12                    Okay.  And then with respect to Question 9 --

13        well, was there anything about that experience that would

14        make it difficult for you to serve on another jury?

15                    THE PROSPECTIVE JUROR:  No.

16                    THE COURT:  Okay.  Was it a pleasant enough

17        experience being in my courtroom, is that it?

18                    THE PROSPECTIVE JUROR:  Sure.  Yes.

19                    THE COURT:  Okay.  Question 9 asked about whether

20        it would be a hardship for you to serve on a jury this week

21        and next.

22                    THE PROSPECTIVE JUROR:  Yes.  I am refinancing my

23        house and scheduled to close tomorrow at noon.

24                    THE COURT:  Oh.

25                    THE PROSPECTIVE JUROR:  And the interest rates
```

1     that I have locked in expires on Friday.

2               THE COURT:  Okay.  Expires on Friday.  Well, we

3     are not going to be sitting on Friday.

4               THE PROSPECTIVE JUROR:  I knew you were going to

5     say that.

6               THE COURT:  So if you postponed your -- you could

7     lock it in on Friday, right?

8               THE PROSPECTIVE JUROR:  Ideally, yes.

9               THE COURT:  Okay.  Do you think that would be

10    possible for you to do?

11              THE PROSPECTIVE JUROR:  I will try.

12              THE COURT:  Okay.  Okay.  And then Question 12

13    asks whether you, a member of your family, or a close friend

14    ever studied law or have been employed by a lawyer or a law

15    firm, or --

16              THE PROSPECTIVE JUROR:  Yeah.  I -- many, many,

17    many years ago I worked at Arnold & Porter as a paralegal

18    assistant -- nothing really legal, more sort of

19    administrative, Bates stamping, and things like that.

20              THE COURT:  Got it.  Okay.

21              And then question -- let's see, what was I on? --

22    13:  Have you, a member of your family, or any close friend

23    ever been employed by a local, state, or federal law

24    enforcement agency or a private security firm?

25              THE PROSPECTIVE JUROR:  I am currently employed

1    now as -- I was going to say a paralegal -- as a budget

2    analyst with the U.S. Capitol Police.

3              THE COURT:  Okay.  And how long have you had that

4    job?

5              THE PROSPECTIVE JUROR:  13 years.

6              THE COURT:  Okay.  And as a budget analyst for the

7    U.S. Capitol Police, do you get involved with law

8    enforcement matters?

9              THE PROSPECTIVE JUROR:  No.  No.  It's primarily

10   financial.

11             THE COURT:  Okay.  And because you work for the

12   U.S. Capitol Police, do you feel that you would have -- that

13   you would favor law enforcement witnesses' testimony over

14   anybody else's?

15             THE PROSPECTIVE JUROR:  No.  No.

16             THE COURT:  No?  Okay.

17             And 17 asks whether you, a member of your family,

18   or any close friend has ever been arrested or convicted of a

19   crime, been a victim of a crime, or been a witness to a

20   crime, or testified in court.

21             THE PROSPECTIVE JUROR:  Yeah.  A few years ago --

22   I can't even remember how long, maybe about five years

23   ago -- a friend of mine was accused of domestic battery; and

24   I was simply called as a character witness for him.

25             THE COURT:  And did you testify?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And what was the result of that?

3          THE PROSPECTIVE JUROR:  He was convicted and, I

4    think, sentenced to 52 weeks to be served on the weekends

5    only.

6          THE COURT:  And was there anything about that

7    process and your participation in it that you think would

8    affect your ability to be fair and impartial here?

9          THE PROSPECTIVE JUROR:  No.

10          THE COURT:  Okay.  All right.  Let me talk to the

11    lawyers.

12          (A bench conference was held as follows:)

13          MS. HARDEN:  Did he say he testified for a petit

14    jury or grand jury for a certain amount of weeks?

15          THE COURT:  No.  He testified as a character

16    witness for a friend who was accused of battery.

17          MS. HARDEN:  Okay.

18          THE COURT:  And the person was given 52 weekends.

19          MS. HARDEN:  52 weekends.

20          I don't have any follow up questions.

21          THE COURT:  All right.

22          MS. HARDEN:  I don't have any follow up.

23          MS. BURRELL:  No follow up.

24          THE COURT:  Okay.

25          (Whereupon, the bench conference concludes.)

```
1                THE COURT:  Okay.  Juror No. 761, if you could
2       resume your seat outside.  Thank you.
3                THE PROSPECTIVE JUROR:  Okay.  Thank you.
4                (Whereupon, the prospective juror was excused.
5       Another prospective juror enters.)
6                THE COURT:  Juror No. 822, if you would come stand
7       at the lectern.
8                How are you this afternoon?
9                THE PROSPECTIVE JUROR:  I am fine.  Thank you.
10               THE COURT:  Thank you very much for your patience.
11      I know it's been a long day.
12               I see you have checked No. 12, so let me just ask
13      that question:  Have you, any member of your family, or a
14      close friend studied law, worked for a law firm?
15               THE PROSPECTIVE JUROR:  I do have a close friend
16      who studied law.
17               THE COURT:  Okay.  And is your friend working as a
18      lawyer?
19               THE PROSPECTIVE JUROR:  No.
20               THE COURT:  Okay.  And do you discuss legal
21      matters with that friend?
22               THE PROSPECTIVE JUROR:  Sometimes.  We were
23      journalists together, who -- and he covered the courts.
24      So...
25               THE COURT:  Are you a journalist?
```

```
 1                    THE PROSPECTIVE JUROR:  I am a former journalist;
 2          that's not my current occupation, though.
 3                    THE COURT:  Okay.  Where did you formally work as
 4          a journalist?
 5                    THE PROSPECTIVE JUROR:  I worked for a site called
 6          Think Progress.
 7                    THE COURT:  Think Progress, okay.
 8                    And what do you do now?
 9                    THE PROSPECTIVE JUROR:  So I now do press
10          communications for a nonprofit here in D.C.
11                    THE COURT:  And what is the nonprofit?
12                    THE PROSPECTIVE JUROR:  Alliance For Justice.
13                    THE COURT:  And does that deal with criminal
14          justice system matters?
15                    THE PROSPECTIVE JUROR:  Occasionally.  We advocate
16          around the courts at large, not necessarily on specific
17          issues all the time.
18                    THE COURT:  Okay.  And what sort of advocacy do
19          you do?
20                    THE PROSPECTIVE JUROR:  Particularly on judicial
21          nominations, Your Honor.
22                    THE COURT:  Judicial nominations, okay.  And is
23          that really the focus of what your advocacy work is?
24                    THE PROSPECTIVE JUROR:  Yes.  So we -- we watch
25          hearings when they're being interviewed by the Senate
```

1    Judiciary Committee, follow the nomination processes from

2    when the White House announces them, to confirmation.

3              THE COURT:  Okay.  And how long have you worked

4    for Alliance For Justice?

5              THE PROSPECTIVE JUROR:  Two years.

6              THE COURT:  And do you think that there is

7    anything about your work for Alliance For Justice or even

8    previously as a journalist that you think would affect your

9    ability to be a fair and impartial juror in this case?

10             THE PROSPECTIVE JUROR:  No, Your Honor.

11             THE COURT:  Okay.

12             (A bench conference was held as follows:)

13             MS. HARDEN:  No.

14             THE COURT:  Any follow up?

15             MS. HARDEN:  No.

16             MS. BURRELL:  No follow up.

17             (Whereupon, the bench conference concludes.)

18             THE COURT:  Okay.  Juror No. 822, if you could

19    resume your seat in the hallway.  Thank you.

20             THE PROSPECTIVE JUROR:  Thank you.

21             (Whereupon, the prospective juror was excused.

22    Another prospective juror enters.)

23             THE COURT:  Juror 821, put your bag on the chair

24    so you can be more comfortable.

25             THE PROSPECTIVE JUROR:  Thank you.

1           THE COURT:  And stand right there at the

2    microphone.

3           How are you this afternoon?

4           THE PROSPECTIVE JUROR:  A little chilly.

5           THE COURT:  A little chilly?

6           THE PROSPECTIVE JUROR:  It's cold.

7           THE COURT:  Yeah, it is.

8           All right.  I see that you have checked

9    Questions 12, 13, 15, 17, and 35; so I am just going to run

10   right through those.

11          THE PROSPECTIVE JUROR:  Okay.

12          THE COURT:  12 asked whether you, a member of your

13   family, or a close friend has ever studied the law, been

14   employed as a lawyer or by a lawyer.

15          THE PROSPECTIVE JUROR:  One of my friends is a

16   lawyer for the Department of Justice.

17          THE COURT:  And do you talk to that friend about

18   what he or she does?

19          THE PROSPECTIVE JUROR:  Not very often.  We

20   haven't spoken in the last two years because of COVID and

21   family obligations; but, no, she just complains about her

22   boss.

23          THE COURT:  I see.

24          THE PROSPECTIVE JUROR:  Nothing -- no cases or

25   anything like that.

1          THE COURT:  All right.  So there is nothing about

2     that friendship or the conversations you have that would

3     affect your ability to be fair and impartial?

4          THE PROSPECTIVE JUROR:  Not at all.

5          THE COURT:  Okay.  And then 13 asked whether you,

6     a member of your family, or a close friend have been

7     employed by local, state, or federal law enforcement agency.

8          Can you explain that?

9          THE PROSPECTIVE JUROR:  A family friend -- like a

10    coworker's husband is a police officer.

11         THE COURT:  Okay.  And do you ever talk to your

12    coworker's husband about his work?

13         THE PROSPECTIVE JUROR:  No.  We don't really talk

14    to him very much.

15         THE COURT:  Okay.  And then 15 asks whether you, a

16    member of your family, or a close friend has done work for

17    or with any person or organization that does criminal

18    defense work, such as the Federal Public Defender, the

19    Public Defender's Office, defense attorneys, or a private

20    investigator.

21         THE PROSPECTIVE JUROR:  Right.  My friend who

22    works for the Department of Justice used to be a defense

23    attorney in West Virginia.

24         THE COURT:  I see.

25         Okay.  So the answer is the same?

```
1              THE PROSPECTIVE JUROR:  Right.

2              THE COURT:  Okay.  And then 17 asked whether you,

3      a member of your family, or a close friend has ever been

4      arrested or convicted of a crime, been a victim or a witness

5      to a crime, testified in court about any criminal --

6              THE PROSPECTIVE JUROR:  Right.  I have a friend

7      who was a victim of a crime; she was robbed at an ATM, and

8      she had to testify in court.

9              THE COURT:  And how long ago was that?

10              THE PROSPECTIVE JUROR:  At least over 15 years

11      ago, and that's -- that's pretty much it.

12              THE COURT:  Yeah.

13              Okay.  And did you go with her to court to

14      testify?

15              THE PROSPECTIVE JUROR:  No.  No.

16              THE COURT:  Okay.  And then you also marked 35,

17      that you have children or stepchildren.

18              How many children do you have?

19              THE PROSPECTIVE JUROR:  I have a daughter, she's

20      11.

21              THE COURT:  And having heard the review of the

22      allegations in this case that involved A.S., who was 12 to

23      13 --

24              THE PROSPECTIVE JUROR:  I heard you say that.

25              THE COURT:  -- is there anything about having an
```

1    11-year-old daughter that you think would make it difficult

2    for you to hear the testimony or --

3             THE PROSPECTIVE JUROR:  No.  No.

4             THE COURT:  -- be a fair and impartial juror in

5    this case?

6             THE PROSPECTIVE JUROR:  If anything I just feel

7    like I have more insight in what an 11-year-old thinks, just

8    from having an 11-year-old, but it doesn't change my

9    thinking for this case at all.

10            THE COURT:  Okay.  What do you do for a living?

11            THE PROSPECTIVE JUROR:  I work for FAC.  I am an

12   administrator for NASA headquarters, for NASA Research and

13   Education Support Services.

14            THE COURT:  Okay.  And how long have you done

15   that?

16            THE PROSPECTIVE JUROR:  For 20 years.

17            THE COURT:  Okay.  Give me a second.

18            (A bench conference was held as follows:)

19            MS. HARDEN:  No follow up, Judge.

20            MS. BURRELL:  No follow up.

21            (Whereupon, the bench conference concludes.)

22            THE COURT:  Okay.  Juror 821, if you could just

23   take a seat in the hallway.

24            (Whereupon, the prospective juror was excused.

25   Another prospective juror enters.)

1            THE COURT:  Good afternoon, Juror No. 428.

2            You can stand by that lectern.

3            THE PROSPECTIVE JUROR:  Okay.

4            THE COURT:  Feel free to put your purse and your

5     jacket down on the chair behind you so you could be more

6     comfortable.

7            THE PROSPECTIVE JUROR:  Thank you.

8            THE COURT:  How are you this afternoon?

9            THE PROSPECTIVE JUROR:  I am okay.

10           THE COURT:  All right.  Thank you for your

11    patience --

12           THE PROSPECTIVE JUROR:  Yeah.

13           THE COURT:  -- I know it's been a long day.

14           I see you have checked a maybe next to 7; and you

15    have also checked 17, and 35 --

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  -- so I am just going to go through

18    those in order.

19           Question 7 says that you might hear testimony from

20    or about a number of people.

21           Was there a name you recognized?

22           THE PROSPECTIVE JUROR:  There is one name that --

23    Stephanie Wolf, I can't imagine it would be the same one

24    that I know.  But there was pediatric neurologist that I

25    worked with in North Carolina and, as far as I know, she's

1    still living in North Carolina, but...

2              THE COURT:  Okay.  Let me just --

3              Is that a different person?

4              MS. SEDKY:  That's a different person.

5              THE COURT:  That's a different person.

6              THE PROSPECTIVE JUROR:  Okay.  That's what I

7    figured.

8              THE COURT:  Okay.  And then Question 17 asks

9    whether you, a member of your family, or a close friend has

10   ever been arrested or convicted of a crime, a victim of a

11   crime or a witness to a crime, or testified in court.

12             THE PROSPECTIVE JUROR:  Yeah.  So I -- this is a

13   very minor traffic incident when I was 16, and I went to

14   court for it; I wasn't sure if that counted as a "yes"

15   there.

16             THE COURT:  Okay.  So you had a traffic --

17             THE PROSPECTIVE JUROR:  Like a fender bender.

18             THE COURT:  Okay.  And did you have to testify?

19             THE PROSPECTIVE JUROR:  No.  I think I just had to

20   show up in traffic court, and then I did defensive driving

21   school.  I can't -- I can't even remember.

22             THE COURT:  Okay.  Probably healthy for any

23   16-year-old.

24             THE PROSPECTIVE JUROR:  Right, yes.

25             THE COURT:  Okay.  What do you do for a living?

```
 1                  THE PROSPECTIVE JUROR:  I am a physician.

 2                  THE COURT:  Okay.  And do you -- do you have a

 3        specialty?

 4                  THE PROSPECTIVE JUROR:  Yes.  I do pediatrics,

 5        primary care.

 6                  THE COURT:  Okay.  All right.

 7                  (A bench conference was held as follows:).

 8                  THE COURT:  Follow up?

 9                  MS. HARDEN:  Your Honor, can you just ask her

10        whether she deals with forensics, any kind of children

11        issues relating to the sexual abuse while dealing with

12        children?

13                  THE COURT:  Government?

14                  MS. BURRELL:  We have no follow up questions.

15                  THE COURT:  Okay.

16                  (Whereupon, the bench conference concludes.)

17                  THE COURT:  And as a pediatrician, do you -- are

18        you ever called upon to do any kind of forensic work dealing

19        with children or sexual abuse or --

20                  THE PROSPECTIVE JUROR:  No.  If a patient comes to

21        the office and there was a concern, I would get CPS involved

22        and others who have more intensive training for that sort of

23        investigation.

24                  THE COURT:  I see.  And does that happen very

25        often in your practice?
```

```
1              THE PROSPECTIVE JUROR:  Luckily, no.  Not very
2     often.  Maybe two to three times over the last six years
3     that I have been in practice.
4              THE COURT:  I see.  Have you only practiced in D.C.?
5              THE PROSPECTIVE JUROR:  I -- yeah.  I actually
6     practice in Reston, but live in D.C.
7              THE COURT:  I see.
8              (A bench conference was held as follows:)
9              THE COURT:  Any other follow up?
10             MS. HARDEN:  How long has she lived in D.C.?
11    Since she practices in Reston, does she live here, practiced
12    there for a while?
13             THE COURT:  Anything else?
14             MS. BURRELL:  No, Your Honor.
15             (Whereupon, the bench conference concludes.)
16             THE COURT:  And how long have you lived in D.C.?
17             THE PROSPECTIVE JUROR:  On and off for six years.
18    And there was -- there was one year that my husband was
19    still in training that we were in living in Charlottesville
20    but, for the most part, six years.
21             THE COURT:  Okay.  Thank you.  You may resume your
22    seat in the hallway.  Thank you.
23             THE PROSPECTIVE JUROR:  Okay.  Thank you.
24             (Whereupon, the prospective juror was excused.
25    Another prospective juror enters.)
```

1              THE COURT:  And, Juror 153, if you could come up

2      to the lectern that you see right at the front here.  Feel

3      free to put your bags and your jacket down on the chair.

4      And if you would, just stand right at the microphone.

5              How are you this afternoon?

6              THE PROSPECTIVE JUROR:  Doing well.

7              THE COURT:  Good.  Thank you very much for your

8      patience.  I know it's been a long afternoon.

9              I see you have marked Question 13, which asked

10     whether you, a member of your family, or any close friend

11     has been employed by any local, state, or federal law

12     enforcement agency.

13             Could you explain that?

14             THE PROSPECTIVE JUROR:  Yes.  I work for the U.S.

15     Department of State.  I am a civil service employee.  And,

16     in part of my time with the department, I worked for our

17     criminal justice reform bureau for about six years.

18             THE COURT:  And what does that do?  I haven't

19     heard of that.

20             THE PROSPECTIVE JUROR:  It's -- so you work with

21     other countries to help them reform their criminal justice

22     systems.  I primarily did criminal outreach for, like,

23     domestic, U.S., local, state, and federal agencies to help

24     partner them with international foreign partners to kind of

25     work with them to reform their -- their justice system.  So,

1     mainly, I worked in corrections reform.

2           THE COURT:  And did you focus on any particular

3     issue with criminal justice reform?

4           THE PROSPECTIVE JUROR:  Specifically working on

5     corrections departments; but not any more in detail to that.

6     Just, I mean, broadly correction reform in countries all

7     over the world.

8           THE COURT:  Okay.  But you haven't done that for

9     some time; is that right?

10          THE PROSPECTIVE JUROR:  No.  Yeah.  That was -- I

11    guess I -- that was about five years ago.  So I currently

12    work in public affairs, a bit of a change.

13          THE COURT:  Okay.  Got it.

14          And do you travel a lot?

15          THE PROSPECTIVE JUROR:  I don't now.  I did when I

16    was in that position; but in my current position, in public

17    affairs, I don't -- I don't do much travel.

18          THE COURT:  Okay.  And is there anything about

19    what you learned in dealing with law enforcement -- local or

20    federal law enforcement agencies, when you were in the

21    criminal justice reform unit or section, that you think

22    would have any affect on your ability to be a fair and

23    impartial juror in this case?

24          THE PROSPECTIVE JUROR:  No.  I don't think so.

25          THE COURT:  Okay.

1           (A bench conference was held as follows:)

2           THE COURT:  Any follow up?

3           MS. HARDEN:  No follow up.

4           MS. BURRELL:  No follow up.

5           (Whereupon, the bench conference concludes.)

6           THE COURT:  Okay.  Thank you, Juror 153.  You can

7    just collect your things and sit right out in the hallway

8    again.  Thank you.

9           (Whereupon, the prospective juror was excused.)

10          MS. HARDEN:  I'm sorry.  Does the Court intend to

11   go until 5:00, or longer?

12          THE COURT:  Just 5:00.

13          MS. HARDEN:  Okay.

14          THE COURT:  If I'm reading my watch correctly,

15   it's not even 3:30 yet, right?

16          MS. HARDEN:  4:20.

17          THE COURT:  It's 4:20?

18          MS. HARDEN:  I was hoping, like, it probably is

19   3:30, yeah.

20          THE COURT:  Okay.  Time flies when you're having

21   fun, doesn't it?  I didn't realize it was so late.

22          (Whereupon, a prospective juror enters.)

23          THE COURT:  Okay.  Good afternoon, Juror 114.

24          It's later than I thought it was, clearly.  Please

25   feel free to take your bag off so that you can be more

1    comfortable.

2            I see that you have checked Nos. 10, 30, and 34; I

3    am just going to review those with you in order.

4            10 asked whether you have any vision, language, or

5    hearing problems, or other physical or medical problems that

6    might interfere with your ability to understand what the

7    witnesses say in this case.

8            THE PROSPECTIVE JUROR:  Yeah.  It's not so much a

9    matter of understanding.  I was just recently diagnosed with

10   depression, anxiety, and ADHD.

11           THE COURT:  Okay.

12           THE PROSPECTIVE JUROR:  I just started treatment

13   and medication, and my behavior has kind of been all over

14   the place recently.  So just, you know, full disclosure,

15   that's kind of what's been going on with me.

16           THE COURT:  Okay.  And does it -- do you think

17   it's going to be difficult for you to sit and listen

18   attentively to evidence --

19           THE PROSPECTIVE JUROR:  It potentially could be,

20   yes.  Like I said, my behavior has been kind of erratic;

21   prone to panic attacks.

22           THE COURT:  Panic attacks.

23           THE PROSPECTIVE JUROR:  Just out of nowhere.  So

24   it's been -- yeah, it's been kind of rough.  It's, again,

25   why I've started some new medication and just trying to see

 1    how that's affecting me at this point.

 2            THE COURT:  I see.  But you are still

 3    experimenting with that?

 4            THE PROSPECTIVE JUROR:  Yes.  Yep.  That is a

 5    very -- yeah.  I just started less than three weeks ago.

 6            THE COURT:  I see.

 7            THE PROSPECTIVE JUROR:  So we're still trying to

 8    figure out what dosage levels are working and what

 9    medications are actually effective.

10            THE COURT:  Okay.  And does that make you a little

11    nervous about coming into court every day?

12            THE PROSPECTIVE JUROR:  Yeah.  A little bit,

13    actually.  I find that I -- I have been getting kind of

14    triggered a whole lot recently -- irrationally so.  Things

15    at work that would normally just be kind of a mild nuisance

16    seem to be blown way out of proportion.  I think that was

17    one of the red flags that -- that kind of started this whole

18    process of seeking medication, and therapy as well.  So...

19            THE COURT:  I see.  And is there anything

20    particular about that case that you think might be

21    triggering?

22            THE PROSPECTIVE JUROR:  Well -- well, there does

23    seem to be a sense of unjust that -- that kind of seems to

24    trigger me.  Again, just like the things at work or just

25    things in general; reading the news just makes me very upset

1    and, again, irrationally so -- and potentially listening to

2    evidence that might be true.  I'm, again, just being

3    honest -- but what I think could potentially happen.

4              THE COURT:  Well, I see you have also checked 30,

5    which asks:  Whether you, a family member, or close friend

6    has ever been the victim of sexual abuse.

7              THE PROSPECTIVE JUROR:  Yes.  My wife has.

8              THE COURT:  All right.  And how old was she when

9    that occurred?

10             THE PROSPECTIVE JUROR:  I believe she was in

11   college.

12             THE COURT:  All right.  And you have talked to her

13   about that?

14             THE PROSPECTIVE JUROR:  A little bit, yes.  As

15   much as she'll open up to me about it, yes.

16             THE COURT:  All right.  And do you think that --

17   with some of the allegations involved here of sexual

18   abuse -- that would make you very uncomfortable and be a

19   triggering event for some of the things you are working

20   through?

21             THE PROSPECTIVE JUROR:  Yes.  Yes.  Yeah, I think

22   that -- I think that would be, honestly.

23             THE COURT:  Okay.  Let me just talk to the

24   lawyers.

25             (A bench conference was held as follows:)

1          MS. HARDEN:  Move to strike for cause, Your Honor.

2          MS. BURRELL:  Join.

3          THE COURT:  Okay.  I will grant that motion.

4          MS. HARDEN:  Thank you.

5          (Whereupon, the bench conference concludes.)

6          THE COURT:  Okay.  Well, Juror No. 114, I thank

7    you for your honesty here; and good luck with your

8    situation.

9          THE PROSPECTIVE JUROR:  Okay.

10          THE COURT:  You are excused.  You may leave the

11   courthouse.

12          THE PROSPECTIVE JUROR:  Okay.  Thank you very

13   much.

14          (Whereupon, the prospective juror was excused.

15   Another prospective juror enters.)

16          THE COURT:  Juror No. 164, could you come stand at

17   the lectern.  Feel free to put your bags down on the chair,

18   if you would like, so you could be more comfortable.

19          THE PROSPECTIVE JUROR:  Stand here?

20          THE COURT:  You are exactly at the right place.

21   Thank you.

22          Thank you very much for your patience.  I know

23   it's been a long day.

24          THE PROSPECTIVE JUROR:  You're welcome.

25          THE COURT:  And I see you have checked paragraphs

1      10, 17, and 35; so I am just going to go right through those

2      in order.

3              10 asks whether you have any vision, language, or

4      hearing problems, or other physical or medical problems that

5      might interfere with your ability to understand what

6      witnesses say, or view photographs or evidence or give your

7      full attention to the case.

8              Could you explain that?

9              THE PROSPECTIVE JUROR:  Well, I am not sure --

10     another thing, is that I get cold -- like, when I was

11     sitting in the room today, I was just getting really, really

12     cold.  So just the temperature is just a little too cold for

13     me, my body temperature was just --

14             THE COURT:  Yeah.  It can get cold.  We're

15     actually going to have the trial in my courtroom.

16             THE PROSPECTIVE JUROR:  Okay.

17             THE COURT:  This is the Ceremonial Courtroom.

18             THE PROSPECTIVE JUROR:  Okay.

19             THE COURT:  I can't promise it's always warmer;

20     but you are welcome to bring a jacket, a scarf -- you can

21     wear a hat; I mean, you can make yourself comfortable there.

22             THE PROSPECTIVE JUROR:  Okay.

23             THE COURT:  Okay?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  There is no problem with wearing a

1    heavier jacket while the weather is changing.

2              So is that the only issue --

3              THE PROSPECTIVE JUROR:  Yeah.  That's the only

4    issue --

5              THE COURT:  -- the cold?

6              THE PROSPECTIVE JUROR:  Yes.  Just the coldness.

7              THE COURT:  Okay.  And, also, if you are selected

8    for the jury, I let jurors stand up so we can move around a

9    little bit to warm up.

10             THE PROSPECTIVE JUROR:  Okay.  That's perfect.

11             THE COURT:  Okay.  So you also marked 17.  And 17

12   asks whether you, a member of your family, or a close friend

13   has ever been arrested or convicted of a crime, been a

14   victim or a witness to a crime, or testified in court

15   before.

16             Could you explain that?

17             THE PROSPECTIVE JUROR:  I have been arrested

18   before.

19             THE COURT:  And when?  How many times have you

20   been arrested?

21             THE PROSPECTIVE JUROR:  It was in 2010; and it was

22   actually twice.  The first time was a simple assault, and I

23   think -- what was it?  Damage of property, or something like

24   that, so it wasn't -- they threw it out.  So I didn't have

25   to go to trial or anything for it; I just did probation.

1          THE COURT:  You did probation?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  So did you have to enter a guilty plea

4    or not a guilty plea -- or did you plead to the --

5          THE PROSPECTIVE JUROR:  I think I did plea.

6          THE COURT:  You did plea?

7          THE PROSPECTIVE JUROR:  Like, the lowest that I

8    could plead, or something like that.  It was so long ago, I

9    can't remember.

10         THE COURT:  Okay.  It was in 2010, so it was about

11   11 years ago.

12         THE PROSPECTIVE JUROR:  Yes, ma'am.

13         THE COURT:  And how old were you then?

14         THE PROSPECTIVE JUROR:  Honestly, I can't

15   remember.

16         THE COURT:  Okay.  Okay.

17         THE PROSPECTIVE JUROR:  Probably 21 -- 21, 22.

18         THE COURT:  You were 21 or 22.

19         So you said you were arrested twice.  So that --

20   one time was in 2010.  When was the other time?

21         THE PROSPECTIVE JUROR:  It was probably in the

22   same year.  So --

23         THE COURT:  The same year?

24         THE PROSPECTIVE JUROR:  Yeah, the same year.

25         THE COURT:  Okay.  So one time you were arrested

1          for simple assault.  And what was the other arrest for?

2                    THE PROSPECTIVE JUROR:  See, I have to jog my

3          memory.  When I got arrested the first time, it was a simple

4          assault or -- no.  The first time I got arrested, I just

5          went to -- they -- they brought me in the jail cell, and

6          then I seen the judge and then I left.  So they didn't bring

7          any charges against me, or anything like that.

8                    THE COURT:  Okay.

9                    THE PROSPECTIVE JUROR:  It was actually the second

10         time I got charged with simple assault; and there was damage

11         of property -- for a television.

12                    THE COURT:  For a television?

13                    THE PROSPECTIVE JUROR:  Yes, ma'am.

14                    THE COURT:  What happened with the television?

15                    THE PROSPECTIVE JUROR:  It was a -- it was my

16         son's mom at the time, and -- you want me to explain what

17         happened or --

18                    THE COURT:  I think so, yes.

19                    THE PROSPECTIVE JUROR:  Well, I actually -- when

20         I -- she was cheating on me, and I just got angry.  I think

21         I pushed the TV -- the TV must have fell, and got broke.

22         And then, as I was trying to leave, I pushed her out my way

23         just so that -- we didn't fight or anything.  I just pushed

24         her to get out of my way because she was standing in front

25         of the door to stop me from leaving; and I left.  That's

```
1    when -- when I got to my grandmother's house, the police

2    pulled up, and I surrendered; and that was it.

3              THE COURT:  Okay.  And was that person your

4    girlfriend, ex-girlfriend?

5              THE PROSPECTIVE JUROR:  My son's mom.

6              THE COURT:  Your son's mom.

7              THE PROSPECTIVE JUROR:  Yes, ma'am.

8              THE COURT:  I see.  Okay.  Got it.

9              And since then, have you been arrested --

10             THE PROSPECTIVE JUROR:  No.  No.  They gave me the

11   probation, and I been doing good.

12             THE COURT:  Okay.  And then you also -- and having

13   had contact with police officers on those two occasions --

14             THE PROSPECTIVE JUROR:  Yes, ma'am.

15             THE COURT:  -- do you think that that would have

16   an impact on your ability to be fair and impartial in this

17   case?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  And do you think you were treated

20   fairly --

21             THE PROSPECTIVE JUROR:  Yes, I was.

22             THE COURT:  -- in both those cases?

23             THE PROSPECTIVE JUROR:  Yes, I was.  Yes, I was.

24   I was treated, yeah, very respectfully.  Because, like I

25   said, I didn't resist.  I just gave in because I knew what I
```

```
 1    had done; so, you know, just giving myself up.
 2              THE COURT:  Right.
 3              Okay.  You also checked 35, which asked:  Do you
 4    have children or stepchildren?
 5              So how many children do you have?
 6              THE PROSPECTIVE JUROR:  A son.
 7              THE COURT:  Okay.  And how old is your son now?
 8              THE PROSPECTIVE JUROR:  He is 11 years old.
 9              THE COURT:  Okay.  All right.  And what do you do
10    for a living?
11              THE PROSPECTIVE JUROR:  I actually work at the
12    United States Capitol.  And I --
13              THE COURT:  At the Capitol?
14              THE PROSPECTIVE JUROR:  Yes, ma'am.
15              THE COURT:  And what do you do there?
16              THE PROSPECTIVE JUROR:  I work in the restaurant
17    at the Capitol, so I basically -- I put out, like, food;
18    [sic], and stuff like that.  I work in the kitchen, and
19    stuff like that.
20              THE COURT:  Okay.
21              (A bench conference was held as follows:)
22              THE COURT:  Any follow up?
23              MS. HARDEN:  No.
24              THE COURT:  Any follow up?
25              MS. BURRELL:  I have one question.  I may have
```

```
 1    missed it.
 2              Could the Court ask whether he was treated fairly
 3    by the court system -- if he was treated fairly by police
 4    during the arrest?
 5              THE COURT:  I will follow up on that.
 6              MS. BURRELL:  Thank you.
 7              (Whereupon, the bench conference concludes.)
 8              THE COURT:  Juror No. 164, during the two
 9    incidents where you were arrested, you said that you felt
10    like you were treated fairly?
11              THE PROSPECTIVE JUROR:  Yes.
12              THE COURT:  Do you feel that you were treated
13    fairly by the police and the court system, both of them, or
14    just one?
15              THE PROSPECTIVE JUROR:  Yes.  I was treated fair,
16    yes.
17              THE COURT:  Okay.
18              THE PROSPECTIVE JUROR:  The first time that I got
19    arrested -- I'm trying to jog my memory.
20              The first time I was arrested, it was actually an
21    incident of me trying to get my phone back from a girl.  I
22    was trying to get to work; I was working at Best Buy at the
23    time.  I was trying to leave to go to work, and she actually
24    hid my phone.  And at the time when I was leaving, I had to
25    go -- you know, we was arguing, and stuff like that.  So I
```

1     seen the police officer across the street, so I stepped to

2     him.  And I was like, ma'am, can you tell her to give me my

3     phone?

4              When she approached, she just arrested both --

5     both of us.  You know what I mean?  Because I couldn't

6     understand why she was doing that because I was trying to

7     get help just to get the phone back.  And I guess the lady

8     took it the wrong way and just arrested both of us.  I don't

9     know what that was.  So maybe that's why they didn't even

10    charge me for anything on that first time, you know.  So --

11    yeah.

12             THE COURT:  All right.  Okay.  Thank you.

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  You can return to the hallway.  Thank

15    you.

16             (Whereupon, the prospective juror was excused.

17    Another prospective juror enters.)

18             THE COURT:  And, Juror 740, if you could come

19    stand at the lectern.  Please feel free to put your bag

20    down -- it looks pretty heavy -- and your jacket on the

21    chair.

22             Okay.  I see you have checked Nos. 8, 12, 30, 34,

23    35, and 37; so I am just going to run through those.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  And thank you very much for your

```
 1        patience.  I know it's been a long day.
 2                 Question 8 asked whether you know or recognize
 3        other members of the prospective jury panel, the courtroom
 4        staff, or me.
 5                 THE PROSPECTIVE JUROR:  So one of prospective
 6        jurors, our kids went to school together.
 7                 THE COURT:  Your kids went to school together?
 8                 THE PROSPECTIVE JUROR:  Yes.
 9                 THE COURT:  Do you know what that person's name
10        was?
11                 THE PROSPECTIVE JUROR:  ██████████ -- I think it's
12        ██████.  Her -- his daughter is a couple years younger than
13        mine.
14                 THE COURT:  And so what's the name of the other
15        juror?
16                 THE PROSPECTIVE JUROR:  ███████████.
17                 THE COURT:  ████████████.
18                 Do you know the person's last name?
19                 THE PROSPECTIVE JUROR:  I thought it was "██████,"
20        but I am not sure.  We were not close.
21                 THE COURT:  Is it ████████?
22                 THE PROSPECTIVE JUROR:  ████████, yes.
23                 THE COURT:  Okay.  Okay.  Got it.
24                 Okay.  And if you happen to be selected to serve
25        on the same jury with this other person --
```

```
1                    THE PROSPECTIVE JUROR:  Yes.

2                    THE COURT:  -- is your relationship such that you

3         feel that it would affect your ability to think

4         independently?

5                    THE PROSPECTIVE JUROR:  No.

6                    THE COURT:  Okay.  And then you also checked

7         Question 12, whether you, a member of your family, or close

8         friend has ever studied law or been employed by a lawyer --

9                    THE PROSPECTIVE JUROR:  Yes.

10                   THE COURT:  -- or in a law firm.

11                   Could you explain that?

12                   THE PROSPECTIVE JUROR:  So my uncle is a lawyer

13        here in the Greater D.C. area.  And I actually worked for

14        him when I was -- the first year I was out of college.

15                   THE COURT:  The first year what?

16                   THE PROSPECTIVE JUROR:  I was out of college; so

17        it was a long time ago.

18                   THE COURT:  I see.  And does your uncle do any

19        criminal work?

20                   THE PROSPECTIVE JUROR:  He mostly did business.

21        Business law.

22                   THE COURT:  Business law?

23                   THE PROSPECTIVE JUROR:  Yeah.

24                   THE COURT:  Okay.  Got it.  All right.

25                   And is there anything that you learned from
```

1    working with your uncle or talking to your uncle that you

2    think would affect your ability to follow my instructions on

3    the law in this case?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Okay.  And then you also marked

6    Question 30, which is whether you, a family member, or a

7    close friend has ever been the victim of sexual abuse.

8              THE PROSPECTIVE JUROR:  Um-hmm.  Yes.  I had a

9    close friend.

10             THE COURT:  Okay.  And could you explain a little

11   bit more about that?

12             THE PROSPECTIVE JUROR:  Just a friend, as an

13   adult, expressed that she had been sexually abused as a

14   child and talked a little bit about her experience with

15   that.

16             THE COURT:  All right.  And how long ago did you

17   learn that?

18             THE PROSPECTIVE JUROR:  It was probably a handful

19   of years ago; probably in the last five years.

20             THE COURT:  And have you had other conversations

21   with your friend about that?

22             THE PROSPECTIVE JUROR:  It is not a -- it is not a

23   topic that comes up regularly.

24             THE COURT:  I see.  And is there anything about

25   the conversation or what you know about your close friend's

1    experience that you think would affect your ability to be

2    fair and impartial in this case?

3              THE PROSPECTIVE JUROR:  I think just the fact that

4    it's important to believe the victim because in child abuse

5    cases the likelihood that they are misrepresenting is fairly

6    small.

7              THE COURT:  And so is it your view that somebody

8    who is charged with sex abuse -- based on the testimony of a

9    minor victim -- is probably guilty?

10             THE PROSPECTIVE JUROR:  Good chance.

11             THE COURT:  All right.

12             (A bench conference was held as follows:)

13             MS. HARDEN:  Your Honor, I move to strike the

14   juror for cause.

15             MS. BURRELL:  I would just ask that you ask the

16   follow-up question of whether:  After being instructed on

17   the presumption of innocence and after being instructed to

18   follow the instructions, whether that would be something

19   that she would be able to do.

20             MS. HARDEN:  I object to the question even being

21   asked.  The juror said a person who is charged is guilty

22   without hearing one piece of evidence.  Whether she could

23   follow the law after she heard these things --

24             THE COURT:  I am going to grant the motion.  This

25   person is straightforward.  She said at least twice in

1    response to questions that she is going to believe a child

2    victim; she is not going to keep it out of her mind.  She

3    thinks the person is probably guilty as charged, so I am

4    going to grant the motion to strike.

5              (Whereupon, the bench conference concludes.)

6              THE COURT:  Okay.  Juror 740, I am going to excuse

7    you.  Thank you very much for coming to court today.

8              THE PROSPECTIVE JUROR:  Thank you.

9              (Whereupon, the prospective juror was excused.

10    Another prospective juror enters.)

11              THE COURT:  Juror 461, please step forward to the

12    podium.  Feel free to take your backpack off so you can

13    stand more comfortably if you like.

14              Thank you very much for your patience today.  I

15    know it's been a long day.

16              I see that you have marked Questions 9, 26, and

17    32 -- yes.  I am just going to go through those with you.

18              Question 9 asks whether or not it would pose a

19    hardship to you if you were selected to serve on the jury

20    for this week and part of next week.

21              Could you explain that hardship?

22              THE PROSPECTIVE JUROR:  What?  Can you say that

23    again?  Can you repeat it?

24              THE COURT:  Yes.

25              You've marked yes to Question 9.  And Question 9

1      says that the lawyers have predicted that the trial in this

2      case could last about one week; it could spill over into

3      next week.  And so the question is:  Do you have an urgent

4      or extremely important matter to attend to this week and

5      next such that you could be faced with an extreme -- with a

6      hardship if selected to serve on the jury in this case?

7              THE PROSPECTIVE JUROR:  Yeah.  I got to be at

8      work.

9              THE COURT:  You would be out of work?

10             THE PROSPECTIVE JUROR:  Yes.  I am the only one

11     that does coaching for this month at where I am working at.

12             THE COURT:  What do you -- where do you work?

13             THE PROSPECTIVE JUROR:  I work at the school I

14     graduated from, Capital City.  I do coaching, and I am the

15     only one.

16             THE COURT:  Oh.  You are coaching there?

17             THE PROSPECTIVE JUROR:  Yeah.  I'm the only one

18     doing that right now.

19             THE COURT:  When you say you would -- do you not

20     get paid if you are not coaching?

21             THE PROSPECTIVE JUROR:  The payment is -- every

22     time I show up, that's when I get paid.

23             THE COURT:  So this would be a financial hardship

24     for you?

25             THE PROSPECTIVE JUROR:  Um-hum.

1          THE COURT:  You have to answer "yes" or "no."

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Would it be distracting to you sitting

4     in a trial when you're thinking you are losing money?

5          THE PROSPECTIVE JUROR:  Yeah, because I have to go

6     to get paid.

7          THE COURT:  Okay.  And when do you coach, during

8     the school day or after the school day?

9          THE PROSPECTIVE JUROR:  I have to be there at 3:00

10    all the way until 5:30.

11         THE COURT:  You coach from 3:00 to 5:30?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Can you push the coaching -- if you

14    are selected for the jury, push the coaching to a little bit

15    later?

16         THE PROSPECTIVE JUROR:  I can't because the

17    parents come to pick the kids up at 5:30.

18         THE COURT:  I see.  Okay.  Let me talk to the

19    lawyers.

20         (A bench conference was held as follows:)

21         MS. HARDEN:  Move to strike the juror for cause.

22         THE COURT:  And the government's view?

23         MS. BURRELL:  We join.

24         THE COURT:  All right.  I will grant the motion to

25    strike.

```
 1                    (Whereupon, the bench conference concludes.)
 2                    THE COURT:  All right.  Juror No. 461, you are
 3        excused.  You may leave the courthouse.  You do not have to
 4        come back tomorrow.  Thank you.
 5                    THE PROSPECTIVE JUROR:  All right.  Thank you.
 6                    THE COURT:  Thank you.
 7                    (Whereupon, the prospective juror was excused.
 8        Another prospective juror enters.)
 9                    THE COURT:  And good afternoon, Juror 969.
10                    If you could come stand at the lectern.  And
11        please feel free to put your bags down on the chair.
12                    How are you this afternoon?
13                    THE PROSPECTIVE JUROR:  I am well.  Thank you.
14                    THE COURT:  Thank you very much for your patience.
15        I know it's been a long day.
16                    And I see that you have marked Questions 7, 12,
17        13, 17, 19, 26, 30, 32, and 36; so I am just going to run
18        through those.
19                    THE PROSPECTIVE JUROR:  Okay.
20                    THE COURT:  Starting with Question 7, which asks
21        about whether you recognize any of the names that are listed
22        for you.  And do you remember which name you might have
23        recognized?
24                    THE PROSPECTIVE JUROR:  Brittany Williams.
25                    THE COURT:  Say that again.
```

```
1                    THE PROSPECTIVE JUROR:  Brittany Williams.

2                    THE COURT:  Brittany Williams.

3                    And is that on the list?

4                    And your Brittany Williams -- could you describe

5          your Brittany Williams?

6                    THE PROSPECTIVE JUROR:  My Brittany Williams is my

7          niece.

8                    THE COURT:  Your niece?

9                    THE PROSPECTIVE JUROR:  Yes.

10                   THE COURT:  And where does your niece work?

11                   THE PROSPECTIVE JUROR:  I don't think she works at

12         the present time.

13                   THE COURT:  Okay.

14                   THE PROSPECTIVE JUROR:  She used to work for Kipp.

15                   THE COURT:  Kipp?

16                   THE PROSPECTIVE JUROR:  Um-hmm.  School.

17                   THE COURT:  Okay.  It's the government's witness.

18         Do you think it's the same --

19                   MS. SEDKY:  This does not appear to be the

20         government's witness.

21                   THE COURT:  It is not the government's witness?

22                   Was a Brittany Williams on the defense witness

23         list?

24                   MS. HARDEN:  No, Your Honor, but I'm looking to

25         see if it's the same --
```

1              MS. BURRELL:  Brittany Williams is the

2    government's witness; but I don't believe that the person

3    the prospective juror is talking about is the same Brittany

4    Williams.

5              THE COURT:  Okay.  All right.

6              Thank you for bringing that to our attention.

7              And then you also marked 12, which asked about

8    whether you, a family member, or close friend has studied

9    law, been employed by a law firm or a lawyer or worked in a

10   courthouse or in a legal environment.

11             Could you explain your answer to that?

12             THE PROSPECTIVE JUROR:  I have a girlfriend -- I

13   have several girlfriends that work in a lawyer's office or

14   down at the Union Station, like as a clerk or something.

15   And I also have a nephew that's a police officer; and I

16   dated a cop for a while.

17             THE COURT:  And a nephew who is a police officer?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Okay.  Could you just put your mask

20   on?

21             THE PROSPECTIVE JUROR:  I can.

22             THE COURT:  I'm sorry.  Thank you.

23             I know it's easier to hear without it, but we're

24   being very careful here.  Thank you.

25             THE PROSPECTIVE JUROR:  You're welcome.

1          THE COURT:  And do you talk to your girlfriends

2    who work with lawyers?  Or do you talk with your nephew

3    about his police work?

4          THE PROSPECTIVE JUROR:  I talk to my nephew.

5          THE COURT:  Okay.  And is there anything about

6    your conversations -- either with your girlfriends who work

7    in a law office or with your nephew about his police work --

8    that you think would affect your ability to be fair and

9    impartial in this case?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  Okay.  And then you also marked 13,

12   about whether you, a member of your family, or a close

13   friend has been employed by a local, state, or federal law

14   enforcement agency.

15          Is that the same nephew in response to that

16   question?

17          THE PROSPECTIVE JUROR:  (Nodding affirmatively.)

18          THE COURT:  Okay.  And then Question 17 asked

19   whether you, a member of your family, or a close friend has

20   ever been arrested or convicted of a crime, been a victim of

21   a crime or a witness to a crime, or testified in court.

22          THE PROSPECTIVE JUROR:  My niece has been a victim

23   of domestic violence.

24          THE COURT:  And do you know how long ago that was?

25          THE PROSPECTIVE JUROR:  Maybe eight or nine years

1   ago.

2              THE COURT:  Say that again.

3              THE PROSPECTIVE JUROR:  Eight or nine years ago.

4              THE COURT:  Eight or nine years.

5              And did you help support your niece when she

6   was --

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  -- taking action, to protect her

9   against the domestic violence?

10             THE PROSPECTIVE JUROR:  Absolutely.

11             THE COURT:  Okay.  Did you go to court with her?

12             THE PROSPECTIVE JUROR:  I went to court myself to

13  try to get the stay order, but it had to be her; so I didn't

14  go, she went.

15             THE COURT:  Okay.  And there might be allegations

16  of domestic violence presented in this case.  So do you

17  think that your experience with your niece would, in any

18  way, affect your ability to review and evaluate the evidence

19  fairly and impartially in this case?

20             THE PROSPECTIVE JUROR:  That's a good question.  I

21  don't know if I have a good answer.  I don't think so.  But

22  I think -- I think I can evaluate fairly; I do.

23             THE COURT:  Right.  Because, you know, her

24  situation was her situation; it was eight or nine years ago.

25  Different people, different context; your job is different

1     here --

2               THE PROSPECTIVE JUROR:  Yes.

3               THE COURT:  -- to keep an open mind and evaluate

4     the credibility of every witness who appears, right?

5               THE PROSPECTIVE JUROR:  Yes.

6               THE COURT:  Do you think you can do that here?

7               THE PROSPECTIVE JUROR:  I do.

8               THE COURT:  Okay.  Let's see.

9               And your next mark was 19, which asked about the

10    fact that law enforcement officers will be witnesses, and

11    whether you would tend to believe or not believe the

12    testimony of a law enforcement officer simply because he or

13    she is a law enforcement officer.

14              THE PROSPECTIVE JUROR:  I think I would tend to

15    believe them.

16              THE COURT:  You would?

17              THE PROSPECTIVE JUROR:  I do.

18              THE COURT:  And you understand that you have to

19    weigh the credibility of every single witness who comes to

20    testify at this trial and apply the same standard to

21    evaluate their credibility, whether the person is a law

22    enforcement officer or not a law enforcement officer?  Do

23    you understand that that's what you are supposed to do?

24              THE PROSPECTIVE JUROR:  Yeah.  But when you asked

25    me that question over there, I didn't.

1           THE COURT:  Okay.  Do you think you could do that?

2           THE PROSPECTIVE JUROR:  I do.

3           THE COURT:  All right.  And Question 26 asks

4    whether you are so uncomfortable about hearing about,

5    viewing, or discussing sexually explicit materials,

6    including purported child pornography that you could not

7    serve as a fair and impartial juror in this case.

8           THE PROSPECTIVE JUROR:  I think it would be hard.

9           THE COURT:  Well, let me just say that viewing,

10   you know, really -- things that look like child pornography

11   is not a comfortable position for any of us to be in.  So

12   the real question is:  Can you look at the evidence and keep

13   an open mind about evaluating the testimony about how those

14   photographs came in to be in evaluating the proof in this

15   case?

16          THE PROSPECTIVE JUROR:  I think I would have a

17   hard time looking at the pictures.

18          THE COURT:  Okay.  And would you also have a hard

19   time discussing those pictures in the jury room with your

20   fellow jurors?

21          THE PROSPECTIVE JUROR:  I think so.

22          THE COURT:  And would you have a hard time

23   discussing and hearing the testimony about how the pictures

24   might be taken?

25          THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Okay.  And then Question 30 asks

2     whether you, a family member, or close friend has ever been

3     the victim of sex abuse.

4          Could you explain that?

5          THE PROSPECTIVE JUROR:  My niece was a victim of

6     domestic violence; a lot of it had to do with sexual --

7     sexual abuse, too.

8          THE COURT:  Okay.  And how old was your niece when

9     this occurred?

10          THE PROSPECTIVE JUROR:  She was probably 22.

11          THE COURT:  Okay.  And you also asked -- there was

12     a question that you marked -- Question 32, that you may hear

13     testimony in the case about the sexual abuse of a child by

14     an adult male, including the performance of oral sex.  And

15     the question is:  Would hearing that testimony make you so

16     uncomfortable that you could not serve as a fair and

17     impartial juror in this case?

18          Is that like looking at the photographs of

19     purported child pornography, would that be something you

20     would find it very difficult to do --

21          THE PROSPECTIVE JUROR:  I would find it difficult

22     to do.

23          THE COURT:  Okay.

24          (A bench conference was held as follows:)

25          MS. HARDEN:  I move to strike the juror for cause.

```
 1           MS. BURRELL:  Understanding that she's saying it
 2     would be difficult, I would ask the Court inquire of her --
 3     understanding it would be difficult whether she would
 4     actually be able to view the evidence and come to a fair
 5     decision, with the understanding that it will be difficult.
 6           MS. HARDEN:  Your Honor, this witness has given
 7     probably three or four answers that she cannot be fair.  And
 8     with respect to the information that she's given, she's
 9     talked about domestic violence, child pornography, looking
10     at the photos -- I mean, she's said it's going to be
11     difficult; there is no other question.
12           THE COURT:  I am going to grant this motion to
13     strike.  I can also look at the -- for the record, her
14     posture, her discomfort, and even raising her eyes to talk
15     about this -- her discomfort is visceral and obvious to even
16     answer the questions of the Court about these issues, which
17     only corroborates the responses that she gave in response to
18     the questions.
19            I will grant the motion to strike for cause.
20     Thank you.
21           MS. HARDEN:  Thank you.
22           (Whereupon, the bench conference concludes.)
23           THE COURT:  All right.  Juror No. 969, I am going
24     to excuse you from the courthouse.  You don't have to return
25     tomorrow.  Thank you.
```

1    THE PROSPECTIVE JUROR:  Thank you.

2    (Whereupon, the prospective juror was excused.)

3    THE COURT:  Teresa, before you bring somebody else

4    in, let me just talk about what we're going to do tomorrow.

5    Okay.  Now my clock is clearly saying it is 5:05.

6    I am not having us gain an hour, as I was doing before,

7    unfortunately.  So I think we will resume here at 9 a.m.

8    tomorrow so that we can finish this jury selection before

9    lunch and hopefully move to -- if everything goes quickly

10   enough, and we're not going to have preliminary matters

11   tomorrow.  We'll be able to start on time because we lost an

12   hour today.  I think that should be our plan.

13   Any comments?

14   MS. HARDEN:  No.  We should actually be ready to

15   go at 9:00, correct?

16   THE COURT:  Yes.  So get here a little early.

17   MS. HARDEN:  If I could just ask, Your Honor --

18   ask the marshal through Your Honor -- am I allowed to leave

19   all of the clothes here, or am I taking them back every day?

20   THE COURT:  Let's ask the deputy.

21   THE DEPUTY MARSHAL:  You can leave all the

22   clothes.

23   MS. HARDEN:  Great.  Perfect.  Thank you so much.

24   THE COURT:  Okay.  All right.  So I think what I

25   am going to do, Teresa -- you are going to be the

1    messenger -- I'm sorry -- to tell them that we are going to

2    release them all, and we're hoping to complete this jury

3    selection tomorrow; but they need to come back.

4              THE COURTROOM DEPUTY:  Okay.

5              (Whereupon, the Court and staff confer.)

6              THE COURT:  Okay.  Well, tell them to come back,

7    go to the cafeteria, get their coffee, their newspapers and,

8    hopefully, we can finish it up tomorrow.

9              THE COURTROOM DEPUTY:  We'll start at 9:00?

10             THE COURT:  9:00, so they should get here early,

11   8:30, so that you can seat them, and so on.

12             Okay.  Thank you.

13             THE COURTROOM DEPUTY:  Thank you.

14             THE COURT:  All right.  Great.  We can be off the

15   record now.

16             (Whereupon, the proceeding recesses, from 4:57 to

17   5:07 p.m.)

18             THE COURT:  I understand we have two jurors with

19   problems returning.

20             THE COURTROOM DEPUTY:  361, line 54.

21             THE COURT:  All right.  Bring the person in.

22             Did you-all hear that?

23             MS. HARDEN:  Yes, Your Honor.  We have the

24   numbers.

25             (Whereupon, the prospective juror enters,

1    5:11 p.m.)

2              THE COURT:  361, line 54.

3              Juror No. 361, please stand at the lectern.  You

4    can put your bag down.  We have to continue the jury

5    selection process tomorrow; we were not able to complete it

6    today.

7              THE PROSPECTIVE JUROR:  Right.

8              THE COURT:  My courtroom deputy tells me you have

9    an issue with tomorrow.

10             THE PROSPECTIVE JUROR:  Yeah.  My daughter is

11   having a medical procedure this the evening.  I am going to

12   have to be in the hospital with her overnight and into

13   tomorrow, so I cannot be here in the morning tomorrow.

14             THE COURT:  All right.  How old is your daughter?

15             THE PROSPECTIVE JUROR:  She is 15.

16             (A bench conference was held as follows:)

17             MS. HARDEN:  I will move to strike the juror for

18   cause.

19             MS. BURRELL:  We join.

20             THE COURT:  All right.  I will do that.

21             (Whereupon, the bench conference concludes.)

22             THE COURT:  Juror No. 361, I will excuse you.

23             You do not have to come back to the courthouse

24   tomorrow.

25             THE PROSPECTIVE JUROR:  Thank you.  I am available

1    the rest of the week, if it continues.

2              THE COURT:  When petit jurors are selected, they

3    start one day, and just work through until the end.  No time

4    off for breaks.

5              THE PROSPECTIVE JUROR:  Understood.  Thank you.

6              THE COURT:  Thank you.  You are excused.

7              (Whereupon, the prospective juror was excused.

8    Another prospective juror enters.)

9              THE COURTROOM DEPUTY:  The last one, line 65.

10             THE COURT:  Line 65, 1682.  All right.

11             Juror No. 682, please come stand at the lectern.

12             I understand, from my courtroom deputy, that you

13   have an issue with returning tomorrow.

14             THE PROSPECTIVE JUROR:  Yes.  I lost my husband

15   like four months ago.  And I have like a 12 year old that I

16   have to shuffle to and from school.  I mean, I didn't get a

17   notice from here today, so I had to drop everything and

18   scramble to ask somebody to grab her.  I had to have her

19   stay back at school today and grab her later on at the bus,

20   when the shuttle drops her.  I mean, I have nobody.

21             THE COURT:  I see.  How many children do you have?

22             THE PROSPECTIVE JUROR:  Well, I have two; one is

23   like 20 something about somewhere.  I have this 12 year old,

24   and a stepson.

25             THE COURT:  And a stepson.  Your other children

1    can't help with --

2              THE PROSPECTIVE JUROR:  No.  He -- I mean, he

3    teaches at school.  I mean, I had to call.  I am very

4    protective of my kids.  I don't like anybody grabbing them

5    here and there.

6              THE COURT:  I see.  Well, I am sorry for your loss.

7              THE PROSPECTIVE JUROR:  Thank you.  Thank you.

8              THE COURT:  I appreciate that you are trying to

9    fulfill many roles here all at one time.

10             All right.  So give me a second.

11             (A bench conference was held as follows:)

12             MS. HARDEN:  I move to strike the juror for cause.

13             THE COURT:  And the government?

14             MS. BURRELL:  We will join.

15             THE COURT:  I will grant that motion.  Thank you.

16             MS. BURRELL:  Thank you.

17             (Whereupon, the bench conference concludes.)

18             THE COURT:  All right.  Juror No. 682, I will

19   excuse you.  You don't have to come back to the courthouse

20   tomorrow so you can take care of --

21             THE PROSPECTIVE JUROR:  I appreciate that.  Thank

22   you for taking the time -- the extra time.  Have a good one.

23             THE COURT:  Thank you.

24             (Whereupon, the prospective juror was excused.)

25             THE COURT:  Okay.  Any other issues?

1          THE COURTROOM DEPUTY:  No one else.

2          THE COURT:  Okay.  We're now done until tomorrow.

3          (Whereupon, the proceeding concludes, 5:15 p.m.)

4                         *  *  *  *  *

5                         **CERTIFICATE**

6

7          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

8    certify that the foregoing constitutes a true and accurate

9    transcript of my stenographic notes, and is a full, true,

10   and complete transcript of the proceedings to the best of my

11   ability.

12          This certificate shall be considered null and void

13   if the transcript is disassembled and/or photocopied in any

14   manner by any party without authorization of the signatory

15   below.

16

17      Dated this 17th day of July, 2022

18      /s/ Elizabeth Saint-Loth, RPR, FCRR
        Official Court Reporter

19

20

21

22

23

24

25

**'**

**'68** [1] - 137:16
**'86** [2] - 125:7, 241:22
**'87** [1] - 241:22
**'94** [1] - 136:3

**/**

**/s** [1] - 304:18

**0**

**00.8** [1] - 128:24
**0135** [3] - 161:25, 162:1, 162:4
**051** [4] - 82:23, 83:1, 84:9, 85:14
**086** [2] - 100:5, 105:2
**090** [3] - 124:5, 124:12, 134:7
**091** [2] - 169:17, 181:8

**1**

**1** [11] - 1:8, 5:6, 5:7, 17:22, 26:17, 30:20, 30:21, 51:24, 52:3, 120:4, 120:7
**10** [12] - 5:3, 59:7, 59:12, 105:19, 120:4, 155:20, 155:22, 186:12, 271:2, 271:4, 275:1, 275:3
**100** [3] - 247:17, 247:18, 247:19
**10:00** [1] - 74:23
**11** [8] - 27:3, 59:18, 59:21, 207:1, 217:3, 262:20, 277:11, 280:8
**11(c)(1)(C** [2] - 5:23, 6:3
**11(c)(1)(C)** [1] - 5:25
**11-year-old** [3] - 263:1, 263:7, 263:8
**114** [2] - 270:23, 274:6
**11:00** [2] - 74:24, 139:7
**12** [56] - 50:12, 59:24, 60:4, 73:22, 74:2, 75:1, 83:4, 86:4, 87:19, 88:16, 91:13, 105:19, 108:9, 108:12, 138:6, 139:8, 147:22,

147:24, 155:21, 165:7, 165:9, 165:17, 165:19, 169:25, 170:3, 182:8, 183:14, 190:4, 190:6, 191:21, 192:22, 194:12, 196:11, 197:10, 197:19, 206:18, 208:14, 231:7, 231:9, 239:13, 239:15, 243:3, 243:6, 252:7, 254:12, 257:12, 260:9, 260:12, 262:22, 282:22, 284:7, 290:16, 292:7, 302:15, 302:23
**1283** [1] - 230:12
**12:30** [2] - 119:8, 119:12
**13** [39] - 50:13, 60:9, 60:20, 60:23, 60:24, 60:25, 77:23, 86:4, 95:21, 96:2, 100:10, 100:12, 105:19, 124:13, 124:16, 165:16, 169:25, 171:4, 190:5, 191:16, 192:18, 192:22, 194:12, 206:18, 209:19, 216:20, 216:23, 225:5, 243:3, 243:25, 252:7, 254:22, 255:5, 260:9, 261:5, 262:23, 268:9, 290:17, 293:11
**13-year-old** [1] - 225:10
**135** [3] - 162:23, 163:2, 164:14
**14** [6] - 45:6, 61:4, 61:8, 120:21, 223:13, 223:16
**1400** [1] - 1:14
**14th** [2] - 18:25, 26:11
**15** [12] - 61:12, 61:18, 115:24, 147:22, 149:19, 194:12, 206:18, 210:17, 260:9, 261:15, 262:10, 301:15
**153** [2] - 268:1, 270:6
**15th** [2] - 19:2, 20:10
**16** [28] - 29:11, 29:15, 30:13, 30:19, 40:18, 40:19, 41:11, 41:19,

42:10, 42:11, 48:13, 51:10, 51:16, 54:6, 54:8, 54:13, 54:15, 61:24, 62:3, 71:23, 72:3, 72:7, 72:16, 177:14, 201:21, 201:22, 228:14, 265:13
**16-year-old** [1] - 265:23
**16..** [1] - 153:6
**164** [2] - 274:16, 281:8
**1682** [1] - 302:10
**169** [2] - 137:23, 146:23
**17** [53] - 62:7, 62:12, 73:22, 75:24, 76:4, 86:4, 91:4, 91:8, 91:12, 105:19, 108:9, 109:7, 113:13, 113:18, 114:9, 124:13, 127:19, 147:22, 150:2, 150:13, 156:8, 165:8, 166:11, 169:25, 177:14, 182:8, 184:6, 190:5, 191:23, 194:12, 201:9, 201:10, 216:20, 218:17, 223:13, 224:17, 231:7, 232:2, 239:13, 240:22, 243:3, 244:12, 252:7, 255:17, 260:9, 262:2, 264:15, 265:8, 275:1, 276:11, 290:17, 293:18
**17th** [1] - 304:17
**18** [17] - 1:5, 62:18, 62:24, 65:22, 66:3, 68:17, 68:22, 76:4, 170:1, 173:9, 173:11, 236:20, 242:17, 248:20, 249:13, 249:15, 250:6
**1867(d** [1] - 17:10
**18th** [1] - 20:11
**19** [12] - 63:5, 63:12, 73:22, 76:18, 78:3, 95:21, 97:19, 151:23, 197:11, 198:24, 290:17, 295:9
**19-324** [1] - 2:18
**19-CR-324** [1] - 1:3
**1981** [1] - 239:21

**1984** [1] - 125:6
**1986** [2] - 125:7, 241:2
**1987** [1] - 241:2
**1992** [1] - 232:18
**1994** [1] - 136:19
**1999** [1] - 191:11
**1:00** [1] - 3:20
**1:10** [4] - 195:24, 196:5, 196:6, 196:11
**1:45** [4] - 153:12, 153:13, 153:24, 153:25

**2**

**2** [5] - 5:7, 27:2, 52:8, 52:13, 153:12
**20** [16] - 5:20, 6:7, 6:16, 63:19, 64:1, 86:4, 148:22, 188:6, 197:11, 223:13, 225:2, 225:21, 246:19, 263:16, 302:23
**200** [2] - 45:18
**2000** [1] - 136:2
**20004** [1] - 1:19
**2000s** [1] - 205:13
**2005** [1] - 205:14
**2006** [1] - 191:11
**2007** [1] - 191:11
**2010** [5] - 218:23, 219:3, 276:21, 277:10, 277:20
**2011** [1] - 110:16
**2012** [1] - 205:8
**2015** [5] - 191:11, 191:12, 218:24, 219:18, 220:20
**2016** [2] - 50:10, 240:3
**2017** [5] - 50:11, 218:9, 218:10, 240:3, 242:1
**2018** [1] - 144:6
**2019** [1] - 252:16
**202** [2] - 1:15, 1:19
**2020** [1] - 228:24
**2021** [4] - 1:5, 17:17, 154:10, 154:12
**2022** [1] - 304:17
**20530** [1] - 1:14
**21** [7] - 64:8, 64:14, 86:4, 201:17, 277:17, 277:18
**22** [7] - 64:20, 65:4, 155:21, 163:6, 277:17, 277:18, 297:10
**23** [4] - 65:12, 65:16,

84:16, 84:17
**234** [3] - 155:24, 156:1, 158:7
**24** [4] - 65:20, 66:1, 151:3, 187:4
**25** [5] - 66:7, 66:12, 86:4, 175:4, 186:13
**25-ish** [1] - 175:4
**26** [11] - 66:17, 66:21, 86:4, 138:6, 139:23, 197:11, 243:4, 247:10, 287:16, 290:17, 296:3
**260** [4] - 159:2, 159:8, 159:10, 161:8
**27** [2] - 66:25, 67:9
**28** [7] - 17:10, 67:18, 67:23, 113:13, 116:7, 175:4, 236:15
**283** [1] - 223:7
**29** [7] - 68:3, 68:7, 124:13, 129:3, 159:2, 232:18
**29th** [3] - 138:13, 138:16, 139:2
**2:30** [1] - 153:20
**2nd** [1] - 30:21

**3**

**3** [6] - 5:8, 26:17, 46:23, 52:18, 52:23, 156:20
**30** [36] - 27:20, 28:1, 28:4, 68:11, 68:13, 86:5, 91:4, 92:18, 105:19, 120:4, 124:13, 130:3, 147:22, 150:25, 151:22, 170:2, 174:1, 182:8, 186:1, 194:13, 197:11, 206:19, 211:1, 231:7, 232:7, 232:17, 232:20, 243:5, 248:15, 250:13, 271:2, 273:4, 282:22, 285:6, 290:17, 297:1
**31** [8] - 17:17, 68:15, 68:20, 86:5, 243:5, 250:3, 250:9, 250:15
**32** [17] - 17:18, 29:13, 68:25, 69:7, 72:13, 72:17, 72:19, 72:21, 72:25, 86:5, 138:6, 141:20, 194:13, 197:11, 287:17, 290:17, 297:12

**33** [5] - 69:14, 69:20, 86:5, 170:2, 177:3
**34** [11] - 70:1, 70:6, 100:10, 101:9, 170:2, 178:5, 216:21, 221:9, 271:2, 282:22
**35** [27] - 70:11, 70:13, 86:5, 105:19, 113:13, 118:3, 124:13, 133:6, 135:3, 147:23, 156:8, 162:2, 162:5, 190:5, 192:14, 194:13, 197:11, 201:9, 202:9, 204:8, 243:5, 260:9, 262:16, 264:15, 275:1, 280:3, 282:23
**36** [8] - 70:15, 70:21, 86:5, 138:7, 142:20, 194:13, 197:11, 290:17
**361** [4] - 300:20, 301:2, 301:3, 301:22
**37** [4] - 71:2, 71:6, 197:11, 282:23
**38** [11] - 46:24, 47:5, 51:4, 71:10, 71:15, 194:13, 197:11, 213:25, 223:13, 227:21, 243:5
**384** [4] - 119:15, 119:16, 120:3, 123:14
**390-0374** [1] - 1:19
**3:00** [2] - 289:9, 289:11
**3:30** [2] - 270:15, 270:19

### 4

**4** [3] - 53:3, 54:18, 177:12
**40** [1] - 4:3
**400** [3] - 1:18, 55:8, 55:16
**420** [2] - 206:11, 214:21
**428** [1] - 264:1
**43** [2] - 4:4, 5:8
**435** [2] - 147:16, 152:16
**45** [1] - 152:21
**461** [2] - 287:11, 290:2
**48** [6] - 28:3, 28:4, 28:10, 28:14, 28:17, 155:13

**4:20** [2] - 270:16, 270:17
**4:57** [1] - 300:16

### 5

**5** [5] - 17:24, 54:20, 55:1, 177:13, 207:1
**50** [5] - 29:8, 29:14, 41:9, 121:1, 183:9
**514-1138** [1] - 1:15
**52** [3] - 256:4, 256:18, 256:19
**53** [2] - 137:16, 137:18
**54** [2] - 300:20, 301:2
**555** [3] - 201:3, 203:24, 204:20
**591** [5] - 113:7, 119:3, 204:4, 204:7, 206:6
**595** [2] - 161:23, 164:24
**5:00** [5] - 58:12, 58:23, 208:10, 270:11, 270:12
**5:05** [1] - 299:5
**5:07** [1] - 300:17
**5:11** [1] - 301:1
**5:15** [1] - 304:3
**5:30** [3] - 289:10, 289:11, 289:17

### 6

**6** [2] - 55:6, 55:14
**60** [1] - 183:9
**605** [3] - 230:22, 236:12, 239:7
**65** [3] - 29:11, 302:9, 302:10
**665** [2] - 134:20, 136:17
**682** [2] - 302:11, 303:18
**683** [2] - 95:18, 99:25
**696** [3] - 85:21, 86:3, 89:25
**6th** [1] - 41:8

### 7

**7** [12] - 18:6, 27:2, 55:19, 55:25, 56:7, 56:13, 154:10, 154:12, 264:14, 264:19, 290:16, 290:20
**71** [2] - 242:19, 251:12
**740** [2] - 282:18, 287:6

**743** [2] - 189:21, 194:1
**761** [2] - 251:24, 257:1
**7th** [7] - 1:18, 18:8, 21:22, 222:1, 55:8, 55:16, 155:1

### 8

**8** [10] - 18:16, 57:25, 58:5, 95:21, 182:8, 182:9, 252:7, 252:8, 282:22, 283:2
**819** [4] - 90:24, 91:1, 94:21, 95:14
**821** [2] - 259:23, 263:22
**822** [2] - 257:6, 259:18
**844** [2] - 197:7, 200:19
**86** [1] - 100:9
**87** [2] - 239:9, 242:12
**887** [1] - 216:14
**892** [3] - 73:17, 77:19, 79:18
**8:15** [1] - 156:20
**8:30** [1] - 300:11

### 9

**9** [26] - 58:8, 58:20, 73:22, 73:24, 86:4, 86:7, 105:18, 105:20, 138:6, 138:9, 156:8, 156:12, 194:12, 194:15, 197:10, 197:13, 206:18, 206:20, 252:7, 253:12, 253:19, 287:16, 287:18, 287:25, 299:7
**9-1-1** [3] - 114:19, 114:25, 184:23
**933** [2] - 194:7, 196:24
**936** [2] - 105:7, 107:17
**969** [2] - 290:9, 298:23
**975** [2] - 108:2, 108:6
**981** [2] - 181:24, 188:21
**9:00** [3] - 299:15, 300:9, 300:10
**9:10** [1] - 1:5
**9:30** [7] - 58:11, 58:23, 139:4, 139:5, 156:23, 208:6, 208:7
**9:44** [1] - 40:1

### A

**a.m** [9] - 1:5, 3:20, 40:1, 58:11, 58:23, 74:24, 139:4, 139:5, 299:7
**A.S** [18] - 32:10, 33:20, 34:21, 35:2, 35:8, 35:17, 36:4, 36:8, 36:18, 50:12, 50:13, 50:17, 50:18, 50:20, 192:21, 262:22
**A.S.'s** [1] - 32:17
**ability** [63] - 26:21, 59:9, 59:14, 62:1, 62:6, 68:18, 68:23, 69:18, 69:24, 70:19, 70:25, 75:21, 76:12, 84:6, 93:14, 97:16, 106:11, 109:3, 110:3, 116:4, 125:21, 131:25, 139:20, 142:23, 150:21, 151:11, 167:25, 170:25, 172:22, 176:18, 176:22, 177:7, 185:24, 192:12, 198:20, 202:6, 202:20, 204:16, 209:16, 210:14, 212:7, 221:2, 221:6, 225:15, 231:24, 243:22, 244:9, 247:1, 250:7, 250:16, 256:8, 259:9, 261:3, 269:22, 271:6, 275:5, 279:16, 284:3, 285:2, 286:1, 293:8, 294:18, 304:11
**able** [57] - 13:9, 13:23, 16:21, 22:15, 27:16, 30:16, 31:6, 32:11, 32:12, 33:22, 33:23, 33:25, 40:18, 42:11, 42:15, 46:15, 58:4, 77:15, 82:2, 82:5, 92:7, 94:18, 105:9, 114:20, 115:21, 117:9, 117:14, 120:12, 121:24, 122:12, 123:8, 132:17, 141:16, 142:11, 142:13, 143:23, 146:5, 146:12, 147:5, 147:8, 158:8, 179:6, 180:22, 188:1,

**208:1**, 213:11, 213:12, 227:12, 227:13, 248:3, 248:23, 248:25, 249:21, 286:19, 298:4, 299:11, 301:5
**abolition** [1] - 98:4
**abroad** [1] - 172:17
**absent** [1] - 16:18
**absolutely** [10] - 17:5, 17:23, 132:16, 162:18, 165:17, 171:2, 172:18, 178:12, 216:9, 294:10
**abuse** [50] - 50:9, 62:22, 63:3, 66:8, 66:13, 68:12, 68:14, 69:1, 69:8, 69:16, 69:18, 69:22, 69:24, 92:20, 92:24, 94:11, 94:23, 96:18, 130:4, 141:21, 144:24, 151:1, 151:15, 173:17, 174:3, 177:6, 177:7, 180:3, 186:3, 202:19, 211:3, 232:22, 236:7, 236:14, 236:19, 237:13, 237:15, 238:7, 238:10, 248:17, 266:11, 266:19, 273:6, 273:18, 285:7, 286:4, 286:8, 297:3, 297:7, 297:13
**abused** [5] - 50:11, 94:7, 151:4, 211:7, 285:13
**abusive** [1] - 98:7
**academic** [2] - 143:8, 143:10
**accept** [1] - 103:14
**acceptance** [2] - 4:3, 5:9
**accepting** [5] - 63:24, 64:6, 64:12, 64:18, 226:1
**access** [5] - 30:19, 30:24, 31:2, 31:4, 31:6
**accommodate** [2] - 81:11, 82:15
**according** [1] - 29:9
**account** [2] - 137:3, 157:20
**accountant** [1] - 141:1
**accounting** [1] - 144:10
**accounting/finance**

[1] - 144:10

**accounts** [2] - 219:1, 220:4
**accurate** [1] - 304:8
**accused** [7] - 66:8, 66:13, 68:16, 68:21, 250:5, 255:23, 256:16
**act** [6] - 16:12, 18:19, 19:19, 21:11, 21:14, 24:14
**Action** [1] - 1:3
**action** [3] - 8:8, 117:3, 294:8
**actions** [6] - 67:22, 68:2, 116:12, 116:22, 126:3, 132:8
**actively** [1] - 224:3
**activity** [3] - 68:17, 68:22, 250:6
**actual** [1] - 8:1
**ADA** [3] - 170:20, 170:23, 170:24
**add** [2] - 142:3, 200:5
**addition** [5] - 7:10, 43:21, 44:11, 46:6, 209:3
**additional** [8] - 16:14, 16:23, 17:24, 20:16, 45:7, 56:2, 57:10, 180:12
**address** [7] - 3:22, 46:13, 49:1, 62:21, 63:2, 173:17, 174:17
**addressed** [1] - 31:14
**ADHD** [1] - 271:10
**adhered** [1] - 9:5
**adjusting** [1] - 174:10
**administer** [1] - 48:11
**Administrative** [1] - 182:13
**administrative** [2] - 13:6, 254:19
**administrator** [3] - 154:8, 240:2, 263:12
**adoption** [1] - 108:18
**adult** [21] - 66:25, 67:9, 69:1, 69:2, 69:3, 69:8, 69:9, 69:10, 116:17, 141:21, 141:22, 141:23, 175:4, 175:6, 186:5, 186:13, 229:2, 245:2, 245:15, 285:13, 297:14
**adult's** [2] - 67:6, 67:15
**adulthood** [1] - 177:24
**adults** [2] - 117:24,

131:19

**advance** [2] - 35:24, 50:2
**advice** [3] - 32:7, 112:3, 231:19
**advocacy** [4] - 96:22, 108:19, 258:18, 258:23
**advocacy-type** [1] - 108:19
**advocate** [2] - 96:23, 258:15
**advocating** [1] - 96:16
**affairs** [2] - 269:12, 269:17
**affect** [46] - 62:1, 62:5, 68:18, 68:23, 69:18, 69:24, 70:18, 70:24, 76:12, 84:6, 116:4, 121:20, 131:25, 142:23, 150:21, 166:8, 170:25, 172:21, 176:18, 177:7, 192:22, 198:20, 202:19, 204:16, 210:14, 212:7, 221:2, 221:6, 225:10, 225:15, 231:24, 234:2, 244:9, 246:25, 250:7, 250:16, 256:8, 259:8, 261:3, 269:22, 284:3, 285:2, 286:1, 293:8, 294:18
**affecting** [1] - 272:1
**affidavit** [4] - 20:17, 26:23, 27:6, 155:14
**affirmatively** [1] - 293:17
**afraid** [2] - 193:5, 195:11
**after-school** [1] - 156:25
**aftercare** [2] - 157:2, 157:4
**afternoon** [27] - 7:13, 7:20, 147:21, 156:1, 164:24, 165:4, 169:21, 182:4, 189:23, 194:9, 201:6, 206:15, 208:9, 216:16, 223:7, 242:19, 242:24, 252:1, 257:8, 260:3, 264:1, 264:8, 268:5, 268:8, 270:23, 290:9, 290:12
**afterwards** [1] -

185:17

**age** [8] - 46:14, 65:22, 66:3, 68:17, 68:23, 177:23, 201:17, 250:6
**agencies** [6] - 60:12, 170:13, 209:21, 222:13, 268:23, 269:20
**Agency** [3] - 217:3, 217:10, 217:16
**agency** [22] - 60:11, 61:2, 61:6, 61:10, 96:4, 124:18, 126:6, 136:10, 136:22, 165:11, 171:7, 171:15, 190:25, 191:18, 216:25, 217:17, 223:18, 244:3, 254:24, 261:7, 268:12, 293:14
**agenda** [1] - 7:9
**Agent** [4] - 1:21, 53:8, 54:3, 57:1
**ages** [1] - 151:5
**aggravating** [1] - 50:9
**aggressive** [1] - 174:14
**ago** [61] - 3:19, 16:8, 45:18, 88:15, 91:13, 91:17, 91:18, 93:2, 109:16, 115:23, 122:4, 125:4, 125:8, 128:5, 128:17, 128:19, 135:25, 140:9, 140:10, 140:11, 148:4, 148:9, 148:12, 150:11, 150:13, 151:3, 157:18, 160:22, 166:17, 166:19, 182:18, 184:20, 192:8, 198:10, 201:19, 225:1, 232:7, 232:17, 233:5, 236:22, 241:21, 246:19, 249:17, 254:17, 255:21, 255:23, 262:9, 262:11, 269:11, 272:5, 277:8, 277:11, 284:17, 285:16, 285:19, 293:24, 294:1, 294:3, 294:24, 302:15
**agree** [19] - 10:6, 15:4, 19:11, 22:9, 22:10,

24:4, 24:6, 31:16, 31:19, 33:6, 64:21, 65:5, 89:7, 117:19, 129:15, 130:24, 134:3, 164:11, 216:11
**agreed** [2] - 7:16, 19:10
**agreed-upon** [1] - 7:16
**agreeing** [1] - 35:25
**agrees** [1] - 164:8
**ahead** [4] - 10:23, 23:25, 158:3, 183:7
**aided** [1] - 1:25
**air** [3] - 43:13, 43:23, 43:24
**Akil** [2] - 56:20, 57:5
**alarm** [1] - 12:6
**alarms** [2] - 11:20, 11:21
**alcohol** [1] - 129:1
**Alcohol** [1] - 60:18
**alert** [3] - 14:2, 14:5, 49:23
**ALEXIS** [1] - 1:21
**Alexis** [4] - 53:8, 53:12, 53:20, 54:3
**alike** [1] - 127:11
**allegation** [4] - 177:5, 192:21, 233:14, 238:10
**allegations** [14] - 69:15, 69:22, 70:15, 70:21, 142:21, 199:22, 202:18, 204:15, 210:9, 212:16, 238:23, 262:22, 273:17, 294:15
**alleged** [10] - 67:1, 67:10, 226:6, 226:8, 233:4, 233:13, 236:14, 236:19, 237:13, 238:7
**allegedly** [3] - 67:1, 67:10, 233:1
**alleges** [3] - 50:16, 50:19, 50:24
**alley** [1] - 114:18
**Alliance** [3] - 258:12, 259:4, 259:7
**allow** [6] - 27:6, 31:11, 41:1, 145:24, 155:10, 155:12
**allowed** [2] - 8:17, 299:18
**alluding** [1] - 25:9
**almost** [2] - 90:18, 188:6

**alone** [2] - 159:21, 160:15
**Alpha** [6] - 85:5, 85:7, 85:8
**ALSO** [1] - 1:21
**alternates** [3] - 34:3, 45:8, 45:10
**alternative** [2] - 81:8, 158:4
**Alysha** [2] - 57:3, 57:8
**amenable** [2] - 119:8, 119:12
**Amendment** [4] - 24:15, 45:24, 65:24, 66:5
**America** [1] - 2:18
**American** [1] - 170:10
**amount** [3] - 12:25, 27:25, 256:14
**analyses** [2] - 26:3, 221:22
**analysis** [9] - 9:13, 11:15, 70:4, 70:10, 178:9, 218:6, 221:15, 221:16, 221:18
**analyst** [3] - 172:25, 255:2, 255:6
**analytical** [2] - 234:17, 239:2
**Anderson** [4] - 53:9, 53:12, 53:21, 54:3
**ANDERSON** [1] - 1:21
**Angelica** [2] - 56:20, 57:6
**angry** [2] - 81:12, 278:20
**Ann** [1] - 183:21
**announces** [1] - 259:2
**annual** [2] - 86:13, 173:5
**answer** [48] - 20:10, 20:21, 23:21, 27:18, 27:19, 47:1, 47:3, 47:4, 51:5, 51:13, 83:8, 91:12, 93:4, 93:20, 106:10, 112:18, 114:10, 123:23, 129:9, 132:23, 132:25, 145:6, 149:24, 158:19, 173:21, 177:9, 177:10, 180:4, 180:16, 180:23, 181:10, 189:13, 190:14, 191:20, 210:20, 213:24, 228:8, 229:7, 229:11, 235:23, 250:9,

250:11, 250:15, 261:25, 289:1, 292:11, 294:21, 298:16
**answered** [9] - 17:20, 46:25, 47:12, 94:12, 99:18, 145:7, 145:14, 172:12, 180:1
**answering** [7] - 29:25, 112:15, 144:16, 144:18, 172:2, 177:11, 250:24
**answers** [17] - 26:13, 30:25, 46:17, 46:19, 47:11, 48:1, 89:11, 90:16, 133:24, 134:2, 146:25, 179:24, 180:22, 181:10, 181:15, 208:21, 298:7
**antibiotic** [1] - 195:3
**anxiety** [1] - 271:10
**anytime** [1] - 144:16
**anyway** [2] - 22:11, 208:13
**AO** [5] - 183:9, 183:17, 183:18, 183:20, 188:5
**apartment** [2] - 50:14, 232:8
**apologies** [2] - 177:9, 179:16
**apologize** [2] - 173:24, 174:5
**appeal** [1] - 17:4
**appeals** [1] - 88:17
**Appeals** [1] - 88:17
**appear** [4] - 47:17, 62:11, 62:16, 291:19
**appearance** [1] - 2:8
**APPEARANCES** [1] - 1:10
**appeared** [1] - 146:18
**applied** [1] - 137:11
**applies** [1] - 128:25
**apply** [5] - 5:13, 5:14, 77:11, 173:23, 295:20
**applying** [6] - 63:25, 64:7, 64:13, 64:19, 160:4, 226:1
**appointment** [11] - 74:6, 82:15, 106:19, 159:19, 194:25, 195:6, 195:19, 196:4, 196:9, 196:18, 196:25
**appointments** [4] - 74:23, 81:2, 105:25,

107:21
**appreciate** [14] - 2:11, 15:14, 21:9, 32:16, 34:1, 34:12, 81:25, 90:10, 173:12, 181:14, 214:22, 215:25, 303:8, 303:21
**apprehended** [1] - 219:13
**approached** [1] - 282:4
**appropriate** [4] - 6:9, 38:19, 107:6, 216:12
**appropriately** [1] - 99:19
**appropriations** [1] - 96:23
**April** [3] - 17:22, 17:24, 50:11
**architect** [1] - 93:23
**area** [4] - 131:18, 175:9, 246:7, 284:13
**areas** [2] - 43:25, 145:21
**arena** [1] - 97:15
**argue** [1] - 26:21
**arguing** [2] - 24:11, 281:25
**argument** [3] - 25:3, 25:19, 38:9
**arising** [1] - 238:23
**armed** [1] - 218:23
**arms** [2] - 168:13, 168:14
**Arnold** [1] - 254:17
**arrest** [7] - 111:9, 226:15, 226:16, 229:9, 229:23, 278:1, 281:4
**arrested** [41] - 62:8, 62:13, 75:25, 76:3, 91:9, 92:2, 109:8, 109:12, 113:19, 114:12, 127:21, 150:4, 166:13, 175:14, 184:8, 191:25, 201:11, 201:16, 202:5, 218:19, 224:18, 232:4, 240:24, 244:14, 255:18, 262:4, 265:10, 276:13, 276:17, 276:20, 277:19, 277:25, 278:3, 278:4, 279:9, 281:9, 281:19, 281:20, 282:4, 282:8, 293:20
**Article** [1] - 45:22

**articles** [1] - 98:9
**ascertain** [1] - 98:15
**aside** [3] - 235:17, 235:21, 236:2
**aspects** [1] - 38:17
**assault** [23] - 66:8, 66:14, 91:14, 96:18, 140:7, 146:2, 147:1, 163:5, 166:17, 167:15, 186:6, 186:7, 186:18, 187:4, 188:12, 236:1, 244:24, 245:1, 246:15, 276:22, 278:1, 278:4, 278:10
**assaulted** [4] - 163:6, 244:20, 244:22, 244:25
**assaults** [4] - 140:4, 245:3, 245:24, 246:8
**assessment** [1] - 188:2
**assets** [1] - 173:2
**assist** [6] - 62:20, 62:21, 63:1, 63:2, 173:15, 173:16
**Assistance** [1] - 88:17
**assistance** [1] - 41:14
**assistant** [1] - 254:18
**Assistant** [8] - 53:4, 53:5, 53:19, 53:24, 53:25, 54:14, 185:2, 185:4
**assisted** [2] - 53:7, 54:2
**assisting** [1] - 42:22
**associated** [1] - 9:19
**Associates** [1] - 110:10
**assume** [4] - 25:2, 76:24, 80:14, 80:16
**assuming** [2] - 5:6, 155:6
**assured** [2] - 43:14, 49:9
**ATM** [1] - 262:7
**attack** [1] - 162:5
**attacked** [1] - 244:24
**attacks** [2] - 271:21, 271:22
**attempt** [2] - 47:18, 155:13
**attempted** [1] - 155:12
**attend** [5] - 58:17, 59:4, 73:25, 138:17, 288:4
**attention** [20] - 12:25, 52:2, 52:6, 52:11, 52:16, 59:11, 59:17,

120:12, 121:15, 121:16, 121:18, 121:24, 122:21, 163:19, 163:23, 176:12, 228:15, 275:7, 292:6
**attentively** [1] - 271:18
**attorney** [10] - 4:21, 4:22, 75:5, 87:24, 88:8, 88:14, 170:9, 198:6, 208:21, 261:23
**Attorney** [4] - 53:4, 53:5, 53:24, 53:25
**Attorney's** [5] - 10:11, 53:6, 54:1, 60:15, 60:16
**attorneys** [9] - 16:19, 55:21, 56:9, 61:16, 61:22, 75:6, 210:7, 251:3, 261:19
**Attorneys** [4] - 53:19, 54:14, 185:2, 185:4
**authority** [1] - 171:15
**authorization** [1] - 304:14
**available** [2] - 43:19, 301:25
**Avenue** [1] - 1:14
**average** [1] - 126:9
**avoid** [4] - 29:2, 32:3, 32:21, 40:25
**await** [1] - 71:21
**aware** [5] - 3:22, 9:21, 84:1, 178:17, 187:13
**awareness** [1] - 173:6
**awkward** [1] - 16:19

**B**

**babysitter** [1] - 186:24
**back-end** [1] - 102:5
**background** [9] - 17:15, 124:22, 144:10, 148:5, 148:15, 148:19, 149:13, 178:23
**backpack** [4] - 137:24, 204:5, 206:12, 287:12
**bacteriology** [1] - 135:23
**bad** [5] - 157:15, 180:6, 180:7, 219:21
**badly** [1] - 98:7
**bag** [14] - 90:25, 95:19, 105:9, 124:7, 147:17, 159:12,

165:1, 189:25, 197:8, 201:4, 259:23, 270:25, 282:19, 301:4
**bags** [4] - 242:21, 268:3, 274:17, 290:11
**balancing** [1] - 32:24
**Baltimore** [1] - 139:14
**bandaged** [1] - 106:4
**bank** [2] - 218:25, 220:3
**banking** [1] - 135:23
**bankruptcy** [1] - 170:10
**bar** [1] - 140:22
**bar/restaurant** [1] - 141:11
**barriers** [1] - 44:8
**base** [3] - 132:12, 145:16, 188:1
**based** [53] - 8:13, 9:12, 19:21, 21:17, 22:2, 27:6, 46:2, 49:11, 52:18, 52:23, 71:4, 71:8, 89:4, 93:17, 94:11, 116:21, 129:14, 129:18, 130:22, 143:15, 143:24, 146:5, 146:13, 147:6, 151:12, 155:10, 172:23, 176:20, 176:23, 177:10, 177:16, 177:19, 177:22, 179:1, 179:23, 180:4, 180:16, 180:21, 187:17, 187:23, 212:3, 212:13, 212:23, 215:5, 222:19, 229:10, 233:5, 233:25, 239:3, 286:8
**basement** [1] - 94:1
**bases** [2] - 179:1, 180:22
**basic** [2] - 126:2, 221:14
**basis** [3] - 143:19, 180:12, 180:21
**Bates** [1] - 254:19
**bathrooms** [1] - 44:1
**battery** [2] - 255:23, 256:16
**Bay** [1] - 175:9
**BEFORE** [1] - 1:8
**begin** [7] - 40:12, 42:17, 46:9, 48:11, 48:19, 50:4, 51:3

**beginning** [1] - 36:22
**begins** [1] - 48:8
**behalf** [2] - 2:23, 224:24
**behavior** [2] - 271:13, 271:20
**behind** [7] - 44:9, 73:14, 82:25, 85:22, 245:17, 246:14, 264:5
**beliefs** [2] - 59:19, 59:22
**believes** [1] - 22:21
**belong** [3] - 62:19, 62:25, 173:14
**belongings** [1] - 182:2
**below** [1] - 304:15
**bench** [99] - 43:4, 78:1, 79:17, 80:25, 81:14, 84:19, 85:3, 85:9, 85:13, 88:25, 89:17, 94:3, 94:20, 95:10, 95:13, 99:7, 99:24, 103:20, 104:6, 107:2, 107:16, 110:19, 111:7, 112:8, 112:22, 118:22, 119:2, 122:15, 123:13, 133:21, 134:6, 136:6, 136:16, 144:12, 146:22, 152:1, 152:15, 157:23, 158:6, 161:1, 161:7, 164:5, 164:13, 168:22, 169:3, 179:19, 181:7, 188:8, 188:20, 193:7, 193:25, 196:13, 196:23, 200:7, 200:18, 203:19, 203:23, 206:2, 206:5, 213:15, 214:20, 222:4, 222:11, 229:5, 230:11, 235:9, 236:11, 238:14, 239:5, 242:3, 242:11, 251:4, 251:11, 256:12, 256:25, 259:12, 259:17, 263:18, 263:21, 266:7, 266:16, 267:8, 267:15, 270:1, 270:5, 273:25, 274:5, 280:21, 281:7, 286:12, 287:5,

289:20, 290:1, 297:24, 298:22, 301:16, 301:21, 303:11, 303:17
**bender** [1] - 265:17
**Bennett's** [1] - 183:21
**BERYL** [1] - 1:8
**Beryl** [2] - 2:4, 40:13
**beside** [2] - 55:24, 56:12
**best** [12] - 50:1, 83:9, 83:18, 83:24, 126:25, 127:5, 127:16, 133:4, 133:16, 215:15, 216:9, 304:10
**Best** [1] - 281:22
**better** [6] - 37:22, 114:5, 117:14, 119:20, 121:3, 161:14
**between** [12] - 16:3, 25:1, 30:18, 151:4, 174:11, 178:24, 194:17, 197:14, 218:25, 234:8, 234:15, 238:24
**beyond** [7] - 12:1, 63:22, 64:4, 94:17, 95:7, 220:1, 225:24
**bharden@ hardenpinckney. com** [1] - 1:20
**bias** [5] - 45:12, 98:8, 99:13, 99:17, 180:13
**biases** [1] - 49:10
**big** [6] - 38:22, 120:22, 120:23, 120:24, 200:8, 208:13
**bigger** [1] - 200:25
**Bill** [1] - 45:23
**bit** [33] - 11:11, 34:2, 39:7, 42:5, 51:20, 56:22, 81:7, 84:5, 114:7, 117:14, 124:23, 124:24, 137:3, 153:24, 156:3, 163:3, 167:17, 174:4, 174:10, 177:24, 178:22, 185:4, 211:5, 225:14, 232:25, 237:4, 269:12, 272:12, 273:14, 276:9, 285:11, 285:14, 289:14
**Black** [1] - 26:17
**bleed** [1] - 106:9
**block** [1] - 152:6

**blocks** [1] - 152:5
**blood** [1] - 135:23
**blown** [1] - 272:16
**blunt** [1] - 45:16
**Board** [1] - 83:11
**board** [3] - 86:12, 87:15
**bodies** [1] - 11:24
**body** [4] - 144:14, 144:16, 250:24, 275:13
**book** [1] - 49:20
**books** [2] - 72:2, 178:15
**borough** [1] - 25:10
**boss** [2] - 207:9, 260:22
**Boston** [1] - 243:15
**bought** [1] - 240:8
**bound** [1] - 48:24
**boy** [3] - 202:16, 204:11, 204:12
**boyfriend** [2] - 139:13, 139:18
**boys** [4] - 135:8, 135:10, 135:11, 202:15
**Brady** [3] - 8:6, 9:6, 12:19
**BRANDI** [1] - 1:17
**Brandi** [4] - 55:7, 55:10, 55:15, 55:18
**breach** [1] - 102:9
**break** [11] - 74:13, 119:7, 119:9, 119:11, 147:12, 152:20, 153:3, 208:8, 222:25, 223:2, 223:4
**breakdown** [1] - 159:3
**breaking** [2] - 160:8, 163:9
**breaks** [3] - 207:18, 208:9, 302:4
**brief** [6] - 19:14, 19:16, 25:22, 35:20, 222:25, 226:5
**briefcase** [1] - 134:22, 230:23
**briefly** [1] - 50:4
**bring** [19] - 7:15, 12:14, 30:14, 39:17, 51:10, 51:16, 154:3, 154:4, 155:24, 157:17, 159:5, 162:21, 189:19, 228:15, 234:18, 275:20, 278:6, 299:3, 300:21
**bringing** [2] - 199:16,

292:6
**Brittany** [11] - 57:2, 57:7, 290:24, 291:1, 291:2, 291:4, 291:5, 291:6, 291:22, 292:1, 292:3
**broad** [1] - 75:13
**broadly** [2] - 175:8
**broke** [2] - 175:13, 278:21
**broken** [2] - 184:12, 184:13
**Bronx** [1] - 170:20
**brother** [11] - 83:10, 83:18, 127:10, 130:22, 131:5, 131:6, 131:11, 211:20, 233:8, 234:11, 238:24
**brother-in-law** [7] - 130:22, 131:5, 131:6, 131:11, 233:8, 234:11, 238:24
**brought** [7] - 11:24, 49:20, 72:14, 94:8, 122:7, 226:11, 278:5
**bucks** [1] - 175:25
**budget** [2] - 255:1, 255:6
**bug** [1] - 102:18
**bunch** [2] - 25:5, 228:6
**burden** [6] - 38:14, 38:18, 63:19, 64:1, 157:8, 225:22
**bureau** [2] - 96:12, 268:17
**Bureau** [5] - 53:7, 54:2, 60:17, 96:9, 97:1
**Burger** [1] - 176:7
**Burrell** [4] - 2:23, 53:5, 53:10, 53:24
**BURRELL** [58] - 1:12, 78:10, 85:2, 85:12, 89:7, 94:14, 95:12, 99:12, 99:22, 104:4, 107:10, 111:6, 112:21, 119:1, 122:23, 123:4, 134:1, 136:13, 144:21, 146:9, 158:1, 161:5, 169:2, 180:11, 188:18, 193:15, 193:20, 193:23, 196:19, 200:14, 203:22, 206:4, 213:24, 214:4, 214:7,

222:10, 230:10, 235:15, 236:6, 238:17, 242:5, 251:9, 256:23, 259:16, 263:20, 266:14, 267:14, 270:4, 274:2, 280:25, 281:6, 286:15, 289:23, 292:1, 298:1, 301:19, 303:14, 303:16
**bus** [1] - 302:19
**business** [8] - 24:20, 65:14, 65:18, 110:13, 168:19, 284:20, 284:21, 284:22
**busy** [1] - 91:25
**but..** [5] - 201:24, 211:21, 212:12, 246:7, 265:1
**buttons** [1] - 44:1
**buy** [1] - 176:7
**Buy** [1] - 281:22
**bye** [1] - 72:22

**C**

**c)(1)(C** [1] - 6:7
**cafes** [1] - 229:3
**cafeteria** [3] - 44:13, 44:14, 300:7
**calibrated** [1] - 19:16
**California** [1] - 138:23
**caller** [1] - 184:24
**camera** [1] - 54:25
**campaign** [1] - 224:4
**cane** [2] - 119:17, 123:7
**cannot** [9] - 50:2, 54:6, 63:20, 64:2, 128:25, 144:18, 225:22, 298:7, 301:13
**capable** [2] - 117:8, 234:11
**capacity** [1] - 96:15
**Capital** [2] - 203:2, 288:14
**Capitol** [8] - 203:4, 203:5, 255:2, 255:7, 255:12, 280:12, 280:13, 280:17
**capped** [1] - 5:21
**CAR** [10] - 10:19, 10:25, 11:1, 11:4, 11:5, 11:9, 11:11, 11:17, 12:10

**car** [10] - 114:17,
114:18, 175:13,
184:13, 218:24,
219:19, 219:20,
219:21
**care** [4] - 40:4, 157:6,
266:5, 303:20
**career** [2] - 110:16,
243:21
**careful** [1] - 292:24
**carefully** [6] - 19:16,
20:12, 55:23, 56:11,
93:15, 212:7
**caregiver** [3] - 186:20,
186:22, 186:23
**caregivers** [2] -
104:16, 104:22
**caring** [2] - 52:8,
52:13
**Carolina** [3] - 148:11,
264:25, 265:1
**CAROLINE** [1] - 1:12
**Caroline** [3] - 2:23,
53:4, 53:24
**caroline.burrell@
usdoj.gov** [1] - 1:16
**carriers** [1] - 178:25
**carry** [1] - 174:9
**CARs** [12] - 8:2, 8:4,
8:18, 8:25, 9:11,
9:14, 9:15, 9:18,
9:20, 9:25, 12:23,
13:1
**Carter** [2] - 57:2, 57:7
**cartographer** [1] -
97:5
**Case** [4] - 1:21, 2:18,
88:2, 88:3
**case** [210] - 5:19, 8:2,
9:19, 16:17, 24:12,
31:10, 33:1, 33:21,
33:23, 36:4, 36:17,
37:7, 37:9, 37:15,
37:25, 38:3, 38:12,
38:13, 38:14, 38:15,
38:18, 38:22, 38:25,
40:23, 41:2, 43:17,
45:6, 45:8, 45:12,
45:13, 46:16, 47:21,
48:6, 49:8, 49:10,
49:14, 49:21, 50:4,
50:5, 52:2, 52:7,
52:12, 52:17, 52:19,
52:22, 52:24, 53:2,
53:4, 53:23, 55:7,
55:15, 58:19, 59:6,
59:10, 59:11, 59:15,
59:17, 63:5, 63:12,
64:8, 64:11, 64:14,
64:17, 65:2, 65:11,

66:20, 66:24, 66:25,
67:9, 68:19, 68:24,
68:25, 69:6, 69:8,
69:13, 69:14, 69:19,
69:21, 69:25, 70:16,
70:20, 70:22, 71:1,
71:3, 71:7, 71:14,
71:19, 76:7, 76:20,
84:7, 89:1, 90:5,
93:17, 94:18, 97:17,
98:19, 103:15,
109:4, 116:5,
125:21, 132:1,
132:2, 132:11,
132:12, 132:18,
141:17, 141:20,
141:25, 142:16,
142:21, 143:14,
143:15, 145:1,
145:25, 146:3,
146:6, 147:7,
148:17, 151:12,
163:17, 163:23,
163:25, 168:1,
171:10, 172:22,
175:1, 175:10,
176:10, 176:19,
176:20, 177:4,
177:8, 177:20,
180:25, 184:4,
185:20, 185:24,
187:11, 187:17,
187:18, 187:20,
187:23, 187:24,
188:2, 188:13,
191:1, 192:20,
199:22, 200:10,
202:1, 202:7,
202:18, 202:20,
204:15, 205:13,
205:16, 209:17,
210:9, 210:10,
212:8, 212:15,
212:16, 212:20,
212:23, 212:24,
214:2, 214:22,
215:5, 215:12,
215:15, 221:3,
225:8, 226:6,
227:25, 234:3,
234:19, 235:18,
235:23, 236:3,
238:3, 239:2,
240:18, 247:5,
247:13, 247:23,
249:22, 250:8,
250:17, 250:20,
259:9, 262:22,
263:5, 263:9,
269:23, 271:7,
272:20, 275:7,

279:17, 285:3,
286:2, 288:2, 288:6,
293:9, 294:16,
294:19, 296:7,
296:15, 297:13,
297:17
**cases** [17] - 25:5,
33:11, 45:20, 88:13,
88:20, 89:22, 148:7,
149:18, 170:10,
191:14, 199:3,
199:8, 200:25,
205:11, 260:24,
279:22, 286:5
**category** [2] - 4:3,
4:12
**Category** [1] - 5:6
**caught** [5] - 128:2,
173:7, 232:15,
241:18, 242:6
**causal** [1] - 24:25
**causally** [2] - 25:3,
25:17
**causes** [2] - 13:15,
106:14
**cautionary** [2] - 35:3,
35:9
**CCIPS/DC** [1] - 1:13
**CDC** [2] - 207:5,
207:14
**cell** [9] - 11:12, 11:16,
50:23, 50:25, 91:15,
92:5, 101:13, 278:5
**cellular** [11] - 70:3,
70:4, 70:8, 70:9,
102:22, 102:24,
103:16, 178:7,
178:8, 221:12,
221:18
**Ceremonial** [16] -
41:7, 41:12, 41:16,
42:7, 42:9, 42:24,
48:13, 51:8, 51:15,
71:25, 72:6, 72:8,
72:14, 72:16, 73:3,
275:17
**ceremonial** [1] - 3:14
**certain** [5] - 8:10,
138:14, 145:23,
186:11, 256:14
**certainly** [6] - 7:17,
12:11, 33:4, 117:17,
153:10, 187:3
**CERTIFICATE** [1] -
304:5
**certificate** [1] - 304:12
**certify** [1] - 304:8
**cetera** [2] - 91:11,
101:14
**chair** [22] - 73:14,

82:25, 85:22, 105:9,
105:16, 108:4,
137:25, 147:18,
182:2, 190:1, 197:9,
201:5, 206:13,
223:9, 230:23,
242:21, 259:23,
264:5, 268:3,
274:17, 282:21,
290:11
**chairs** [2] - 30:12,
51:9
**challenge** [1] - 20:15
**challenges** [3] - 21:11,
24:24, 25:8
**challenging** [4] -
19:22, 20:5, 20:6,
20:18
**chance** [2] - 48:5,
286:10
**change** [5] - 198:13,
198:14, 263:8,
269:12
**changed** [1] - 157:3
**changing** [3] - 38:5,
38:11, 276:1
**character** [2] - 255:24,
256:15
**charge** [14] - 39:2,
64:21, 65:5, 67:7,
67:16, 67:20, 67:25,
116:10, 128:2,
128:4, 128:12,
130:9, 219:12,
282:10
**charged** [18] - 50:6,
63:23, 64:5, 94:8,
94:10, 94:23, 94:24,
95:4, 128:5, 222:7,
222:14, 225:25,
230:14, 247:22,
278:10, 286:8,
286:21, 287:3
**charges** [14] - 5:2,
5:14, 5:15, 6:14,
37:11, 37:13, 37:21,
94:8, 130:11,
130:24, 199:16,
244:17, 247:22,
278:7
**Charleston** [1] -
148:11
**Charlottesville** [1] -
267:19
**chart** [1] - 29:10
**cheating** [1] - 278:20
**check** [6] - 22:20,
74:8, 74:21, 148:6,
176:1, 190:9
**checked** [28] - 47:11,

95:21, 97:20,
127:19, 129:2,
129:8, 146:25,
147:22, 154:7,
224:22, 226:3,
226:25, 228:1,
231:7, 232:20,
239:13, 243:3,
252:6, 257:12,
260:8, 264:14,
264:15, 271:2,
273:4, 274:25,
280:3, 282:22, 284:6
**checkmark** [1] - 47:2
**checks** [2] - 148:16,
149:13
**chemicals** [1] - 171:24
**chemistry** [1] - 135:23
**Cheverly** [3] - 241:5,
241:8, 241:10
**CHIEF** [1] - 1:9
**chief** [2] - 182:16,
183:22
**Chief** [2] - 2:4, 40:13
**child** [64] - 50:8,
65:13, 65:15, 65:17,
65:19, 66:9, 66:11,
66:14, 66:16, 66:19,
66:23, 67:1, 67:5,
67:7, 67:10, 67:14,
67:17, 67:21, 68:1,
68:4, 68:8, 69:1,
69:2, 69:8, 69:9,
69:15, 69:21, 74:3,
92:25, 116:11,
116:16, 116:25,
129:4, 131:10,
139:25, 141:15,
141:21, 141:22,
144:23, 146:3,
147:1, 177:4,
180:13, 180:15,
186:5, 186:10,
186:12, 186:18,
187:3, 204:15,
224:23, 247:12,
285:14, 286:4,
287:1, 296:6,
296:10, 297:13,
297:19, 298:9
**children** [38] - 62:22,
62:23, 63:3, 63:4,
70:11, 70:13, 92:24,
96:16, 96:20,
117:24, 118:5,
118:8, 131:19,
133:7, 133:9,
133:16, 135:5,
135:6, 135:7,
151:19, 173:17,

173:18, 192:15,
192:16, 202:10,
202:12, 202:18,
204:8, 204:10,
262:17, 262:18,
266:10, 266:12,
266:19, 280:4,
280:5, 302:21,
302:25
**Children's** [1] - 130:7
**chilly** [2] - 260:4,
260:5
**choice** [3] - 32:23,
32:24, 127:18
**chosen** [1] - 194:16
**CIA** [5] - 60:19, 172:8,
172:13, 190:13,
244:5
**circuit** [3] - 89:9,
89:11, 90:16
**circulation** [1] - 43:23
**circumstance** [3] -
175:17, 212:11,
215:11
**circumstances** [12] -
12:22, 50:9, 52:21,
53:1, 177:16,
177:19, 186:18,
226:18, 227:3,
227:6, 227:17,
229:20
**circumstantial** [1] -
127:16
**citation** [1] - 202:2
**citizens** [3] - 46:2,
46:6, 175:18
**City** [2] - 219:7,
288:14
**city** [3] - 246:11,
246:13, 246:16
**civic** [2] - 46:10, 158:9
**civil** [7] - 15:13, 61:25,
62:4, 190:21,
190:23, 240:20,
268:15
**Civil** [1] - 136:24
**claim** [1] - 88:21
**claimed** [1] - 175:8
**claiming** [1] - 175:12
**claims** [2] - 88:19,
148:7
**clarification** [1] -
23:23
**clarified** [1] - 154:8
**cleaner** [1] - 171:22
**cleaning** [2] - 43:25,
126:17
**clear** [28] - 4:11, 11:1,
11:10, 16:17, 17:7,
17:14, 17:16, 24:12,

25:7, 48:10, 123:2,
133:23, 162:18,
180:3, 180:16,
180:17, 180:21,
213:17, 213:18,
213:21, 213:22,
214:8, 214:16,
216:4, 229:13,
238:21, 251:7
**cleared** [1] - 128:4
**clearly** [3] - 144:22,
270:24, 299:5
**clerk** [5] - 22:21,
88:16, 88:19, 191:7,
292:14
**clerk's** [1] - 160:11
**clerks** [1] - 43:5
**clients** [2] - 149:3,
240:12
**climate** [3] - 198:13,
198:14
**clinical** [1] - 135:22
**clock** [1] - 299:5
**close** [104] - 28:12,
50:21, 52:9, 52:14,
59:25, 60:5, 60:10,
61:1, 61:5, 61:9,
61:13, 61:19, 62:8,
62:13, 62:19, 62:25,
66:7, 66:13, 68:12,
68:14, 75:2, 75:6,
75:11, 75:25, 79:21,
79:25, 83:5, 87:20,
91:9, 92:19, 93:6,
96:3, 100:13,
108:13, 108:16,
109:7, 112:2,
113:19, 114:11,
124:17, 127:20,
130:4, 147:25,
149:20, 150:3,
151:1, 165:10,
165:22, 166:12,
166:16, 166:24,
170:6, 171:5,
173:14, 174:2,
183:15, 184:7,
186:2, 190:7,
191:24, 192:23,
197:20, 201:11,
208:15, 209:20,
210:18, 211:2,
216:24, 218:18,
223:17, 224:18,
231:10, 232:3,
232:21, 239:16,
240:23, 241:17,
243:7, 244:1,
244:13, 248:16,
253:23, 254:13,

254:22, 255:18,
257:14, 257:15,
260:13, 261:6,
261:16, 262:3,
265:9, 268:10,
273:5, 276:12,
283:20, 284:7,
285:7, 285:9,
285:25, 292:8,
293:12, 293:19,
297:2
**close-up** [1] - 50:21
**closely** [1] - 235:5
**closer** [2] - 56:18,
177:23
**closest** [1] - 92:25
**clothes** [3] - 140:15,
299:19, 299:22
**coach** [2] - 289:7,
289:11
**coaching** [6] - 288:11,
288:14, 288:16,
288:20, 289:13,
289:14
**coat** [2] - 150:8,
150:10
**Code** [1] - 5:15
**code** [3] - 26:12,
26:13, 50:7
**coerced** [3] - 68:5,
68:9, 129:5
**coffee** [2] - 228:20,
300:7
**cognizable** [2] - 17:1,
26:25
**cold** [7] - 203:17,
260:6, 275:10,
275:12, 275:14,
276:5
**coldness** [1] - 276:6
**Coleman** [2] - 57:17,
57:23
**collect** [3] - 14:3,
15:20, 270:7
**collective** [1] - 30:10
**college** [8] - 83:10,
87:1, 160:4, 169:9,
169:10, 273:11,
284:14, 284:16
**colloquy** [2] - 4:15,
7:9
**Columbia** [7] - 2:3,
40:14, 53:7, 54:1,
60:13, 112:12,
231:15
**COLUMBIA** [1] - 1:1
**column** [1] - 26:11
**com** [1] - 104:11
**comfortable** [18] -
3:13, 41:25, 42:5,

85:23, 90:25, 95:20,
105:11, 122:1,
124:7, 138:2,
141:15, 159:12,
259:24, 264:6,
271:1, 274:18,
275:21, 296:11
**comfortably** [9] -
72:12, 105:10,
108:5, 113:9, 165:2,
206:14, 239:10,
242:23, 287:13
**coming** [14] - 18:24,
52:20, 52:25, 107:6,
107:18, 123:15,
134:8, 164:15,
181:9, 200:21,
215:20, 251:13,
272:11, 287:7
**comment** [1] - 20:1
**comments** [1] -
299:13
**commission** [1] -
88:17
**Commission** [1] -
88:18
**Committee** [1] - 259:1
**common** [1] - 56:21
**communicate** [1] -
132:5
**communication** [4] -
109:22, 111:1,
131:21, 132:4
**communications** [1] -
258:10
**community** [6] -
19:17, 46:2, 84:11,
96:10, 172:9, 172:13
**companies** [1] -
239:23
**company** [12] - 61:3,
101:17, 102:4,
148:5, 148:9,
148:14, 148:24,
203:11, 240:2,
240:7, 242:8
**comparison** [1] - 6:13
**compile** [1] - 20:9
**complainant's** [1] -
34:20
**complains** [1] -
260:21
**complaint** [1] - 150:19
**complete** [3] - 300:2,
301:5, 304:10
**completed** [1] - 7:8
**completely** [9] - 9:7,
34:16, 71:13, 71:18,
116:14, 117:12,
123:18, 179:5,

227:24
**completeness** [1] -
181:9
**completes** [1] - 71:20
**complication** [1] -
36:11
**comply** [1] - 16:12
**composition** [3] -
19:22, 20:6, 23:1
**comprehensive** [3] -
17:18, 22:17, 37:7
**computer** [17] - 1:25,
51:1, 70:2, 70:4,
70:7, 70:9, 101:12,
102:23, 103:1,
103:15, 178:6,
178:8, 178:15,
179:7, 179:8,
221:11, 221:16
**computer-aided** [1] -
1:25
**computers** [7] - 70:2,
70:7, 101:12, 103:4,
178:6, 178:25,
221:11
**concern** [7] - 25:21,
32:18, 187:22,
222:14, 229:17,
233:14, 266:21
**concerned** [3] -
122:18, 173:10,
238:8
**concerning** [1] -
178:15
**concerns** [4] - 32:25,
44:24, 226:22, 236:5
**concludes** [50] -
79:17, 81:14, 85:3,
85:13, 89:17, 94:20,
95:13, 99:24, 104:6,
107:16, 111:7,
112:22, 119:2,
123:13, 134:6,
136:16, 146:22,
152:15, 158:6,
161:7, 164:13,
169:3, 181:7,
188:20, 193:25,
196:23, 200:18,
203:23, 206:5,
214:20, 222:11,
230:11, 236:11,
239:5, 242:11,
251:11, 256:25,
259:17, 263:21,
266:16, 267:15,
270:5, 274:5, 281:7,
287:5, 290:1,
298:22, 301:21,
303:17, 304:3

conclusions [1] - 97:2
conditions [1] -
120:14
conduct [8] - 3:14,
65:23, 66:4, 68:6,
68:10, 129:6,
185:20, 192:21
confer [7] - 7:1, 31:21,
40:9, 54:11, 161:21,
162:3, 300:5
conference [104] - 4:9,
78:1, 79:17, 80:25,
81:14, 84:19, 85:3,
85:9, 85:13, 86:13,
86:16, 87:4, 87:16,
88:25, 89:17, 90:2,
94:3, 94:20, 95:10,
95:13, 99:7, 99:24,
103:20, 104:6,
107:2, 107:16,
110:19, 111:7,
112:8, 112:22,
118:22, 119:2,
122:15, 123:13,
133:21, 134:6,
136:6, 136:16,
144:12, 146:22,
152:1, 152:15,
157:23, 158:6,
161:1, 161:7, 164:5,
164:13, 168:22,
169:3, 179:19,
181:7, 188:8,
188:20, 193:7,
193:25, 196:13,
196:23, 200:7,
200:18, 203:19,
203:23, 206:2,
206:5, 213:15,
214:20, 222:4,
222:11, 229:5,
230:11, 235:9,
236:11, 238:14,
239:5, 242:3,
242:11, 251:4,
251:11, 256:12,
256:25, 259:12,
259:17, 263:18,
263:21, 266:7,
266:16, 267:8,
267:15, 270:1,
270:5, 273:25,
274:5, 280:21,
281:7, 286:12,
287:5, 289:20,
290:1, 297:24,
298:22, 301:16,
301:21, 303:11,
303:17
conferred [1] - 31:15

confess [1] - 29:21
confessed [1] -
237:12
confide [1] - 93:1
confidence [5] -
213:5, 213:8, 213:9,
214:12, 214:14
confidential [2] -
205:20, 205:25
confidentiality [1] -
205:25
confirm [1] - 207:15
confirmation [1] -
259:2
conflict [1] - 31:24
conflicts [2] - 88:7,
88:8
confront [1] - 31:22
confronted [1] - 36:15
confused [2] - 15:2,
178:20
confusion [1] - 117:16
congratulations [1] -
74:19
Congress [1] - 96:23
connected [1] - 226:9
connection [8] -
30:18, 32:20, 96:25,
98:22, 143:2,
184:25, 232:13,
241:18
conned [1] - 175:12
conscience [2] -
64:24, 65:8
consent [11] - 67:19,
67:25, 116:9,
116:16, 116:21,
117:1, 117:8,
117:10, 174:23,
176:17
consequence [1] -
32:10
consider [12] - 16:18,
17:13, 20:14, 22:18,
64:23, 65:7, 126:9,
177:16, 178:2,
179:10, 189:8, 214:8
consideration [1] -
17:6
considered [3] -
131:1, 172:14,
304:12
consistent [1] -
180:20
constitutes [1] - 304:8
Constitution [6] -
45:19, 45:22, 65:24,
65:25, 66:5, 66:6
constitutionally [1] -
16:4

construction [1] -
156:20
consult [1] - 13:23
consultation [1] -
43:12
consulting [1] - 33:17
contact [10] - 28:11,
40:25, 53:19, 54:4,
54:19, 54:23, 55:3,
55:9, 55:17, 279:13
contain [1] - 154:17
contained [2] -
154:15, 154:20
container [1] - 201:17
containing [1] - 17:21
contends [1] - 50:10
context [4] - 229:16,
238:23, 243:9,
294:25
contingency [2] -
158:15, 158:16
continuance [1] -
15:25
continue [4] - 33:19,
44:22, 164:17, 301:4
continued [2] - 9:4,
141:13
continues [1] - 302:1
contractor [1] - 169:6
control [1] - 127:3
conversation [1] -
285:25
conversations [17] -
75:19, 86:25, 109:2,
167:9, 167:16,
183:5, 198:17,
209:14, 210:13,
212:5, 231:23,
233:16, 243:19,
244:7, 261:2,
285:20, 293:6
convicted [28] - 5:1,
6:14, 62:8, 62:13,
75:25, 91:9, 109:8,
113:20, 114:12,
127:21, 130:9,
150:4, 166:13,
166:18, 184:8,
191:25, 201:12,
218:19, 224:19,
232:4, 240:24,
244:14, 255:18,
256:3, 262:4,
265:10, 276:13,
293:20
conviction [2] -
166:22, 167:8
cook [1] - 126:18
cool [1] - 206:8
cooperative [1] -

131:20
cop [1] - 292:16
copes [1] - 211:21
cops [2] - 98:6, 226:15
corner [2] - 46:22,
47:10
cornered [2] - 248:20,
249:7
corporate [1] - 149:2
correct [24] - 5:17,
8:3, 10:9, 11:8,
12:20, 13:16, 18:5,
18:14, 19:5, 19:8,
21:25, 22:14, 23:2,
26:24, 28:22, 33:5,
35:19, 39:4, 39:5,
132:16, 137:13,
201:1, 299:15
correction [3] -
124:21, 125:5, 269:6
correctional [4] -
60:14, 125:2,
125:19, 126:7
Corrections [2] -
127:6, 127:17
corrections [3] -
129:21, 269:1, 269:5
corrective [1] - 8:8
correctly [5] - 19:20,
28:25, 111:8,
187:25, 270:14
correspondence [1] -
17:25
corroborates [1] -
298:17
corroborating [1] -
98:16
Costa [1] - 175:22
counsel [11] - 2:20,
4:25, 7:1, 10:17,
21:10, 56:1, 56:2,
73:9, 84:18, 151:24,
161:21
Counsel [1] - 200:24
counseling [1] -
159:20
counselor's [1] -
160:13
counted [1] - 265:14
counties [1] - 25:12
countries [4] - 168:10,
168:11, 268:21,
269:6
country [1] - 215:23
county [1] - 171:18
County [3] - 205:9,
224:5, 241:14
couple [9] - 40:6,
71:24, 125:23,
129:20, 184:12,

207:6, 207:12,
249:6, 283:12
course [15] - 6:14,
22:1, 37:2, 43:2,
43:6, 47:22, 55:19,
56:7, 82:3, 146:24,
167:21, 177:1,
215:10, 220:14,
253:1
courses [2] - 178:15,
179:9
COURT [1331] - 1:1,
1:9, 2:5, 2:9, 2:11,
2:14, 2:24, 3:1, 3:3,
3:7, 3:20, 4:7, 4:14,
4:19, 5:12, 5:18,
5:21, 5:23, 6:1, 6:11,
6:21, 6:25, 7:4, 7:6,
7:19, 8:15, 8:17,
8:21, 9:11, 10:5,
10:7, 10:20, 10:22,
12:8, 12:21, 12:25,
13:13, 13:17, 14:1,
14:9, 14:13, 14:15,
14:21, 14:25, 15:3,
15:12, 15:16, 15:23,
16:9, 16:17, 17:1,
17:3, 17:6, 17:12,
17:24, 18:2, 18:6,
18:13, 18:15, 18:23,
19:6, 19:9, 19:12,
19:20, 20:18, 21:6,
21:8, 21:14, 21:20,
22:1, 22:5, 22:11,
22:15, 22:17, 23:3,
23:6, 23:10, 23:13,
23:17, 23:20, 23:25,
24:2, 24:6, 25:21,
26:16, 27:9, 27:13,
27:15, 28:3, 28:6,
28:13, 28:17, 28:23,
29:4, 29:8, 29:18,
29:20, 30:3, 30:7,
30:22, 31:15, 31:21,
32:6, 32:10, 32:14,
33:11, 33:19, 34:12,
34:18, 34:22, 35:13,
35:16, 35:22, 36:3,
36:15, 37:1, 37:5,
37:24, 38:7, 38:20,
39:6, 39:14, 39:17,
39:20, 39:22, 39:24,
40:2, 40:10, 48:16,
53:15, 53:18, 54:8,
54:12, 55:14, 56:17,
56:24, 57:4, 57:9,
57:13, 57:18, 57:24,
60:22, 60:24, 73:9,
73:11, 73:17, 73:20,
74:5, 74:10, 74:18,
74:21, 74:25, 75:7,

75:10, 75:15, 75:18, 75:23, 76:5, 76:7, 76:11, 76:15, 76:18, 77:2, 77:9, 77:15, 77:18, 77:22, 77:24, 78:9, 78:15, 79:1, 79:10, 79:14, 79:18, 79:21, 79:24, 80:1, 80:5, 80:8, 80:16, 80:20, 80:24, 81:2, 81:5, 81:13, 81:15, 81:19, 81:23, 82:3, 82:6, 82:13, 82:18, 82:23, 83:3, 83:13, 83:17, 83:20, 83:24, 84:3, 84:9, 84:13, 84:17, 84:22, 84:25, 85:4, 85:6, 85:8, 85:10, 85:14, 85:16, 85:20, 86:2, 86:14, 86:20, 86:23, 87:4, 87:7, 87:10, 87:12, 87:18, 87:25, 88:3, 88:6, 88:10, 88:22, 89:1, 89:8, 89:12, 89:16, 89:18, 89:23, 89:25, 90:5, 90:11, 90:14, 90:17, 90:19, 90:23, 91:3, 91:6, 91:17, 91:19, 91:22, 92:4, 92:7, 92:10, 92:15, 92:18, 92:22, 93:5, 93:8, 93:12, 93:17, 93:21, 93:24, 94:2, 94:4, 94:9, 94:13, 94:19, 94:21, 95:3, 95:6, 95:9, 95:14, 95:18, 95:24, 96:1, 96:19, 96:24, 97:4, 97:10, 97:12, 97:19, 98:11, 98:21, 99:2, 99:5, 99:8, 99:11, 99:20, 99:23, 99:25, 100:5, 100:8, 100:19, 100:22, 100:25, 101:8, 101:11, 101:18, 101:20, 101:23, 102:2, 102:6, 102:11, 102:15, 102:21, 103:3, 103:7, 103:9, 103:11, 103:19, 103:21, 104:1, 104:3, 104:7, 104:10, 104:12, 104:14, 104:20, 105:1, 105:7, 105:14, 105:18, 106:3, 106:13, 106:16, 106:19,

106:22, 106:25, 107:3, 107:8, 107:11, 107:17, 107:20, 107:24, 108:2, 108:8, 108:12, 108:20, 108:22, 109:1, 109:6, 109:15, 109:18, 109:23, 110:1, 110:5, 110:9, 110:11, 110:14, 110:18, 110:23, 111:4, 111:8, 111:16, 111:20, 111:24, 112:5, 112:19, 112:23, 113:1, 113:4, 113:7, 113:12, 113:15, 113:18, 113:23, 114:1, 114:4, 114:7, 114:20, 114:22, 115:2, 115:5, 115:8, 115:12, 115:15, 115:18, 115:23, 116:1, 116:3, 116:7, 116:19, 116:24, 117:6, 117:15, 117:20, 118:2, 118:6, 118:8, 118:12, 118:15, 118:18, 118:21, 119:3, 119:7, 119:11, 119:15, 119:21, 119:24, 120:1, 120:3, 120:7, 120:11, 120:17, 120:20, 121:5, 121:7, 121:11, 121:14, 121:19, 122:1, 122:6, 122:9, 122:14, 122:22, 122:25, 123:5, 123:14, 123:18, 123:22, 124:2, 124:5, 124:11, 124:16, 124:23, 125:4, 125:8, 125:10, 125:13, 125:15, 125:18, 126:1, 126:4, 126:10, 126:12, 126:14, 126:16, 126:19, 127:1, 127:7, 127:14, 127:19, 128:1, 128:5, 128:10, 128:12, 128:16, 128:20, 129:2, 129:12, 129:17, 129:23, 130:2, 130:13, 130:17,

130:25, 131:3, 131:6, 131:9, 131:14, 131:23, 132:9, 132:17, 132:21, 132:24, 133:5, 133:13, 133:19, 134:3, 134:7, 134:14, 134:17, 134:20, 135:1, 135:3, 135:7, 135:10, 135:12, 135:14, 135:17, 135:20, 135:24, 136:4, 136:9, 136:15, 136:17, 136:21, 137:2, 137:11, 137:14, 137:18, 137:23, 138:2, 138:5, 138:9, 138:18, 138:22, 138:24, 139:1, 139:5, 139:8, 139:15, 139:17, 139:22, 140:6, 140:9, 140:12, 140:16, 140:19, 140:25, 141:3, 141:5, 141:14, 141:19, 142:6, 142:9, 142:16, 142:18, 142:20, 143:7, 143:13, 143:23, 144:2, 144:5, 144:7, 144:11, 144:20, 145:12, 146:7, 146:15, 146:20, 146:23, 147:10, 147:16, 147:21, 148:8, 148:13, 148:21, 149:1, 149:4, 149:7, 149:12, 149:19, 150:2, 150:11, 150:14, 150:20, 150:24, 151:6, 151:9, 151:15, 151:19, 151:24, 152:9, 152:14, 152:16, 152:19, 152:23, 153:1, 153:3, 153:10, 153:14, 153:19, 153:23, 154:3, 154:6, 154:12, 154:14, 155:4, 155:15, 155:17, 155:20, 155:23, 156:1, 156:5, 156:7, 156:12, 156:22, 157:5, 157:9,

157:11, 157:22, 158:3, 158:7, 158:12, 158:16, 158:20, 158:23, 159:1, 159:8, 159:10, 160:16, 160:24, 161:3, 161:6, 161:8, 161:13, 161:19, 161:23, 162:1, 162:4, 162:9, 162:16, 162:21, 162:23, 163:9, 163:13, 163:16, 164:2, 164:6, 164:9, 164:12, 164:14, 164:19, 164:24, 165:1, 165:4, 165:6, 165:16, 165:19, 165:23, 165:25, 166:2, 166:5, 166:7, 166:11, 166:20, 166:22, 166:24, 167:1, 167:4, 167:6, 167:13, 167:19, 167:23, 168:3, 168:7, 168:11, 168:14, 168:16, 168:21, 169:1, 169:4, 169:7, 169:10, 169:12, 169:17, 169:24, 170:5, 170:15, 170:18, 170:22, 171:4, 171:25, 172:6, 172:15, 172:20, 173:3, 173:8, 173:13, 173:22, 173:25, 174:6, 175:2, 175:5, 176:13, 176:24, 177:3, 177:18, 178:4, 179:14, 179:18, 179:22, 180:6, 180:10, 181:1, 181:8, 181:16, 181:19, 181:24, 182:1, 182:6, 182:15, 182:18, 182:21, 182:24, 183:2, 183:4, 183:7, 183:10, 183:12, 183:19, 183:23, 184:1, 184:6, 184:14, 184:17, 184:21, 184:25, 185:5, 185:8, 185:11, 185:16, 185:19, 185:22, 186:1, 186:7, 186:9,

186:14, 186:17, 186:21, 186:23, 187:2, 187:8, 187:15, 187:21, 188:4, 188:7, 188:14, 188:17, 188:21, 189:15, 189:19, 189:21, 189:25, 190:4, 190:11, 190:15, 190:18, 190:20, 190:23, 191:3, 191:9, 191:13, 191:16, 191:20, 191:23, 192:4, 192:8, 192:10, 192:14, 192:19, 193:1, 193:6, 193:8, 193:11, 193:14, 193:13, 193:21, 193:24, 194:1, 194:7, 194:11, 194:24, 195:5, 195:10, 195:14, 195:16, 195:21, 195:25, 196:3, 196:6, 196:8, 196:12, 196:17, 196:20, 196:24, 197:4, 197:7, 197:18, 197:23, 198:1, 198:4, 198:7, 198:11, 198:16, 198:20, 198:22, 198:24, 199:5, 199:10, 199:12, 199:15, 199:19, 199:21, 199:25, 200:2, 200:4, 200:6, 200:12, 200:15, 200:19, 200:24, 201:3, 201:8, 201:15, 201:19, 201:22, 201:25, 202:4, 202:9, 202:12, 202:14, 202:17, 202:22, 202:25, 203:3, 203:5, 203:8, 203:12, 203:15, 203:18, 203:20, 203:24, 204:4, 204:12, 204:14, 204:19, 204:23, 204:25, 205:2, 205:5, 205:10, 205:18, 206:1, 206:6, 206:11, 206:17, 207:7, 207:11, 207:17, 207:25, 208:5,

208:12, 208:23,
209:3, 209:6, 209:8,
209:13, 209:19,
209:25, 210:4,
210:8, 210:12,
210:17, 210:22,
210:24, 211:1,
211:5, 211:9,
211:12, 211:14,
211:17, 211:22,
211:24, 212:4,
212:13, 212:19,
212:23, 213:3,
213:5, 213:12,
213:14, 213:20,
213:23, 214:3,
214:5, 214:17,
214:21, 214:25,
215:3, 215:8,
215:11, 215:16,
215:18, 215:22,
216:2, 216:4,
216:11, 216:14,
216:18, 216:23,
217:7, 217:11,
217:13, 217:16,
217:20, 217:22,
218:2, 218:7,
218:10, 218:12,
218:17, 219:2,
219:6, 219:9,
219:15, 219:18,
219:23, 220:2,
220:7, 220:9,
220:14, 220:17,
220:21, 220:25,
221:5, 221:9,
221:17, 221:21,
221:24, 222:3,
222:8, 222:12,
222:16, 222:20,
222:23, 223:2,
223:7, 223:12,
223:16, 223:24,
224:9, 224:15,
225:1, 225:3, 225:7,
225:12, 225:16,
225:19, 225:21,
226:17, 227:2,
227:6, 227:9,
227:12, 227:15,
227:20, 228:5,
228:9, 228:13,
228:17, 228:21,
228:25, 229:4,
229:6, 229:15,
230:3, 230:5, 230:8,
230:12, 230:17,
230:22, 231:1,
231:3, 231:7,
231:16, 231:20,

231:22, 232:2,
232:9, 232:12,
232:15, 232:17,
232:20, 233:2,
233:7, 233:10,
233:13, 233:19,
233:25, 234:6,
234:16, 235:8,
235:10, 235:12,
236:4, 236:10,
236:12, 236:17,
236:25, 237:3,
237:14, 237:18,
237:25, 238:13,
238:15, 238:18,
238:20, 239:6,
239:9, 239:24,
240:4, 240:6,
240:11, 240:15,
240:22, 241:3,
241:7, 241:9,
241:11, 241:15,
241:17, 241:21,
241:24, 242:2,
242:4, 242:8,
242:10, 242:12,
242:18, 242:23,
243:1, 243:11,
243:13, 243:16,
243:18, 243:21,
243:25, 244:6,
244:12, 244:19,
244:21, 245:3,
245:6, 245:8,
245:11, 245:23,
246:1, 246:8,
246:17, 246:20,
246:24, 247:9,
247:21, 248:3,
248:6, 248:10,
248:15, 248:23,
249:3, 249:12,
249:16, 249:20,
250:3, 250:11,
250:13, 250:15,
251:2, 251:5, 251:8,
251:10, 251:12,
251:17, 251:19,
251:24, 252:3,
252:6, 252:12,
252:14, 252:17,
252:19, 252:24,
253:2, 253:4,
253:11, 253:16,
253:19, 253:24,
254:2, 254:6, 254:9,
254:12, 254:20,
255:3, 255:6,
255:11, 255:16,
255:25, 256:2,
256:6, 256:10,

256:15, 256:18,
256:21, 256:24,
257:1, 257:6,
257:10, 257:17,
257:20, 257:25,
258:3, 258:7,
258:11, 258:13,
258:18, 258:22,
259:3, 259:6,
259:11, 259:14,
259:18, 259:23,
260:1, 260:5, 260:7,
260:12, 260:17,
260:23, 261:1,
261:5, 261:11,
261:15, 261:24,
262:2, 262:9,
262:12, 262:16,
262:21, 262:25,
263:4, 263:10,
263:14, 263:17,
263:22, 264:1,
264:4, 264:8,
264:10, 264:13,
264:17, 265:2,
265:5, 265:8,
265:16, 265:18,
265:22, 265:25,
266:2, 266:6, 266:8,
266:13, 266:15,
266:17, 266:24,
267:4, 267:7, 267:9,
267:13, 267:16,
267:21, 268:1,
268:7, 268:18,
269:2, 269:8,
269:13, 269:18,
269:25, 270:2,
270:6, 270:12,
270:14, 270:17,
270:20, 270:23,
271:11, 271:16,
271:22, 272:2,
272:6, 272:10,
272:19, 273:4,
273:8, 273:12,
273:16, 273:23,
274:3, 274:6,
274:10, 274:16,
274:20, 274:25,
275:14, 275:17,
275:19, 275:23,
275:25, 276:5,
276:7, 276:11,
276:19, 277:1,
277:3, 277:6,
277:10, 277:13,
277:16, 277:18,
277:23, 277:25,
278:8, 278:12,
278:14, 278:18,

279:3, 279:6, 279:8,
279:12, 279:15,
279:19, 279:22,
280:2, 280:7, 280:9,
280:13, 280:15,
280:20, 280:22,
280:24, 281:5,
281:8, 281:12,
281:17, 282:12,
282:14, 282:18,
282:25, 283:7,
283:9, 283:14,
283:17, 283:21,
283:23, 284:2,
284:6, 284:10,
284:15, 284:18,
284:22, 284:24,
285:5, 285:10,
285:16, 285:20,
285:24, 286:7,
286:11, 286:24,
287:6, 287:11,
287:24, 288:9,
288:12, 288:16,
288:19, 288:23,
289:1, 289:3, 289:7,
289:11, 289:13,
289:18, 289:22,
289:24, 290:2,
290:6, 290:9,
290:14, 290:20,
290:25, 291:2,
291:8, 291:10,
291:13, 291:15,
291:17, 291:21,
292:5, 292:17,
292:19, 292:22,
293:1, 293:5,
293:11, 293:18,
293:24, 294:2,
294:4, 294:8,
294:11, 294:15,
294:23, 295:3,
295:6, 295:8,
295:16, 295:18,
296:1, 296:3, 296:9,
296:18, 296:22,
297:1, 297:8,
297:11, 297:23,
298:12, 298:23,
299:3, 299:16,
299:20, 299:24,
300:6, 300:10,
300:14, 300:18,
300:21, 301:2,
301:8, 301:14,
301:20, 301:22,
302:2, 302:6,
302:10, 302:21,
302:25, 303:6,
303:8, 303:13,

303:15, 303:18,
303:23, 303:25,
304:2
**court** [57] - 2:24, 6:10,
24:19, 25:14, 26:5,
29:10, 30:8, 40:21,
41:7, 41:13, 41:17,
41:20, 42:25, 47:25,
52:20, 52:25, 62:10,
62:11, 62:15, 62:16,
76:2, 107:13,
111:13, 127:23,
156:23, 166:14,
175:13, 184:9,
191:6, 191:9, 192:1,
196:9, 201:13,
205:21, 218:20,
219:13, 224:20,
224:22, 225:6,
232:5, 240:25,
244:15, 255:20,
262:5, 262:8,
262:13, 265:11,
265:14, 265:20,
272:11, 276:14,
281:3, 281:13,
287:7, 293:21,
294:11, 294:12
**Court** [111] - 1:23,
1:23, 2:3, 2:17, 6:8,
7:3, 7:16, 7:24, 8:20,
8:23, 9:5, 9:16,
13:11, 13:12, 19:24,
20:3, 20:10, 20:13,
20:14, 21:2, 24:7,
24:10, 25:9, 27:5,
27:24, 27:25, 31:11,
32:1, 33:6, 33:8,
34:8, 34:15, 35:1,
35:2, 35:9, 35:10,
37:6, 37:12, 37:14,
37:16, 37:17, 37:19,
38:10, 38:16, 38:19,
40:9, 40:14, 44:11,
54:11, 65:21, 66:2,
67:5, 67:14, 67:19,
67:24, 78:11, 78:23,
79:3, 79:6, 79:8,
89:10, 90:16, 94:6,
94:15, 99:17,
103:22, 103:23,
110:21, 112:10,
112:13, 116:9,
122:20, 133:25,
144:15, 145:5,
145:20, 146:17,
155:10, 155:11,
155:13, 162:3,
162:12, 168:23,
168:24, 177:10,
179:25, 184:19,

315

188:10, 189:1,
189:3, 189:5, 189:8,
189:9, 189:10,
193:16, 213:18,
214:11, 229:12,
229:13, 229:18,
229:24, 231:15,
235:16, 270:10,
281:2, 298:2,
298:16, 300:5,
304:18
**Court's** [11] - 24:9,
33:8, 33:18, 34:25,
56:23, 112:15,
112:18, 176:12,
180:1, 180:23,
180:24
**court's** [1] - 44:14
**courthouse** [36] -
15:8, 40:11, 40:15,
41:9, 42:19, 43:10,
43:22, 44:15, 44:21,
48:9, 60:1, 60:6,
90:12, 107:20,
120:9, 123:19,
134:15, 158:12,
161:9, 164:19,
181:11, 194:3,
197:2, 200:20,
205:7, 205:9,
215:24, 251:14,
251:16, 251:17,
274:11, 290:3,
292:10, 298:24,
301:23, 303:19
**courthouses** [2] -
171:18
**COURTROOM** [24] -
2:2, 2:17, 3:2, 23:5,
23:15, 23:24, 24:1,
30:21, 40:7, 54:6,
55:13, 153:7,
153:13, 153:17,
153:21, 161:24,
162:2, 223:5, 300:4,
300:9, 300:13,
300:20, 302:9, 304:1
**Courtroom** [40] -
29:11, 29:15, 30:13,
30:19, 30:20, 30:21,
40:18, 40:19, 41:7,
41:11, 41:12, 41:16,
41:19, 42:8, 42:10,
42:11, 42:24, 48:13,
51:8, 51:10, 51:15,
51:16, 54:8, 54:13,
54:15, 71:23, 71:25,
72:3, 72:6, 72:7,
72:8, 72:14, 72:16,
72:17, 73:3, 153:6,

228:14, 275:17
**courtroom** [49] - 3:10,
3:14, 7:21, 13:17,
13:20, 30:18, 30:20,
31:2, 31:4, 31:6,
31:12, 31:13, 40:4,
40:5, 41:15, 42:12,
42:23, 43:2, 44:7,
44:21, 46:3, 47:7,
51:9, 51:11, 54:6,
54:24, 58:2, 58:7,
72:9, 72:24, 73:2,
73:12, 115:21,
120:22, 120:24,
123:22, 143:25,
158:10, 194:3,
215:5, 228:7, 252:9,
252:25, 253:17,
275:15, 283:3,
301:8, 302:12
**courtrooms** [3] - 41:3,
41:13, 44:1
**Courts** [1] - 182:14
**courts** [7] - 17:13,
24:16, 24:19, 25:6,
29:22, 257:23,
258:16
**cousin** [17] - 166:18,
166:24, 167:1,
167:6, 167:9,
167:12, 167:24,
170:20, 170:22,
170:23, 170:24,
211:8, 231:13,
231:14, 231:16,
231:23
**cousins** [1] - 210:2
**cover** [5] - 101:18,
204:22, 207:8
**covered** [5] - 205:5,
205:6, 205:7,
205:13, 257:23
**covering** [1] - 205:9
**COVID** [3] - 206:25,
209:11, 260:20
**COVID-19** [4] - 52:1,
52:5, 52:10, 52:15
**coworker's** [2] -
261:10, 261:12
**CPS** [1] - 266:21
**crafted** [1] - 20:12
**Cramer** [2] - 41:19,
41:21
**create** [2] - 36:11, 97:7
**credibility** [17] - 9:3,
98:17, 142:14,
143:16, 147:5,
147:9, 149:15,
177:18, 177:24,
187:23, 188:3,

212:24, 215:4,
225:17, 295:4,
295:19, 295:21
**credit** [1] - 12:4
**crew** [1] - 159:22
**crime** [87] - 62:9,
62:11, 62:14, 62:15,
62:16, 62:20, 62:21,
63:1, 63:2, 63:23,
64:5, 76:1, 91:10,
95:4, 109:8, 109:9,
113:20, 114:12,
114:13, 127:21,
127:22, 150:4,
150:5, 166:13,
166:14, 173:15,
173:16, 174:20,
175:11, 176:10,
177:2, 184:8, 184:9,
184:12, 184:22,
185:11, 191:25,
192:1, 201:12,
201:13, 209:11,
218:19, 218:20,
221:2, 222:14,
224:19, 224:20,
225:25, 230:14,
232:4, 232:5,
240:24, 240:25,
241:2, 244:14,
244:15, 244:17,
255:19, 255:20,
262:4, 262:5, 262:7,
265:10, 265:11,
276:13, 276:14,
293:20, 293:21
**Crime** [1] - 1:13
**crimes** [2] - 45:23,
218:22
**criminal** [40] - 4:2,
4:12, 5:5, 40:22,
45:6, 45:20, 50:5,
50:7, 61:14, 61:20,
61:25, 62:4, 64:9,
64:15, 68:17, 68:22,
75:16, 80:6, 83:25,
88:6, 98:2, 108:20,
149:21, 191:14,
198:8, 208:25,
209:9, 210:19,
240:21, 243:16,
250:5, 258:13,
261:17, 262:5,
268:17, 268:21,
268:22, 269:3,
269:21, 284:19
**Criminal** [3] - 1:3,
2:18, 5:6
**criteria** [4] - 77:12,
98:24, 128:24,

128:25
**critical** [1] - 44:22
**cross** [2] - 12:13,
19:17
**cross-examination** [1]
- 12:13
**cross-section** [1] -
19:17
**crowd** [1] - 121:1
**crowded** [1] - 141:11
**crying** [3] - 159:2,
159:6, 160:9
**Crystal** [1] - 219:7
**culprits** [2] - 220:4,
220:12
**current** [6] - 98:4,
168:18, 172:16,
172:21, 258:2,
269:16
**Cyber** [1] - 1:13
**cybersecurity** [1] -
102:8

# D

**D.C** [39] - 1:6, 5:15,
29:23, 50:6, 50:15,
55:8, 55:16, 92:16,
93:24, 94:1, 112:24,
116:1, 125:3, 125:5,
125:20, 126:7,
126:20, 136:14,
137:15, 149:10,
166:17, 184:14,
184:15, 184:19,
192:4, 201:17,
219:22, 219:23,
224:6, 231:14,
241:4, 241:6,
245:18, 258:10,
267:4, 267:6,
267:10, 267:16,
284:13
**dad** [2] - 156:19
**daily** [2] - 98:17,
172:23
**Dale** [2] - 57:16, 57:22
**damage** [2] - 276:23,
278:10
**Daniel** [2] - 56:19,
57:5
**DANIELLE** [1] - 1:21
**Danielle** [6] - 53:8,
53:16, 53:20, 54:3,
57:1, 57:7
**dark** [1] - 42:4
**data** [26] - 11:13,
17:19, 17:22, 18:6,
18:8, 18:9, 19:2,

19:7, 19:15, 20:9,
21:21, 21:23, 22:6,
22:21, 22:22, 24:5,
24:16, 24:20, 25:22,
26:1, 26:2, 27:7,
97:6, 101:16,
101:20, 102:5
**database** [4] - 10:15,
11:7, 11:16, 11:20
**databases** [1] - 12:6
**date** [3] - 18:3, 34:2,
233:4
**Dated** [1] - 304:17
**dated** [1] - 292:16
**dating** [1] - 45:14
**daughter** [13] - 130:6,
130:7, 130:13,
131:24, 133:8,
151:21, 192:17,
245:17, 262:19,
263:1, 283:12,
301:10, 301:14
**daughters** [2] - 118:9,
133:10
**days** [9] - 8:14, 9:7,
27:2, 27:20, 28:1,
28:4, 155:9, 183:9,
195:9
**daytime** [1] - 239:22
**DC** [2] - 1:14, 1:19
**DEA** [6] - 60:18,
190:13, 190:15,
191:4, 191:12,
191:13
**deal** [5] - 22:15, 29:14,
38:22, 220:5, 258:13
**dealing** [7] - 111:17,
131:18, 131:19,
266:11, 266:18,
269:19
**deals** [2] - 222:5,
266:10
**dealt** [1] - 131:15
**decide** [3] - 6:8, 12:15,
215:4
**decided** [5] - 12:4,
126:24, 199:25,
200:11, 240:9
**deciding** [3] - 13:19,
16:3, 117:4
**decision** [21] - 9:17,
46:1, 131:22, 132:1,
132:11, 141:17,
142:16, 143:19,
143:24, 145:16,
147:6, 151:12,
176:20, 176:23,
187:17, 187:21,
187:22, 188:1,
212:21, 239:3, 298:5

**decision-making** [1] - 132:1

**decisions** [1] - 143:15

**deed** [3] - 171:19, 171:20, 172:2

**defend** [1] - 38:2

**defendant** [25] - 2:5, 2:16, 7:1, 36:9, 38:9, 49:5, 50:5, 54:20, 55:2, 63:21, 63:22, 64:3, 64:4, 64:8, 64:9, 64:14, 64:15, 94:16, 154:3, 154:4, 193:5, 193:17, 200:2, 225:23, 225:25

**Defendant** [1] - 1:6

**DEFENDANT** [3] - 1:17, 6:20, 7:5

**defendant's** [4] - 13:3, 33:2, 229:9, 229:23

**Defender** [4] - 61:15, 61:21, 149:22, 261:18

**defender** [2] - 208:22, 210:22

**Defender's** [4] - 61:15, 61:21, 149:22, 261:19

**Defense** [2] - 168:6, 168:7

**defense** [29] - 8:11, 9:8, 9:9, 10:17, 16:19, 21:10, 24:6, 38:17, 39:1, 56:2, 61:14, 61:16, 61:20, 61:22, 67:7, 67:16, 67:20, 67:25, 116:10, 149:21, 164:8, 210:19, 226:23, 238:18, 238:19, 261:18, 261:19, 261:22, 291:22

**defensive** [1] - 265:20

**defer** [2] - 27:24, 33:18

**deferred** [1] - 154:22

**deficiency** [1] - 21:3

**defined** [1] - 170:13

**definitely** [9] - 21:5, 90:9, 180:7, 187:19, 207:23, 208:3, 211:20, 225:13, 248:1

**definition** [1] - 244:24

**defrauding** [2] - 175:15, 175:17

**Defund** [1] - 98:3

**degree** [1] - 178:13

**delayed** [5] - 69:17, 69:23, 177:6, 180:2, 180:14

**delaying** [1] - 29:1

**deliberate** [1] - 45:7

**deliberations** [6] - 45:9, 58:13, 58:25, 64:22, 65:6, 90:6

**demographic** [11] - 18:9, 19:6, 20:20, 21:16, 21:23, 22:6, 22:22, 25:16, 25:23, 154:23, 155:2

**demographics** [4] - 18:8, 18:11, 19:3, 154:17

**denied** [5] - 12:21, 37:8, 88:18, 88:21, 99:23

**denies** [4] - 37:11, 37:13, 37:20, 39:2

**deny** [2] - 38:2, 99:21

**denying** [1] - 38:16

**Department** [23] - 1:13, 60:14, 60:18, 83:12, 84:12, 84:13, 84:14, 96:8, 99:3, 100:18, 127:6, 127:17, 168:6, 168:7, 171:14, 204:22, 204:23, 217:5, 244:5, 244:8, 260:16, 261:22, 268:15

**department** [3] - 60:13, 60:16, 268:16

**departments** [2] - 207:4, 269:5

**depicting** [2] - 65:22, 66:3

**depression** [1] - 271:10

**depths** [1] - 11:19

**Deputies** [1] - 154:4

**deputies** [1] - 40:4

**deputy** [14] - 13:20, 41:15, 42:23, 54:24, 72:9, 72:24, 73:3, 73:13, 123:22, 183:22, 252:25, 299:20, 301:8, 302:12

**DEPUTY** [26] - 2:2, 2:17, 3:2, 23:5, 23:15, 23:24, 24:1, 30:21, 40:7, 54:6, 55:13, 153:7, 153:13, 153:17, 153:21, 154:5, 161:24, 162:2,

223:5, 299:21, 300:4, 300:9, 300:13, 300:20, 302:9, 304:1

**describe** [4] - 42:20, 115:20, 137:3, 291:4

**described** [3] - 43:18, 247:23, 250:18

**describing** [3] - 32:14, 50:4, 227:16

**description** [2] - 42:18, 114:24

**designed** [3] - 40:24, 45:19, 45:25

**desire** [2] - 49:3, 49:4

**despite** [5] - 67:21, 68:1, 116:11, 142:11, 227:12

**detail** [7] - 42:14, 186:16, 233:15, 237:7, 237:15, 238:25, 269:5

**detailed** [6] - 9:14, 11:15, 33:23, 170:13, 217:4, 217:25

**details** [13] - 5:13, 47:14, 89:22, 90:20, 109:12, 111:15, 171:16, 212:10, 232:24, 233:21, 236:23, 237:21, 244:18

**detective** [1] - 219:12

**determination** [2] - 32:22, 117:7

**determine** [2] - 48:3, 248:11

**determined** [2] - 58:14, 59:1

**DEU** [3] - 10:13, 11:12, 12:12

**develop** [1] - 37:21

**developer** [1] - 102:5

**DFS** [9] - 7:16, 7:17, 7:23, 7:25, 9:17, 10:11, 10:14, 11:7, 11:12

**DFS-related** [1] - 7:16

**DHS** [3] - 217:23, 218:1, 218:8

**diagnosed** [1] - 271:9

**difference** [1] - 177:12

**different** [32] - 3:9, 8:12, 9:9, 21:1, 41:3, 77:10, 130:20, 130:23, 132:5, 132:10, 137:6, 137:12, 144:15, 152:5, 172:24,

179:12, 181:2, 188:15, 189:16, 192:3, 198:15, 222:13, 235:25, 249:6, 265:3, 265:4, 265:5, 294:25

**differentiation** [1] - 177:15

**differently** [1] - 178:2

**difficult** [37] - 26:8, 51:20, 52:1, 52:6, 52:11, 52:16, 54:9, 71:4, 71:8, 92:12, 103:14, 121:15, 131:21, 134:12, 138:17, 147:4, 163:8, 163:18, 163:25, 164:17, 184:3, 193:2, 193:4, 196:18, 205:23, 218:14, 250:19, 250:22, 253:14, 263:1, 271:17, 297:20, 297:21, 298:2, 298:3, 298:5, 298:11

**difficulty** [20] - 2:25, 21:9, 36:8, 63:24, 64:6, 64:12, 64:18, 65:1, 65:10, 65:20, 66:1, 67:4, 67:13, 67:18, 67:23, 68:3, 68:7, 116:8, 129:4, 226:1

**digits** [2] - 46:21, 46:23

**dire** [7] - 3:15, 30:9, 30:14, 39:16, 48:19, 49:21

**direct** [1] - 176:11

**directed** [3] - 50:20, 67:1, 67:10

**directions** [1] - 245:20

**directly** [3] - 9:3, 140:22, 206:25

**director's** [1] - 183:22

**directors** [1] - 87:15

**disagree** [1] - 32:6

**disassembled** [1] - 304:13

**disciplinary** [1] - 8:4

**disclose** [5] - 8:6, 69:15, 69:21, 152:3, 177:5

**disclosed** [2] - 7:25, 8:13

**disclosure** [6] - 69:17, 69:23, 177:6, 180:3, 180:14, 271:14

**disclosures** [1] - 9:6

**discomfort** [5] - 106:14, 106:17, 123:7, 298:14, 298:15

**discovery** [1] - 9:12

**discrepancy** [1] - 20:20

**discretion** [1] - 133:18

**discuss** [7] - 7:10, 8:19, 35:24, 143:12, 207:23, 235:6, 257:20

**discussed** [3] - 4:2, 16:2, 16:6

**discussing** [11] - 27:23, 66:18, 66:22, 139:24, 143:3, 163:24, 247:11, 296:5, 296:19, 296:23

**discussion** [2] - 9:24, 35:3

**discussions** [1] - 151:6

**disease** [2] - 130:8, 130:18

**disfavor** [5] - 61:7, 61:11, 223:19, 223:22, 224:2

**dismiss** [8] - 3:17, 7:11, 8:5, 8:13, 13:3, 15:17, 15:23, 15:25

**dismissal** [1] - 12:18

**dismissed** [1] - 26:5

**disparaging** [1] - 12:12

**displayed** [1] - 150:9

**dispute** [1] - 5:7

**disputing** [1] - 250:24

**disqualified** [1] - 154:22

**distance** [1] - 44:3

**distanced** [1] - 120:25

**distances** [1] - 122:5

**distancing** [4] - 41:1, 41:6, 43:22, 44:15

**distinctly** [1] - 141:7

**distracting** [1] - 289:3

**distribution** [2] - 66:10, 66:15

**District** [11] - 2:2, 2:3, 40:14, 53:6, 54:1, 60:13, 60:15, 112:12, 231:15, 240:3

**district** [1] - 25:12

**DISTRICT** [3] - 1:1, 1:1, 1:9

**division** [3] - 179:2, 190:22, 190:23

**divorce** [3] - 224:23, 238:6, 238:24
**DMV** [2] - 22:4, 22:5
**doctor** [1] - 107:4
**doctor's** [10] - 81:2, 82:9, 82:15, 105:24, 122:7, 122:9, 194:24, 195:6, 196:18, 196:25
**documents** [1] - 171:20
**DoD** [4] - 168:8, 168:25, 169:4, 169:6
**DOJ** [3] - 190:13, 191:8, 191:11
**domestic** [23] - 70:15, 70:17, 70:18, 70:22, 70:23, 70:24, 97:7, 142:21, 142:22, 143:6, 143:9, 144:23, 147:1, 172:9, 197:21, 205:15, 255:23, 268:23, 293:23, 294:9, 294:16, 297:6, 298:9
**don't..** [1] - 113:25
**done** [28] - 3:5, 4:16, 4:17, 14:2, 14:5, 14:10, 29:21, 61:13, 61:19, 74:16, 102:2, 110:14, 124:20, 143:20, 144:5, 149:20, 165:13, 168:16, 170:10, 198:8, 210:18, 228:21, 245:22, 261:16, 263:14, 269:8, 280:1, 304:2
**door** [1] - 278:25
**dosage** [1] - 272:8
**dot** [1] - 104:11
**double** [2] - 20:5, 174:12
**double-take** [1] - 174:12
**doubt** [5] - 63:22, 64:4, 94:17, 95:7, 225:24
**down** [44] - 13:21, 15:6, 23:3, 29:12, 41:11, 43:1, 47:3, 73:14, 82:25, 85:22, 87:12, 90:25, 91:15, 95:19, 105:9, 105:12, 108:4, 113:8, 114:18, 124:7, 132:4, 134:22, 137:25, 147:17, 153:8,
159:12, 160:9, 165:1, 170:1, 175:13, 182:2, 197:9, 206:13, 223:8, 223:24, 230:23, 242:21, 264:5, 268:3, 274:17, 282:20, 290:11, 292:14, 301:4
**draw** [2] - 97:2, 179:6
**drawing** [1] - 145:1
**drawn** [1] - 154:25
**dress** [1] - 141:9
**drinking** [3] - 76:4, 76:5, 234:13
**driving** [4] - 128:3, 171:10, 219:21, 265:20
**drop** [1] - 302:17
**drops** [1] - 302:20
**drug** [2] - 127:2, 166:18
**drugs** [2] - 166:20, 176:8
**drunk** [1] - 128:3
**dry** [1] - 171:22
**due** [2] - 51:25, 52:5
**DUI** [4] - 109:13, 111:10, 128:2, 148:17
**duration** [1] - 36:17
**Duren** [4] - 24:11, 24:22, 24:23, 25:9
**during** [42] - 6:14, 25:24, 25:25, 30:24, 36:17, 37:2, 43:2, 43:6, 43:15, 44:2, 44:18, 44:23, 45:9, 47:22, 48:3, 49:24, 55:19, 56:7, 71:11, 71:16, 74:12, 109:21, 111:17, 115:8, 120:23, 121:16, 138:24, 146:23, 148:7, 167:20, 207:18, 208:9, 227:22, 237:11, 238:23, 239:22, 243:21, 281:4, 281:8, 289:7
**duties** [3] - 46:6, 98:7, 174:12
**duty** [2] - 46:10, 158:9
**dynamics** [1] - 212:3

## E

**E-D-U-C-A-U-S-E** [1] -
87:9
**early** [3] - 205:13, 299:16, 300:10
**Earth** [2] - 178:13, 198:2
**easier** [2] - 47:25, 292:23
**easily** [1] - 47:21
**easy** [6] - 13:13, 123:15, 133:3, 133:11, 181:10
**eat** [1] - 44:14
**editor** [1] - 148:23
**education** [5] - 83:12, 83:16, 203:13, 203:15, 240:16
**Education** [2] - 83:12, 263:13
**EDUCAUSE** [3] - 87:6, 87:8, 87:15
**effect** [1] - 245:22
**effective** [1] - 272:9
**efforts** [1] - 96:23
**eight** [9] - 12:22, 16:7, 140:10, 151:5, 211:11, 293:25, 294:3, 294:4, 294:24
**either** [12] - 17:25, 21:15, 24:14, 30:5, 45:13, 82:1, 146:2, 180:3, 196:9, 218:8, 229:2, 293:6
**elementary** [1] - 177:13
**elevator** [1] - 43:25
**elevators** [1] - 44:4
**elicit** [1] - 38:23
**eligible** [1] - 157:3
**Elizabeth** [3] - 1:23, 42:25, 304:18
**ELIZABETH** [1] - 304:7
**Ella** [3] - 43:4, 57:15, 57:21
**else..** [1] - 229:24
**elsewhere** [1] - 112:24
**email** [2] - 11:6, 17:25
**Email** [3] - 1:15, 1:16, 1:20
**embarrass** [2] - 49:6, 183:7
**embassy** [1] - 253:9
**empathize** [1] - 225:14
**employed** [39] - 59:25, 60:5, 60:10, 61:1, 75:3, 83:6, 87:20, 94:1, 96:3, 100:13, 101:16, 102:3, 108:14, 124:17, 139:10, 148:1,
148:5, 148:24, 165:10, 170:9, 171:6, 183:16, 190:7, 191:17, 208:16, 209:20, 216:24, 231:10, 239:17, 244:2, 254:14, 254:23, 254:25, 260:14, 261:7, 268:11, 292:9, 293:13
**employee** [4] - 60:15, 178:16, 218:1, 268:15
**employees** [1] - 183:9
**encryption** [1] - 179:4
**end** [13] - 5:15, 41:2, 92:3, 102:5, 145:7, 160:19, 203:11, 203:12, 208:10, 219:21, 228:14, 242:1, 302:3
**ended** [5] - 76:9, 83:15, 133:17, 175:19, 233:18
**ending** [2] - 58:12, 58:24
**enforcement** [81] - 60:11, 60:12, 61:2, 61:6, 61:7, 61:10, 61:11, 62:20, 63:2, 63:5, 63:7, 63:8, 63:10, 63:12, 63:14, 63:15, 63:17, 76:19, 76:21, 76:22, 77:4, 77:5, 80:10, 80:21, 96:4, 96:11, 97:20, 97:22, 97:23, 98:9, 98:21, 98:23, 98:25, 100:14, 101:5, 102:12, 102:14, 112:11, 115:9, 124:18, 126:6, 126:12, 131:15, 165:11, 167:20, 170:14, 171:7, 172:16, 173:16, 185:20, 190:25, 191:1, 191:18, 198:25, 199:2, 199:6, 199:12, 209:21, 216:25, 217:17, 218:3, 220:15, 220:22, 222:6, 222:13, 223:18, 223:19, 244:2, 254:24, 255:8, 255:13, 261:7, 268:12, 269:19, 269:20,
293:14, 295:10, 295:12, 295:13, 295:22
**enforcement-related** [1] - 222:13
**engaged** [4] - 68:16, 68:22, 167:11, 250:5
**engaging** [3] - 68:5, 68:9, 129:6
**engineer** [4] - 101:17, 101:20, 102:5, 110:8
**engineers** [1] - 43:14
**England** [1] - 45:15
**enhanced** [1] - 43:24
**enlist** [1] - 155:12
**enormous** [1] - 36:16
**enrollment** [1] - 157:4
**ensure** [1] - 41:5
**enter** [1] - 277:3
**entered** [1] - 155:17
**enters** [41] - 2:16, 82:22, 85:19, 90:22, 95:17, 100:4, 105:6, 108:1, 113:6, 119:14, 124:4, 134:19, 137:22, 147:15, 155:25, 159:9, 162:22, 164:23, 169:16, 181:23, 189:20, 194:6, 197:6, 201:2, 204:3, 206:10, 216:13, 230:21, 242:16, 251:23, 257:5, 259:22, 263:25, 267:25, 270:22, 274:15, 282:17, 287:10, 290:8, 300:25, 302:8
**enticed** [3] - 68:5, 68:9, 129:5
**enticement** [4] - 67:20, 67:25, 116:10, 116:24
**enticing** [1] - 50:8
**entire** [3] - 8:11, 25:10, 30:8
**entirely** [2] - 47:20, 49:12
**entitled** [2] - 17:20, 40:23
**entries** [2] - 154:15, 154:20
**environment** [15] - 83:7, 87:21, 98:13, 102:19, 108:14, 131:13, 139:11, 157:15, 170:7, 183:16, 190:8, 208:17, 231:11,

239:18, 292:10
**Environmental** [1] -
171:14
**environmental** [5] -
171:21, 198:3,
198:6, 198:7
**environments** [1] -
75:3
**epidemiologists** [1] -
43:12
**episodes** [1] - 237:8
**equipped** [1] - 26:14
**erratic** [1] - 271:20
**escorted** [2] - 30:11,
72:9
**essentially** [4] - 8:9,
17:3, 115:20, 180:13
**establish** [1] - 24:14
**established** [1] -
80:17
**et** [2] - 91:11, 101:14
**ethical** [2] - 59:19,
59:22
**evaluate** [32] - 77:10,
78:13, 98:13, 98:17,
98:23, 101:4,
116:20, 117:2,
117:3, 117:20,
141:17, 142:14,
144:25, 146:12,
147:5, 147:9,
176:19, 177:18,
177:22, 180:18,
189:2, 189:10,
212:7, 215:4,
225:16, 234:2,
234:20, 248:11,
294:18, 294:22,
295:3, 295:21
**evaluating** [5] -
116:24, 149:15,
249:22, 296:13,
296:14
**evaluation** [5] -
143:16, 187:23,
212:24, 227:16,
234:18
**Eve** [2] - 91:14, 91:24
**evening** [3] - 7:14,
139:7, 301:11
**event** [4] - 35:1,
167:21, 235:3,
273:19
**evidence** [61] - 11:5,
46:2, 49:11, 58:9,
58:14, 58:21, 59:1,
64:11, 64:17, 71:5,
71:9, 93:15, 93:17,
95:1, 97:2, 103:14,
130:10, 131:2,

132:2, 132:12,
142:13, 143:15,
145:1, 146:12,
147:7, 147:9,
151:13, 163:19,
176:20, 176:21,
176:23, 177:17,
177:20, 177:22,
187:17, 187:20,
200:11, 212:8,
214:8, 215:3,
222:19, 226:17,
234:3, 234:19,
234:20, 234:25,
235:22, 236:3,
239:2, 239:3, 248:4,
248:11, 249:22,
271:18, 273:2,
275:6, 286:22,
294:18, 296:12,
298:4
**evidently** [1] - 126:22
**ex** [4] - 151:2, 151:10,
151:16, 279:4
**ex-girlfriend** [1] -
279:4
**ex-wife** [3] - 151:2,
151:10, 151:16
**exacerbation** [2] -
237:11, 237:12
**exact** [1] - 207:14
**exactly** [11] - 13:11,
104:14, 136:8,
158:17, 164:11,
186:25, 207:15,
207:22, 241:24,
250:14, 274:20
**exam** [2] - 11:18,
11:19
**examination** [2] -
12:13, 37:2
**examine** [1] - 10:1
**examiner** [2] - 9:2,
77:20
**example** [4] - 125:24,
125:25, 148:16,
148:17
**exams** [1] - 81:16
**Excel** [2] - 26:12,
26:15
**excellent** [4] - 40:20,
54:17, 197:18,
217:22
**except** [2] - 21:10,
214:11
**exciting** [2] - 74:18,
215:23
**excuse** [30] - 60:20,
89:9, 89:12, 89:15,
90:3, 107:18, 123:9,

123:16, 134:8,
157:24, 157:25,
158:7, 158:10,
158:20, 164:16,
171:10, 174:10,
181:11, 195:4,
196:21, 197:1,
199:21, 200:19,
203:13, 215:20,
251:14, 287:6,
298:24, 301:22,
303:19
**excused** [58] - 15:7,
48:4, 48:9, 73:1,
82:21, 85:18, 90:11,
90:21, 95:16, 100:3,
105:5, 107:25,
113:5, 115:4, 119:6,
123:24, 124:3,
134:18, 137:21,
147:14, 153:5,
153:23, 154:23,
158:25, 159:4,
161:8, 161:16,
164:22, 169:15,
181:19, 181:22,
188:24, 194:2,
194:5, 197:5,
200:23, 204:2,
206:9, 216:3,
230:20, 242:15,
251:19, 251:22,
257:4, 259:21,
263:24, 267:24,
270:9, 274:10,
274:14, 282:16,
287:9, 290:3, 290:7,
299:2, 302:6, 302:7,
303:24
**excuses** [1] - 162:13
**exercise** [4] - 13:19,
13:22, 13:24, 14:1
**exercises** [1] - 13:11
**exhibits** [3] - 59:10,
59:16, 106:11
**exist** [1] - 226:12
**existed** [1] - 226:21
**expect** [2] - 23:13,
46:18
**expected** [2] - 19:3,
207:11
**experience** [46] -
44:20, 68:15, 68:21,
76:12, 110:2, 115:8,
116:4, 125:19,
125:23, 126:5,
129:15, 129:17,
129:20, 131:24,
132:13, 148:18,
149:13, 149:14,

149:17, 150:21,
151:10, 163:16,
164:16, 164:17,
167:2, 167:7,
167:16, 167:24,
185:23, 192:11,
200:25, 202:5,
208:7, 211:18,
218:13, 222:12,
223:17, 225:4,
225:9, 250:4,
253:13, 253:17,
285:14, 286:1,
294:17
**experienced** [2] -
140:4, 140:7
**experiences** [11] -
61:5, 61:9, 104:18,
145:2, 146:13,
167:20, 186:15,
187:10, 220:21,
246:25, 250:18
**experimenting** [1] -
272:3
**expert** [10] - 20:25,
26:15, 27:22, 28:10,
28:11, 31:9, 149:14,
155:12, 179:3,
179:10
**expertise** [1] - 103:13
**experts** [5] - 20:8,
21:18, 31:11, 43:13
**expires** [2] - 254:1,
254:2
**explain** [69] - 5:1,
20:4, 30:7, 35:3,
37:24, 42:14, 45:2,
47:13, 51:12, 74:1,
75:4, 82:8, 83:8,
86:10, 87:22, 91:12,
92:22, 96:6, 97:24,
100:15, 101:15,
105:23, 108:15,
109:10, 113:21,
113:22, 114:10,
124:19, 128:1,
129:8, 130:5,
138:12, 139:12,
140:2, 142:1,
142:25, 148:2,
150:6, 159:15,
163:3, 165:12,
166:15, 171:8,
178:10, 201:15,
206:23, 208:18,
213:8, 217:1,
218:21, 222:16,
223:20, 227:2,
229:19, 231:12,
234:6, 237:4,

239:19, 243:11,
261:8, 268:13,
275:8, 276:16,
278:16, 284:11,
285:10, 287:21,
292:11, 297:4
**explained** [1] - 145:14
**explaining** [3] - 4:20,
176:14, 226:5
**explicit** [15] - 50:25,
65:22, 66:3, 66:18,
66:22, 67:2, 67:6,
67:11, 67:15, 68:6,
68:10, 129:6,
139:24, 247:11,
296:5
**exploitation** [3] - 68:4,
68:8, 129:5
**exposed** [6] - 52:9,
52:14, 129:21,
129:25, 132:6,
248:21
**exposition** [2] - 9:14,
12:9
**exposure** [3] - 245:1,
245:4, 249:7
**exposures** [2] - 246:1,
246:10
**express** [1] - 167:20
**expressed** [2] -
144:17, 285:13
**expressing** [2] - 65:2,
65:10
**expunged** [2] - 76:9,
128:15
**extend** [1] - 27:5
**extensive** [1] - 17:18
**extent** [5] - 12:18,
25:15, 126:5,
233:22, 250:2
**extenuating** [1] -
175:16
**external** [1] - 25:7
**extra** [1] - 303:22
**extract** [1] - 11:13
**extraction** [1] - 11:13
**extractions** [1] - 9:2
**extracurricular** [1] -
143:19
**extreme** [1] - 288:5
**extremely** [4] - 58:16,
59:3, 73:25, 288:4
**eye** [2] - 106:9, 106:21
**eyes** [1] - 298:14

**F**

**FAC** [1] - 263:11
**face** [6] - 5:1, 6:14,

41:24, 42:1, 44:11,
121:11
**faced** [4] - 6:16, 58:18,
59:5, 288:5
**faces** [1] - 182:22
**fact** [22] - 8:1, 8:3,
8:14, 9:14, 21:3,
76:19, 78:4, 82:11,
84:3, 101:1, 146:17,
155:11, 170:24,
180:5, 184:2,
190:24, 211:11,
212:4, 227:13,
233:17, 286:3,
295:10
**factor** [4] - 24:22,
24:23, 25:7, 116:17
**facts** [6] - 19:9, 32:14,
32:15, 52:21, 53:1,
205:11
**factual** [2] - 17:15,
39:7
**failure** [1] - 8:6
**fair** [85] - 19:17, 38:24,
39:12, 46:1, 48:23,
49:13, 66:20, 66:24,
68:18, 68:24, 69:5,
69:12, 69:18, 69:24,
70:19, 70:25, 71:13,
71:18, 75:21, 76:13,
84:6, 92:12, 97:16,
109:4, 110:3, 116:5,
122:17, 125:21,
133:3, 140:1,
141:25, 142:24,
144:19, 145:8,
145:10, 145:24,
146:5, 147:4,
150:22, 151:11,
167:25, 170:25,
172:22, 176:19,
177:7, 184:4,
185:24, 187:11,
192:12, 193:12,
198:22, 202:6,
202:20, 204:16,
209:16, 210:14,
213:22, 214:2,
214:16, 214:25,
218:14, 221:3,
227:24, 231:24,
243:22, 244:9,
247:1, 247:13,
247:15, 250:7,
250:17, 250:19,
256:8, 259:9, 261:3,
263:4, 269:22,
279:16, 281:15,
286:2, 293:8, 296:7,
297:16, 298:4, 298:7

**fairest** [1] - 49:6
**fairly** [26] - 16:17,
17:18, 22:7, 33:22,
62:2, 62:6, 76:16,
80:12, 98:19,
109:24, 111:3,
112:17, 128:21,
145:1, 146:13,
189:2, 189:10,
247:18, 279:20,
281:2, 281:3,
281:10, 281:13,
286:5, 294:19,
294:22
**fake** [2] - 174:15,
174:18
**false** [1] - 220:5
**familiar** [1] - 134:12
**family** [108] - 59:24,
60:5, 60:9, 61:1,
61:4, 61:9, 61:12,
61:19, 62:7, 62:13,
62:18, 62:22, 62:24,
63:3, 66:7, 66:12,
68:11, 68:13, 75:2,
75:25, 78:22, 83:5,
87:19, 91:9, 92:19,
96:3, 100:13,
100:16, 100:23,
101:2, 108:13,
108:19, 109:7,
110:13, 113:19,
114:11, 124:17,
127:20, 130:3,
130:9, 139:9,
139:10, 147:25,
149:20, 150:3,
150:25, 165:9,
165:19, 165:20,
166:12, 167:12,
170:6, 171:5,
173:13, 173:17,
174:2, 183:15,
184:7, 186:2, 190:6,
191:24, 197:20,
201:11, 208:15,
209:20, 209:23,
210:1, 210:18,
211:2, 212:2, 212:3,
216:24, 218:18,
223:17, 224:7,
224:18, 231:9,
232:3, 232:21,
234:1, 235:19,
238:1, 239:16,
240:23, 243:7,
244:1, 244:13,
248:16, 254:13,
254:22, 255:17,
257:13, 260:13,

260:21, 261:6,
261:9, 261:16,
262:3, 265:9,
268:10, 273:5,
276:12, 284:7,
285:6, 292:8,
293:12, 293:19,
297:2
**family-owned** [1] -
110:13
**far** [5] - 138:22, 195:7,
214:14, 246:23,
264:25
**fatal** [1] - 24:24
**father** [8] - 208:20,
209:4, 209:6,
209:15, 210:20,
233:1, 244:4, 244:7
**father-in-law** [5] -
208:20, 209:4,
209:6, 209:15,
210:20
**favor** [7] - 61:7, 61:11,
191:1, 223:19,
223:22, 224:2,
255:13
**FBI** [2] - 60:17, 172:10
**FCRR** [3] - 1:23,
304:7, 304:18
**Federal** [6] - 53:7,
54:2, 61:15, 61:21,
149:22, 261:18
**federal** [27] - 5:14,
29:22, 40:11, 50:6,
60:11, 61:2, 96:4,
100:13, 124:18,
165:11, 168:5,
171:6, 172:11,
174:21, 178:16,
190:25, 191:7,
191:17, 209:21,
216:25, 244:2,
254:23, 261:7,
268:11, 268:23,
269:20, 293:13
**fee** [1] - 76:9
**feed** [1] - 22:8
**feelings** [5] - 34:10,
70:17, 70:23,
142:22, 143:3
**fees** [1] - 111:14
**feet** [1] - 44:4
**fell** [2] - 175:21,
278:21
**fellow** [5] - 64:23,
65:3, 65:7, 65:11,
296:20
**felt** [5] - 126:23, 127:5,
174:11, 174:21,
281:9

**fender** [1] - 265:17
**fetal** [2] - 137:8
**few** [8] - 17:8, 24:17,
72:24, 128:8,
175:25, 179:12,
245:15, 255:21
**fiancée** [1] - 186:4
**fiancée's** [1] - 188:12
**fidgety** [1] - 146:19
**fight** [1] - 278:23
**figure** [1] - 272:8
**figured** [4] - 172:13,
224:2, 224:7, 265:7
**file** [9] - 16:20, 16:23,
22:21, 154:15,
154:16, 154:20,
154:21, 155:1, 155:8
**filed** [5] - 3:18, 22:13,
26:23, 150:18, 220:4
**files** [5] - 17:21, 18:7,
19:2, 154:10, 154:14
**filing** [2] - 16:22, 27:6
**filings** [1] - 36:7
**filled** [1] - 220:1
**film** [1] - 106:10
**filters** [1] - 43:24
**final** [3] - 37:10, 72:15,
72:25
**finally** [2] - 42:19,
160:21
**finance** [3] - 141:2,
141:3, 144:9
**financial** [2] - 255:10,
288:23
**fine** [15] - 24:1, 33:8,
119:21, 124:9,
134:24, 138:20,
147:20, 156:6,
160:3, 189:24,
190:3, 196:2, 202:3,
226:7, 257:9
**fines** [1] - 111:14
**finger** [1] - 169:20
**finish** [7] - 30:10,
51:7, 51:14, 72:5,
199:5, 299:8, 300:8
**finished** [2] - 47:4,
197:17
**firearm** [1] - 218:23
**Firearms** [1] - 60:18
**firm** [25] - 55:7, 55:15,
60:1, 60:6, 60:11,
61:16, 61:22, 83:6,
88:2, 96:5, 108:18,
110:11, 148:1,
198:3, 198:6, 198:7,
208:16, 231:11,
239:17, 243:8,
254:15, 254:24,
257:14, 284:10,

292:9
**firmly** [2] - 30:7, 145:3
**firms** [2] - 148:6,
149:23
**first** [46] - 17:16,
24:13, 27:3, 29:22,
31:25, 32:24, 34:5,
35:15, 35:18, 35:23,
35:25, 36:5, 36:19,
36:21, 36:23, 40:16,
43:8, 44:14, 45:22,
56:1, 56:14, 72:5,
74:3, 74:11, 75:7,
81:4, 93:9, 139:16,
139:17, 145:6,
146:17, 160:16,
174:22, 210:2,
229:13, 231:14,
247:4, 276:22,
278:3, 278:4,
281:18, 281:20,
282:10, 284:14,
284:15
**First** [3] - 65:24, 66:5,
152:6
**fit** [1] - 81:21
**fitting** [1] - 196:11
**five** [12] - 38:5, 73:5,
109:17, 130:16,
151:5, 168:19,
205:4, 245:15,
255:22, 269:11,
285:19
**five-minute** [1] - 73:5
**flag** [2] - 34:8, 96:11
**flags** [1] - 272:17
**flexible** [1] - 158:4
**flies** [1] - 270:20
**floor** [6] - 30:21, 41:8,
44:6, 44:15, 182:3,
201:5
**Florida** - 88:18
**flow** [1] - 43:13
**focus** [4] - 97:6,
235:17, 258:23,
269:2
**focused** [1] - 13:1
**focuses** [2] - 96:13,
96:16
**follow** [96] - 23:11,
30:1, 47:5, 64:24,
65:8, 77:15, 78:12,
78:17, 78:24, 79:4,
79:8, 79:15, 80:11,
81:5, 85:1, 85:2,
85:10, 94:4, 94:13,
94:15, 94:18, 95:11,
99:8, 103:21, 104:3,
110:21, 110:24,
110:25, 111:5,

112:14, 115:6,
117:9, 118:23,
118:25, 119:1,
136:5, 142:9,
144:16, 145:5,
145:10, 145:13,
145:18, 145:20,
146:7, 146:18,
169:1, 169:20,
187:16, 187:19,
188:10, 189:4,
189:5, 189:11,
189:17, 203:20,
206:3, 206:4,
213:20, 214:1,
214:3, 214:9,
214:18, 222:8,
229:6, 229:14,
229:21, 230:8,
233:16, 235:10,
235:13, 236:4,
238:15, 242:4,
242:9, 251:5,
256:20, 256:22,
256:23, 259:1,
259:14, 259:16,
263:19, 263:20,
266:8, 266:14,
267:9, 270:2, 270:3,
270:4, 280:22,
280:24, 281:5,
285:2, 286:16,
286:18, 286:23
**follow-up** [16] - 30:1,
78:17, 78:24, 79:4,
136:5, 142:9,
144:16, 145:5,
145:10, 145:13,
145:18, 146:18,
213:20, 214:3,
233:16, 286:16
**follow-ups** [1] - 23:11
**followed** [7] - 22:24,
99:18, 172:3,
188:15, 214:11,
229:12, 229:15
**following** [17] - 56:15,
58:13, 58:25, 65:21,
66:2, 67:4, 67:13,
67:18, 67:24, 71:12,
71:17, 116:8, 134:2,
180:24, 189:9,
227:23, 240:17
**follows** [47] - 78:1,
80:25, 84:19, 85:9,
88:25, 94:3, 95:10,
103:20, 107:2,
110:19, 112:8,
118:22, 122:15,
133:21, 136:6,

144:12, 152:1,
157:23, 161:1,
164:5, 168:22,
179:19, 188:8,
193:7, 196:13,
200:7, 203:19,
206:2, 213:15,
222:4, 229:5, 235:9,
238:14, 242:3,
251:4, 256:12,
259:12, 263:18,
267:8, 270:1,
273:25, 280:21,
286:12, 289:20,
297:24, 301:16,
303:11
**follows:)** [2] - 99:7,
266:7
**food** [1] - 280:17
**foot** [6] - 105:11,
106:2, 106:4, 106:5,
106:16, 106:20
**footnote** [1] - 16:13
**FOR** [3] - 1:1, 1:11,
1:17
**for-cause** [2] - 14:17,
181:1
**for-causes** [1] - 13:15
**force** [4] - 68:6, 68:10,
129:7, 129:13
**foregoing** [1] - 304:8
**foreign** [5] - 168:9,
168:10, 168:11,
173:2, 268:24
**forensic** [8] - 102:8,
102:11, 102:15,
103:3, 221:15,
221:17, 221:21,
266:18
**forensics** [8] - 31:10,
70:5, 70:10, 102:23,
103:1, 103:16,
178:9, 266:10
**forget** [1] - 171:19
**forgot** [2] - 25:12, 37:4
**form** [2] - 97:10, 98:4
**formal** [1] - 143:10
**formally** [1] - 258:3
**former** [1] - 258:1
**forth** [5] - 23:12,
107:7, 194:20,
231:19, 234:8
**forthcoming** [2] -
157:21, 237:23
**forward** [5] - 16:5,
24:10, 137:23,
147:17, 287:11
**founded** [1] - 148:23
**four** [12] - 87:1,
109:17, 118:10,

124:22, 135:6,
135:7, 151:3,
202:13, 202:14,
245:15, 298:7,
302:15
**four-year-old** [2] -
202:13, 202:14
**frame** [1] - 220:20
**framers** [1] - 45:18
**Francisco** [1] - 175:9
**frankly** [2] - 117:15,
235:20
**frat** [2] - 83:10, 83:18
**fraternity** [3] - 84:20,
84:23, 85:4
**fraud** [1] - 220:4
**free** [28] - 12:12,
49:18, 72:1, 72:11,
82:24, 85:21, 95:19,
105:8, 108:4, 113:8,
124:6, 134:21,
137:24, 147:17,
182:2, 197:8, 201:4,
204:5, 206:12,
230:22, 242:21,
264:4, 268:3,
270:25, 274:17,
282:19, 287:12,
290:11
**freemen** [1] - 45:17
**French** [1] - 48:20
**frequently** [3] -
143:12, 151:16,
151:17
**Friday** [20] - 7:25,
10:8, 10:16, 19:2,
22:25, 26:19, 81:20,
81:21, 82:7, 82:10,
138:13, 138:16,
138:25, 139:1,
139:4, 160:7, 254:1,
254:2, 254:3, 254:7
**friend's** [1] - 285:25
**friends** [24] - 75:6,
75:12, 75:19, 79:1,
79:19, 79:21, 79:22,
80:4, 83:9, 92:23,
93:6, 93:8, 93:13,
143:11, 208:19,
208:23, 209:8,
209:14, 210:7,
224:12, 224:13,
244:5, 244:8, 260:15
**friendship** [1] - 261:2
**front** [6] - 15:10,
42:12, 77:12, 150:9,
268:2, 278:24
**fronts** [1] - 24:12
**fruition** [1] - 9:22
**Frye** [3] - 4:8, 4:15, 7:8
**fulfill** [1] - 303:9
**full** [14] - 12:21, 18:9,
32:5, 32:17, 33:14,

141:8, 147:25,
149:20, 150:3,
151:1, 165:10,
165:20, 165:22,
166:2, 166:7,
166:12, 166:16,
167:14, 167:16,
167:19, 170:6,
170:8, 170:18,
171:5, 173:14,
174:2, 175:12,
176:2, 176:5,
183:15, 184:7,
186:3, 190:7,
191:24, 197:20,
201:11, 208:15,
209:20, 210:18,
211:2, 216:24,
218:18, 223:17,
224:18, 231:10,
232:3, 232:21,
239:16, 240:23,
243:7, 244:1,
244:13, 248:16,
254:13, 254:22,
255:18, 255:23,
256:16, 257:14,
257:15, 257:17,
257:21, 260:13,
260:17, 261:6,
261:9, 261:16,
261:21, 262:3,
262:6, 265:9,
268:10, 273:5,
276:12, 284:8,
285:7, 285:9,
285:12, 285:21,
292:8, 293:13,
293:19, 297:2
**friend** [126] - 52:9,
52:14, 59:25, 60:5,
60:10, 61:1, 61:5,
61:9, 61:13, 61:19,
62:8, 62:13, 62:19,
62:25, 66:8, 66:13,
68:12, 68:14, 75:2,
75:25, 83:5, 83:18,
83:21, 84:4, 87:20,
91:9, 92:19, 92:25,
93:6, 96:3, 100:13,
100:16, 100:23,
101:2, 108:13,
108:17, 108:22,
109:8, 113:19,
114:12, 124:17,
127:20, 130:4,
133:16, 139:9,

33:24, 34:16, 48:2,
59:11, 59:16,
152:21, 271:14,
275:7, 304:9
**fully** [1] - 14:13
**fun** [2] - 46:8, 270:21
**function** [2] - 44:23,
218:3
**functionality** [4] -
12:3, 70:4, 70:9,
178:8
**fundamental** [1] -
45:14
**future** [4] - 29:2,
158:8, 208:20,
209:15

## G

**gain** [1] - 299:6
**game** [1] - 12:12
**Gate** [1] - 239:21
**gender** [2] - 15:21,
154:24
**General** [2] - 137:9,
206:25
**general** [7] - 75:20,
108:24, 179:12,
207:3, 228:19,
229:2, 272:25
**General's** [2] - 137:1,
208:12
**generally** [3] - 58:11,
58:23, 136:12
**genitals** [2] - 50:22,
174:12
**gentleman** [2] -
226:15, 226:21
**gentlemen** [3] - 40:11,
49:3, 71:20
**geography** [1] -
178:14
**George** [1] - 144:3
**George's** [1] - 241:14
**Geospatial** [4] - 217:3,
217:10, 217:13,
217:16
**geospatial** [1] -
217:12
**Geospatial-
Intelligence** [2] -
217:3, 217:10
**girl** [4] - 135:11,
199:17, 202:16,
281:21
**girlfriend** [3] - 279:4,
292:12
**girlfriends** [3] -
292:13, 293:1, 293:6

**girls** [3] - 135:7,
135:10, 202:15
**given** [21] - 9:17, 9:23,
12:21, 20:3, 52:18,
52:24, 89:25, 99:13,
154:9, 154:10,
154:14, 155:11,
192:19, 196:24,
204:15, 207:1,
215:11, 222:12,
256:18, 298:6, 298:8
**glad** [2] - 20:3, 28:25
**glass** [1] - 73:6
**God** [1] - 182:18
**Golden** [1] - 239:21
**good-bye** [1] - 72:22
**goodness** [3] -
105:10, 219:2, 225:7
**gosh** [1] - 241:11
**government** [74] -
2:21, 2:23, 4:19,
4:25, 7:25, 8:6, 8:12,
8:23, 9:3, 9:5, 9:15,
10:5, 11:6, 14:4,
14:7, 23:14, 24:3,
24:4, 28:20, 31:9,
31:16, 33:7, 44:23,
49:5, 50:10, 50:16,
50:19, 50:24, 54:7,
56:5, 56:14, 61:6,
61:7, 61:10, 61:11,
65:14, 65:18, 78:9,
85:2, 94:13, 94:15,
95:6, 95:12, 99:11,
104:4, 107:10,
111:5, 119:1,
122:24, 136:2,
136:9, 136:18,
136:22, 144:20,
145:15, 146:8,
155:15, 155:16,
158:1, 164:7, 168:6,
169:2, 188:17,
196:17, 222:9,
223:18, 223:19,
230:8, 236:5, 242:4,
248:12, 266:13,
303:13
**government's** [17] -
9:21, 11:5, 56:1,
65:14, 65:18, 107:9,
122:22, 180:10,
193:14, 200:12,
213:23, 251:8,
289:22, 291:17,
291:20, 291:21,
292:2
**grab** [2] - 302:18,
302:19
**grabbed** [2] - 91:16,

91:24
**grabbing** [4] - 246:9,
246:10, 246:15,
303:4
**graduate** [2] - 171:13,
174:8
**graduated** [2] -
239:20, 288:14
**graduating** [1] - 169:9
**grand** [12] - 61:25,
62:4, 62:10, 62:15,
114:15, 127:23,
156:16, 184:10,
184:19, 185:1,
185:6, 256:14
**grandchildren** [2] -
118:10, 118:11
**granddaughter** [1] -
118:19
**granddaughters** [1] -
118:18
**grandkids** [2] -
118:15, 118:16
**grandmother's** [1] -
279:1
**grandsons** [2] -
118:18, 118:20
**grant** [16] - 107:11,
123:5, 134:4, 158:3,
181:3, 181:5,
193:24, 200:15,
215:18, 274:3,
286:24, 287:4,
289:24, 298:12,
298:19, 303:15
**granted** [2] - 39:14,
216:4
**graphics** [1] - 97:8
**gravity** [1] - 177:1
**great** [10] - 23:12,
73:16, 82:17, 124:7,
132:6, 160:3,
182:22, 299:23,
300:14
**Greater** [1] - 284:13
**grew** [1] - 100:20
**groceries** [1] - 174:9
**grounds** [2] - 130:12,
130:23
**group** [4] - 40:17,
41:10, 149:9, 154:25
**groups** [6] - 25:23,
62:19, 63:1, 104:17,
104:24, 173:15
**growing** [1] - 100:17
**grown** [3] - 118:9,
135:12, 135:13
**guaranteed** [1] - 45:19
**guard** [1] - 126:6
**guess** [20] - 16:9,

26:20, 32:18, 34:17,
75:14, 80:15,
114:25, 116:13,
126:17, 128:3,
137:17, 175:15,
177:10, 209:11,
211:20, 220:23,
221:7, 226:4,
269:11, 282:7
**guessing** [1] - 233:5
**guidelines** [3] - 5:10,
5:13, 5:14
**guilt** [4] - 46:1, 95:6,
230:1, 230:2
**guilty** [25] - 63:20,
63:23, 64:2, 64:5,
94:10, 94:11, 94:17,
94:24, 200:2,
200:11, 222:7,
222:14, 222:19,
225:23, 225:25,
229:11, 230:15,
247:24, 247:25,
248:1, 277:3, 277:4,
286:9, 286:21, 287:3
**Gumiel** [12] - 13:20,
14:2, 14:5, 42:22,
44:12, 44:25, 55:12,
152:19, 161:13,
162:25, 223:3, 253:2
**gumiel** [2] - 41:15,
41:18
**gun** [2] - 150:9, 219:4
**gunpoint** [1] - 232:8
**guy** [1] - 245:16

## H

**hairs** [1] - 36:7
**half** [6] - 26:6, 43:10,
99:4, 99:5, 127:10,
203:7
**hall** [1] - 29:12
**hallway** [8] - 30:12,
41:11, 242:13,
259:19, 263:23,
267:22, 270:7,
282:14
**hand** [8] - 11:14,
13:20, 46:22, 47:10,
48:14, 73:12, 73:13,
174:11
**handed** [1] - 14:11
**handful** [2] - 33:16,
285:18
**handicap** [1] - 126:24
**handle** [1] - 172:10
**hands** [3] - 40:19,
54:15, 235:2

**hands-off** [1] - 235:2
**handshake** [1] -
178:24
**happy** [1] - 82:10
**harassment** [2] - 66:9,
66:14
**hard** [10] - 10:2, 44:19,
113:24, 134:2,
215:22, 238:10,
296:8, 296:17,
296:18, 296:22
**HARDEN** [230] - 1:17,
2:7, 2:10, 2:12, 2:15,
3:19, 4:18, 6:5, 6:22,
7:2, 7:22, 8:16, 8:19,
8:22, 10:4, 10:9,
11:2, 12:20, 12:24,
13:6, 13:16, 13:25,
14:7, 14:12, 14:14,
14:16, 14:24, 15:1,
15:9, 15:14, 15:21,
16:2, 16:16, 16:25,
17:2, 17:5, 17:11,
17:23, 18:1, 18:5,
18:11, 18:14, 18:22,
19:5, 19:8, 19:11,
19:18, 19:24, 20:21,
21:7, 21:13, 21:17,
21:25, 22:4, 22:9,
22:14, 22:16, 22:23,
23:9, 23:11, 23:18,
26:7, 26:19, 27:12,
27:14, 27:18, 28:4,
28:9, 28:14, 28:22,
29:2, 29:7, 29:17,
30:5, 31:8, 31:18,
33:4, 33:18, 34:13,
34:19, 34:23, 35:20,
36:2, 36:10, 36:24,
37:4, 37:6, 37:25,
38:11, 39:5, 39:13,
39:15, 39:21, 39:23,
57:12, 57:14, 57:20,
78:2, 78:18, 79:2,
79:11, 79:16, 84:20,
84:23, 85:11, 89:5,
89:10, 89:13, 90:15,
90:18, 94:5, 94:11,
95:11, 99:9, 99:15,
103:22, 103:25,
104:5, 107:5,
107:15, 110:20,
110:25, 112:9,
112:13, 118:23,
118:25, 119:10,
119:13, 122:16,
123:12, 132:22,
133:22, 136:7,
136:11, 144:13,
145:4, 145:19,

146:16, 146:21,
152:2, 152:11,
152:22, 152:24,
153:2, 154:1,
154:11, 154:13,
153:5, 155:5,
155:19, 155:22,
157:24, 158:5,
159:7, 161:2, 161:4,
161:17, 161:20,
161:22, 162:8,
162:10, 162:20,
164:8, 164:10,
168:23, 179:20,
179:23, 180:7,
180:16, 188:9,
188:16, 188:19,
188:25, 189:18,
193:9, 193:12,
196:14, 196:22,
200:8, 200:17,
203:21, 206:3,
213:16, 213:21,
214:11, 214:19,
216:6, 222:5, 229:7,
229:18, 230:4,
230:6, 235:11,
235:13, 235:24,
238:19, 242:6,
242:9, 242:17,
251:6, 256:13,
256:17, 256:19,
256:22, 259:13,
259:15, 263:19,
266:9, 267:10,
270:3, 270:10,
270:13, 270:16,
270:18, 274:1,
274:4, 280:23,
286:13, 286:20,
289:21, 291:24,
297:25, 298:6,
298:21, 299:14,
299:17, 299:23,
300:23, 301:17,
303:12
**Harden** [17] - 1:18,
3:8, 10:1, 17:16,
25:22, 27:10, 39:4,
55:7, 55:10, 55:15,
55:16, 55:18, 56:2,
57:10, 57:19, 99:8
**Harden's** [2] - 3:17,
7:10
**harder** [1] - 124:24
**hardly** [2] - 170:20,
170:23
**hardship** [13] - 58:18,
59:5, 86:9, 105:22,
138:10, 156:13,

194:15, 206:21,
253:20, 287:19,
287:21, 288:6,
288:23
**Harry** [2] - 56:19, 57:5
**hat** [1] - 275:21
**hazardous** [1] -
171:24
**head** [2] - 17:17, 141:7
**headquarters** [1] -
263:12
**health** [15] - 41:5,
42:1, 42:18, 43:11,
43:13, 44:18,
104:16, 104:17,
104:25, 120:14,
143:11, 207:3,
207:4, 233:22, 236:9
**health-related** [1] -
104:16
**healthy** [2] - 98:12,
265:22
**hear** [58] - 6:21, 10:5,
15:4, 23:14, 28:19,
30:25, 31:7, 32:16,
33:24, 40:18, 42:11,
45:6, 46:16, 46:19,
47:3, 48:6, 51:19,
51:20, 55:20, 55:22,
56:8, 56:10, 57:15,
57:21, 59:9, 59:15,
68:25, 69:7, 69:14,
69:20, 70:15, 70:21,
78:9, 78:19, 78:22,
89:12, 114:5,
124:25, 132:22,
135:9, 141:20,
142:21, 143:24,
146:2, 146:24,
177:4, 179:15,
193:2, 193:4,
200:12, 205:11,
212:24, 241:9,
263:2, 264:19,
292:23, 297:12,
300:22
**heard** [21] - 6:13, 6:18,
38:6, 41:4, 52:19,
52:24, 57:1, 104:2,
114:15, 143:18,
146:11, 146:20,
177:20, 199:22,
210:10, 212:13,
226:17, 262:21,
262:24, 268:19,
286:23
**hearing** [32] - 2:25,
4:2, 39:8, 59:8,
59:13, 66:18, 66:22,
69:4, 69:11, 69:17,

69:23, 70:18, 70:24,
88:20, 113:25,
139:24, 141:24,
142:10, 142:23,
144:24, 147:2,
163:17, 177:6,
200:10, 205:21,
247:11, 271:5,
275:4, 286:22,
296:4, 296:23,
297:15
**hearings** [1] - 258:25
**hears** [3] - 145:16,
145:21, 146:5
**heavier** [1] - 276:1
**heavy** [3] - 165:2,
204:6, 282:20
**heck** [1] - 174:16
**held** [50] - 78:1, 80:25,
84:19, 85:9, 88:25,
94:3, 95:10, 99:7,
103:20, 107:2,
110:19, 112:8,
118:22, 122:15,
133:21, 136:6,
144:12, 152:1,
157:23, 161:1,
164:5, 168:22,
179:19, 188:8,
193:7, 196:13,
200:7, 203:19,
206:2, 213:15,
222:4, 229:5, 232:7,
235:9, 238:14,
242:3, 251:4,
256:12, 259:12,
263:18, 266:7,
267:8, 270:1,
273:25, 280:21,
286:12, 289:20,
297:24, 301:16,
303:11
**hello** [2] - 156:4,
159:10
**help** [15] - 41:14, 44:8,
46:14, 107:12,
121:13, 122:8,
126:24, 157:6,
157:12, 208:1,
268:21, 268:23,
282:7, 294:5, 303:1
**helped** [2] - 50:2,
174:9
**helpful** [3] - 42:3,
42:6, 48:23
**helping** [3] - 109:18,
133:16, 218:3
**hematology** [1] -
135:22
**hereby** [1] - 304:7

**herself** [4] - 67:2,
67:6, 67:11, 67:15
**hesitant** [1] - 189:14
**hesitate** [2] - 44:25,
145:2
**hid** [1] - 281:24
**high** [5] - 43:25,
175:20, 209:12,
211:8, 211:10
**high-touch** [1] - 43:25
**higher** [5] - 173:1,
203:11, 203:12,
203:13, 203:15
**higher-ups** [1] - 173:1
**highest** [1] - 43:24
**hill** [1] - 175:21
**himself** [2] - 248:21,
248:22
**hip** [2] - 122:4, 194:19
**Hispanic** [1] - 26:18
**history** [5] - 4:2, 4:12,
5:5, 24:16, 26:24
**History** [1] - 5:6
**hit** [3] - 114:17,
218:23, 219:19
**hit-and-run** [1] -
219:19
**hives** [1] - 163:9
**hmm** [7] - 79:20,
81:18, 140:8, 141:4,
212:22, 285:8,
291:16
**hold** [2] - 84:18, 114:4
**holdup** [1] - 219:4
**home** [6] - 114:15,
156:18, 159:21,
160:14, 160:15,
192:23
**Homeland** [1] - 217:5
**honest** [8] - 20:25,
38:23, 123:23,
189:16, 200:9,
213:17, 250:25,
273:3
**honestly** [7] - 74:14,
140:14, 228:8,
233:17, 247:16,
273:22, 277:14
**honesty** [4] - 194:2,
223:23, 224:3, 274:7
**Honor** [133] - 2:12,
2:22, 4:18, 5:17, 7:2,
8:23, 10:6, 10:9,
10:10, 12:20, 14:14,
14:19, 15:10, 16:8,
17:5, 22:14, 23:5,
23:16, 23:18, 26:8,
26:11, 27:19, 28:5,
31:20, 34:13, 36:25,
37:6, 38:1, 38:6,

39:15, 39:19, 39:21,
40:7, 55:13, 57:12,
73:10, 78:2, 78:10,
78:18, 79:3, 84:21,
84:24, 89:6, 90:15,
94:5, 94:12, 94:14,
99:9, 99:12, 99:15,
110:20, 111:6,
112:21, 113:17,
118:23, 118:25,
119:10, 122:17,
124:1, 124:10,
125:12, 128:8,
132:16, 132:22,
136:7, 136:13,
144:21, 145:4,
145:19, 146:9,
146:16, 152:2,
152:3, 153:9,
153:22, 154:1,
155:5, 155:19,
155:22, 158:5,
161:2, 161:17,
161:22, 161:24,
163:4, 169:22,
170:12, 171:3,
172:19, 172:24,
179:23, 180:8,
180:17, 181:13,
182:13, 188:9,
188:18, 188:25,
189:14, 189:18,
191:22, 193:9,
193:15, 199:24,
202:8, 203:21,
203:22, 213:16,
214:19, 216:7,
222:5, 222:10,
229:18, 230:4,
230:10, 235:13,
235:15, 235:25,
238:17, 242:5,
242:6, 242:17,
258:21, 259:10,
266:9, 267:14,
274:1, 286:13,
291:24, 298:6,
299:17, 299:18,
300:23
**HONORABLE** [1] - 1:8
**hope** [3] - 158:8,
181:24, 247:16
**hopefully** [4] - 7:20,
42:5, 299:9, 300:8
**hoping** [3] - 38:4,
270:18, 300:2
**Hopkins** [2] - 57:16,
57:22
**horrible** [1] - 182:22
**hospital** [3] - 130:7,

195:15, 301:12
**Hospital** [1] - 130:7
**hospitality** [2] - 229:1,
229:3
**hostile** [1] - 81:12
**hour** [11] - 3:19,
152:21, 152:22,
152:23, 152:25,
153:2, 153:4, 153:5,
153:24, 299:6,
299:12
**hours** [12] - 15:17,
16:8, 28:3, 28:5,
28:10, 28:14, 28:17,
71:24, 72:24, 153:9,
155:13
**House** [1] - 259:2
**house** [9] - 140:23,
141:7, 150:9, 176:1,
184:12, 185:15,
246:5, 253:23, 279:1
**HOWELL** [1] - 1:8
**Howell** [2] - 2:4, 40:13
**HR** [1] - 126:21
**hum** [5] - 76:6, 213:2,
214:24, 219:5,
288:25
**human** [1] - 96:17
**hungry** [1] - 153:8
**Hurricane** [1] - 25:6
**husband** [7] - 192:2,
235:4, 238:6,
261:10, 261:12,
267:18, 302:14
**husband's** [1] - 82:1
**husher** [5] - 15:6,
30:2, 161:17,
161:18, 161:19
**hydrology** [1] - 178:14

## I

**IC** [1] - 173:6
**ID** [2] - 220:2, 220:18
**ideally** [1] - 254:8
**ideations** [1] - 160:17
**identified** [2] - 28:10,
152:9
**identifier** [1] - 56:22
**identify** [6] - 55:21,
56:9, 92:8, 114:20,
115:21, 219:15
**identity** [2] - 218:25,
220:3
**ignore** [1] - 177:25
**Ill's** [1] - 45:22
**ill** [3] - 104:21, 104:23,
104:24
**illegal** [5] - 65:15,

65:19, 65:23, 66:4,
130:12
**illegally** [1] - 176:8
**imagine** [2] - 103:18,
264:23
**imagined** [1] - 234:10
**immediate** [3] - 207:9,
209:25, 212:10
**immediately** [4] -
69:15, 69:21,
153:14, 177:5
**immune** [1] - 120:14
**impact** [17] - 4:1,
75:21, 93:14, 97:16,
109:3, 110:3,
125:20, 139:19,
151:11, 167:25,
185:23, 187:10,
192:11, 202:6,
209:16, 243:22,
279:16
**impair** [1] - 106:11
**impanel** [1] - 48:6
**impaneled** [1] - 32:21
**impartial** [75] - 38:24,
46:2, 48:23, 49:7,
49:14, 66:20, 66:24,
68:19, 68:24, 69:6,
69:13, 69:18, 69:24,
70:19, 70:25, 71:14,
71:18, 75:21, 76:13,
84:7, 92:13, 97:17,
109:4, 110:3, 116:5,
125:21, 140:1,
141:25, 142:24,
144:19, 145:9,
146:5, 147:4,
150:22, 151:11,
168:1, 171:1,
172:22, 176:19,
177:7, 184:4,
185:24, 187:11,
192:12, 198:22,
202:6, 202:20,
204:17, 209:17,
210:14, 214:2,
215:1, 218:14,
221:3, 227:24,
231:24, 234:19,
243:23, 244:10,
247:1, 247:13,
247:15, 250:7,
250:17, 250:19,
256:8, 259:9, 261:3,
263:4, 269:23,
279:16, 286:2,
293:9, 296:7, 297:17
**impartially** [4] - 62:2,
62:6, 227:15, 294:19
**impediment** [1] -

240:17
**implicated** [1] - 162:9
**imply** [1] - 89:21
**important** [17] - 8:24,
45:21, 46:5, 47:19,
49:12, 58:16, 59:3,
73:25, 81:16,
156:14, 176:11,
194:17, 197:13,
207:7, 214:22,
286:4, 288:4
**impression** [2] - 93:3,
126:22
**imprisonment** [1] -
6:18
**improved** [1] - 43:23
**imputes** [1] - 35:6
**inadvertently** [1] -
171:10
**inappropriately** [2] -
142:12, 176:17
**incident** [7] - 91:20,
92:11, 187:3,
232:13, 238:22,
265:13, 281:21
**incidents** [3] - 143:6,
220:15, 281:9
**incision** [3] - 194:21,
195:11, 195:16
**inclined** [1] - 78:23
**include** [4] - 18:12,
21:23, 22:22, 60:12
**included** [3] - 18:8,
37:10, 154:23
**including** [14] - 19:8,
30:9, 50:7, 66:19,
66:23, 69:2, 69:9,
139:25, 141:22,
174:25, 209:14,
247:12, 296:6,
297:14
**income** [1] - 22:2
**incomplete** [1] -
154:17
**incredible** [1] - 245:12
**incredibly** [1] - 245:9
**indeed** [3] - 173:7,
199:9, 199:10
**independently** [1] -
284:4
**indicate** [1] - 14:19
**indicated** [4] - 34:15,
148:18, 154:22,
174:24
**indicating)** [1] - 231:1
**indication** [1] - 25:17
**indictment** [8] - 3:17,
5:2, 8:6, 12:19, 13:4,
15:17, 15:24, 16:1
**indictments** [2] - 26:5

**individual** [4] - 30:14,
30:15, 31:1, 45:16
**individually** [8] - 47:6,
49:16, 49:19, 51:10,
51:14, 51:17, 71:22,
72:5
**individuals** [4] -
18:17, 54:5, 54:9,
54:19
**indulgence** [1] - 35:20
**infected** [5] - 52:9,
52:10, 52:14, 52:15,
194:22
**infection** [5] - 194:22,
195:20, 195:21,
195:25, 196:16
**inferring** [1] - 230:2
**infers** [1] - 229:25
**infirmity** [2] - 25:1,
25:18
**influenced** [2] -
129:11, 205:21
**infographics** [1] - 97:8
**inform** [1] - 172:3
**information** [20] - 8:7,
9:8, 18:3, 19:1,
33:21, 44:25, 52:18,
52:23, 97:9, 152:7,
154:17, 154:23,
155:2, 155:10,
158:2, 207:5, 208:3,
226:6, 233:25, 298:8
**informed** [3] - 232:25,
233:4, 237:12
**initial** [2] - 36:22,
234:10
**initials** [7] - 33:13,
33:20, 34:7, 34:11,
35:12, 36:18, 50:12
**injury** [1] - 106:2
**innocence** [2] - 46:1,
286:17
**innocent** [12] - 37:14,
37:20, 38:4, 39:4,
39:9, 51:2, 64:9,
64:16, 94:17, 95:4,
193:17, 222:18
**input** [1] - 188:1
**inquire** [4] - 7:3,
112:10, 236:8, 298:2
**inquired** [1] - 78:11
**inquiries** [1] - 10:14
**inquiry** [1] - 7:16
**inside** [3] - 11:19,
44:7, 60:13
**insight** [1] - 263:7
**inspire** [1] - 104:9
**Inspire** [1] - 104:10
**Inspire.com** [1] -
102:1, 103:24,

103:25, 104:12
**instance** [2] - 249:4,
249:5
**instances** [5] - 171:12,
249:6, 249:17,
249:21, 249:24
**instead** [1] - 39:1
**instructed** [4] - 94:16,
193:16, 286:16,
286:17
**instruction** [22] -
35:10, 63:25, 64:7,
64:13, 64:19, 65:21,
66:2, 67:4, 67:14,
67:19, 67:24, 77:16,
79:6, 94:18, 116:9,
117:2, 117:9,
187:16, 187:20,
189:5, 189:11, 226:2
**instructions** [16] -
39:9, 48:7, 71:13,
71:17, 77:10, 78:12,
80:11, 180:24,
189:4, 189:17,
214:1, 214:10,
227:23, 240:18,
285:2, 286:18
**instructs** [1] - 46:4
**intel** [1] - 218:6
**Intelligence** [4] - 96:9,
97:1, 217:3, 217:10
**intelligence** [6] -
96:10, 97:9, 172:8,
172:9, 172:13,
221:14
**intend** [2] - 20:15,
270:10
**intended** [1] - 189:12
**intensive** [1] - 266:22
**intent** [2] - 19:19,
20:12
**intention** [2] - 49:3,
49:4
**interaction** [5] - 91:19,
92:11, 112:11,
115:9, 232:12
**interactions** [4] -
115:12, 150:14,
185:1, 220:15
**interest** [7] - 49:9,
126:25, 127:5,
127:17, 143:8,
176:11, 253:25
**interesting** [1] - 97:12
**interfere** [4] - 59:9,
59:14, 271:6, 275:5
**Interfolio** [1] - 203:11
**intern** [2] - 171:13,
171:16
**internal** [1] - 11:25

**Internal** [1] - 60:17
**international** [6] -
96:13, 96:15, 97:6,
97:15, 169:11,
268:24
**interrupt** [2] - 11:2,
21:20
**interruption** [1] -
107:13
**interviewed** [1] -
258:25
**interweave** [1] - 37:18
**intimidation** [1] -
116:17
**introduce** [1] - 43:7
**introducing** [1] -
40:12
**introduction** [1] -
182:19
**introductions** [1] -
42:17
**invade** [1] - 49:5
**invented** [1] - 234:10
**Investigation** [2] -
53:8, 54:2
**investigation** [3] -
130:21, 149:13,
266:23
**investigations** [1] -
148:5
**investigative** [2] -
60:3, 60:8
**investigator** [3] -
61:17, 61:23, 261:20
**investigators** [1] -
11:14
**invited** [1] - 174:9
**involve** [1] - 103:15
**involved** [16] - 71:3,
71:7, 78:25, 96:14,
96:21, 98:6, 109:18,
116:17, 176:3,
192:20, 205:13,
235:5, 255:7,
262:22, 266:21,
273:17
**involvement** [1] -
115:3
**involves** [4] - 66:25,
67:9, 172:16, 210:9
**involving** [4] - 12:22,
148:17, 202:18,
218:25
**irrationally** [2] -
272:14, 273:1
**IRS** [1] - 219:1
**isolated** [1] - 143:5
**issue** [20] - 8:15, 21:4,
21:5, 26:20, 26:22,
28:15, 31:23, 79:2,

102:18, 117:1,
159:13, 163:3,
235:3, 236:9,
247:23, 269:3,
276:2, 276:4, 301:9,
302:13
**issues** [19] - 25:16,
97:7, 104:17,
104:25, 106:8,
107:22, 109:13,
111:10, 205:6,
220:9, 233:22,
234:12, 234:13,
237:4, 258:17,
266:11, 298:16,
303:25
**itching** [1] - 163:10
**items** [1] - 108:4
**itself** [3] - 25:18,
58:15, 59:2

## J

**jacket** [5] - 264:5,
268:3, 275:20,
276:1, 282:20
**jail** [7] - 109:14, 125:3,
125:5, 125:20,
126:7, 126:20, 278:5
**January** [3] - 102:4,
228:23
**Jarrell** [1] - 57:7
**JD** [1] - 170:9
**Jeremiah** [2] - 56:20,
57:6
**Jerrell** [1] - 57:2
**Jersey** [4] - 208:12,
209:2, 209:23,
210:24
**job** [13] - 89:21,
131:21, 134:11,
140:25, 149:7,
166:3, 172:16,
172:21, 183:20,
221:13, 228:22,
255:4, 294:25
**jobs** [3] - 126:14,
126:16, 126:18
**Joelle** [2] - 57:16,
57:22
**jog** [2] - 278:2, 281:19
**Johnson** [2] - 56:20,
57:6
**join** [15] - 39:25,
123:3, 134:1, 158:1,
161:5, 180:11,
193:23, 196:19,
196:20, 200:14,
251:9, 274:2,

289:23, 301:19,
303:14
**joint** [1] - 4:8
**joke** [1] - 89:13
**JOSEPH** [1] - 1:5
**Joseph** [9] - 2:19,
40:23, 50:5, 54:20,
54:23, 55:2, 55:4,
55:6, 55:14
**journalist** [4] - 257:25,
258:1, 258:4, 259:8
**journalists** [2] -
148:24, 257:23
**JUDGE** [1] - 1:9
**judge** [8] - 46:3,
182:16, 191:7,
236:3, 240:19,
252:17, 252:18,
278:6
**Judge** [6] - 2:4, 30:6,
40:13, 200:22,
216:7, 263:19
**judges** [2] - 129:24,
184:2
**judgment** [2] - 59:19,
59:23
**judicial** [3] - 45:19,
258:20, 258:22
**Judiciary** [1] - 259:1
**July** [2] - 194:20,
304:17
**jump** [1] - 178:1
**jumped** [1] - 114:16
**juncture** [2] - 8:5,
180:8
**June** [1] - 10:15
**juror** [213] - 15:6,
30:15, 30:23, 31:1,
43:16, 46:13, 46:22,
47:10, 47:23, 48:4,
49:25, 52:2, 52:7,
52:12, 52:17, 61:24,
62:4, 64:21, 65:5,
66:20, 66:24, 68:19,
68:24, 69:6, 69:13,
69:19, 69:25, 70:19,
70:25, 71:14, 71:19,
73:17, 78:11, 79:4,
79:18, 82:21, 82:22,
82:23, 85:18, 85:19,
90:21, 90:22, 95:16,
95:17, 95:18, 100:3,
100:4, 105:5, 105:6,
107:17, 107:25,
108:1, 113:5, 113:6,
119:6, 119:14,
119:16, 122:17,
122:18, 123:14,
124:3, 124:4,
124:12, 133:22,

134:7, 134:18,
134:19, 137:21,
137:22, 137:23,
140:1, 141:25,
142:24, 143:14,
144:13, 144:19,
145:12, 146:5,
146:23, 147:14,
147:15, 152:16,
154:20, 154:22,
155:24, 155:25,
157:25, 158:7,
158:25, 159:6,
159:9, 161:8,
161:16, 162:4,
162:22, 163:20,
164:11, 164:22,
164:23, 166:8,
169:15, 169:16,
177:8, 179:20,
180:9, 180:20,
181:4, 181:8,
181:22, 181:23,
181:24, 184:4,
188:24, 189:20,
193:9, 193:16,
194:1, 194:5, 194:6,
194:7, 196:14,
196:24, 197:5,
197:6, 198:22,
200:9, 200:23,
201:2, 201:3, 204:2,
204:3, 206:9,
206:10, 207:19,
212:20, 214:2,
214:15, 215:1,
215:12, 216:3,
216:10, 216:13,
216:14, 218:14,
222:21, 225:15,
227:24, 229:22,
230:12, 230:20,
230:21, 236:1,
239:9, 242:15,
242:16, 243:23,
244:10, 246:9,
247:13, 247:15,
250:7, 250:17,
250:19, 251:22,
251:23, 257:1,
257:4, 257:5, 257:6,
259:9, 259:18,
259:21, 259:22,
259:23, 263:4,
263:24, 263:25,
267:24, 267:25,
269:23, 270:9,
270:22, 274:14,
274:15, 282:16,
282:17, 283:15,
286:14, 286:21,

287:6, 287:9,
287:10, 287:11,
289:21, 290:7,
290:8, 292:3, 296:7,
297:17, 297:25,
298:23, 299:2,
300:25, 301:3,
301:17, 301:22,
302:7, 302:8,
302:11, 303:12,
303:18, 303:24
**Juror** [68] - 77:18,
78:3, 83:1, 84:9,
85:14, 85:21, 86:3,
89:18, 89:25, 90:23,
91:1, 94:21, 95:14,
99:25, 100:5, 100:9,
105:2, 105:7, 108:2,
108:6, 113:7, 119:3,
119:15, 120:3,
124:5, 134:20,
136:17, 147:16,
156:1, 159:2,
159:10, 161:23,
162:4, 162:23,
163:2, 164:14,
164:24, 169:17,
188:21, 189:21,
197:7, 200:19,
203:24, 204:4,
204:7, 204:19,
206:6, 206:11,
214:21, 223:7,
230:22, 236:12,
239:7, 242:12,
242:19, 251:12,
251:24, 263:22,
264:1, 268:1, 270:6,
270:23, 274:6,
274:16, 281:8,
282:18, 290:2, 290:9
**JUROR** [954] - 60:20,
60:23, 73:16, 73:18,
74:2, 74:7, 74:14,
74:20, 74:22, 75:5,
75:9, 75:13, 75:17,
75:22, 76:3, 76:6,
76:8, 76:14, 76:17,
76:23, 77:7, 77:14,
77:17, 77:20, 77:23,
79:20, 79:23, 79:25,
80:3, 80:7, 80:13,
80:19, 80:23, 81:18,
81:22, 81:24, 82:4,
82:12, 82:16, 82:20,
83:2, 83:9, 83:14,
83:19, 83:22, 84:1,
84:8, 84:11, 84:16,
85:5, 85:7, 85:15,
85:25, 86:11, 86:15,
86:22, 86:24, 87:6,

87:8, 87:11, 87:14,
87:23, 88:1, 88:5,
88:7, 88:12, 89:19,
89:24, 90:4, 90:8,
90:13, 91:2, 91:5,
91:13, 91:18, 91:21,
91:23, 92:6, 92:9,
92:14, 92:17, 92:21,
92:23, 93:7, 93:9,
93:16, 93:19, 93:23,
93:25, 94:25, 95:5,
95:8, 95:23, 95:25,
96:7, 96:21, 97:3,
97:5, 97:11, 97:18,
97:25, 98:20, 99:1,
99:4, 100:2, 100:7,
100:16, 100:21,
100:24, 101:6,
101:10, 101:16,
101:19, 101:22,
101:25, 102:3,
102:10, 102:13,
102:17, 102:24,
103:5, 103:8,
103:10, 103:17,
104:9, 104:11,
104:13, 104:15,
104:22, 105:4,
105:13, 105:17,
105:24, 106:5,
106:15, 106:18,
106:21, 106:23,
107:19, 107:23,
108:7, 108:11,
108:16, 108:21,
108:24, 109:5,
109:11, 109:17,
109:20, 109:25,
110:4, 110:7,
110:10, 110:12,
110:16, 111:12,
111:19, 111:22,
112:1, 112:25,
113:3, 113:11,
113:14, 113:17,
113:22, 113:24,
114:3, 114:6,
114:14, 114:21,
114:24, 115:4,
115:6, 115:11,
115:14, 115:17,
115:19, 115:24,
116:2, 116:6,
116:13, 116:23,
117:5, 117:11,
117:19, 117:23,
118:4, 118:7, 118:9,
118:13, 118:17,
118:19, 119:5,
119:19, 119:23,
119:25, 120:2,

120:6, 120:10,
120:13, 120:19,
121:4, 121:6,
121:10, 121:12,
121:17, 121:22,
122:3, 122:7,
122:11, 123:17,
123:20, 123:25,
124:9, 124:15,
124:20, 125:3,
125:6, 125:9,
125:11, 125:14,
125:16, 125:22,
126:2, 126:8,
126:11, 126:13,
126:15, 126:17,
126:21, 127:2,
127:9, 127:15,
127:24, 128:2,
128:7, 128:11,
128:13, 128:18,
128:22, 129:10,
129:14, 129:19,
129:24, 130:6,
130:15, 130:19,
131:1, 131:5, 131:7,
131:12, 131:16,
132:3, 132:15,
132:19, 133:1,
133:10, 133:14,
134:10, 134:16,
134:24, 135:2,
135:6, 135:9,
135:11, 135:13,
135:16, 135:18,
135:22, 136:1,
136:20, 136:23,
137:5, 137:13,
137:16, 138:1,
138:4, 138:8,
138:13, 138:20,
138:23, 138:25,
139:3, 139:6,
139:13, 139:16,
139:21, 140:3,
140:8, 140:10,
140:13, 140:17,
140:21, 141:1,
141:4, 141:6,
141:18, 142:2,
142:7, 142:15,
142:17, 142:19,
143:1, 143:10,
143:22, 144:1,
144:3, 144:6, 144:9,
147:8, 147:13,
147:20, 148:3,
148:10, 148:15,
148:22, 149:2,
149:6, 149:9,
149:17, 150:1,

150:7, 150:12,
150:16, 150:23,
151:2, 151:8,
151:14, 151:17,
151:21, 152:18,
156:4, 156:6,
156:11, 156:15,
157:1, 157:7,
157:10, 157:14,
158:11, 158:13,
158:17, 158:22,
158:24, 159:16,
160:18, 161:11,
161:15, 163:4,
163:11, 163:15,
163:21, 164:18,
164:21, 164:25,
165:3, 165:5,
165:13, 165:18,
165:21, 165:24,
166:1, 166:4, 166:6,
166:10, 166:16,
166:21, 166:23,
166:25, 167:3,
167:5, 167:10,
167:17, 167:22,
168:2, 168:5, 168:9,
168:13, 168:15,
168:18, 169:6,
169:8, 169:11,
169:14, 169:22,
170:4, 170:8,
170:16, 170:19,
171:2, 171:9, 172:1,
172:7, 172:18,
172:23, 173:4,
173:12, 173:19,
173:23, 174:4,
174:7, 175:3, 175:6,
176:22, 176:25,
177:9, 177:21,
178:12, 179:16,
181:13, 181:17,
181:21, 181:25,
182:5, 182:12,
182:16, 182:19,
182:23, 183:1,
183:3, 183:6, 183:8,
183:11, 183:18,
183:21, 183:25,
184:5, 184:11,
184:15, 184:18,
184:23, 185:3,
185:7, 185:10,
185:13, 185:17,
185:21, 185:25,
186:4, 186:8,
186:11, 186:16,
186:19, 186:22,
186:24, 187:6,
187:12, 187:19,

187:25, 188:6,
188:23, 189:24,
190:3, 190:10,
190:12, 190:16,
190:19, 190:21,
191:2, 191:5,
191:10, 191:15,
191:19, 191:22,
192:2, 192:6, 192:9,
192:13, 192:17,
192:24, 193:3,
194:4, 194:10,
194:19, 195:1,
195:7, 195:12,
195:15, 195:18,
195:23, 196:1,
196:5, 196:7,
196:10, 197:3,
197:16, 197:21,
197:25, 198:2,
198:5, 198:9,
198:13, 198:19,
198:21, 198:23,
199:3, 199:8,
199:11, 199:14,
199:16, 199:20,
199:24, 200:1,
200:3, 200:5,
200:22, 201:7,
201:14, 201:16,
201:21, 201:23,
202:2, 202:8,
202:11, 202:13,
202:16, 202:21,
202:23, 203:1,
203:4, 203:7,
203:10, 203:13,
203:16, 204:1,
204:11, 204:13,
204:18, 204:21,
204:24, 205:1,
205:4, 205:8,
205:12, 205:24,
206:8, 206:16,
206:24, 207:9,
207:13, 207:20,
208:2, 208:11,
208:19, 209:1,
209:5, 209:7,
209:10, 209:18,
209:22, 210:2,
210:6, 210:11,
210:16, 210:21,
210:23, 210:25,
211:4, 211:7,
211:10, 211:13,
211:16, 211:19,
211:23, 212:1,
212:9, 212:18,
212:22, 213:2,
213:4, 213:7,

213:13, 214:24,
215:2, 215:7,
215:10, 215:14,
215:17, 215:21,
215:25, 216:17,
216:22, 217:2,
217:9, 217:12,
217:15, 217:19,
217:21, 217:25,
218:5, 218:9,
218:11, 218:16,
218:22, 219:5,
219:7, 219:11,
219:17, 219:20,
219:25, 220:3,
220:8, 220:11,
220:16, 220:19,
220:23, 221:4,
221:7, 221:13,
221:19, 221:23,
222:1, 222:15,
222:17, 222:22,
223:11, 223:15,
223:21, 223:25,
224:11, 224:21,
225:2, 225:5,
225:11, 225:13,
225:18, 225:20,
226:3, 226:19,
227:5, 227:8,
227:11, 227:14,
227:18, 228:1,
228:6, 228:10,
228:16, 228:19,
228:22, 229:1,
230:16, 230:19,
230:25, 231:2,
231:6, 231:13,
231:18, 231:21,
232:1, 232:6,
232:10, 232:14,
232:16, 232:18,
232:23, 233:3,
233:9, 233:12,
233:15, 233:20,
234:4, 234:7,
234:22, 236:15,
236:18, 237:2,
237:6, 237:17,
237:19, 238:4,
239:8, 239:20,
239:25, 240:5,
240:8, 240:13,
240:19, 241:1,
241:5, 241:8,
241:10, 241:13,
241:16, 241:20,
241:22, 242:1,
242:14, 242:22,
242:25, 243:10,
243:12, 243:14,

243:17, 243:20,
243:24, 244:4,
244:11, 244:16,
244:20, 244:23,
245:5, 245:7, 245:9,
245:14, 245:25,
246:2, 246:12,
246:18, 246:21,
247:2, 247:14,
247:25, 248:5,
248:8, 248:13,
248:18, 248:25,
249:5, 249:14,
249:19, 249:23,
250:10, 250:12,
250:14, 250:21,
251:15, 251:18,
251:21, 252:2,
252:5, 252:11,
252:13, 252:15,
252:18, 252:23,
253:1, 253:3, 253:8,
253:15, 253:18,
253:22, 253:25,
254:4, 254:8,
254:11, 254:16,
254:25, 255:5,
255:9, 255:15,
255:21, 256:1,
256:3, 256:9, 257:3,
257:9, 257:15,
257:19, 257:22,
258:1, 258:5, 258:9,
258:12, 258:15,
258:20, 258:24,
259:5, 259:10,
259:20, 259:25,
260:4, 260:6,
260:11, 260:15,
260:19, 260:24,
261:4, 261:9,
261:13, 261:21,
262:1, 262:6,
262:10, 262:15,
262:19, 262:24,
263:3, 263:6,
263:11, 263:16,
264:3, 264:7, 264:9,
264:12, 264:16,
264:22, 265:6,
265:12, 265:17,
265:19, 265:24,
266:1, 266:4,
266:20, 267:1,
267:5, 267:17,
267:23, 268:6,
268:14, 268:20,
269:4, 269:10,
269:15, 269:24,
271:8, 271:12,
271:19, 271:23,

272:4, 272:7,
272:12, 272:22,
273:7, 273:10,
273:14, 273:21,
274:9, 274:12,
274:19, 274:24,
275:9, 275:16,
275:18, 275:22,
275:24, 276:3,
276:6, 276:10,
276:17, 276:21,
277:2, 277:5, 277:7,
277:12, 277:14,
277:17, 277:21,
277:24, 278:2,
278:9, 278:13,
278:15, 278:19,
279:5, 279:7,
279:10, 279:14,
279:18, 279:21,
279:23, 280:6,
280:8, 280:11,
280:14, 280:16,
281:11, 281:15,
281:18, 282:13,
282:24, 283:5,
283:8, 283:11,
283:16, 283:19,
283:22, 284:1,
284:5, 284:9,
284:12, 284:16,
284:20, 284:23,
285:4, 285:8,
285:12, 285:18,
285:22, 286:3,
286:10, 287:8,
287:22, 288:7,
288:10, 288:13,
288:17, 288:21,
288:25, 289:2,
289:5, 289:9,
289:12, 289:16,
290:5, 290:13,
290:19, 290:24,
291:1, 291:6, 291:9,
291:11, 291:14,
291:16, 292:12,
292:18, 292:21,
292:25, 293:4,
293:10, 293:17,
293:22, 293:25,
294:3, 294:7,
294:10, 294:12,
294:20, 295:2,
295:5, 295:7,
295:14, 295:17,
295:24, 296:2,
296:8, 296:16,
296:21, 296:25,
297:5, 297:10,
297:21, 299:1,

301:7, 301:10,
301:15, 301:25,
302:5, 302:14,
302:22, 303:2,
303:7, 303:21
**jurors** [67] - 13:18,
18:9, 18:20, 19:3,
29:11, 29:13, 29:15,
30:1, 30:11, 30:13,
30:23, 39:20, 39:25,
40:5, 40:17, 40:22,
41:1, 41:2, 41:9,
41:10, 41:12, 42:3,
42:9, 45:6, 45:7,
45:8, 45:11, 45:13,
46:15, 47:7, 47:16,
47:24, 48:7, 48:12,
49:9, 49:17, 49:19,
51:16, 51:25, 52:4,
64:23, 65:3, 65:8,
65:11, 71:25, 72:6,
72:7, 72:25, 120:25,
121:2, 153:4, 153:6,
155:1, 155:20,
162:7, 162:11,
189:1, 228:4, 228:7,
228:13, 242:17,
276:8, 283:6,
296:20, 300:18,
302:2
**jury** [127] - 3:23, 7:12,
12:15, 13:7, 16:4,
16:12, 17:17, 17:19,
17:21, 18:17, 18:19,
19:19, 19:23, 20:2,
20:11, 20:12, 20:18,
21:11, 21:12, 21:14,
21:15, 24:18, 25:1,
25:3, 25:11, 25:18,
28:21, 29:6, 29:21,
32:19, 32:21, 38:15,
39:17, 40:24, 42:21,
43:15, 43:16, 44:18,
44:23, 44:24, 44:25,
45:2, 45:11, 45:15,
45:20, 45:21, 45:23,
46:5, 46:12, 47:21,
47:22, 48:6, 48:15,
48:23, 49:7, 49:14,
58:2, 58:7, 58:10,
58:13, 58:15, 58:18,
58:22, 58:25, 59:2,
59:5, 61:25, 62:4,
62:10, 62:15, 63:20,
64:2, 72:15, 81:6,
81:15, 82:8, 82:14,
86:8, 90:6, 105:21,
114:15, 120:21,
121:21, 123:24,
127:23, 138:10,
139:20, 148:7,

148:16, 154:7,
155:9, 156:13,
157:6, 157:13,
158:9, 161:14,
182:10, 184:10,
184:19, 185:1,
185:6, 194:16,
197:15, 205:19,
206:22, 225:22,
228:14, 240:20,
251:19, 252:9,
252:15, 252:21,
253:14, 253:20,
256:14, 276:8,
283:3, 283:25,
287:19, 288:6,
289:14, 296:19,
299:8, 300:2, 301:4
**Jury** [1] - 1:8
**justice** [11] - 45:14,
45:25, 98:2, 190:20,
191:4, 258:14,
268:17, 268:21,
268:25, 269:3,
269:21
**Justice** [8] - 1:13,
60:15, 198:3,
258:12, 259:4,
259:7, 260:16,
261:22
**juvenile** [3] - 35:5,
35:8, 36:18
**juvenile's** [1] - 36:19

## K

**Katrina** [1] - 25:6
**keep** [15] - 43:3, 44:2,
48:1, 50:1, 51:23,
134:11, 161:12,
171:23, 194:25,
248:10, 249:21,
249:23, 287:2,
295:3, 296:12
**keeping** [1] - 205:19
**keeps** [1] - 194:21
**kept** [2] - 219:21,
235:18
**key** [1] - 179:4
**kid** [1] - 245:2
**kids** [9] - 92:1, 117:25,
156:16, 156:24,
224:24, 283:6,
283:7, 289:17, 303:4
**kind** [39] - 20:23,
29:25, 35:2, 35:9,
86:16, 96:9, 96:10,
96:22, 102:7,
102:15, 102:23,
106:7, 106:9,

135:20, 159:23,
160:5, 163:8,
166:20, 167:11,
182:17, 184:13,
185:11, 197:24,
198:1, 233:18,
235:2, 235:16,
266:10, 266:18,
268:24, 271:13,
271:15, 271:20,
271:24, 272:13,
272:15, 272:17,
272:23
**king** [1] - 45:16
**King** [1] - 176:7
**Kipp** [2] - 291:14,
291:15
**kitchen** [1] - 280:18
**knocked** [1] - 91:15
**knowing** [5] - 9:16,
28:1, 207:13, 234:8,
234:11
**knowledge** [15] -
45:12, 70:2, 70:7,
83:24, 101:12,
103:13, 127:12,
129:15, 129:17,
178:6, 178:11,
179:13, 212:18,
219:25, 221:10
**known** [2] - 10:1,
10:12
**knows** [6] - 7:24, 11:1,
32:4, 32:22, 161:13,
193:18
**Kyree** [2] - 57:15,
57:21

## L

**lab** [6] - 135:19,
135:20, 135:21,
135:22, 136:2,
178:15
**lack** [3] - 131:20,
233:15, 233:16
**ladies** [3] - 40:10,
49:3, 71:20
**lady** [1] - 282:7
**laid** [2] - 148:24, 240:9
**land** [2] - 171:20,
171:22
**Lange** [1] - 43:5
**language** [6] - 48:20,
59:7, 59:13, 144:14,
271:4, 275:3
**languages** [1] -
179:12
**large** [2] - 106:8,

258:16
**Larry** [14] - 17:17,
17:20, 18:6, 18:18,
18:23, 19:1, 19:2,
22:19, 22:24, 23:3,
23:12, 26:11, 27:3,
154:7
**last** [35] - 4:2, 9:4,
18:25, 27:14, 31:25,
34:8, 35:15, 36:1,
36:9, 36:14, 36:21,
37:4, 46:21, 46:23,
58:9, 58:10, 58:21,
71:10, 132:22,
132:24, 142:3,
142:10, 160:5,
218:7, 220:17,
221:9, 228:23,
252:15, 260:20,
267:2, 283:18,
285:19, 288:2, 302:9
**late** [5] - 34:2, 82:14,
139:1, 219:22,
270:21
**latest** [1] - 245:16
**law** [187] - 16:17,
22:20, 24:12, 37:18,
39:7, 43:5, 46:3,
49:11, 55:7, 55:15,
59:25, 60:1, 60:5,
60:6, 60:11, 60:12,
61:2, 61:5, 61:7,
61:9, 61:11, 61:16,
61:22, 62:20, 63:1,
63:5, 63:7, 63:8,
63:10, 63:12, 63:14,
63:15, 63:17, 65:23,
66:4, 71:13, 71:18,
75:3, 76:19, 76:21,
76:22, 77:4, 77:5,
77:10, 78:12, 78:22,
78:25, 80:9, 80:21,
83:6, 87:20, 88:2,
96:4, 96:11, 96:13,
97:20, 97:22, 97:23,
98:9, 98:21, 98:22,
98:25, 100:14,
101:5, 102:12,
102:13, 108:13,
108:17, 108:18,
108:20, 112:11,
115:9, 124:18,
126:5, 126:12,
130:22, 131:5,
131:6, 131:11,
131:15, 139:10,
139:13, 139:19,
147:25, 148:1,
148:6, 149:23,
165:11, 165:15,

165:20, 165:22, 165:25, 166:7, 167:20, 170:6, 170:7, 170:14, 171:6, 172:12, 172:17, 173:16, 175:17, 183:15, 185:20, 190:7, 190:25, 191:1, 191:17, 198:3, 198:6, 198:7, 198:24, 199:1, 199:6, 199:12, 199:20, 208:15, 208:16, 208:20, 208:25, 209:4, 209:6, 209:9, 209:15, 209:21, 210:20, 214:1, 214:10, 216:25, 217:17, 218:2, 220:15, 220:22, 222:6, 222:13, 222:18, 223:18, 223:19, 227:24, 231:10, 231:11, 233:8, 234:11, 238:24, 239:16, 239:17, 239:20, 240:12, 240:18, 240:20, 240:21, 243:8, 243:16, 244:2, 254:14, 254:23, 255:7, 255:13, 257:14, 257:16, 260:13, 261:7, 268:11, 269:19, 269:20, 284:8, 284:10, 284:21, 284:22, 285:3, 286:23, 292:9, 293:7, 293:13, 295:10, 295:12, 295:13, 295:21, 295:22

**Law** [1] - 239:22

**laws** [1] - 50:7

**lawyer** [34] - 60:1, 60:6, 78:20, 78:21, 83:6, 83:10, 84:4, 108:14, 108:17, 166:3, 183:16, 183:23, 190:8, 190:10, 190:16, 190:18, 190:21, 193:18, 197:22, 197:24, 198:1, 208:16, 231:14, 239:17, 243:8, 243:12, 254:14, 257:18, 260:14,

260:16, 284:8, 284:12, 292:9

**lawyer's** [1] - 292:13

**lawyers** [26] - 43:8, 46:11, 47:15, 48:4, 48:22, 49:4, 58:8, 58:20, 79:19, 79:21, 88:24, 93:22, 107:1, 129:25, 133:20, 160:25, 164:4, 171:16, 179:15, 184:3, 208:24, 256:11, 273:24, 288:1, 289:19, 293:2

**lay** [2] - 33:12, 33:13

**laying** [1] - 38:15

**lead** [1] - 125:25

**leadership** [3] - 86:12, 90:1, 172:4

**leading** [2] - 106:7, 167:8

**leads** [1] - 158:19

**learn** [4] - 10:16, 46:15, 211:9, 285:17

**learned** [4] - 132:7, 234:1, 269:19, 284:25

**least** [8] - 27:5, 36:19, 90:6, 142:12, 224:7, 237:23, 262:10, 286:25

**leave** [29] - 15:8, 36:22, 48:9, 90:12, 107:20, 123:18, 126:19, 126:25, 134:15, 139:3, 158:10, 161:9, 164:19, 181:11, 194:3, 197:2, 200:20, 207:10, 215:24, 251:14, 251:15, 251:17, 253:10, 274:10, 278:22, 281:23, 290:3, 299:18, 299:21

**leaves** [1] - 233:17

**leaving** [3] - 72:21, 278:25, 281:24

**lectern** [32] - 82:24, 85:20, 90:24, 95:19, 105:8, 108:3, 119:17, 124:6, 134:21, 137:24, 156:2, 159:11, 169:19, 182:1, 189:22, 194:8, 197:8, 206:12, 216:15, 223:9, 230:23, 239:9,

242:20, 251:25, 257:7, 264:2, 268:2, 274:17, 282:19, 290:10, 301:3, 302:11

**Lee** [3] - 56:19, 57:5, 183:21

**left** [5] - 43:1, 106:5, 106:9, 278:6, 278:25

**legal** [47] - 38:17, 48:20, 60:2, 60:7, 63:25, 64:7, 64:13, 64:19, 75:3, 75:12, 75:20, 83:7, 83:21, 87:21, 88:11, 108:14, 109:2, 111:14, 116:25, 117:2, 117:9, 139:11, 166:3, 167:7, 183:16, 190:8, 198:12, 198:17, 208:16, 209:15, 226:1, 231:17, 231:23, 239:17, 239:23, 240:2, 240:7, 240:16, 242:8, 243:8, 243:21, 254:18, 257:20, 292:10

**legal-oriented** [1] - 198:17

**legally** [1] - 117:8

**length** [4] - 25:1, 58:13, 58:25, 231:21

**less** [5] - 5:19, 23:13, 77:3, 121:9, 272:5

**lesser** [2] - 63:10, 63:17

**letter** [2] - 17:16, 17:25

**level** [3] - 4:4, 5:8, 209:12

**levels** [1] - 272:8

**liaison** [1] - 10:11

**lie** [4] - 76:25, 78:6, 117:25, 133:14

**life** [7] - 4:4, 5:9, 6:17, 98:17, 132:20, 229:2, 245:1

**lighten** [1] - 89:13

**likelihood** [1] - 286:5

**limit** [2] - 41:4, 132:1

**limited** [1] - 44:5

**limiting** [1] - 35:10

**Lindella** [1] - 57:16, 57:22

**line** [6] - 44:4, 133:24, 300:20, 301:2, 302:9, 302:10

**Line** [3] - 159:2, 162:2, 162:5

**lines** [1] - 30:24

**linked** [2] - 25:3, 25:17

**list** [16] - 13:10, 18:7, 18:10, 36:20, 46:12, 56:3, 56:6, 56:14, 56:15, 57:4, 57:11, 57:18, 72:10, 153:11, 291:3, 291:23

**listed** [2] - 14:9, 290:21

**listen** [15] - 31:11, 55:23, 56:11, 93:15, 103:14, 117:17, 142:13, 181:14, 212:7, 215:3, 227:15, 248:4, 248:9, 248:11, 271:17

**listening** [3] - 227:19, 238:2, 273:1

**listing** [1] - 31:23

**lists** [4] - 22:3, 22:7, 46:11

**literally** [1] - 175:21

**litigated** [1] - 9:25

**litigation** [2] - 7:24, 88:9

**live** [4] - 152:4, 156:19, 267:6, 267:11

**lived** [4] - 136:14, 137:14, 267:10, 267:16

**lives** [1] - 152:5

**living** [18] - 50:13, 77:18, 84:10, 93:22, 110:6, 135:15, 168:4, 202:22, 204:19, 228:18, 246:11, 246:13, 246:16, 263:10, 265:1, 265:25, 267:19, 280:10

**local** [22] - 5:14, 5:15, 50:6, 60:10, 61:1, 96:4, 100:14, 124:18, 148:10, 165:10, 171:6, 191:17, 207:4, 209:21, 216:25, 244:2, 254:23, 261:7, 268:11, 268:23, 269:19, 293:13

**location** [2] - 218:4, 218:5

**lock** [1] - 254:7

**locked** [1] - 254:1

**logs** [1] - 102:17

**long-circuit** [2] - 89:11, 90:16

**longest** [1] - 72:4

**look** [12] - 20:9, 20:25, 24:16, 57:25, 58:5, 97:1, 98:13, 141:17, 148:19, 296:10, 296:12, 298:13

**looked** [3] - 22:21, 92:2, 127:11

**looking** [13] - 26:10, 26:13, 102:17, 103:3, 106:9, 117:15, 141:15, 164:2, 231:19, 291:24, 296:17, 297:18, 298:9

**looks** [7] - 19:14, 46:12, 152:4, 165:2, 173:9, 204:6, 282:20

**loose** [1] - 167:12

**losing** [1] - 289:4

**loss** [1] - 303:6

**lost** [3] - 232:10, 299:11, 302:14

**Loth** [1] - 1:23, 42:25, 304:18

**LOTH** [1] - 304:7

**loud** [2] - 14:24, 114:16

**loved** [1] - 187:9

**lovely** [1] - 29:10

**lowest** [1] - 277:7

**luck** [5] - 107:21, 161:10, 197:2, 215:22, 274:7

**luckily** [1] - 267:1

**lucky** [1] - 252:20

**lunch** [10] - 31:19, 44:13, 74:12, 119:7, 119:12, 147:12, 153:8, 160:13, 208:8, 299:9

**luncheon** [1] - 154:2

**M**

**ma'am** [12] - 6:20, 125:9, 125:11, 132:3, 132:15, 202:21, 277:12, 278:13, 279:7, 279:14, 280:14, 282:2

**machine** [1] - 1:24

**Maduro** [1] - 253:9

**magazine** [1] - 49:20

**magnet** [1] - 252:21
**main** [4] - 11:13,
190:13, 190:20,
191:4
**maintain** [4] - 43:22,
44:3, 44:15, 163:19
**majority** [1] - 104:25
**majors** [1] - 179:2
**makeup** [2] - 21:16,
24:13
**male** [14] - 66:25,
67:10, 69:1, 69:3,
69:8, 69:10, 141:21,
141:23, 175:6,
175:7, 297:14
**man** [3] - 114:16,
152:4, 199:17
**manage** [3] - 157:19,
168:9, 207:3
**management's** [1] -
9:17
**manager** [5] - 202:23,
203:1, 203:3,
203:10, 228:19
**managing** [2] - 229:2,
229:3
**Manahawkin** [1] -
208:22
**mandatory** [1] - 173:4
**manner** [1] - 304:14
**mapping** [2] - 218:4,
218:5
**maps** [4] - 97:7, 97:10,
97:14, 217:20
**March** [1] - 17:17
**marijuana** [1] - 166:21
**mark** [6] - 13:21, 51:6,
55:24, 56:12, 243:4,
295:9
**marked** [53] - 44:6,
73:21, 75:1, 75:24,
83:4, 86:4, 91:4,
92:18, 100:9, 101:8,
105:18, 108:9,
109:6, 113:12,
114:10, 116:7,
118:2, 120:3,
124:12, 135:3,
138:6, 139:8,
139:22, 141:19,
150:24, 156:8,
165:7, 166:11,
169:25, 177:3,
182:8, 186:1, 190:4,
194:12, 197:10,
201:9, 204:7,
206:18, 216:20,
218:17, 223:12,
232:2, 248:15,
262:16, 268:9,

276:11, 285:5,
287:16, 287:25,
290:16, 292:7,
293:11, 297:12
**marriage** [2] - 36:13,
133:11
**married** [5] - 36:14,
131:7, 133:17,
151:3, 233:8
**marshal** [1] - 299:18
**MARSHAL** [2] - 154:5,
299:21
**Marshals** [1] - 60:16
**Mary** [1] - 43:4
**Maryland** [1] - 224:5
**mask** [13] - 41:24,
42:2, 42:4, 43:22,
44:2, 44:9, 44:10,
44:11, 51:19, 114:2,
174:11, 292:19
**masks** [1] - 124:24
**master** [14] - 17:21,
19:15, 19:23, 20:2,
20:19, 20:20, 21:2,
21:12, 21:21, 22:8,
26:25, 27:3, 27:23
**masturbating** [1] -
245:19
**match** [1] - 12:2
**materializing** [1] -
234:25
**materials** [6] - 28:12,
66:19, 66:23,
139:25, 247:12,
296:5
**mathematical** [1] -
178:23
**matter** [16] - 2:17,
7:22, 42:14, 49:9,
52:20, 52:25, 58:17,
59:4, 65:23, 66:4,
73:25, 101:7, 248:6,
248:9, 271:9, 288:4
**matters** [13] - 3:5,
3:16, 3:21, 13:2,
49:2, 49:16, 75:16,
175:7, 231:23,
255:8, 257:21,
258:14, 299:10
**maximum** [5] - 3:25,
4:6, 5:5, 6:16, 6:17
**McIlvaine** [2] - 57:2,
57:8
**me..** [1] - 196:12
**mean** [69] - 11:4, 13:8,
21:4, 22:9, 22:24,
24:3, 24:8, 25:21,
25:22, 26:1, 26:2,
26:6, 26:14, 26:17,
27:20, 28:6, 31:16,

31:25, 32:23, 35:5,
35:22, 36:10, 37:1,
38:1, 74:15, 75:13,
79:7, 79:12, 89:21,
103:1, 112:1,
145:13, 157:14,
163:11, 168:11,
172:10, 179:7,
187:13, 195:12,
207:21, 208:5,
208:12, 209:10,
211:20, 213:7,
226:12, 227:1,
227:18, 234:7,
234:24, 235:20,
236:22, 238:21,
244:16, 245:14,
246:14, 246:15,
246:16, 247:14,
248:18, 249:24,
269:6, 275:21,
282:5, 298:10,
302:16, 302:20,
303:2, 303:3
**meaning** [2] - 86:14,
102:8
**means** [10] - 9:15,
26:17, 26:18, 48:21,
63:20, 64:2, 72:15,
81:7, 225:22, 249:25
**meant** [5] - 165:14,
173:20, 176:10,
229:24
**measures** [1] - 44:17
**mechanical** [1] - 110:7
**media** [13] - 70:3,
70:8, 101:13,
101:17, 101:23,
101:25, 102:1,
103:23, 104:8,
104:15, 148:19,
178:7, 221:11
**medical** [12] - 43:12,
59:8, 59:14, 81:16,
104:18, 107:12,
107:21, 137:12,
271:5, 275:4, 301:11
**medication** [4] -
196:2, 271:13,
271:25, 272:18
**medications** [1] -
272:9
**medieval** [1] - 45:15
**meeting** [3] - 87:16,
87:17, 197:14
**member** [94] - 41:20,
58:1, 58:6, 59:24,
60:4, 60:9, 60:25,
61:4, 61:8, 61:12,
61:18, 62:7, 62:12,

62:18, 62:24, 66:7,
66:12, 68:11, 68:13,
75:2, 75:24, 83:5,
87:19, 91:8, 92:19,
96:2, 99:16, 100:12,
100:17, 108:12,
109:7, 113:18,
114:11, 124:16,
127:20, 130:3,
130:9, 139:9,
147:24, 149:20,
150:3, 150:25,
165:9, 166:12,
170:5, 171:5,
173:14, 174:2,
183:14, 184:7,
186:2, 190:6,
191:24, 197:20,
201:10, 208:14,
209:19, 210:18,
211:2, 212:2,
216:23, 218:18,
223:16, 224:7,
224:17, 231:9,
232:3, 232:21,
234:1, 239:15,
240:23, 243:7,
244:1, 244:13,
248:16, 252:9,
254:13, 254:22,
255:17, 257:13,
260:12, 261:6,
261:16, 262:3,
265:9, 268:10,
273:5, 276:12,
284:7, 285:6, 292:8,
293:12, 293:19,
297:2
**member/caregiver** [1]
- 151:4
**members** [6] - 41:13,
96:22, 182:10,
209:23, 209:25,
283:3
**memory** [4] - 252:19,
253:5, 278:3, 281:19
**men** [1] - 150:8
**mental** [8] - 159:17,
233:22, 234:9,
234:12, 234:13,
236:9, 237:4, 237:20
**mentioned** [10] - 42:7,
45:21, 48:21, 49:1,
49:15, 128:23,
220:2, 246:3, 246:6,
246:23
**mentioning** [1] -
201:24
**merged** [1] - 240:9
**Merit** [1] - 83:11

**messages** [1] - 50:21
**messenger** [1] - 300:1
**met** [3] - 128:24,
182:23, 182:24
**method** [1] - 45:15
**Metro** [3] - 241:5,
241:8, 241:10
**metro** [2] - 241:11,
241:16
**Michael** [2] - 57:17,
57:23
**microphone** [5] -
56:5, 56:18, 105:15,
260:2, 268:4
**mid-'90s** [1] - 240:1
**midday** [1] - 74:8
**midst** [1] - 159:18
**might** [45] - 9:19,
31:19, 34:2, 47:11,
59:9, 59:14, 61:6,
61:10, 62:1, 62:5,
68:18, 68:23, 71:12,
71:17, 80:9, 81:7,
116:16, 123:24,
128:18, 130:15,
148:17, 154:8,
170:25, 192:25,
205:21, 208:1,
212:16, 215:22,
223:18, 227:22,
241:13, 245:12,
246:3, 246:6,
247:22, 250:6,
250:16, 264:19,
271:6, 272:20,
273:2, 275:5,
290:22, 294:15,
296:24
**mild** [2] - 237:7,
272:15
**military** [5] - 46:7,
83:15, 124:21, 168:9
**mind** [11] - 80:18,
187:16, 188:11,
234:21, 234:23,
248:10, 249:21,
249:24, 287:2,
295:3, 296:13
**minded** [1] - 247:4
**mine** [4] - 166:17,
224:14, 255:23,
283:13
**minimum** [2] - 28:15,
50:1
**minor** [25] - 50:8,
67:20, 67:21, 68:1,
68:2, 68:17, 68:22,
76:10, 116:10,
116:11, 116:21,
117:1, 117:2, 117:8,

117:9, 117:17,
177:12, 177:13,
202:19, 225:8,
233:22, 237:1,
250:6, 265:13, 286:9
**minor's** [3] - 67:19,
67:24, 116:9
**minors** [2] - 65:22,
66:3, 96:18
**minus** [2] - 5:8,
236:22
**minute** [4] - 8:20,
73:5, 223:2, 223:3
**minutes** [2] - 40:6,
152:21
**misrepresenting** [1] -
286:5
**Miss** [1] - 53:10
**missed** [5] - 11:17,
11:20, 11:22, 25:10,
281:1
**missiles** [1] - 168:14
**missing** [1] - 217:14
**mission** [3] - 62:20,
63:1, 173:15
**Missouri** [3] - 4:8,
4:15, 7:8
**misunderstanding** [1]
- 154:9
**mixed** [1] - 173:20
**mixing** [1] - 39:6
**mobile** [1] - 102:25
**moderate** [1] - 86:16
**moderating** [2] -
86:20, 87:1
**molested** [1] - 233:1
**mom** [3] - 278:16,
279:5, 279:6
**moment** [4] - 6:23,
23:4, 43:8, 161:18
**moments** [1] - 10:17
**Mona** [3] - 2:23, 53:5,
53:25
**MONA** [1] - 1:12
**mona.sedky2@
usdoj.gov** [1] - 1:15
**Monday** [15] - 58:11,
58:22, 74:4, 81:8,
81:17, 82:4, 82:14,
86:21, 87:14, 87:15,
89:2, 106:1, 106:19,
138:14
**money** [3] - 175:12,
176:6, 289:4
**Montgomery** [1] -
205:9
**month** [6] - 74:15,
205:8, 205:15,
207:14, 237:10,
288:11

**months** [6] - 86:18,
88:15, 166:17,
228:23, 233:5,
302:15
**mood** [1] - 89:14
**moped** [1] - 150:8
**moral** [2] - 59:18,
59:21
**morning** [39] - 15:17,
15:22, 27:24, 37:22,
40:10, 40:22, 40:25,
57:14, 73:11, 73:17,
74:12, 78:2, 81:17,
85:24, 90:23, 91:1,
95:24, 100:5, 100:6,
105:7, 105:25,
106:1, 108:2, 108:6,
113:10, 119:22,
120:18, 124:5,
124:8, 134:20,
134:23, 138:3,
147:19, 156:3,
156:24, 160:8,
176:1, 301:13
**most** [6] - 46:5, 49:6,
120:15, 154:18,
162:11, 267:20
**mostly** [3] - 149:2,
185:3, 284:20
**mother** [5] - 36:8,
50:13, 117:24,
224:3, 224:13
**motion** [63] - 3:17,
7:11, 9:24, 12:17,
13:3, 14:21, 15:17,
16:7, 16:11, 16:19,
16:20, 16:22, 16:23,
17:1, 17:10, 17:13,
19:25, 22:13, 24:4,
26:22, 27:7, 27:11,
27:16, 28:18, 39:14,
89:4, 99:19, 99:21,
107:11, 123:3,
123:5, 134:1, 134:4,
155:8, 155:14,
161:3, 162:14,
162:16, 164:6,
180:12, 181:1,
181:3, 181:6,
196:19, 196:20,
200:8, 200:14,
200:15, 214:6,
214:7, 215:19,
216:5, 235:24,
235:25, 238:16,
251:9, 274:3,
286:24, 287:4,
289:24, 298:12,
298:19, 303:15
**motions** [2] - 9:13,

28:21
**mouth** [1] - 24:9
**move** [42] - 8:5, 8:13,
13:12, 14:21, 23:25,
56:17, 78:3, 78:10,
89:5, 89:15, 99:12,
107:5, 122:16,
133:25, 144:19,
145:11, 153:18,
153:19, 153:25,
157:24, 157:25,
161:4, 171:4, 180:8,
193:9, 196:9,
196:14, 196:16,
197:19, 213:16,
235:15, 247:9,
251:6, 274:1, 276:8,
286:13, 289:21,
297:25, 299:9,
301:17, 303:12
**moved** [1] - 180:20
**moves** [1] - 164:7
**moving** [1] - 14:20
**MP** [1] - 83:15
**MPD** [1] - 98:3
**MS** [346] - 2:10, 2:12,
2:15, 2:22, 3:6, 3:19,
3:24, 4:11, 4:18, 5:5,
5:17, 5:20, 5:22,
5:25, 6:3, 6:5, 6:22,
7:2, 7:12, 7:22, 8:16,
8:19, 8:22, 10:4,
10:6, 10:9, 10:10,
10:21, 10:24, 11:2,
11:9, 12:20, 12:24,
13:5, 13:6, 13:16,
13:25, 14:7, 14:12,
14:14, 14:16, 14:24,
15:1, 15:9, 15:14,
15:21, 16:2, 16:16,
16:25, 17:2, 17:5,
17:11, 17:23, 18:1,
18:5, 18:11, 18:14,
18:22, 19:5, 19:8,
19:11, 19:18, 19:24,
20:21, 21:7, 21:13,
21:17, 21:25, 22:4,
22:9, 22:14, 22:16,
22:23, 23:9, 23:11,
23:18, 24:3, 24:7,
26:7, 26:19, 27:12,
27:14, 27:18, 28:4,
28:9, 28:14, 28:22,
29:2, 29:7, 29:17,
29:19, 29:21, 30:5,
31:8, 31:18, 31:22,
32:9, 32:13, 32:18,
33:4, 33:10, 33:15,
33:18, 34:4, 34:13,
34:19, 34:23, 35:14,

35:19, 35:20, 35:24,
36:2, 36:6, 36:10,
36:13, 36:24, 36:25,
37:4, 37:6, 37:25,
38:6, 38:8, 38:11,
38:13, 39:5, 39:12,
39:13, 39:15, 39:19,
39:21, 39:23, 53:14,
53:17, 56:15, 56:19,
56:25, 57:5, 57:12,
57:14, 57:20, 73:10,
78:2, 78:10, 78:18,
79:2, 79:11, 79:16,
81:1, 81:3, 81:10,
84:20, 84:23, 85:2,
85:11, 85:12, 89:5,
89:7, 89:10, 89:13,
90:15, 90:18, 94:5,
94:11, 94:14, 95:11,
95:12, 99:9, 99:12,
99:15, 99:22,
103:22, 103:24,
103:25, 104:2,
104:4, 104:5, 107:5,
107:10, 107:15,
110:20, 110:25,
111:6, 112:9,
112:10, 112:13,
112:21, 118:23,
118:24, 118:25,
119:1, 119:10,
119:13, 122:16,
122:23, 123:4,
123:12, 132:22,
133:22, 134:1,
136:7, 136:11,
136:13, 144:13,
144:21, 145:4,
145:19, 146:9,
146:16, 146:21,
152:2, 152:3,
152:11, 152:13,
152:22, 152:24,
153:2, 154:1,
154:11, 154:13,
155:3, 155:5,
155:16, 155:19,
155:22, 157:24,
158:1, 158:5, 159:7,
161:2, 161:4, 161:5,
161:17, 161:20,
161:22, 162:8,
162:10, 162:20,
164:7, 164:8,
164:10, 168:23,
169:2, 179:20,
179:23, 180:7,
180:11, 180:16,
188:9, 188:16,
188:18, 188:19,
188:25, 189:18,

193:9, 193:12,
193:15, 193:20,
193:23, 196:14,
196:19, 196:22,
200:8, 200:14,
200:17, 203:21,
203:22, 206:3,
206:4, 213:16,
213:21, 213:24,
214:4, 214:7,
214:11, 214:19,
216:6, 222:5,
222:10, 222:25,
229:7, 229:18,
230:4, 230:6,
230:10, 235:11,
235:13, 235:15,
235:24, 236:6,
236:8, 238:17,
238:19, 242:5,
242:6, 242:9,
242:17, 251:6,
251:9, 256:13,
256:17, 256:19,
256:22, 256:23,
259:13, 259:15,
259:16, 263:19,
263:20, 265:4,
266:9, 266:14,
267:10, 267:14,
270:3, 270:4,
270:10, 270:13,
270:16, 270:18,
274:1, 274:2, 274:4,
280:23, 280:25,
281:6, 286:13,
286:15, 286:20,
289:21, 289:23,
291:19, 291:24,
292:1, 297:25,
298:1, 298:6,
298:21, 299:14,
299:17, 299:23,
300:23, 301:17,
301:19, 303:12,
303:14, 303:16
**MSPB** [1] - 83:16
**mugged** [3] - 192:3,
192:4, 241:1
**mugging** [1] - 241:19
**Muhangi** [4] - 8:3,
10:25, 56:20, 57:6
**multiple** [2] - 50:16,
88:8
**murky** [1] - 232:25
**must** [14] - 45:5,
64:21, 64:22, 64:24,
65:5, 65:6, 65:7,
65:8, 173:5, 226:11,
226:12, 226:14,

278:21

# N

**name** [42] - 8:3, 30:23, 31:25, 32:5, 32:8, 32:17, 33:2, 33:7, 33:14, 33:24, 34:5, 34:8, 34:16, 34:20, 35:15, 35:18, 35:23, 35:25, 36:1, 36:5, 36:9, 36:14, 36:19, 36:21, 36:23, 46:13, 47:24, 48:2, 174:15, 174:17, 174:18, 264:21, 264:22, 283:9, 283:14, 283:18, 290:22
**named** [3] - 8:2, 55:24, 56:12
**names** [14] - 2:20, 9:18, 31:23, 53:20, 55:21, 56:2, 56:6, 56:9, 56:14, 56:21, 56:24, 56:25, 57:10, 290:21
**narcotics** [2] - 96:13, 97:15
**NASA** [2] - 263:12
**Nathan** [1] - 43:5
**national** [3] - 86:12, 87:4, 90:2
**National** [4] - 217:3, 217:9, 217:11, 217:16
**nature** [10] - 26:8, 71:2, 71:7, 88:13, 204:15, 220:4, 221:16, 236:7, 236:9, 237:15
**near** [2] - 131:10, 246:5
**necessarily** [2] - 104:24, 258:16
**necessary** [5] - 27:8, 41:25, 42:16, 130:10, 213:19
**need** [38] - 3:2, 7:17, 10:20, 15:20, 17:13, 20:25, 26:24, 27:11, 27:15, 28:5, 31:10, 31:14, 32:3, 32:17, 34:21, 41:14, 44:10, 56:17, 82:11, 107:3, 119:8, 123:21, 152:21, 152:24, 152:25, 153:2, 155:5, 155:21, 158:13, 158:16, 162:10, 162:14,

178:18, 179:5, 195:4, 196:25, 212:2, 300:3
**needed** [6] - 21:3, 21:24, 23:19, 45:8, 155:8, 200:25
**needing** [1] - 171:22
**needs** [8] - 24:20, 107:13, 123:7, 159:3, 159:14, 161:14, 162:15, 177:11
**negative** [1] - 20:5
**neighbor** [1] - 157:11
**neighborhood** [3] - 150:17, 150:18, 158:18
**nephew** [19] - 232:25, 233:10, 233:21, 235:4, 235:17, 235:18, 236:6, 236:9, 236:13, 237:1, 237:3, 237:21, 292:15, 292:17, 293:2, 293:4, 293:7, 293:15
**nephew's** [1] - 234:8
**nervous** [6] - 120:11, 121:6, 121:7, 121:9, 164:3, 272:11
**network** [1] - 221:16
**networking** [6] - 70:3, 70:8, 101:13, 101:24, 178:7, 221:12
**neurologist** [1] - 264:24
**never** [13] - 35:15, 74:16, 92:5, 92:7, 133:15, 152:7, 154:18, 185:8, 211:25, 221:24, 240:13, 244:17
**New** [10] - 1:14, 91:14, 91:24, 191:10, 192:7, 208:22, 209:2, 209:23, 209:24, 210:24
**new** [4] - 18:2, 18:3, 204:25, 271:25
**news** [1] - 272:25
**newspaper** [1] - 149:5
**newspapers** [1] - 300:7
**next** [42] - 12:5, 45:3, 47:2, 58:17, 59:4, 73:25, 74:4, 86:8, 86:14, 86:15, 87:3, 89:4, 90:1, 90:6, 105:21, 106:7,

138:11, 138:13, 153:11, 155:24, 156:14, 170:15, 170:16, 176:1, 178:4, 189:19, 190:14, 194:18, 197:14, 206:11, 206:21, 207:6, 207:12, 207:14, 235:1, 243:4, 253:21, 264:14, 287:20, 288:3, 288:5, 295:9
**NGA** [1] - 217:25
**nice** [3] - 81:25, 181:18, 181:19
**niece** [8] - 291:7, 291:8, 291:10, 293:22, 294:5, 294:17, 297:5, 297:8
**night** [4] - 91:25, 175:25, 219:22, 239:22
**NIH** [2] - 137:6, 137:7
**nine** [6] - 140:11, 157:10, 293:25, 294:3, 294:4, 294:24
**nobody** [3] - 157:5, 157:12, 302:20
**noise** [1] - 114:16
**nomination** [1] - 259:1
**nominations** [2] - 258:21, 258:22
**nonchallenge** [1] - 20:14
**none** [8] - 8:24, 31:5, 65:13, 65:17, 80:5, 235:11, 235:12
**nonfamily** [1] - 151:4
**nonprofit** [2] - 258:10, 258:11
**noon** [1] - 253:23
**normal** [1] - 3:14
**normally** [3] - 159:22, 195:1, 272:15
**North** [1] - 264:25, 265:1
**Northern** [1] - 209:2
**northwest** [1] - 232:8
**Northwest** [2] - 55:8, 55:16
**Nos** [4] - 95:21, 147:22, 271:2, 282:22
**note** [4] - 31:8, 122:7, 122:10, 213:24
**notes** [1] - 304:9
**nothing** [25] - 15:15, 23:13, 29:7, 39:16, 76:10, 89:13, 95:12,

97:7, 104:4, 108:25, 112:9, 127:12, 150:19, 152:2, 153:15, 157:20, 172:23, 188:19, 193:20, 205:16, 220:1, 232:11, 254:18, 260:24, 261:1
**notice** [1] - 302:17
**noticed** [1] - 123:1
**now-husband** [1] - 235:4
**nowhere** [1] - 271:23
**nuisance** [1] - 272:15
**null** [1] - 304:12
**number** [26] - 40:2, 41:4, 46:14, 46:22, 47:2, 47:10, 47:12, 47:23, 47:25, 48:1, 51:6, 51:23, 55:20, 56:8, 138:16, 159:7, 162:1, 179:2, 207:22, 208:19, 209:22, 244:25, 245:9, 245:12, 246:18, 264:20
**Number** [1] - 89:18
**numbers** [5] - 30:23, 137:4, 173:20, 179:1, 300:24
**numeration** [1] - 170:13
**NW** [1] - 1:18

# O

**o'clock** [1] - 37:22
**oath** [2] - 48:12, 48:24
**object** [4] - 99:19, 155:16, 235:24, 286:20
**objection** [7] - 34:24, 107:10, 122:23, 123:1, 123:2, 157:24, 162:12
**objective** [6] - 132:8, 133:2, 247:3, 247:4, 247:7, 249:25
**objects** [1] - 238:19
**obligated** [1] - 32:5
**obligation** [2] - 64:10, 64:16
**obligations** [3] - 89:4, 90:1, 260:21
**obtain** [4] - 20:16, 26:23, 27:6, 27:7
**obtaining** [1] - 171:19
**obvious** [2] - 200:16,

298:15
**obviously** [9] - 16:7, 33:2, 34:7, 114:17, 226:10, 226:11, 227:18, 237:21, 238:12
**occasion** [3] - 140:12, 140:24, 175:15
**occasional** [1] - 237:8
**occasionally** [2] - 231:18, 258:15
**occasions** [6] - 50:17, 141:5, 142:11, 144:18, 216:8, 279:13
**occupation** [2] - 46:14, 258:2
**occupied** [1] - 253:9
**occur** [3] - 86:21, 92:15, 115:23
**occurred** [7] - 71:11, 71:16, 109:16, 227:22, 236:20, 273:9, 297:9
**occurs** [1] - 86:22
**oceanography** [1] - 178:14
**October** [11] - 1:5, 18:6, 18:8, 18:16, 18:25, 19:2, 21:22, 22:21, 154:10, 154:12, 155:1
**OF** [2] - 1:1, 1:7
**offense** [5] - 5:8, 66:9, 66:15, 192:21, 233:4
**offenses** [1] - 166:18
**offer** [3] - 5:18, 5:24, 6:15
**offhand** [1] - 74:8
**Office** [15] - 10:11, 53:6, 54:1, 60:15, 60:16, 61:16, 61:22, 77:21, 137:1, 137:9, 149:23, 182:13, 206:24, 208:13, 261:19
**office** [16] - 17:17, 45:1, 60:19, 80:2, 88:4, 93:24, 93:25, 159:20, 160:11, 160:13, 161:14, 207:2, 240:2, 266:21, 292:13, 293:7
**officer** [42] - 60:14, 60:19, 63:7, 63:8, 63:10, 63:14, 63:15, 63:17, 76:21, 76:22, 77:4, 77:6, 80:21, 91:25, 97:22, 97:23,

98:14, 98:22, 98:25,
100:17, 101:2,
101:3, 101:5,
124:21, 125:2,
125:5, 125:19,
126:7, 126:9, 199:2,
199:7, 199:13,
261:10, 282:1,
292:15, 292:17,
295:12, 295:13,
295:22
**officer's** [1] - 80:10
**officers** [20] - 63:6,
63:13, 78:5, 79:3,
79:12, 97:20, 98:10,
98:12, 99:14, 99:17,
102:12, 102:14,
115:9, 115:13,
198:25, 209:23,
210:1, 210:5,
279:13, 295:10
**offices** [2] - 82:9,
149:10
**official** - 304:18
**Official** [1] - 1:23
**officially** [1] - 176:9
**officials** [1] - 207:4
**often** [6] - 83:22,
83:23, 166:6,
260:19, 266:25,
267:2
**oftentimes** [1] - 88:13
**Ogden** [2] - 56:19,
57:5
**Oklahoma** [5] -
171:14, 171:19,
174:21, 175:13,
175:17
**old** [24] - 50:13,
130:13, 157:9,
175:2, 175:3, 186:9,
202:13, 202:14,
204:11, 204:12,
236:6, 236:12,
236:13, 236:16,
236:17, 249:16,
273:8, 277:13,
280:7, 280:8, 297:8,
301:14, 302:15,
302:23
**older** [4] - 175:7,
180:13, 199:17,
211:4
**olds** [1] - 207:2
**omit** [1] - 9:18
**once** [5] - 14:1, 28:19,
78:11, 248:19,
248:20
**one** [119] - 7:15, 7:22,
8:1, 8:4, 8:20, 11:2,

11:17, 14:16, 14:23,
18:18, 31:19, 34:13,
37:4, 41:23, 42:2,
46:5, 56:4, 58:9,
58:22, 67:1, 67:11,
74:23, 74:24, 82:7,
82:8, 83:9, 83:17,
83:19, 83:20, 84:18,
86:14, 92:2, 92:24,
93:6, 95:2, 105:25,
106:1, 110:18,
112:16, 118:19,
120:22, 128:14,
130:8, 133:8,
135:11, 137:7,
140:12, 140:22,
140:24, 141:7,
149:18, 153:4,
153:5, 153:24,
154:6, 154:15,
157:1, 160:21,
168:21, 170:15,
170:16, 171:12,
173:19, 175:15,
179:7, 183:8, 187:9,
188:7, 195:5,
197:16, 199:5,
199:21, 200:6,
200:10, 204:11,
205:13, 205:18,
207:8, 209:1, 215:8,
215:13, 220:24,
224:22, 230:13,
230:25, 231:2,
232:15, 232:23,
245:11, 248:19,
249:10, 249:11,
249:14, 260:15,
264:22, 264:23,
267:18, 272:17,
277:20, 277:25,
280:25, 281:14,
283:5, 286:22,
288:2, 288:10,
288:15, 288:17,
302:3, 302:9,
302:22, 303:9,
303:22, 304:1
**One** [3] - 203:2, 203:4,
203:5
**one-step** [1] - 18:18
**ones** [1] - 210:9
**open** [16] - 6:9, 44:13,
47:25, 106:6, 195:2,
201:17, 227:19,
233:18, 234:21,
247:4, 248:10,
250:25, 273:15,
295:3, 296:13
**open-ended** [1] -

233:18
**open-minded** [1] -
247:4
**opened** [2] - 24:19,
194:23
**opening** [4] - 34:14,
34:21, 35:16, 86:16
**openings** [1] - 36:23
**openly** [1] - 143:12
**operations** [1] -
149:11
**ophthalmologist** [1] -
106:24
**opinion** [4] - 111:2,
112:16, 112:19,
220:24
**opinions** [4] - 64:23,
65:2, 65:7, 65:11
**opportunities** [1] -
97:1
**opportunity** [8] - 6:8,
20:4, 26:23, 27:1,
31:10, 47:14, 49:15
**oppose** [3] - 144:21,
146:9, 214:7
**opposed** [5] - 6:17,
18:19, 18:21, 36:5,
165:17
**opposition** [1] - 25:15
**ops** [1] - 102:25
**or..** [1] - 123:21
**oral** [10] - 37:23,
50:17, 50:18, 69:2,
69:3, 69:9, 69:10,
141:22, 141:23,
297:14
**order** [23] - 12:5,
14:18, 26:25, 37:11,
40:3, 72:10, 105:20,
107:12, 113:16,
124:14, 147:23,
155:17, 159:2,
159:4, 162:6, 165:8,
179:13, 206:19,
239:14, 264:18,
271:3, 275:2, 294:13
**ordered** [1] - 8:9
**ordinary** [1] - 35:11
**organization** [8] -
61:14, 61:20, 86:12,
90:2, 96:16, 149:5,
149:21, 261:17
**organizations** [6] -
62:19, 62:25, 98:1,
98:5, 99:16, 173:14
**orientations** [1] -
182:17
**oriented** [1] - 198:17
**originally** [1] - 80:13
**otherwise** [8] - 33:6,

52:2, 52:6, 52:11,
52:16, 82:13, 99:21,
189:13
**outline** [1] - 6:15
**outreach** [1] - 268:22
**outs** [1] - 11:16
**outside** [27] - 11:24,
30:12, 47:6, 47:15,
49:16, 51:9, 60:13,
72:2, 72:10, 73:4,
82:19, 85:16, 100:1,
105:2, 113:2, 119:4,
137:20, 147:11,
152:17, 153:18,
169:13, 180:1,
185:14, 188:22,
203:25, 232:8, 257:2
**overly** [1] - 122:18
**overnight** [1] - 301:12
**overseas** [1] - 173:2
**own** [12] - 60:22,
64:24, 65:2, 65:8,
65:10, 132:13,
149:9, 176:4,
187:16, 215:12,
234:1, 234:12
**owned** [1] - 110:13

## P

**p.m** [6] - 58:12, 58:23,
139:7, 300:17,
301:1, 304:3
**paid** [3] - 288:20,
288:22, 289:6
**painful** [2] - 174:5,
233:17
**painkillers** [2] -
175:20, 175:23
**pandemic** [10] - 24:25,
25:4, 25:24, 25:25,
26:6, 52:1, 52:5,
122:19, 157:2,
228:23
**panel** [15] - 18:17,
19:1, 20:12, 46:12,
58:2, 58:7, 86:16,
86:21, 87:1, 155:9,
182:10, 201:1,
214:15, 252:9, 283:3
**panic** [3] - 162:5,
271:21, 271:22
**panicky** [1] - 163:14
**paper** [15] - 13:21,
13:23, 14:3, 14:10,
14:11, 15:20, 42:4,
46:20, 46:22, 47:10,
51:4, 51:7, 55:24,
56:12, 162:25

**papers** [2] - 28:24,
82:25
**paragraph** [2] - 62:24,
129:3
**paragraphs** [1] -
274:25
**Paralegal** [4] - 1:21,
53:8, 53:12, 54:3
**paralegal** [4] - 60:2,
60:7, 254:17, 255:1
**pardon** [1] - 197:25
**parent's** [2] - 224:25,
225:6
**parents** [4] - 112:3,
174:25, 176:2,
289:17
**parents'** [1] - 224:23
**Park** [5] - 60:19
**parole** [5] - 60:19,
109:13, 110:22,
110:23, 111:10
**part** [14] - 27:14,
40:16, 45:4, 45:14,
96:9, 132:23,
132:24, 145:8,
171:17, 172:1,
172:24, 267:20,
268:16, 287:20
**participants** [3] -
51:25, 52:5, 120:25
**participate** [4] - 13:7,
25:24, 98:1, 163:19
**participation** [1] -
256:7
**particular** [14] - 11:12,
12:10, 24:13, 25:25,
40:3, 47:1, 64:20,
65:5, 93:10, 136:21,
209:1, 228:22,
269:2, 272:20
**particularly** [5] -
25:23, 41:24, 158:4,
224:6, 258:20
**particulars** [1] -
163:22
**parties** [6] - 15:4,
43:7, 46:14, 49:8,
71:3, 71:7
**partly** [1] - 172:12
**partner** [6] - 93:9,
197:21, 198:8,
198:11, 198:18,
268:24
**partners** [1] - 268:24
**party** [1] - 304:14
**passed** [1] - 11:18
**passing** [1] - 224:11
**past** [9] - 62:21, 63:3,
93:13, 142:5,
142:11, 145:2,

149:13, 173:17, 233:6

**patent** [2] - 77:20, 80:2

**Patent** [1] - 77:21

**paternity** [1] - 207:10

**patience** [18] - 40:3, 50:3, 156:3, 182:7, 216:18, 223:10, 231:4, 239:11, 243:1, 251:13, 252:4, 257:10, 264:11, 268:8, 274:22, 283:1, 287:14, 290:14

**patient** [3] - 3:11, 104:24, 266:20

**paved** [1] - 171:23

**pay** [10] - 52:2, 52:6, 52:11, 52:16, 111:14, 120:12, 121:16, 121:24, 122:20, 122:21

**paying** [3] - 46:7, 46:8, 121:18

**payment** [1] - 288:21

**peculiar** [1] - 21:8

**pediatric** [1] - 264:24

**pediatrician** [1] - 266:17

**pediatrics** [1] - 266:4

**penalties** [3] - 4:1, 5:1, 6:13

**penalty** [1] - 4:6

**pencil** [1] - 46:20

**pencils** [1] - 51:4

**Pennsylvania** [3] - 112:25, 113:1, 166:23

**people** [45] - 12:2, 21:15, 30:25, 32:2, 33:16, 38:23, 40:2, 41:4, 44:5, 44:8, 45:6, 55:20, 55:21, 55:24, 56:8, 56:9, 56:12, 73:3, 86:17, 104:16, 104:20, 104:22, 104:25, 114:5, 120:16, 120:22, 127:7, 129:22, 131:20, 132:5, 140:14, 140:23, 142:12, 148:16, 148:18, 153:11, 153:20, 159:23, 189:16, 205:20, 207:25, 222:7, 245:6, 264:20, 294:25

**people's** [2] - 148:7,
205:22

**per** [2] - 175:11, 191:14

**percent** [4] - 171:23, 247:17, 247:18, 247:19

**peremptories** [6] - 13:14, 13:16, 13:17, 13:19, 13:21, 13:24

**peremptory** [1] - 14:1

**perfect** [7] - 17:9, 20:16, 22:13, 27:16, 28:18, 276:10, 299:23

**perform** [9] - 46:6, 50:17, 69:2, 69:9, 141:22, 158:9, 173:5, 218:2, 222:21

**performance** [2] - 220:22, 297:14

**performed** [4] - 60:2, 60:7, 171:21, 221:17, 221:19

**performing** [1] - 98:6

**perhaps** [5] - 12:5, 29:13, 33:1, 80:18, 238:9

**period** [6] - 8:9, 8:10, 24:21, 155:7, 205:15

**periods** [2] - 122:2, 122:12

**permanent** [2] - 156:16, 157:7

**permission** [1] - 31:12

**persist** [1] - 238:16

**persistent** [1] - 24:21

**person** [62] - 14:22, 15:5, 29:24, 32:11, 32:12, 43:1, 59:20, 59:23, 61:14, 61:20, 65:12, 65:16, 68:16, 68:21, 75:7, 76:22, 83:17, 83:19, 83:20, 97:23, 98:18, 114:20, 115:21, 117:6, 149:21, 154:15, 162:6, 162:21, 174:9, 177:13, 189:6, 189:9, 189:19, 199:6, 210:19, 219:10, 219:16, 222:5, 222:14, 225:12, 229:11, 230:13, 230:14, 245:4, 247:4, 247:24, 247:25, 250:4, 256:18, 261:17, 265:3, 265:4, 265:5, 279:3,
283:25, 286:21, 286:25, 287:3, 292:2, 295:21, 300:21

**person's** [5] - 32:8, 33:14, 225:16, 283:9, 283:18

**personal** [9] - 47:18, 49:2, 49:16, 90:20, 97:25, 132:13, 143:1, 143:8, 143:16

**personality** [1] - 224:25

**personally** [5] - 64:24, 65:9, 140:7, 219:3, 222:17

**persons** [6] - 52:10, 52:15, 62:22, 63:4, 173:6, 173:18

**perspective** [2] - 9:22, 144:15

**persuaded** [4] - 68:5, 68:9, 129:5, 129:13

**petit** [3] - 21:15, 256:13, 302:2

**Phi** [3] - 85:5, 85:7, 85:8

**Philadelphia** [4] - 87:9, 87:10, 87:13, 108:18

**Phoenix** [2] - 100:18, 100:19

**phone** [22] - 11:12, 11:16, 11:20, 14:25, 15:3, 15:6, 23:6, 74:9, 74:21, 81:21, 82:10, 91:15, 92:5, 178:23, 178:24, 197:17, 221:15, 281:21, 281:24, 282:3, 282:7

**phones** [3] - 50:23, 50:25, 101:13

**photo** [1] - 227:2, 229:19

**photocopied** [1] - 304:13

**photograph** [3] - 32:20, 67:6, 67:15

**photographs** [15] - 50:20, 50:22, 50:23, 50:25, 59:11, 59:16, 67:2, 67:3, 67:11, 67:12, 226:7, 227:13, 275:6, 296:14, 297:18

**photos** [9] - 226:11, 226:14, 226:24, 227:3, 227:7, 229:8, 229:16, 229:22,
298:10

**phrase** [1] - 177:2

**physical** [6] - 59:8, 59:13, 178:13, 237:20, 271:5, 275:4

**physically** [1] - 244:24

**physician** [1] - 266:1

**pick** [3] - 28:21, 225:6, 289:17

**picked** [1] - 159:14

**Pickney** [2] - 55:7, 55:16

**pictures** [3] - 296:17, 296:19, 296:23

**piece** [6] - 13:23, 14:3, 14:10, 14:11, 200:10, 286:22

**pieces** [1] - 171:22

**Pinckney** [1] - 1:18

**place** [7] - 3:14, 175:25, 207:16, 208:13, 231:3, 271:14, 274:20

**placed** [1] - 8:8

**places** [1] - 40:8

**plan** [8] - 19:19, 20:2, 20:11, 34:5, 87:2, 158:15, 158:16, 299:12

**planned** [1] - 194:17

**planner** [1] - 84:11

**planning** [7] - 35:14, 35:16, 86:17, 86:25, 87:12, 90:10, 133:15

**planted** [1] - 226:24

**plastic** [1] - 194:21

**plays** [1] - 233:23

**plea** [12] - 5:18, 5:23, 6:4, 6:15, 6:19, 6:20, 6:22, 7:6, 277:3, 277:4, 277:5, 277:6

**plead** [2] - 277:4, 277:8

**pleadings** [1] - 34:9

**pleasant** [2] - 142:10, 253:16

**plexiglas** [3] - 42:2, 44:8, 44:9

**PLLC** [1] - 1:18

**plus** [1] - 236:22

**podium** [12] - 3:4, 30:16, 51:11, 55:11, 57:13, 113:8, 147:17, 162:24, 169:18, 201:4, 204:5, 287:12

**point** [13] - 3:24, 4:13, 11:3, 22:18, 26:21, 27:7, 43:20, 72:13, 174:24, 224:3,
224:7, 237:22, 272:1

**points** [3] - 12:14, 64:23, 65:7

**police** [38] - 60:12, 60:14, 78:5, 79:3, 79:12, 91:20, 91:25, 92:11, 98:4, 98:12, 98:14, 99:13, 99:17, 100:23, 101:2, 101:3, 115:12, 150:15, 185:1, 185:3, 209:23, 210:1, 210:5, 220:1, 229:9, 229:23, 232:13, 246:1, 261:10, 279:1, 279:13, 281:3, 281:13, 282:1, 292:15, 292:17, 293:3, 293:7

**Police** [6] - 60:19, 98:2, 100:18, 255:2, 255:7, 255:12

**policies** [1] - 173:6

**policymakers** [1] - 97:9

**polite** [1] - 15:12

**polling** [2] - 25:22, 26:2

**pool** [4] - 25:2, 25:11, 25:13, 32:19

**pools** [1] - 148:16

**porn** [1] - 146:3

**pornography** [29] - 50:8, 65:13, 65:15, 65:17, 65:19, 65:21, 66:2, 66:9, 66:11, 66:14, 66:16, 66:19, 66:23, 67:8, 67:17, 67:21, 68:1, 116:11, 116:25, 139:25, 141:15, 144:23, 146:3, 147:2, 247:12, 296:6, 296:10, 297:19, 298:9

**pornography-related** [2] - 66:9, 66:14

**Porter** [1] - 254:17

**pose** [4] - 86:8, 156:23, 240:17, 287:18

**posing** [1] - 17:18

**position** [24] - 16:20, 20:22, 20:23, 26:9, 34:25, 62:23, 63:4, 88:15, 122:25, 123:2, 162:18, 173:18, 180:10, 193:14, 193:21,

200:13, 213:23, 214:6, 215:8, 251:7, 251:8, 269:16, 296:11
**positions** [1] - 44:6
**possession** [9] - 8:7, 50:7, 65:15, 65:19, 66:10, 66:16, 226:14, 229:9, 229:23
**possibilities** [1] - 207:1
**possibility** [5] - 127:11, 129:16, 207:15, 208:4, 234:25
**possible** [12] - 3:13, 7:16, 40:22, 41:1, 44:20, 49:7, 74:11, 81:20, 156:10, 196:8, 234:14, 254:10
**possibly** [4] - 9:18, 207:20, 212:11, 234:5
**Post** [3] - 14:22, 148:23, 204:22
**post** [2] - 104:18, 228:23
**post-pandemic** [1] - 228:23
**postponed** [1] - 254:6
**posture** [2] - 235:2, 298:14
**potential** [3] - 9:20, 56:16, 228:3
**potentially** [4] - 35:7, 271:19, 273:1, 273:3
**power** [1] - 45:16
**practice** [8] - 9:24, 132:20, 133:1, 149:10, 159:22, 266:25, 267:3, 267:6
**practiced** [3] - 240:12, 267:4, 267:11
**practices** [3] - 171:21, 243:13, 267:11
**practicing** [5] - 165:14, 208:25, 209:9, 243:15
**pre-18** [1] - 248:19
**preacceptance** [1] - 4:4
**precautions** [6] - 33:12, 36:17, 43:9, 43:12, 43:18, 120:9
**precisely** [3] - 148:13, 183:19, 237:15
**precursor** [1] - 143:5
**predicted** [3] - 58:8,

58:20, 288:1
**prefer** [7] - 2:9, 3:12, 47:24, 119:18, 119:19, 182:3, 215:12
**pregnant** [1] - 74:2
**prejudge** [1] - 193:5
**prejudged** [1] - 200:10
**prejudice** [5] - 8:22, 10:3, 10:21, 10:22, 10:24
**prejudiced** [1] - 9:10
**prejudices** [1] - 49:10
**prejudicial** [1] - 12:11
**preliminary** [7] - 3:5, 3:16, 3:21, 7:22, 13:2, 39:9, 299:10
**premature** [1] - 24:5
**preoccupied** [3] - 90:7, 238:5, 238:8
**preoccupying** [1] - 238:2
**preparation** [1] - 9:23
**prepare** [3] - 12:5, 21:11, 155:14
**prepared** [5] - 2:7, 20:21, 27:18, 27:19, 163:7
**prescription** [1] - 176:8
**presence** [4] - 4:20, 47:6, 47:15, 49:17
**PRESENT** [1] - 1:21
**present** [6] - 62:22, 63:3, 64:10, 64:17, 173:17, 291:12
**presentation** [4] - 58:9, 58:14, 58:21, 59:1
**presented** [16] - 46:3, 71:5, 71:9, 93:18, 95:2, 103:15, 132:2, 143:15, 151:13, 176:21, 187:17, 215:5, 226:24, 234:21, 239:2, 294:16
**preserve** [2] - 17:3, 21:3
**preserved** [3] - 21:5, 28:16, 29:3
**preserving** [1] - 29:1
**presiding** [1] - 2:4
**press** [4] - 130:11, 130:24, 258:9
**pressed** [1] - 244:17
**presumably** [1] - 33:2
**presumed** [12] - 37:14, 37:20, 38:3, 38:18, 39:3, 39:8,

51:2, 64:9, 64:15, 94:16, 95:4, 193:17
**presumption** [1] - 286:17
**pretrial** [3] - 4:8, 4:9, 4:13
**pretty** [8] - 24:12, 100:7, 143:12, 165:2, 189:16, 208:13, 262:11, 282:20
**Prettyman** [1] - 41:8
**prevent** [9] - 59:19, 59:22, 62:20, 63:1, 71:12, 71:17, 173:15, 214:1, 227:23
**preview** [3] - 24:10, 25:14, 25:19
**previous** [2] - 173:21, 228:2
**previously** [5] - 20:3, 96:14, 97:14, 170:10, 259:8
**price** [3] - 246:11, 246:13, 246:15
**primarily** [2] - 255:9, 268:22
**primary** [1] - 266:5
**prime** [1] - 179:1
**Prince** [1] - 241:14
**prison** [1] - 6:17
**privacy** [2] - 29:25, 49:5
**private** [11] - 60:11, 61:2, 61:16, 61:17, 61:22, 61:23, 96:4, 110:11, 149:23, 254:24, 261:19
**privately** [1] - 42:15
**Probate** [1] - 231:14
**probation** [6] - 8:9, 60:19, 128:14, 276:25, 277:1, 279:11
**probative** [2] - 12:11, 12:15
**problem** [14] - 4:18, 20:7, 20:24, 22:1, 38:5, 127:3, 134:10, 156:23, 161:25, 181:17, 189:12, 189:14, 226:10, 275:25
**problems** [14] - 26:24, 29:3, 59:8, 59:13, 59:14, 126:21, 159:17, 162:12, 271:5, 275:4, 300:19
**procedurally** [2] -

162:14, 162:16
**procedure** [3] - 4:7, 48:19, 301:11
**proceed** [3] - 4:19, 5:4, 73:9
**proceeding** [4] - 40:1, 45:3, 300:16, 304:3
**Proceedings** [1] - 1:24
**proceedings** [4] - 43:3, 107:13, 224:23, 304:10
**process** [23] - 14:5, 18:18, 18:19, 18:21, 25:4, 25:18, 30:8, 40:24, 42:20, 45:3, 47:22, 48:3, 50:3, 72:25, 109:19, 117:14, 128:21, 167:7, 179:6, 238:8, 256:7, 272:18, 301:5
**processes** [1] - 259:1
**produce** [2] - 16:14, 19:17
**produced** [1] - 1:25
**product** [3] - 202:23, 203:1, 203:3
**production** [10] - 10:15, 50:7, 66:10, 66:15, 67:7, 67:16, 67:21, 68:1, 116:11, 116:25
**proficiency** [3] - 11:18, 11:24
**program** [1] - 156:25
**programmed** [1] - 179:11
**programmer** [2] - 179:10, 179:11
**programming** [7] - 70:2, 70:7, 101:13, 178:6, 179:7, 179:8, 221:11
**programs** [1] - 168:10
**Progress** [2] - 258:6, 258:7
**Project** [1] - 98:3
**project** [2] - 98:3, 203:10
**projects** [1] - 137:7
**promise** [2] - 21:14, 275:19
**promptly** [1] - 156:9
**prone** [1] - 271:21
**prong** [1] - 24:11
**proof** [5] - 38:14, 63:20, 64:2, 225:22, 296:14
**proper** [1] - 130:11
**properly** [3] - 26:22, 28:16, 29:3

**property** [2] - 276:23, 278:11
**proportion** [1] - 272:16
**prosecution** [6] - 63:19, 63:21, 64:1, 64:3, 225:22, 225:24
**prosecutors** [4] - 115:10, 115:15, 115:16, 185:20
**prospective** [113] - 19:3, 29:15, 30:15, 31:5, 32:19, 39:20, 39:25, 40:5, 40:17, 41:2, 41:9, 41:10, 42:3, 42:8, 47:7, 47:16, 48:4, 48:12, 49:17, 49:19, 51:16, 58:2, 58:7, 71:25, 72:6, 72:7, 82:21, 82:22, 85:18, 85:19, 90:21, 90:22, 95:16, 95:17, 100:3, 100:4, 105:5, 105:6, 107:25, 108:1, 113:5, 113:6, 119:6, 119:14, 121:2, 124:3, 124:4, 134:18, 134:19, 137:21, 137:22, 147:14, 147:15, 155:25, 158:25, 159:9, 161:16, 162:22, 164:22, 164:23, 169:15, 169:16, 181:22, 181:23, 182:10, 184:24, 189:20, 194:5, 194:6, 197:5, 197:6, 200:23, 201:2, 204:2, 204:3, 206:9, 206:10, 216:3, 216:13, 230:20, 230:21, 242:15, 242:16, 251:22, 251:23, 252:9, 257:4, 257:5, 259:21, 259:22, 263:24, 263:25, 267:24, 267:25, 270:9, 270:22, 274:14, 274:15, 282:16, 282:17, 283:3, 283:5, 287:9, 287:10, 290:7, 290:8, 292:3, 299:2, 300:25, 302:7, 302:8, 303:24
**PROSPECTIVE** [954] - 60:20, 60:23, 73:16,

73:18, 74:2, 74:7,
74:14, 74:20, 74:22,
75:5, 75:9, 75:13,
75:17, 75:22, 76:3,
76:6, 76:8, 76:14,
76:17, 76:23, 77:7,
77:14, 77:17, 77:20,
77:23, 79:20, 79:23,
79:25, 80:3, 80:7,
80:13, 80:19, 80:23,
81:18, 81:22, 81:24,
82:4, 82:12, 82:16,
82:20, 83:2, 83:9,
83:14, 83:19, 83:22,
84:1, 84:8, 84:11,
84:16, 85:5, 85:7,
85:15, 85:25, 86:11,
86:15, 86:22, 86:24,
87:6, 87:8, 87:11,
87:14, 87:23, 88:1,
88:5, 88:7, 88:12,
89:19, 89:24, 90:4,
90:8, 90:13, 91:2,
91:5, 91:13, 91:18,
91:21, 91:23, 92:6,
92:9, 92:14, 92:17,
92:21, 92:23, 93:7,
93:9, 93:16, 93:19,
93:23, 93:25, 94:25,
95:5, 95:8, 95:23,
95:25, 96:7, 96:21,
97:3, 97:5, 97:11,
97:18, 97:25, 98:20,
99:1, 99:4, 100:2,
100:7, 100:16,
100:21, 100:24,
101:6, 101:10,
101:16, 101:19,
101:22, 101:25,
102:3, 102:10,
102:13, 102:17,
102:24, 103:5,
103:8, 103:10,
103:17, 104:9,
104:11, 104:13,
104:15, 104:22,
105:4, 105:13,
105:17, 105:24,
106:5, 106:15,
106:18, 106:21,
106:23, 107:19,
107:23, 108:7,
108:11, 108:16,
108:21, 108:24,
109:5, 109:11,
109:17, 109:20,
109:25, 110:4,
110:7, 110:10,
110:12, 110:16,
111:12, 111:19,
111:22, 112:1,

112:25, 113:3,
113:11, 113:14,
113:17, 113:22,
113:24, 114:3,
114:6, 114:14,
114:21, 114:24,
115:4, 115:6,
115:11, 115:14,
115:17, 115:19,
115:24, 116:2,
116:6, 116:13,
116:23, 117:5,
117:11, 117:19,
117:23, 118:4,
118:7, 118:9,
118:13, 118:17,
118:19, 119:5,
119:19, 119:23,
119:25, 120:2,
120:6, 120:10,
120:13, 120:19,
121:4, 121:6,
121:10, 121:12,
121:17, 121:22,
122:3, 122:7,
122:11, 123:17,
123:20, 123:25,
124:9, 124:15,
124:20, 125:3,
125:6, 125:9,
125:11, 125:14,
125:16, 125:22,
126:2, 126:8,
126:11, 126:13,
126:15, 126:17,
126:21, 127:2,
127:9, 127:15,
127:24, 128:2,
128:7, 128:11,
128:13, 128:18,
128:22, 129:10,
129:14, 129:19,
129:24, 130:6,
130:15, 130:19,
131:1, 131:5, 131:7,
131:12, 131:16,
132:3, 132:15,
132:19, 133:1,
133:10, 133:14,
134:10, 134:16,
134:24, 135:2,
135:6, 135:9,
135:11, 135:13,
135:16, 135:18,
135:22, 136:1,
136:20, 136:23,
137:5, 137:13,
137:16, 138:1,
138:4, 138:8,
138:13, 138:20,
138:23, 138:25,

139:3, 139:6,
139:13, 139:16,
139:21, 140:3,
140:8, 140:10,
140:13, 140:17,
140:21, 141:1,
141:4, 141:6,
141:18, 142:2,
142:7, 142:15,
142:17, 142:19,
143:1, 143:10,
143:22, 144:1,
144:3, 144:6, 144:9,
147:8, 147:13,
147:20, 148:3,
148:10, 148:15,
148:22, 149:2,
149:6, 149:9,
149:17, 150:1,
150:7, 150:12,
150:16, 150:23,
151:2, 151:8,
151:14, 151:17,
151:21, 152:18,
156:4, 156:6,
156:11, 156:15,
157:1, 157:7,
157:10, 157:14,
158:11, 158:13,
158:17, 158:22,
158:24, 159:16,
160:18, 161:11,
161:15, 163:4,
163:11, 163:15,
163:21, 164:18,
164:21, 164:25,
165:3, 165:5,
165:13, 165:18,
165:21, 165:24,
166:1, 166:4, 166:6,
166:10, 166:16,
166:21, 166:23,
166:25, 167:3,
167:5, 167:10,
167:17, 167:22,
168:2, 168:5, 168:9,
168:13, 168:15,
168:18, 169:6,
169:8, 169:11,
169:14, 169:22,
170:4, 170:8,
170:16, 170:19,
171:2, 171:9, 172:1,
172:7, 172:18,
172:23, 173:4,
173:12, 173:19,
173:23, 174:4,
174:7, 175:3, 175:6,
176:22, 176:25,
177:9, 177:21,
178:12, 179:16,

181:13, 181:17,
181:21, 181:25,
182:5, 182:12,
182:16, 182:19,
182:23, 183:1,
183:3, 183:6, 183:8,
183:11, 183:18,
183:21, 183:25,
184:5, 184:11,
184:15, 184:18,
184:23, 185:3,
185:7, 185:10,
185:13, 185:17,
185:21, 185:25,
186:4, 186:8,
186:11, 186:16,
186:19, 186:22,
186:24, 187:6,
187:12, 187:19,
187:25, 188:6,
188:23, 189:24,
190:3, 190:10,
190:12, 190:16,
190:19, 190:21,
191:2, 191:5,
191:10, 191:15,
191:19, 191:22,
192:2, 192:6, 192:9,
192:13, 192:17,
192:24, 193:3,
194:4, 194:10,
194:19, 195:1,
195:7, 195:12,
195:15, 195:18,
195:23, 196:1,
196:5, 196:7,
196:10, 197:3,
197:16, 197:21,
197:25, 198:2,
198:5, 198:9,
198:13, 198:19,
198:21, 198:23,
199:3, 199:8,
199:11, 199:14,
199:16, 199:20,
199:24, 200:1,
200:3, 200:5,
200:22, 201:7,
201:14, 201:16,
201:21, 201:23,
202:2, 202:8,
202:11, 202:13,
202:16, 202:21,
202:23, 203:1,
203:4, 203:7,
203:10, 203:13,
203:16, 204:1,
204:11, 204:13,
204:18, 204:21,
204:24, 205:1,
205:4, 205:8,

205:12, 205:24,
206:8, 206:16,
206:24, 207:9,
207:13, 207:20,
208:2, 208:11,
208:19, 209:1,
209:5, 209:7,
209:10, 209:18,
209:22, 210:2,
210:6, 210:11,
210:16, 210:21,
210:23, 210:25,
211:4, 211:7,
211:10, 211:13,
211:16, 211:19,
211:23, 212:1,
212:9, 212:18,
212:22, 213:2,
213:4, 213:7,
213:13, 214:24,
215:2, 215:7,
215:10, 215:14,
215:17, 215:21,
215:25, 216:17,
216:22, 217:2,
217:9, 217:12,
217:15, 217:19,
217:21, 217:25,
218:5, 218:9,
218:11, 218:16,
218:22, 219:5,
219:7, 219:11,
219:17, 219:20,
219:25, 220:3,
220:8, 220:11,
220:16, 220:19,
220:23, 221:4,
221:7, 221:13,
221:19, 221:23,
222:1, 222:15,
222:17, 222:22,
223:11, 223:15,
223:21, 223:25,
224:11, 224:21,
225:2, 225:5,
225:11, 225:13,
225:18, 225:20,
226:3, 226:19,
227:5, 227:8,
227:11, 227:14,
227:18, 228:1,
228:6, 228:10,
228:16, 228:19,
228:22, 229:1,
230:16, 230:19,
230:25, 231:2,
231:6, 231:13,
231:18, 231:21,
232:1, 232:6,
232:10, 232:14,
232:16, 232:18,

232:23, 233:3,
233:9, 233:12,
233:15, 233:20,
234:4, 234:7,
234:22, 236:15,
236:18, 237:2,
237:6, 237:17,
237:19, 238:4,
239:8, 239:20,
239:25, 240:5,
240:8, 240:13,
240:19, 241:1,
241:5, 241:8,
241:10, 241:13,
241:16, 241:20,
241:22, 242:1,
242:14, 242:22,
242:25, 243:10,
243:12, 243:14,
243:17, 243:20,
243:24, 244:4,
244:11, 244:16,
244:20, 244:23,
245:5, 245:7, 245:9,
245:14, 245:25,
246:2, 246:12,
246:18, 246:21,
247:2, 247:14,
247:25, 248:5,
248:8, 248:13,
248:18, 248:25,
249:5, 249:14,
249:19, 249:23,
250:10, 250:12,
250:14, 250:21,
251:15, 251:18,
251:21, 252:2,
252:5, 252:11,
252:13, 252:15,
252:18, 252:23,
253:1, 253:3, 253:8,
253:15, 253:18,
253:22, 253:25,
254:4, 254:8,
254:11, 254:16,
254:25, 255:5,
255:9, 255:15,
255:21, 256:1,
256:3, 256:9, 257:3,
257:9, 257:15,
257:19, 257:22,
258:1, 258:5, 258:9,
258:12, 258:15,
258:20, 258:24,
259:5, 259:10,
259:20, 259:25,
260:4, 260:6,
260:11, 260:15,
260:19, 260:24,
261:4, 261:9,
261:13, 261:21,

262:1, 262:6,
262:10, 262:15,
262:19, 262:24,
263:3, 263:6,
263:11, 263:16,
264:3, 264:7, 264:9,
264:12, 264:16,
264:22, 265:6,
265:12, 265:17,
265:19, 265:24,
266:1, 266:4,
266:20, 267:1,
267:5, 267:17,
267:23, 268:6,
268:14, 268:20,
269:4, 269:10,
269:15, 269:24,
271:8, 271:12,
271:19, 271:23,
272:4, 272:7,
272:12, 272:22,
273:7, 273:10,
273:14, 273:21,
274:9, 274:12,
274:19, 274:24,
275:9, 275:16,
275:18, 275:22,
275:24, 276:3,
276:6, 276:10,
276:17, 276:21,
277:2, 277:5, 277:7,
277:12, 277:14,
277:17, 277:21,
277:24, 278:2,
278:9, 278:13,
278:15, 278:19,
279:5, 279:7,
279:10, 279:14,
279:18, 279:21,
279:23, 280:6,
280:8, 280:11,
280:14, 280:16,
281:11, 281:15,
281:18, 282:13,
282:24, 283:5,
283:8, 283:11,
283:16, 283:19,
283:22, 284:1,
284:5, 284:9,
284:12, 284:16,
284:20, 284:23,
285:4, 285:8,
285:12, 285:18,
285:22, 286:3,
286:10, 287:8,
287:22, 288:7,
288:10, 288:13,
288:17, 288:21,
288:25, 289:2,
289:5, 289:9,
289:12, 289:16,

290:5, 290:13,
290:19, 290:24,
291:1, 291:6, 291:9,
291:11, 291:14,
291:16, 292:12,
292:18, 292:21,
292:25, 293:4,
293:10, 293:17,
293:22, 293:25,
294:3, 294:7,
294:10, 294:12,
294:20, 295:2,
295:5, 295:7,
295:14, 295:17,
295:24, 296:2,
296:8, 296:16,
296:21, 296:25,
297:5, 297:10,
297:21, 299:1,
301:7, 301:10,
301:15, 301:25,
302:5, 302:14,
302:22, 303:2,
303:7, 303:21
**protect** [5] - 32:8,
41:5, 43:11, 44:18,
294:8
**protected** [3] - 16:4,
65:23, 66:4
**protection** [1] - 176:4
**Protection** [1] - 83:11
**protective** [1] - 303:4
**protocols** [1] - 42:18
**prove** [2] - 38:2,
105:22
**proven** [5] - 63:22,
64:4, 94:17, 222:19,
225:24
**proves** [1] - 95:6
**provide** [4] - 44:11,
47:14, 167:8, 239:1
**provided** [4] - 27:3,
45:15, 167:15,
211:17
**proving** [2] - 163:8,
201:1
**provision** [3] - 45:22,
65:25, 66:6
**psychiatric** [1] -
159:18
**psychiatrist** [2] -
160:2, 175:8
**psychology** [2] -
149:10, 175:21
**psychosis** [1] - 237:8
**psychotic** [1] - 237:8
**Public** [8] - 61:15,
61:21, 149:22,
261:18, 261:19
**public** [14] - 30:19,

30:24, 31:2, 31:4,
31:6, 31:13, 76:25,
140:14, 143:11,
179:4, 208:22,
210:22, 269:12,
269:16
**publishing** [1] -
239:23
**pull** [1] - 25:11
**pulled** [2] - 150:8,
279:2
**pure** [1] - 177:14
**purported** [7] - 66:19,
66:23, 139:25,
141:15, 247:12,
296:6, 297:19
**purpose** [2] - 45:11,
172:14
**purposely** [1] - 245:21
**purposes** [1] - 31:24
**purse** [5] - 73:14,
85:22, 113:8,
232:10, 264:4
**pursue** [1] - 235:5
**push** [2] - 289:13,
289:14
**pushed** [4] - 248:21,
278:21, 278:22,
278:23
**put** [48] - 3:25, 5:10,
7:19, 15:5, 23:7,
34:6, 38:17, 47:2,
47:3, 73:14, 79:10,
82:24, 85:21, 90:25,
95:19, 105:9, 108:4,
113:8, 124:6,
134:22, 137:24,
146:1, 147:17,
154:6, 159:12,
161:19, 165:1,
178:4, 182:2, 190:1,
197:8, 201:5,
206:12, 214:5,
223:8, 229:16,
230:22, 242:21,
246:14, 259:23,
264:4, 268:3,
274:17, 280:17,
282:19, 290:11,
292:19, 301:4
**puts** [3] - 16:19, 21:9,
157:8
**putting** [3] - 10:13,
17:9, 24:8

## Q

**Q-CAR** [10] - 10:19,
10:25, 11:1, 11:4,
11:5, 11:9, 11:11,

11:17, 12:10
**Q-CARs** [12] - 8:2, 8:4,
8:18, 8:25, 9:11,
9:14, 9:15, 9:18,
9:20, 9:25, 12:23,
13:1
**qualified** [7] - 18:10,
29:13, 72:22,
154:23, 155:1,
155:20, 242:17
**qualifies** [1] - 210:3
**qualify** [1] - 18:20
**quality** [1] - 43:24
**Quality** [1] - 171:14
**queen** [1] - 45:16
**questioned** [1] - 29:24
**questioning** [5] -
48:11, 71:12, 71:16,
115:17, 227:22
**questionnaire** [3] -
154:16, 154:21,
163:1
**questions** [65] - 17:8,
17:18, 17:21, 27:19,
29:20, 30:1, 30:10,
30:17, 39:10, 41:14,
41:17, 44:24, 46:17,
46:18, 46:25, 47:5,
47:18, 48:22, 48:25,
49:1, 49:21, 51:4,
51:8, 71:21, 78:17,
87:3, 89:3, 89:20,
99:10, 99:18, 112:7,
122:13, 133:23,
135:4, 136:5,
137:12, 142:9,
144:16, 144:18,
145:5, 145:7,
145:10, 145:14,
145:18, 146:18,
163:24, 179:25,
181:5, 188:15,
189:1, 213:20,
214:3, 226:25,
233:23, 235:10,
235:14, 236:4,
250:24, 252:6,
256:20, 266:14,
287:1, 298:16,
298:18
**Questions** [25] -
73:22, 86:4, 91:4,
100:10, 105:18,
108:9, 113:12,
120:4, 138:6, 156:8,
165:7, 169:25,
182:8, 190:4,
194:12, 197:10,
201:9, 206:18,
216:20, 223:12,

239:13, 243:3,
260:9, 287:16,
290:16
**quickly** [1] - 299:9
**quiet** [1] - 14:10
**quietly** [2] - 13:18,
14:10
**quite** [8] - 8:7, 38:23,
93:2, 125:8, 128:8,
220:9, 233:17,
235:20
**quote** [1] - 79:7

# R

**race** [8] - 18:12, 19:6,
19:8, 22:22, 26:12,
26:13, 154:17,
154:24
**racial** [1] - 23:1
**raise** [3] - 40:19,
48:14, 54:15
**raised** [1] - 38:9
**raises** [1] - 233:23
**raising** [1] - 298:14
**rambling** [1] - 180:22
**ran** [3] - 114:16,
249:1, 249:11
**rare** [1] - 163:12
**rates** [1] - 253:25
**rather** [6] - 37:12,
37:20, 42:4, 48:1,
90:19, 189:10
**re** [5] - 8:10, 11:7,
51:9, 73:4, 195:8
**re-scoured** [1] - 11:7
**re-seat** [1] - 73:4
**re-seated** [1] - 51:9
**re-stitch** [1] - 195:8
**re-training** [1] - 8:10
**reach** [2] - 64:20, 65:4
**reached** [2] - 141:9,
141:12
**reaching** [1] - 140:14
**reacting** [1] - 163:17
**reaction** [3] - 145:24,
146:4, 147:2
**reactions** [1] - 205:22
**read** [13] - 14:18, 26:1,
26:2, 34:15, 36:20,
49:19, 52:19, 52:24,
72:2, 72:11, 143:9,
165:16, 178:15
**reading** [5] - 19:14,
143:3, 143:19,
270:14, 272:25
**ready** [6] - 29:18,
39:17, 51:5, 73:9,
157:19, 299:14

**real** [4] - 116:25,
141:16, 207:15,
296:12
**realistic** [1] - 28:2
**reality** [1] - 8:23
**realize** [1] - 270:21
**realizing** [1] - 11:23
**really** [49] - 8:24, 8:25,
13:6, 21:7, 22:12,
26:20, 27:19, 29:9,
29:19, 33:21, 38:23,
39:2, 44:19, 74:17,
76:10, 81:25, 90:10,
97:3, 109:20,
111:22, 112:15,
112:19, 117:1,
122:19, 122:20,
122:21, 128:7,
130:16, 142:8,
150:19, 158:2,
160:21, 167:10,
167:22, 179:24,
181:14, 186:20,
191:13, 221:7,
225:4, 233:24,
250:22, 254:18,
258:23, 261:13,
275:11, 296:10
**rear** [1] - 219:21
**rear-end** [1] - 219:21
**rearrange** [1] - 82:9
**reason** [15] - 22:24,
37:24, 47:4, 62:11,
62:17, 71:11, 71:15,
78:7, 111:24, 118:1,
157:15, 177:14,
227:21, 228:1, 246:4
**reasonable** [5] -
63:22, 64:4, 94:17,
95:7, 225:24
**reasons** [7] - 9:10,
27:5, 35:8, 171:21,
181:2, 200:16, 238:6
**reassure** [1] - 43:9
**receipt** [2] - 66:10,
66:15
**receive** [3] - 48:7,
125:16, 207:5
**received** [2] - 3:17,
154:18
**recent** [4] - 106:2,
232:24, 233:2,
237:11
**recently** [3] - 271:9,
271:14, 272:14
**recess** [4] - 73:6, 73:8,
154:2, 223:6
**recesses** [1] - 300:16
**recipients** [1] - 154:18
**recognize** [16] - 32:12,

34:1, 53:20, 55:23,
56:11, 58:1, 58:6,
182:9, 182:11,
182:12, 182:21,
252:8, 252:12,
252:25, 283:2,
290:21
**recognized** [4] -
228:3, 228:12,
264:21, 290:23
**recognizing** [1] -
27:10
**recollection** [1] - 38:8
**recommend** [1] -
215:17
**record** [20] - 2:20,
3:25, 4:5, 5:11, 6:6,
10:23, 17:14, 17:15,
19:13, 43:3, 106:3,
154:7, 162:11,
162:18, 181:3,
216:4, 216:6, 246:9,
298:13, 300:15
**records** [2] - 22:3,
22:5
**red** [1] - 272:17
**reduced** [1] - 28:4
**reelection** [1] - 224:4
**reemployment** [1] -
88:16
**Reemployment** [1] -
88:17
**refer** [5] - 34:5, 34:10,
35:17, 36:17
**referenced** [2] -
151:22, 237:3
**referencing** [1] - 20:2
**referring** [3] - 36:4,
36:7, 127:25
**refinancing** [1] -
253:22
**reflect** [1] - 106:4
**reform** [9] - 98:2, 98:3,
268:17, 268:21,
268:25, 269:1,
269:3, 269:6, 269:21
**refused** [1] - 253:10
**regard** [1] - 163:5
**regarding** [1] - 173:6
**regime** [1] - 253:9
**Regina** [2] - 17:17,
154:7
**regional** [1] - 207:3
**regularly** [1] - 285:23
**regulatory** [3] -
171:15, 190:16,
190:18
**rehabilitated** [1] - 78:4
**reject** [3] - 6:18, 7:5,
7:6

**rejected** [3] - 6:6, 6:9
**relate** [2] - 8:25, 9:1
**related** [10] - 7:16,
7:23, 66:9, 66:14,
104:16, 163:25,
205:6, 205:16,
222:13, 238:9
**relatedly** [1] - 34:4
**relates** [5] - 10:25,
11:19, 20:1, 79:4,
180:25
**relating** [1] - 266:11
**relationship** [2] -
224:14, 284:2
**relationships** [1] -
207:3
**relative** [2] - 52:9,
52:14
**relax** [1] - 71:21
**release** [1] - 300:2
**relevant** [2] - 10:2,
12:10
**religious** [2] - 59:18,
59:22
**reluctant** [2] - 25:24,
237:22
**remain** [2] - 4:24,
232:24
**remaining** [2] - 29:11,
30:13
**remember** [15] - 12:9,
74:7, 74:8, 142:12,
182:25, 205:17,
225:3, 241:23,
253:6, 253:11,
255:22, 265:21,
277:9, 277:15,
290:22
**remembers** [1] - 11:10
**remind** [3] - 51:7,
104:7, 144:7
**reminded** [1] - 18:25
**remove** [2] - 131:12,
195:2
**render** [2] - 71:4, 71:8
**repeat** [10] - 51:21,
51:22, 53:22, 56:4,
57:4, 57:18, 118:24,
132:9, 132:24,
287:23
**repeatedly** [2] - 10:14,
50:11
**replacement** [3] -
86:19, 122:4, 194:20
**replete** [1] - 25:22
**report** [5] - 15:21,
19:4, 172:2, 174:19,
220:1
**reported** [4] - 1:24,
211:22, 211:25,

245:23
**reporter** [7] - 2:24,
14:23, 42:25,
148:23, 204:21,
205:3, 205:22
**Reporter** [3] - 1:23,
1:23, 304:18
**REPORTER** [1] - 3:1
**reporting** [2] - 172:25,
173:1
**reports** [1] - 148:19
**representation** [1] -
11:6
**representational** [1] -
25:13
**represented** [4] - 53:3,
53:23, 55:6, 55:15
**representing** [1] -
240:12
**reproduce** [1] - 102:19
**repulsive** [1] - 199:18
**request** [7] - 16:7,
19:1, 37:8, 37:23,
38:17, 39:4, 222:25
**requested** [2] - 18:16,
128:14
**requesting** [1] - 39:1
**requests** [3] - 17:19,
18:2, 155:6
**require** [3] - 35:2,
35:10, 171:20
**required** [7] - 4:23,
16:15, 17:10, 21:4,
41:23, 62:11, 62:16
**requires** [1] - 17:12
**requiring** [1] - 43:21
**requisite** [2] - 27:13,
27:17
**Research** [1] - 263:12
**research** [6] - 175:21,
240:2, 240:7,
240:16, 240:20,
242:8
**researcher** [1] -
240:14
**researchers** [1] - 26:3
**resew** [1] - 195:3
**residents** [1] - 125:24
**resist** [1] - 279:25
**resolution** [5] - 91:22,
202:1, 219:9,
219:24, 232:9
**resolved** [2] - 11:17,
28:21
**respect** [15] - 16:5,
31:9, 33:7, 34:14,
79:2, 145:20,
167:14, 170:18,
188:12, 188:25,
229:7, 229:21,

240:22, 253:12, 298:8

**respectfully** [1] - 279:24

**respective** [1] - 40:8

**respond** [2] - 154:21, 158:19

**responded** [7] - 18:7, 18:18, 18:23, 133:6, 211:1, 227:20, 250:16

**response** [11] - 28:20, 48:25, 80:9, 87:18, 163:12, 206:25, 214:13, 234:10, 287:1, 293:15, 298:17

**responses** [5] - 47:20, 49:13, 154:19, 181:5, 298:17

**responsibilities** [1] - 172:25

**responsibility** [3] - 156:17, 157:16, 171:17

**responsive** [2] - 179:24, 180:4

**rest** [7] - 47:6, 49:17, 73:1, 73:6, 123:21, 162:7, 302:1

**restaurant** [2] - 140:21, 280:16

**restaurants** [2] - 126:18, 229:3

**Reston** [2] - 267:6, 267:11

**restrictions** [1] - 172:3

**restrooms** [5] - 44:3, 44:4, 44:5, 72:2, 72:11

**result** [6] - 5:16, 26:4, 91:20, 172:4, 185:6, 256:2

**results** [1] - 221:21

**resume** [22] - 55:5, 82:18, 85:16, 95:15, 100:1, 105:3, 113:4, 119:4, 137:19, 147:11, 152:17, 188:22, 203:25, 206:6, 222:24, 230:18, 239:7, 242:12, 257:2, 259:19, 267:21, 299:7

**retire** [4] - 135:17, 135:25, 240:6, 240:9

**retired** [16] - 100:17, 125:13, 125:15, 135:16, 136:1,

136:2, 136:18, 136:24, 136:25, 156:17, 157:18, 175:8, 240:5, 240:6, 241:25, 242:7

**return** [7] - 63:20, 64:2, 154:16, 219:1, 225:23, 282:14, 298:24

**returning** [2] - 300:19, 302:13

**returns** [2] - 220:5

**Revenue** [1] - 60:17

**review** [22] - 9:1, 43:19, 73:22, 86:5, 91:6, 95:22, 100:10, 105:19, 108:10, 113:15, 120:4, 124:13, 138:7, 147:23, 165:8, 170:1, 173:11, 239:14, 243:4, 262:21, 271:3, 294:18

**reviewer** [2] - 11:23, 11:25

**reviewing** [1] - 28:11

**Rica** [1] - 175:22

**right-hand** [4] - 46:22, 47:10

**rightfully** [1] - 122:19

**rights** [1] - 17:4

**Rights** [1] - 45:24

**ripe** [3] - 16:24, 22:18, 25:20

**risk** [1] - 9:17

**robbed** [1] - 262:7

**robbery** [2] - 218:23, 246:5

**role** [6] - 45:13, 90:1, 97:4, 168:18, 205:23, 222:20

**roles** [1] - 303:9

**rolling** [1] - 207:5

**room** [11] - 30:11, 31:1, 38:25, 42:15, 51:25, 52:4, 120:8, 248:20, 249:7, 275:11, 296:19

**roommate** [2] - 83:10, 83:18

**rooms** [1] - 41:4

**root** [1] - 230:1

**rough** [1] - 271:24

**round** [2] - 14:2, 14:5

**row** [1] - 74:23

**RPR** [3] - 1:23, 304:7, 304:18

**ruled** [1] - 38:10

**rules** [2] - 33:6, 33:8

**ruling** [3] - 8:15, 33:8, 33:18

**run** [16] - 17:20, 58:22, 149:10, 155:7, 174:12, 174:22, 216:21, 218:24, 219:19, 223:13, 231:8, 249:1, 252:7, 260:9, 282:23, 290:17

## S

**sacrosanct** [1] - 205:19

**safe** [3] - 43:15, 44:20, 196:15

**safely** [1] - 156:18

**safety** [7] - 41:6, 42:1, 42:18, 43:9, 43:11, 43:13, 44:18

**SAINT** [1] - 304:7

**Saint** [3] - 1:23, 42:25, 304:18

**SAINT-LOTH** [1] - 304:7

**Saint-Loth** [3] - 1:23, 42:25, 304:18

**sake** [3] - 25:2, 223:23, 224:2

**sales** [1] - 168:10

**San** [1] - 175:8

**satisfied** [6] - 64:25, 65:9, 131:14, 131:16, 185:19, 220:22

**satisfies** [1] - 21:16

**saw** [9] - 37:10, 105:10, 111:16, 114:23, 114:25, 115:20, 143:18, 183:9, 185:17

**scarf** [1] - 275:20

**schedule** [2] - 29:5, 82:1

**scheduled** [5] - 74:15, 86:15, 86:25, 105:25, 253:23

**scheduling** [1] - 155:17

**Schnur** [7] - 53:8, 53:16, 53:20, 54:3, 57:1, 57:7

**SCHNUR** [1] - 1:21

**School** [1] - 239:21

**school** [36] - 108:17, 139:14, 139:19, 156:17, 156:20, 156:24, 156:25,

157:20, 159:3, 159:14, 159:19, 159:22, 160:7, 160:10, 160:14, 165:22, 165:25, 166:8, 171:13, 174:8, 177:13, 179:13, 208:20, 211:8, 211:10, 239:21, 265:21, 283:6, 283:7, 288:13, 289:8, 291:16, 302:16, 302:19, 303:3

**science** [1] - 178:13

**scientific** [1] - 137:7

**scope** [2] - 12:1, 171:10

**scoured** [2] - 10:15, 11:7

**scramble** [1] - 302:18

**screens** [1] - 42:12

**scribbles** [1] - 170:1

**se** [2] - 175:11, 191:14

**search** [2] - 150:17, 175:13

**seat** [26] - 40:2, 55:5, 73:4, 82:18, 85:16, 95:15, 100:1, 105:3, 113:4, 119:4, 137:19, 147:11, 152:17, 169:13, 188:22, 203:25, 206:7, 222:24, 230:18, 239:7, 242:13, 257:2, 259:19, 263:23, 267:22, 300:11

**seated** [13] - 4:21, 4:24, 7:7, 29:9, 29:11, 40:6, 40:8, 48:17, 51:9, 57:9, 72:10, 119:18, 155:23

**seating** [3] - 3:22, 29:6, 29:10

**second** [23] - 6:24, 24:22, 77:25, 84:18, 88:23, 106:25, 110:18, 122:3, 145:4, 151:25, 168:21, 172:7, 175:1, 188:7, 199:5, 199:21, 200:6, 203:18, 249:3, 249:5, 263:17, 278:9, 303:10

**secondly** [1] - 24:16

**Secret** [5] - 60:17, 217:6, 217:23,

218:1, 218:8

**secretary** [2] - 60:2, 60:7

**Section** [1] - 1:13

**section** [2] - 19:17, 269:21

**Security** [2] - 125:17, 217:5

**security** [10] - 60:11, 61:3, 96:5, 124:20, 125:1, 126:6, 129:20, 178:16, 178:25, 254:24

**Sedky** [5] - 2:23, 24:2, 53:6, 53:11, 53:25

**SEDKY** [62] - 1:12, 2:22, 3:6, 3:24, 4:11, 5:5, 5:17, 5:20, 5:22, 5:25, 6:3, 7:12, 10:6, 10:10, 10:21, 10:24, 11:9, 13:5, 24:3, 24:7, 27:19, 29:21, 31:22, 32:9, 32:13, 32:18, 33:10, 33:15, 34:4, 35:14, 35:19, 35:24, 36:6, 36:13, 36:25, 38:6, 38:8, 38:13, 39:12, 39:19, 53:14, 53:17, 56:15, 56:19, 56:25, 57:5, 73:10, 81:1, 81:3, 81:10, 103:24, 104:2, 112:10, 118:24, 152:3, 152:13, 155:16, 164:7, 222:25, 236:8, 265:4, 291:19

**see** [159] - 9:4, 10:3, 18:15, 22:16, 28:17, 28:19, 29:16, 30:16, 32:11, 32:20, 33:23, 33:25, 40:18, 40:20, 41:16, 41:22, 42:3, 42:11, 44:7, 51:11, 54:6, 54:9, 54:16, 58:4, 72:18, 72:23, 73:21, 74:10, 74:25, 81:5, 81:21, 83:4, 86:3, 88:10, 88:22, 91:4, 92:4, 93:5, 94:2, 95:21, 96:24, 98:8, 100:9, 102:6, 104:20, 105:1, 106:11, 106:13, 106:16, 106:22, 108:9, 108:22, 109:1, 109:20, 110:14, 112:5, 112:6, 113:12, 114:22, 115:2,

115:8, 117:16,
118:21, 119:17,
120:3, 121:7, 122:1,
124:12, 125:8,
127:1, 128:20,
131:9, 131:14,
133:13, 135:3,
135:24, 136:1,
136:4, 137:2, 137:6,
137:14, 140:16,
143:24, 144:14,
147:22, 148:20,
149:1, 149:4,
150:17, 155:2,
156:8, 158:19,
160:1, 163:9, 165:7,
167:13, 169:12,
169:19, 169:25,
182:8, 185:16,
188:2, 190:20,
194:23, 195:24,
196:12, 197:10,
198:16, 201:9,
204:7, 205:10,
206:18, 207:11,
211:21, 214:17,
216:20, 218:2,
218:7, 221:21,
223:12, 228:7,
228:9, 228:11,
231:7, 233:7,
239:13, 240:11,
240:15, 252:6,
254:21, 257:12,
260:8, 260:23,
261:24, 264:14,
266:24, 267:4,
267:7, 268:2, 268:9,
271:2, 271:25,
272:2, 272:6,
272:19, 273:4,
274:25, 278:2,
279:8, 282:22,
284:18, 285:24,
287:16, 289:18,
290:16, 291:25,
295:8, 302:21, 303:6
**seeing** [2] - 43:6,
162:9
**seeking** [3] - 12:18,
15:23, 272:18
**seem** [4] - 49:1,
235:20, 272:16,
272:23
**select** [6] - 45:5,
45:11, 46:15, 47:21,
49:6, 49:13
**selected** [29] - 43:16,
44:19, 48:7, 48:9,
49:25, 58:18, 59:5,

81:6, 81:15, 82:7,
82:14, 120:21,
121:20, 143:14,
155:9, 156:13,
157:6, 157:12,
163:20, 206:22,
207:18, 212:20,
222:22, 276:7,
283:24, 287:19,
288:6, 289:14, 302:2
**selecting** [1] - 48:23
**selection** [22] - 7:12,
13:7, 17:19, 25:4,
25:18, 29:22, 40:22,
40:24, 42:21, 43:15,
44:18, 45:2, 45:11,
47:22, 48:5, 72:15,
72:25, 148:7,
251:20, 299:8,
300:3, 301:5
**Selection** [1] - 1:8
**self** [2] - 94:1, 170:9
**self-employed** [2] -
94:1, 170:9
**selling** [1] - 168:11
**Senate** [1] - 258:25
**sending** [1] - 13:10
**senior** [2] - 160:4,
175:18
**sense** [4] - 112:2,
225:15, 247:20,
272:23
**sensitive** [2] - 131:18,
208:3
**sent** [11] - 10:16,
10:17, 17:16, 17:24,
18:6, 18:25, 19:2,
19:15, 21:22, 26:10,
154:15
**sentence** [3] - 4:4,
5:9, 6:9
**sentenced** [1] - 256:4
**separate** [5] - 144:17,
212:12, 238:7,
238:9, 238:22
**separated** [1] - 41:3
**separately** [1] -
145:21
**series** [3] - 22:7,
46:24, 205:15
**serious** [2] - 36:11,
127:2
**seriously** [1] - 214:9
**seriousness** [1] -
196:25
**serve** [47] - 43:16,
45:6, 45:8, 52:2,
52:6, 52:11, 52:16,
58:18, 59:5, 62:2,
62:6, 66:20, 66:24,

68:18, 68:23, 69:5,
69:12, 69:18, 69:24,
70:19, 70:25, 76:25,
86:11, 87:14,
121:20, 138:10,
138:14, 139:20,
140:1, 141:25,
142:24, 156:13,
177:7, 194:16,
196:2, 206:21,
247:13, 247:15,
250:7, 250:16,
253:14, 253:20,
283:24, 287:19,
288:6, 296:7, 297:16
**served** [6] - 60:2, 60:7,
61:24, 62:3, 252:16,
256:4
**service** [17] - 15:7,
24:14, 43:16, 44:19,
44:24, 62:1, 62:5,
72:24, 86:8, 105:21,
121:20, 158:9,
166:8, 168:24,
169:4, 197:15,
268:15
**Service** [7] - 60:17,
136:24, 217:6,
217:24, 218:1, 218:8
**Services** [1] - 263:13
**services** [1] - 46:6
**serving** [4] - 46:5,
46:7, 205:19, 229:2
**session** [2] - 2:3,
160:22
**set** [12] - 12:21, 18:9,
18:19, 21:11,
125:24, 128:23,
145:4, 145:6,
235:17, 236:2
**sets** [2] - 20:2, 145:7
**setting** [2] - 198:15,
235:21
**settings** [3] - 140:22,
143:11
**Setty** [1] - 110:10
**seven** [5] - 155:7,
155:9, 184:19,
204:11, 204:12
**seven-day** [1] - 155:7
**seven-year-old** [2] -
204:11, 204:12
**several** [15] - 23:11,
39:9, 50:6, 86:17,
86:18, 92:23,
109:14, 115:15,
120:13, 166:17,
166:18, 179:25,
216:8, 221:2, 292:13
**severe** [1] - 146:4

**sex** [12] - 50:17, 50:18,
69:2, 69:3, 69:9,
69:10, 141:22,
141:23, 151:15,
286:8, 297:3, 297:14
**sexes** [1] - 118:16
**sexual** [63] - 50:8,
50:20, 66:8, 66:9,
66:13, 66:14, 67:20,
67:25, 68:4, 68:8,
68:12, 68:14, 68:17,
68:22, 69:1, 69:8,
69:16, 69:17, 69:22,
69:23, 92:20, 92:24,
94:11, 94:23, 96:17,
116:10, 116:24,
130:4, 140:4, 140:7,
141:21, 144:24,
146:2, 147:1, 151:1,
163:5, 174:3, 177:5,
177:6, 186:3, 186:5,
186:7, 186:18,
187:4, 188:12,
202:19, 211:3,
232:22, 236:7,
236:14, 237:20,
248:17, 250:5,
266:11, 266:19,
273:6, 273:17,
285:7, 297:6, 297:7,
297:13
**sexually** [22] - 50:11,
50:25, 65:22, 66:3,
66:18, 66:22, 67:2,
67:5, 67:11, 67:15,
68:5, 68:9, 94:7,
129:6, 130:8,
130:17, 139:24,
163:6, 211:7,
247:11, 285:13,
296:5
**shaky** [4] - 213:5,
213:8, 214:12,
214:14
**shall** [3] - 45:23,
234:17, 304:12
**share** [1] - 212:2
**sharing** [2] - 183:12,
224:15
**sheet** [6] - 13:21,
46:12, 46:20, 47:9,
51:6, 73:12
**sheriff** [3] - 224:4,
224:10, 224:13
**sheriff's** [1] - 60:16
**shield** [2] - 44:11,
121:11
**shifting** [1] - 144:15
**shifty** [1] - 37:13
**shocked** [1] - 174:13

**shooting** [2] - 185:13,
185:16
**shop** [2] - 32:2, 228:20
**short** [1] - 89:9
**short-circuit** [1] - 89:9
**shorthand** [1] - 1:24
**shot** [1] - 185:14
**show** [2] - 265:20,
288:22
**showed** [1] - 18:7
**showing** [4] - 19:3,
46:11, 54:14, 55:12
**shows** [1] - 46:13
**shuffle** [1] - 302:16
**shuttle** [1] - 302:20
**sic** [7] - 3:19, 4:4,
24:4, 57:16, 130:12,
208:22, 280:18
**sic)** [1] - 11:13
**sic]** [1] - 209:12
**side** [5] - 41:8, 45:13,
96:22, 215:9, 215:13
**sides** [7] - 35:22,
36:18, 37:1, 181:2,
214:23, 214:25,
225:6
**signatory** [1] - 304:14
**signed** [4] - 11:4,
11:5, 11:7, 11:9
**significance** [1] -
177:1
**similar** [3] - 205:11,
205:14, 212:10
**similarities** [1] -
212:17
**similarly** [1] - 210:6
**Simmons** [1] - 43:4
**simple** [7] - 23:8,
46:25, 91:14,
276:22, 278:1,
278:3, 278:10
**simplify** [1] - 39:3
**simply** [11] - 15:5,
37:14, 63:8, 63:15,
76:22, 94:22, 97:23,
178:16, 247:21,
255:24, 295:12
**simultaneously** [2] -
18:20, 42:9
**single** [2] - 178:17,
295:19
**sister** [31] - 50:14,
75:5, 75:9, 75:10,
75:11, 75:19, 78:21,
79:19, 87:24,
109:11, 111:1,
111:9, 111:16,
131:8, 192:2, 211:4,
212:5, 212:14,
233:6, 233:7,

233:16, 235:4, 235:5, 236:19, 237:12, 237:24, 238:5, 238:9, 238:24, 243:12, 243:19

**sister's** [4] - 110:2, 112:11, 112:23, 232:25

**sit** [14] - 31:11, 31:12, 58:10, 58:22, 72:11, 105:12, 105:15, 122:2, 122:12, 123:8, 248:4, 248:8, 270:7, 271:17

**site** [8] - 101:17, 102:1, 103:23, 104:8, 104:14, 104:15, 258:5

**sitting** [33] - 13:18, 13:22, 29:15, 30:12, 40:5, 40:15, 40:17, 41:10, 41:15, 42:7, 43:1, 47:7, 47:8, 51:15, 51:16, 59:19, 59:22, 71:22, 71:25, 72:1, 81:19, 82:7, 120:21, 120:23, 121:2, 122:4, 153:17, 159:21, 195:17, 215:13, 254:3, 275:11, 289:3

**situation** [15] - 36:16, 76:16, 82:9, 111:21, 112:23, 130:20, 131:15, 176:16, 177:19, 213:10, 235:19, 248:24, 274:8, 294:24

**situations** [3] - 176:15, 249:11, 249:12

**six** [13] - 44:3, 50:21, 130:16, 157:10, 168:20, 184:19, 205:8, 205:15, 217:4, 267:2, 267:17, 267:20, 268:17

**six-month** [2] - 205:8, 205:15

**Sixth** [2] - 24:15, 45:24

**skeptical** [2] - 98:12, 238:22

**skepticism** [4] - 177:25, 180:15, 234:17, 239:2

**skills** [1] - 179:8

**sleep** [1] - 175:25

**slow** [1] - 223:24

**slowly** [3] - 124:24, 153:18, 153:19

**small** [3] - 110:13, 148:24, 286:6

**smaller** [1] - 121:1

**Smith** [49] - 2:19, 4:20, 5:1, 6:9, 6:11, 8:22, 13:7, 13:23, 15:24, 16:3, 26:22, 33:5, 33:24, 37:11, 37:12, 37:14, 37:19, 37:20, 38:1, 39:2, 39:3, 40:23, 50:5, 50:11, 50:14, 50:17, 50:19, 50:24, 51:2, 54:20, 54:21, 54:23, 55:2, 55:4, 55:5, 55:6, 55:14, 56:20, 57:6, 57:15, 57:16, 57:17, 57:21, 57:22, 122:18, 145:11, 193:13, 200:11

**SMITH** [1] - 1:5

**Smith's** [4] - 4:20, 9:8, 50:14, 50:23

**snapped** [1] - 174:13

**snowballed** [1] - 160:5

**snowy** [1] - 174:8

**so..** [2] - 257:24, 272:18

**social** [26] - 26:3, 41:1, 41:6, 43:22, 44:3, 44:15, 70:2, 70:3, 70:8, 101:13, 101:17, 101:23, 101:25, 102:1, 103:23, 104:8, 104:15, 148:19, 160:23, 178:7, 221:11

**Social** [1] - 125:16

**socially** [1] - 120:24

**solely** [8] - 71:4, 71:8, 132:1, 151:12, 176:20, 187:17, 212:23, 215:5

**someone** [8] - 14:20, 94:7, 94:9, 174:9, 178:3, 179:4, 237:23, 246:7

**someplace** [2] - 195:16, 206:13

**sometimes** [16] - 51:19, 81:20, 84:5, 96:10, 96:17, 98:8, 114:2, 117:25, 118:1, 133:24, 148:6, 189:2, 189:3,

216:12, 257:22

**somewhat** [2] - 238:6, 238:22

**somewhere** [3] - 28:12, 220:20, 302:23

**son** [7] - 157:8, 159:3, 159:14, 161:10, 232:25, 280:6, 280:7

**son's** [3] - 278:16, 279:5, 279:6

**soon** [1] - 81:6

**sorry** [27] - 21:19, 21:20, 27:14, 54:12, 60:22, 118:17, 119:10, 125:14, 126:15, 138:25, 153:1, 154:11, 164:15, 165:24, 167:4, 182:24, 187:21, 198:5, 203:16, 217:8, 223:25, 230:6, 235:11, 270:10, 292:22, 300:1, 303:6

**sort** [13] - 7:23, 19:10, 35:11, 39:6, 148:25, 163:11, 163:25, 173:9, 185:14, 249:9, 254:18, 258:18, 266:22

**sorted** [1] - 187:1

**sorts** [1] - 39:6

**sounds** [2] - 37:13, 234:16

**source** [1] - 97:8

**sources** [3] - 22:2, 97:6, 205:25

**South** [1] - 148:11

**southeast** [1] - 116:2

**Southern** [1] - 224:5

**space** [2] - 112:2, 120:23

**spate** [1] - 220:9

**speakerphone** [1] - 23:7

**speaking** [9] - 3:13, 42:3, 42:8, 44:9, 49:19, 51:14, 72:5, 96:22, 208:7

**Special** [4] - 53:5, 53:25, 54:2, 57:1

**special** [3] - 60:14, 103:13, 175:16

**Specialist** [1] - 1:21

**specialized** [8] - 70:1, 70:6, 101:12, 178:5, 178:10, 221:10, 221:25, 222:1

**specialty** [1] - 266:3

**specific** [4] - 9:2, 142:8, 171:20, 258:16

**specifically** [4] - 163:25, 180:2, 205:17, 269:4

**specifics** [1] - 111:23

**speech** [1] - 86:20

**speed** [1] - 153:15

**speedy** [1] - 16:6

**SPENCER** [1] - 1:21

**Spencer** [4] - 53:9, 53:12, 53:21, 54:3

**SPENCER-ANDERSON** [1] - 1:21

**Spencer-Anderson** [4] - 53:9, 53:12, 53:21, 54:3

**spend** [1] - 100:22

**spent** [2] - 88:16, 217:4

**spill** [1] - 288:2

**splitting** [1] - 36:6

**spoken** [5] - 20:8, 43:2, 158:14, 211:20, 260:20

**spouse** [1] - 156:18

**spreadsheet** [3] - 26:10, 26:12, 26:15

**staff** [13] - 29:10, 40:9, 41:13, 41:17, 41:20, 54:11, 58:2, 58:7, 162:3, 183:22, 252:10, 283:4, 300:5

**stage** [2] - 33:15, 33:16

**stages** [1] - 72:15

**stamping** [1] - 254:19

**stand** [59] - 3:4, 4:21, 4:23, 6:12, 30:15, 41:16, 41:21, 48:14, 51:11, 53:10, 53:11, 54:21, 58:3, 82:23, 85:20, 90:24, 95:18, 105:8, 105:9, 108:3, 108:5, 113:8, 113:9, 119:16, 122:12, 124:6, 134:21, 156:2, 159:11, 162:23, 165:2, 169:18, 182:1, 189:22, 194:7, 197:7, 201:3, 204:5, 206:12, 206:13, 216:14, 223:9, 230:23, 239:10, 242:20, 242:23, 251:24, 257:6, 260:1, 264:2, 268:4,

274:16, 274:19, 276:8, 282:19, 287:13, 290:10, 301:3, 302:11

**standard** [2] - 4:7, 295:20

**standing** [8] - 14:18, 54:10, 55:11, 119:19, 123:7, 169:19, 247:8, 278:24

**stands** [2] - 92:25, 155:18

**staph** [2] - 194:22, 195:20

**start** [21] - 3:22, 4:16, 15:18, 28:1, 29:6, 39:6, 78:5, 79:13, 81:7, 82:14, 153:14, 156:23, 170:3, 179:4, 180:14, 208:5, 208:24, 219:3, 299:11, 300:9, 302:3

**started** [9] - 37:21, 83:15, 137:6, 174:13, 191:5, 271:12, 271:25, 272:5, 272:17

**starting** [12] - 2:21, 9:7, 58:12, 58:24, 79:7, 86:7, 105:20, 155:7, 182:9, 206:20, 243:6, 290:20

**starts** [1] - 156:20

**State** [6] - 60:18, 96:8, 99:3, 244:5, 244:8, 268:15

**state** [22] - 2:20, 19:15, 19:18, 60:10, 61:2, 96:4, 124:18, 165:10, 171:6, 171:15, 171:19, 191:17, 207:4, 209:21, 216:25, 234:9, 244:2, 254:23, 261:7, 268:11, 268:23, 293:13

**statement** [28] - 4:9, 4:13, 16:13, 16:14, 16:18, 16:21, 16:24, 17:9, 17:13, 19:22, 27:13, 27:17, 28:18, 33:23, 36:4, 37:7, 37:9, 37:15, 37:19, 37:25, 38:11, 38:13, 38:14, 38:17, 38:22, 39:7, 192:20, 212:15

statements [2] - 34:14, 35:17

States [13] - 2:2, 2:18, 40:13, 40:23, 53:3, 53:4, 53:5, 53:23, 53:24, 65:24, 66:5, 172:11, 280:12

states [2] - 4:6, 198:24

STATES [4] - 1:1, 1:3, 1:9, 1:11

Station [4] - 241:6, 241:8, 241:10, 292:14

station [1] - 241:11

stationed [1] - 217:5

statistician [5] - 135:19, 136:3, 136:8, 136:11, 136:18

statistics [4] - 137:2, 137:5, 137:10, 137:11

status [4] - 35:4, 35:5, 35:7, 35:8

statute [3] - 21:8, 28:6, 28:7

statutes [1] - 174:21

stay [5] - 71:23, 164:1, 176:4, 294:13, 302:19

staying [2] - 162:19, 163:23

stenographic [1] - 304:9

step [11] - 3:8, 18:18, 18:19, 18:21, 105:2, 113:2, 137:23, 147:16, 152:17, 222:24, 287:11

stepchildren [10] - 70:12, 70:14, 133:7, 135:5, 151:20, 192:15, 202:10, 204:9, 262:17, 280:4

stepdaughter [1] - 50:12

Stephanie [3] - 57:1, 57:7, 264:23

stepped [3] - 23:15, 23:17, 282:1

steps [1] - 131:9

stepson [5] - 133:11, 150:7, 151:22, 302:24, 302:25

Stevens [2] - 57:3, 57:8

still [13] - 20:6, 20:14, 32:16, 146:12, 147:5, 155:12, 225:3, 233:7,

233:17, 265:1, 267:19, 272:2, 272:7

stilted [1] - 34:10

stint [1] - 205:9

stitch [1] - 195:8

stolen [3] - 114:18, 150:8, 220:2

stood [1] - 42:23

Stop [1] - 98:2

stop [2] - 220:10, 278:25

stopped [1] - 148:9

store [1] - 171:23

stored [1] - 50:24

straightforward [3] - 47:20, 49:12, 286:25

strand [3] - 130:20, 130:22, 130:23

stranger [2] - 246:20, 246:21

strangers [5] - 140:14, 245:6, 245:7, 246:22, 246:23

strategy [1] - 8:11

stream [1] - 42:12

street [7] - 150:9, 152:4, 185:14, 245:16, 245:17, 245:18, 282:1

Street [4] - 1:18, 55:8, 55:16, 152:6

stress [2] - 163:12, 163:13

strike [53] - 14:20, 14:22, 78:3, 78:8, 78:11, 78:15, 78:24, 81:9, 89:5, 99:12, 99:19, 99:21, 107:5, 107:12, 122:16, 133:22, 133:25, 144:13, 144:19, 145:11, 145:12, 152:11, 161:4, 164:7, 164:11, 179:20, 180:9, 180:20, 193:9, 193:21, 196:14, 196:16, 200:8, 213:16, 214:6, 216:5, 235:15, 238:16, 238:20, 239:4, 251:6, 251:10, 274:1, 286:13, 287:4, 289:21, 289:25, 297:25, 298:13, 298:19, 301:17, 303:12

strikes [3] - 13:9, 13:10, 14:17

string [1] - 99:18

strong [6] - 70:17, 70:23, 142:22, 143:2, 143:4, 147:3

strongly [1] - 145:15

struck [2] - 14:8, 15:5

structured [1] - 9:9

struggle [1] - 90:7

struggling [1] - 33:10

students [1] - 87:1

studied [21] - 59:25, 60:5, 75:2, 83:6, 87:20, 108:13, 139:10, 147:25, 170:6, 183:15, 190:7, 208:15, 231:10, 239:16, 243:7, 254:14, 257:14, 257:16, 260:13, 284:8, 292:8

study [3] - 143:8, 143:10, 169:10

studying [1] - 143:3

stuff [6] - 160:20, 160:23, 195:2, 280:18, 280:19, 281:25

stuffed [1] - 175:22

stupid [2] - 29:19, 29:20

subject [3] - 8:4, 248:6, 248:9

submit [1] - 50:18

submitting [3] - 69:3, 69:10, 141:23

successful [1] - 25:8

successfully [1] - 9:25

suddenly [1] - 174:11

sufficient [1] - 27:4

suggestion [2] - 67:6, 67:16

suggestions [1] - 7:13

suggests [1] - 236:21

suicidal [4] - 159:25, 160:17, 237:8, 237:9

suitable [1] - 127:4

summary [1] - 212:14

summer [4] - 160:19, 166:3, 171:13

summon [1] - 18:20

summons [2] - 154:15, 154:18

summonses [1] - 18:7

Sunday [1] - 139:7

sunglasses [1] - 232:11

Superior [1] - 184:19

supervisor [2] - 10:16, 207:24

supervisors [1] -

10:10

supplement [2] - 27:11, 27:16

Support [1] - 263:13

support [12] - 27:8, 62:21, 63:2, 104:18, 109:19, 112:4, 155:14, 167:8, 167:15, 173:16, 211:17, 294:5

supporters [1] - 253:9

supporting [1] - 238:9

suppose [2] - 32:25, 187:12

supposed [5] - 76:25, 80:15, 111:13, 178:21, 295:23

surgeon [2] - 194:21, 207:2

Surgeon [3] - 136:25, 137:9, 206:25, 208:12

surgeries [1] - 196:10

surgery [1] - 194:20

surprise [2] - 32:1, 46:12

surrendered [1] - 279:2

surrounding [3] - 7:25, 9:25, 227:17

suspect [3] - 130:25, 131:2, 131:3

suspension [1] - 12:4

swear [1] - 48:6

switch [3] - 74:11, 114:1, 114:4

switched [1] - 239:25

sworn [12] - 16:13, 16:14, 16:18, 16:21, 16:23, 17:9, 17:12, 27:13, 27:17, 28:18, 48:15, 48:18

sympathy [1] - 225:12

syndrome [1] - 137:8

system [11] - 45:14, 45:19, 45:25, 98:4, 98:7, 120:15, 129:1, 258:14, 268:25, 281:3, 281:13

System [1] - 83:11

systems [1] - 268:22

**T**

taint [1] - 224:6

Talbot [1] - 224:5

talk.. [1] - 122:14

talks [2] - 97:20, 160:12

Tampa [3] - 88:2, 88:4

task [1] - 172:1

tax [4] - 22:2, 219:1, 220:5

taxes [2] - 46:7, 46:8

teachers [3] - 62:22, 63:3, 173:18

teaches [1] - 303:3

tech [2] - 102:19, 203:11

technicality [1] - 177:10

technically [1] - 174:20

technicians [1] - 12:3

technological [1] - 54:13

technologist [2] - 135:19, 135:21

technology [1] - 178:24

teen [1] - 248:22

telephone [5] - 30:24, 70:4, 70:9, 178:8

telephones [5] - 70:3, 70:8, 102:22, 178:7, 221:12

television [3] - 278:11, 278:12, 278:14

temperature [2] - 275:12, 275:13

ten [11] - 79:25, 91:18, 110:17, 128:17, 128:19, 153:11, 195:9, 223:2, 223:3, 236:22, 249:17

ten-minute [2] - 223:2, 223:3

tend [19] - 63:6, 63:9, 63:13, 63:16, 76:20, 77:3, 79:12, 80:9, 94:6, 94:9, 97:21, 146:3, 199:1, 199:4, 199:10, 199:11, 199:12, 295:11, 295:14

tendencies [2] - 237:9, 237:10

tendency [1] - 94:22

tends [4] - 98:5, 99:16, 222:6, 229:10

tense [2] - 247:6, 247:7

Teresa [3] - 42:22, 299:3, 299:25

term [3] - 48:19, 48:20, 171:19

terms [14] - 3:16, 13:9, 21:8, 21:16, 27:24, 37:10, 38:5, 75:14,

80:8, 117:4, 117:7,
130:2, 181:5, 184:11
**Terror** [1] - 98:2
**terrorism** [1] - 169:11
**test** [4] - 12:2, 12:6,
24:12, 25:9
**testified** [25] - 62:10,
62:15, 76:2, 114:15,
114:22, 127:22,
166:14, 184:9,
192:1, 201:13,
218:20, 224:20,
224:21, 224:22,
225:9, 232:5,
240:25, 244:15,
255:20, 256:13,
256:15, 262:5,
265:11, 276:14,
293:21
**testifies** [4] - 33:24,
77:12, 117:18, 225:8
**testify** [14] - 55:22,
56:10, 64:10, 64:16,
114:19, 184:18,
185:9, 219:13,
224:24, 255:25,
262:8, 262:14,
265:18, 295:20
**testifying** [8] - 33:25,
80:17, 142:14,
147:6, 149:15,
185:12, 187:24,
212:25
**testimony** [53] - 55:20,
55:22, 56:8, 56:10,
63:7, 63:10, 63:11,
63:14, 63:17, 63:18,
68:25, 69:4, 69:7,
69:11, 69:14, 69:20,
76:21, 77:4, 77:11,
78:13, 80:10, 80:12,
80:22, 97:22, 98:14,
98:24, 123:8,
141:20, 141:24,
145:17, 145:21,
146:11, 146:24,
147:3, 177:4, 185:1,
185:6, 193:2, 193:4,
199:1, 227:15,
227:16, 234:20,
238:2, 255:13,
263:2, 264:19,
286:8, 295:12,
296:13, 296:23,
297:13, 297:15
**tests** [1] - 11:24
**text** [1] - 50:21
**thanking** [1] - 46:9
**THE** [2313] - 1:1, 1:8,
1:11, 1:17, 2:2, 2:5,

2:9, 2:11, 2:14, 2:17,
2:24, 3:1, 3:2, 3:3,
3:7, 3:20, 4:7, 4:14,
4:19, 5:12, 5:18,
5:21, 5:23, 6:1, 6:11,
6:20, 6:21, 6:25, 7:4,
7:5, 7:6, 7:19, 8:15,
8:17, 8:21, 9:11,
10:5, 10:7, 10:20,
10:22, 12:8, 12:21,
12:25, 13:13, 13:17,
14:1, 14:9, 14:13,
14:15, 14:21, 14:25,
15:3, 15:12, 15:16,
15:23, 16:9, 16:17,
17:1, 17:3, 17:6,
17:12, 17:24, 18:2,
18:6, 18:13, 18:15,
18:23, 19:6, 19:9,
19:12, 19:20, 20:18,
21:6, 21:8, 21:14,
21:20, 22:1, 22:5,
22:11, 22:15, 22:17,
23:3, 23:5, 23:6,
23:10, 23:13, 23:15,
23:17, 23:20, 23:24,
23:25, 24:1, 24:2,
24:6, 25:21, 26:16,
27:9, 27:13, 27:15,
28:3, 28:6, 28:13,
28:17, 28:23, 29:4,
29:8, 29:18, 29:20,
30:3, 30:7, 30:21,
30:22, 31:15, 31:21,
32:6, 32:10, 32:14,
33:11, 33:19, 34:12,
34:18, 34:22, 35:13,
35:16, 35:22, 36:3,
36:15, 37:1, 37:5,
37:24, 38:7, 38:20,
39:6, 39:14, 39:17,
39:20, 39:22, 39:24,
40:2, 40:7, 40:10,
48:16, 53:15, 53:18,
54:6, 54:8, 54:12,
55:13, 55:14, 56:17,
56:24, 57:4, 57:9,
57:13, 57:18, 57:24,
60:22, 60:24, 73:9,
73:11, 73:16, 73:17,
73:18, 73:20, 74:2,
74:5, 74:7, 74:10,
74:14, 74:18, 74:20,
74:21, 74:22, 74:25,
75:5, 75:7, 75:9,
75:10, 75:13, 75:15,
75:17, 75:18, 75:22,
75:23, 76:3, 76:5,
76:6, 76:7, 76:8,
76:11, 76:14, 76:15,
76:17, 76:18, 76:23,

77:2, 77:7, 77:9,
77:14, 77:15, 77:17,
77:18, 77:20, 77:22,
77:23, 77:24, 78:9,
78:15, 79:1, 79:10,
79:14, 79:18, 79:20,
79:21, 79:23, 79:24,
79:25, 80:1, 80:3,
80:5, 80:7, 80:8,
80:13, 80:16, 80:19,
80:20, 80:23, 80:24,
81:2, 81:5, 81:13,
81:15, 81:18, 81:19,
81:22, 81:23, 81:24,
82:3, 82:4, 82:6,
82:12, 82:13, 82:16,
82:18, 82:20, 82:23,
83:2, 83:3, 83:9,
83:13, 83:14, 83:17,
83:19, 83:20, 83:22,
83:24, 84:1, 84:3,
84:8, 84:9, 84:11,
84:13, 84:16, 84:17,
84:22, 84:25, 85:4,
85:5, 85:6, 85:7,
85:8, 85:10, 85:14,
85:15, 85:16, 85:20,
85:25, 86:2, 86:11,
86:14, 86:15, 86:20,
86:22, 86:23, 86:24,
87:4, 87:6, 87:7,
87:8, 87:10, 87:11,
87:12, 87:14, 87:18,
87:23, 87:25, 88:1,
88:3, 88:5, 88:6,
88:7, 88:10, 88:12,
88:22, 89:1, 89:8,
89:12, 89:16, 89:18,
89:19, 89:23, 89:24,
89:25, 90:4, 90:5,
90:8, 90:11, 90:13,
90:14, 90:17, 90:19,
90:23, 91:2, 91:3,
91:5, 91:6, 91:13,
91:17, 91:18, 91:19,
91:21, 91:22, 91:23,
92:4, 92:6, 92:7,
92:9, 92:10, 92:14,
92:15, 92:17, 92:18,
92:21, 92:22, 92:23,
93:5, 93:7, 93:8,
93:9, 93:12, 93:16,
93:17, 93:19, 93:21,
93:23, 93:24, 93:25,
94:2, 94:4, 94:9,
94:13, 94:19, 94:21,
94:25, 95:3, 95:5,
95:6, 95:8, 95:9,
95:14, 95:18, 95:23,
95:24, 95:25, 96:1,
96:7, 96:19, 96:21,

96:24, 97:3, 97:4,
97:5, 97:10, 97:11,
97:12, 97:18, 97:19,
97:25, 98:11, 98:20,
98:21, 99:1, 99:2,
99:4, 99:5, 99:8,
99:11, 99:20, 99:23,
99:25, 100:2, 100:5,
100:7, 100:8,
100:16, 100:19,
100:21, 100:22,
100:24, 100:25,
101:6, 101:8,
101:10, 101:11,
101:16, 101:18,
101:19, 101:20,
101:22, 101:23,
101:25, 102:2,
102:3, 102:6,
102:10, 102:11,
102:13, 102:15,
102:17, 102:21,
102:24, 103:3,
103:5, 103:7, 103:8,
103:9, 103:10,
103:11, 103:17,
103:19, 103:21,
104:1, 104:3, 104:7,
104:9, 104:10,
104:11, 104:12,
104:13, 104:14,
104:15, 104:20,
104:22, 105:1,
105:4, 105:7,
105:13, 105:14,
105:17, 105:18,
105:24, 106:3,
106:5, 106:13,
106:15, 106:16,
106:18, 106:19,
106:21, 106:22,
106:23, 106:25,
107:3, 107:8,
107:11, 107:17,
107:19, 107:20,
107:23, 107:24,
108:2, 108:7, 108:8,
108:11, 108:12,
108:16, 108:20,
108:21, 108:22,
108:24, 109:1,
109:5, 109:6,
109:11, 109:15,
109:17, 109:18,
109:20, 109:23,
109:25, 110:1,
110:4, 110:5, 110:7,
110:9, 110:10,
110:11, 110:12,
110:14, 110:16,
110:18, 110:23,

111:4, 111:8,
111:12, 111:16,
111:19, 111:20,
111:22, 111:24,
112:1, 112:5,
112:19, 112:23,
112:25, 113:1,
113:3, 113:4, 113:7,
113:11, 113:12,
113:14, 113:15,
113:17, 113:18,
113:22, 113:23,
113:24, 114:1,
114:3, 114:4, 114:6,
114:7, 114:14,
114:20, 114:21,
114:22, 114:24,
115:2, 115:4, 115:5,
115:6, 115:8,
115:11, 115:12,
115:14, 115:15,
115:17, 115:18,
115:19, 115:23,
115:24, 116:1,
116:2, 116:3, 116:6,
116:7, 116:13,
116:19, 116:23,
116:24, 117:5,
117:6, 117:11,
117:15, 117:19,
117:20, 117:23,
118:2, 118:4, 118:6,
118:7, 118:8, 118:9,
118:12, 118:13,
118:15, 118:17,
118:18, 118:19,
118:21, 119:3,
119:5, 119:7,
119:11, 119:15,
119:19, 119:21,
119:23, 119:24,
119:25, 120:1,
120:2, 120:3, 120:6,
120:7, 120:10,
120:11, 120:13,
120:17, 120:19,
120:20, 121:4,
121:5, 121:6, 121:7,
121:10, 121:11,
121:12, 121:14,
121:17, 121:19,
121:22, 122:1,
122:3, 122:6, 122:7,
122:9, 122:11,
122:14, 122:22,
122:25, 123:5,
123:14, 123:17,
123:18, 123:20,
123:22, 123:25,
124:2, 124:5, 124:9,
124:11, 124:15,

124:16, 124:20,
124:23, 125:3,
125:4, 125:6, 125:8,
125:9, 125:10,
125:11, 125:13,
125:14, 125:15,
125:16, 125:18,
125:22, 126:1,
126:2, 126:4, 126:8,
126:10, 126:11,
126:12, 126:13,
126:14, 126:15,
126:16, 126:17,
126:19, 126:21,
127:1, 127:2, 127:7,
127:9, 127:14,
127:15, 127:19,
127:24, 128:1,
128:2, 128:5, 128:7,
128:10, 128:11,
128:12, 128:13,
128:16, 128:18,
128:20, 128:22,
129:2, 129:10,
129:12, 129:14,
129:17, 129:19,
129:23, 129:24,
130:2, 130:6,
130:13, 130:15,
130:17, 130:19,
130:25, 131:1,
131:3, 131:5, 131:6,
131:7, 131:9,
131:12, 131:14,
131:16, 131:23,
132:3, 132:9,
132:15, 132:17,
132:19, 132:21,
132:24, 133:1,
133:5, 133:10,
133:13, 133:14,
133:19, 134:3,
134:7, 134:10,
134:14, 134:16,
134:17, 134:20,
134:24, 135:1,
135:2, 135:3, 135:6,
135:7, 135:9,
135:10, 135:11,
135:12, 135:13,
135:14, 135:16,
135:17, 135:18,
135:20, 135:22,
135:24, 136:1,
136:4, 136:9,
136:15, 136:17,
136:20, 136:21,
136:23, 137:2,
137:5, 137:11,
137:13, 137:14,
137:16, 137:18,

137:23, 138:1,
138:2, 138:4, 138:5,
138:8, 138:9,
138:13, 138:18,
138:20, 138:22,
138:23, 138:24,
138:25, 139:1,
139:3, 139:5, 139:6,
139:8, 139:13,
139:15, 139:16,
139:17, 139:21,
139:22, 140:3,
140:6, 140:8, 140:9,
140:10, 140:12,
140:13, 140:16,
140:17, 140:19,
140:21, 140:25,
141:1, 141:3, 141:4,
141:5, 141:6,
141:14, 141:18,
141:19, 142:2,
142:6, 142:7, 142:9,
142:15, 142:16,
142:17, 142:18,
142:19, 142:20,
143:1, 143:7,
143:10, 143:13,
143:22, 143:23,
144:1, 144:2, 144:3,
144:5, 144:6, 144:7,
144:9, 144:11,
144:20, 145:12,
146:7, 146:15,
146:20, 146:23,
147:8, 147:10,
147:13, 147:16,
147:20, 147:21,
148:3, 148:8,
148:10, 148:13,
148:15, 148:21,
148:22, 149:1,
149:2, 149:4, 149:6,
149:7, 149:9,
149:12, 149:17,
149:19, 150:1,
150:2, 150:7,
150:11, 150:12,
150:14, 150:16,
150:20, 150:23,
150:24, 151:2,
151:6, 151:8, 151:9,
151:14, 151:15,
151:17, 151:19,
151:21, 151:24,
152:9, 152:14,
152:16, 152:18,
152:19, 152:23,
153:1, 153:3, 153:7,
153:10, 153:13,
153:14, 153:17,
153:19, 153:21,

153:23, 154:3,
154:5, 154:6,
154:12, 154:14,
155:4, 155:15,
155:17, 155:20,
155:23, 156:1,
156:4, 156:5, 156:6,
156:7, 156:11,
156:12, 156:15,
156:22, 157:1,
157:5, 157:7, 157:9,
157:10, 157:11,
157:14, 157:22,
158:3, 158:7,
158:11, 158:12,
158:13, 158:16,
158:17, 158:20,
158:22, 158:23,
158:24, 159:1,
159:8, 159:10,
159:16, 160:16,
160:18, 160:24,
161:3, 161:6, 161:8,
161:11, 161:13,
161:15, 161:19,
161:23, 161:24,
162:1, 162:2, 162:4,
162:9, 162:16,
162:21, 162:23,
163:4, 163:9,
163:11, 163:13,
163:15, 163:16,
163:21, 164:2,
164:6, 164:9,
164:12, 164:14,
164:18, 164:19,
164:21, 164:24,
164:25, 165:1,
165:3, 165:4, 165:5,
165:6, 165:13,
165:16, 165:18,
165:19, 165:21,
165:23, 165:24,
165:25, 166:1,
166:2, 166:4, 166:5,
166:6, 166:7,
166:10, 166:11,
166:16, 166:20,
166:21, 166:22,
166:23, 166:24,
166:25, 167:1,
167:3, 167:4, 167:5,
167:6, 167:10,
167:13, 167:17,
167:19, 167:22,
167:23, 168:2,
168:3, 168:5, 168:7,
168:9, 168:11,
168:13, 168:14,
168:15, 168:16,
168:18, 168:21,

169:1, 169:4, 169:6,
169:7, 169:8,
169:10, 169:11,
169:12, 169:14,
169:17, 169:22,
169:24, 170:4,
170:5, 170:8,
170:15, 170:16,
170:18, 170:19,
170:22, 171:2,
171:4, 171:9,
171:25, 172:1,
172:6, 172:7,
172:15, 172:18,
172:20, 172:23,
173:3, 173:4, 173:8,
173:12, 173:13,
173:19, 173:22,
173:23, 173:25,
174:4, 174:6, 174:7,
175:2, 175:3, 175:5,
175:6, 176:13,
176:22, 176:24,
176:25, 177:3,
177:9, 177:18,
177:21, 178:4,
178:12, 179:14,
179:16, 179:18,
179:22, 180:6,
180:10, 181:1,
181:8, 181:13,
181:16, 181:17,
181:19, 181:21,
181:24, 181:25,
182:1, 182:5, 182:6,
182:12, 182:15,
182:16, 182:18,
182:19, 182:21,
182:23, 182:24,
183:1, 183:2, 183:3,
183:4, 183:6, 183:7,
183:8, 183:10,
183:11, 183:12,
183:18, 183:19,
183:21, 183:23,
183:25, 184:1,
184:5, 184:6,
184:11, 184:14,
184:15, 184:17,
184:18, 184:21,
184:23, 184:25,
185:3, 185:5, 185:7,
185:8, 185:10,
185:11, 185:13,
185:16, 185:17,
185:19, 185:21,
185:22, 185:25,
186:1, 186:4, 186:7,
186:8, 186:9,
186:11, 186:14,
186:16, 186:17,

186:19, 186:21,
186:22, 186:23,
186:24, 187:2,
187:6, 187:8,
187:12, 187:15,
187:19, 187:21,
187:25, 188:4,
188:6, 188:7,
188:14, 188:17,
188:21, 188:23,
189:15, 189:19,
189:21, 189:24,
189:25, 190:3,
190:4, 190:10,
190:11, 190:12,
190:15, 190:16,
190:18, 190:19,
190:20, 190:21,
190:23, 191:2,
191:3, 191:5, 191:9,
191:10, 191:13,
191:15, 191:16,
191:19, 191:20,
191:22, 191:23,
192:2, 192:4, 192:6,
192:8, 192:9,
192:10, 192:13,
192:14, 192:17,
192:19, 192:24,
193:1, 193:3, 193:6,
193:8, 193:11,
193:14, 193:18,
193:21, 193:24,
194:1, 194:4, 194:7,
194:10, 194:11,
194:19, 194:24,
195:1, 195:5, 195:7,
195:10, 195:12,
195:14, 195:15,
195:16, 195:18,
195:21, 195:23,
195:25, 196:1,
196:3, 196:5, 196:6,
196:7, 196:8,
196:10, 196:12,
196:17, 196:20,
196:24, 197:3,
197:4, 197:7,
197:16, 197:18,
197:21, 197:23,
197:25, 198:1,
198:2, 198:4, 198:5,
198:7, 198:9,
198:11, 198:13,
198:16, 198:19,
198:20, 198:21,
198:22, 198:23,
198:24, 199:3,
199:5, 199:8,
199:10, 199:11,
199:12, 199:14,

199:15, 199:16,
199:19, 199:20,
199:21, 199:24,
199:25, 200:1,
200:2, 200:3, 200:4,
200:5, 200:6,
200:12, 200:15,
200:19, 200:22,
200:24, 201:3,
201:7, 201:8,
201:14, 201:15,
201:16, 201:19,
201:21, 201:22,
201:23, 201:25,
202:2, 202:4, 202:8,
202:9, 202:11,
202:12, 202:13,
202:14, 202:16,
202:17, 202:21,
202:22, 202:23,
202:25, 203:1,
203:3, 203:4, 203:5,
203:7, 203:8,
203:10, 203:12,
203:13, 203:15,
203:16, 203:18,
203:20, 203:24,
204:1, 204:4,
204:11, 204:12,
204:13, 204:14,
204:18, 204:19,
204:21, 204:23,
204:24, 204:25,
205:1, 205:2, 205:4,
205:5, 205:8,
205:10, 205:12,
205:18, 205:24,
206:1, 206:6, 206:8,
206:11, 206:16,
206:17, 206:24,
207:7, 207:9,
207:11, 207:13,
207:17, 207:20,
207:25, 208:2,
208:5, 208:11,
208:12, 208:19,
208:23, 209:1,
209:3, 209:5, 209:6,
209:7, 209:8,
209:10, 209:13,
209:18, 209:19,
209:22, 209:25,
210:2, 210:4, 210:6,
210:8, 210:11,
210:12, 210:16,
210:17, 210:21,
210:22, 210:23,
210:24, 210:25,
211:1, 211:4, 211:5,
211:7, 211:9,
211:10, 211:12,

211:13, 211:14,
211:16, 211:17,
211:19, 211:22,
211:23, 211:24,
212:1, 212:4, 212:9,
212:13, 212:18,
212:19, 212:22,
212:23, 213:2,
213:3, 213:4, 213:5,
213:7, 213:12,
213:13, 213:14,
213:20, 213:23,
214:3, 214:5,
214:17, 214:21,
214:24, 214:25,
215:2, 215:3, 215:7,
215:8, 215:10,
215:11, 215:14,
215:16, 215:17,
215:18, 215:21,
215:22, 215:25,
216:2, 216:4,
216:11, 216:14,
216:17, 216:18,
216:22, 216:23,
217:2, 217:7, 217:9,
217:11, 217:12,
217:13, 217:15,
217:16, 217:19,
217:20, 217:21,
217:22, 217:25,
218:2, 218:5, 218:7,
218:9, 218:10,
218:11, 218:12,
218:16, 218:17,
218:22, 219:2,
219:5, 219:6, 219:7,
219:9, 219:11,
219:15, 219:17,
219:18, 219:20,
219:23, 219:25,
220:2, 220:3, 220:7,
220:8, 220:9,
220:11, 220:14,
220:16, 220:17,
220:19, 220:21,
220:23, 220:25,
221:4, 221:5, 221:7,
221:9, 221:13,
221:17, 221:19,
221:21, 221:23,
221:24, 222:1,
222:3, 222:8,
222:12, 222:15,
222:16, 222:17,
222:20, 222:22,
222:23, 223:2,
223:5, 223:7,
223:11, 223:12,
223:15, 223:16,
223:21, 223:24,

223:25, 224:9,
224:11, 224:15,
224:21, 225:1,
225:2, 225:3, 225:5,
225:7, 225:11,
225:12, 225:13,
225:16, 225:18,
225:19, 225:20,
225:21, 226:3,
226:17, 226:19,
227:2, 227:5, 227:6,
227:8, 227:9,
227:11, 227:12,
227:14, 227:15,
227:18, 227:20,
228:1, 228:5, 228:6,
228:9, 228:10,
228:13, 228:16,
228:17, 228:19,
228:21, 228:22,
228:25, 229:1,
229:4, 229:6,
229:15, 230:3,
230:5, 230:8,
230:12, 230:16,
230:17, 230:19,
230:22, 230:25,
231:1, 231:2, 231:3,
231:6, 231:7,
231:13, 231:16,
231:18, 231:20,
231:21, 231:22,
232:1, 232:2, 232:6,
232:9, 232:10,
232:12, 232:14,
232:15, 232:16,
232:17, 232:18,
232:20, 232:23,
233:2, 233:3, 233:7,
233:9, 233:10,
233:12, 233:13,
233:15, 233:19,
233:20, 233:25,
234:4, 234:6, 234:7,
234:16, 234:22,
235:8, 235:10,
235:12, 236:4,
236:10, 236:12,
236:15, 236:17,
236:18, 236:25,
237:2, 237:3, 237:6,
237:14, 237:17,
237:18, 237:19,
237:25, 238:4,
238:13, 238:15,
238:18, 238:20,
239:6, 239:8, 239:9,
239:20, 239:24,
239:25, 240:4,
240:5, 240:6, 240:8,
240:11, 240:13,

240:15, 240:19,
240:22, 241:1,
241:3, 241:5, 241:7,
241:8, 241:9,
241:10, 241:11,
241:13, 241:15,
241:16, 241:17,
241:20, 241:21,
241:22, 241:24,
242:1, 242:2, 242:4,
242:8, 242:10,
242:12, 242:14,
242:18, 242:22,
242:23, 242:25,
243:1, 243:10,
243:11, 243:12,
243:13, 243:14,
243:16, 243:17,
243:18, 243:20,
243:21, 243:24,
243:25, 244:4,
244:6, 244:11,
244:12, 244:16,
244:19, 244:20,
244:21, 244:23,
245:3, 245:5, 245:6,
245:7, 245:8, 245:9,
245:11, 245:14,
245:23, 245:25,
246:1, 246:2, 246:8,
246:12, 246:17,
246:18, 246:20,
246:21, 246:24,
247:2, 247:9,
247:14, 247:21,
247:25, 248:3,
248:5, 248:6, 248:8,
248:10, 248:13,
248:15, 248:18,
248:23, 248:25,
249:3, 249:5,
249:12, 249:14,
249:16, 249:19,
249:20, 249:23,
250:3, 250:10,
250:11, 250:12,
250:13, 250:14,
250:15, 250:21,
251:2, 251:5, 251:8,
251:10, 251:12,
251:15, 251:17,
251:18, 251:19,
251:21, 251:24,
252:2, 252:3, 252:5,
252:6, 252:11,
252:12, 252:13,
252:14, 252:15,
252:17, 252:18,
252:19, 252:23,
252:24, 253:1,
253:2, 253:3, 253:4,

253:8, 253:11,
253:15, 253:16,
253:18, 253:19,
253:22, 253:24,
253:25, 254:2,
254:4, 254:6, 254:8,
254:9, 254:11,
254:12, 254:16,
254:20, 254:25,
255:3, 255:5, 255:6,
255:9, 255:11,
255:15, 255:16,
255:21, 255:25,
256:1, 256:2, 256:3,
256:6, 256:9,
256:10, 256:15,
256:18, 256:21,
256:24, 257:1,
257:3, 257:6, 257:9,
257:10, 257:15,
257:17, 257:19,
257:20, 257:22,
257:25, 258:1,
258:3, 258:5, 258:7,
258:9, 258:11,
258:12, 258:13,
258:15, 258:18,
258:20, 258:22,
258:24, 259:3,
259:5, 259:6,
259:10, 259:11,
259:14, 259:18,
259:20, 259:23,
259:25, 260:1,
260:4, 260:5, 260:6,
260:7, 260:11,
260:12, 260:15,
260:17, 260:19,
260:23, 260:24,
261:1, 261:4, 261:5,
261:9, 261:11,
261:13, 261:15,
261:21, 261:24,
262:1, 262:2, 262:6,
262:9, 262:10,
262:12, 262:15,
262:16, 262:19,
262:21, 262:24,
262:25, 263:3,
263:4, 263:6,
263:10, 263:11,
263:14, 263:16,
263:17, 263:22,
264:1, 264:3, 264:4,
264:7, 264:8, 264:9,
264:10, 264:12,
264:13, 264:16,
264:17, 264:22,
265:2, 265:5, 265:6,
265:8, 265:12,
265:16, 265:17,

265:18, 265:19,
265:22, 265:24,
265:25, 266:1,
266:2, 266:4, 266:6,
266:8, 266:13,
266:15, 266:17,
266:20, 266:24,
267:1, 267:4, 267:5,
267:7, 267:9,
267:13, 267:16,
267:17, 267:21,
267:23, 268:1,
268:6, 268:7,
268:14, 268:18,
268:20, 269:2,
269:4, 269:8,
269:10, 269:13,
269:15, 269:18,
269:24, 269:25,
270:2, 270:6,
270:12, 270:14,
270:17, 270:20,
270:23, 271:8,
271:11, 271:12,
271:16, 271:19,
271:22, 271:23,
272:2, 272:4, 272:6,
272:7, 272:10,
272:12, 272:19,
272:22, 273:4,
273:7, 273:8,
273:10, 273:12,
273:14, 273:16,
273:21, 273:23,
274:3, 274:6, 274:9,
274:10, 274:12,
274:16, 274:19,
274:20, 274:24,
274:25, 275:9,
275:14, 275:16,
275:17, 275:18,
275:19, 275:22,
275:23, 275:24,
275:25, 276:3,
276:5, 276:6, 276:7,
276:10, 276:11,
276:17, 276:19,
276:21, 277:1,
277:2, 277:3, 277:5,
277:6, 277:7,
277:10, 277:12,
277:13, 277:14,
277:16, 277:17,
277:18, 277:21,
277:23, 277:24,
277:25, 278:2,
278:8, 278:9,
278:12, 278:13,
278:14, 278:15,
278:18, 278:19,
279:3, 279:5, 279:6,

279:7, 279:8,
279:10, 279:12,
279:14, 279:15,
279:18, 279:19,
279:21, 279:22,
279:23, 280:2,
280:6, 280:7, 280:8,
280:9, 280:11,
280:13, 280:14,
280:15, 280:16,
280:20, 280:22,
280:24, 281:5,
281:8, 281:11,
281:12, 281:15,
281:17, 281:18,
282:12, 282:13,
282:14, 282:18,
282:24, 282:25,
283:5, 283:7, 283:8,
283:9, 283:11,
283:14, 283:16,
283:17, 283:19,
283:21, 283:22,
283:23, 284:1,
284:2, 284:5, 284:6,
284:9, 284:10,
284:12, 284:15,
284:16, 284:18,
284:20, 284:22,
284:23, 284:24,
285:4, 285:5, 285:8,
285:10, 285:12,
285:16, 285:18,
285:20, 285:22,
285:24, 286:3,
286:7, 286:10,
286:11, 286:24,
287:6, 287:8,
287:11, 287:22,
287:24, 288:7,
288:9, 288:10,
288:12, 288:13,
288:16, 288:17,
288:19, 288:21,
288:23, 288:25,
289:1, 289:2, 289:3,
289:5, 289:7, 289:9,
289:11, 289:12,
289:13, 289:16,
289:18, 289:22,
289:24, 290:2,
290:5, 290:6, 290:9,
290:13, 290:14,
290:19, 290:20,
290:24, 290:25,
291:1, 291:2, 291:6,
291:8, 291:9,
291:10, 291:11,
291:13, 291:14,
291:15, 291:16,
291:17, 291:21,

292:5, 292:12,
292:17, 292:18,
292:19, 292:21,
292:22, 292:25,
293:1, 293:4, 293:5,
293:10, 293:11,
293:17, 293:18,
293:22, 293:24,
293:25, 294:2,
294:3, 294:4, 294:7,
294:8, 294:10,
294:11, 294:12,
294:15, 294:20,
294:23, 295:2,
295:3, 295:5, 295:6,
295:7, 295:8,
295:14, 295:16,
295:17, 295:18,
295:24, 296:1,
296:2, 296:3, 296:8,
296:9, 296:16,
296:18, 296:21,
296:22, 296:25,
297:1, 297:5, 297:8,
297:10, 297:11,
297:21, 297:23,
298:12, 298:23,
299:1, 299:3,
299:16, 299:20,
299:21, 299:24,
300:4, 300:6, 300:9,
300:10, 300:13,
300:14, 300:18,
300:20, 300:21,
301:2, 301:7, 301:8,
301:10, 301:14,
301:15, 301:20,
301:22, 301:25,
302:2, 302:5, 302:6,
302:9, 302:10,
302:14, 302:21,
302:22, 302:25,
303:2, 303:6, 303:7,
303:8, 303:13,
303:15, 303:18,
303:21, 303:23,
303:25, 304:1, 304:2
**theft** [3] - 218:25,
220:3, 220:18
**theoretically** [1] -
234:14
**theories** [1] - 179:2
**therapist** [2] - 159:24,
160:22
**therapy** [1] - 272:18
**therefore** [6] - 64:10,
64:16, 65:14, 65:18,
130:10, 130:23
**they've** [1] - 245:19
**thinking** [11] - 15:1,

15:9, 89:19, 118:12,
138:18, 188:11,
211:18, 232:7,
234:8, 263:9, 289:4
**thinks** [7] - 78:4, 79:5,
79:7, 145:23, 236:9,
263:7, 287:3
**third** [4] - 24:11,
24:23, 166:1, 249:14
**thorough** [2] - 176:14,
201:25
**thoughts** [4] - 65:2,
65:11, 160:1, 181:15
**thousand** [1] - 86:17
**threat** [1] - 129:13
**threatened** [1] - 249:9
**threats** [3] - 68:6,
68:10, 129:7
**three** [24] - 4:17,
25:12, 37:21, 46:21,
102:4, 118:10,
133:10, 135:11,
144:6, 144:17,
144:22, 145:7,
145:21, 146:24,
148:4, 148:8,
148:11, 152:5,
194:21, 249:12,
267:2, 272:5, 298:7
**threw** [1] - 276:24
**throughout** [4] - 30:8,
35:15, 41:24, 171:18
**throws** [1] - 9:8
**Thursday** [7] - 18:25,
58:11, 58:23,
105:25, 106:1,
138:15, 159:24
**Tiffany** [2] - 57:2, 57:8
**timeliness** [1] - 26:20
**timely** [4] - 8:13,
16:20, 16:22, 22:13
**timely-filed** [1] - 22:13
**timing** [2] - 21:9,
236:23
**to..** [1] - 96:18
**Tobacco** [1] - 60:18
**today** [25] - 3:20, 3:24,
18:17, 19:4, 42:20,
45:4, 49:24, 52:20,
52:25, 83:1, 107:18,
123:15, 134:8,
159:19, 164:15,
181:9, 200:21,
251:13, 275:11,
287:7, 287:14,
299:12, 301:6,
302:17, 302:19
**today's** [1] - 154:25
**together** [7] - 13:10,
17:9, 28:15, 104:17,

257:23, 283:6, 283:7
**tomorrow** [22] -
194:23, 195:4,
195:24, 196:4,
196:18, 197:1,
253:23, 290:4,
298:25, 299:4,
299:8, 299:11,
300:3, 300:8, 301:5,
301:9, 301:13,
301:24, 302:13,
303:20, 304:2
**Tony** [2] - 57:16, 57:22
**took** [14] - 50:19, 67:5,
67:14, 82:4, 88:15,
114:18, 130:7,
150:9, 150:16,
156:17, 157:16,
157:20, 227:10,
282:8
**top** [1] - 141:7
**topic** [2] - 143:3,
285:23
**topics** [4] - 143:12,
144:23, 146:12,
146:25
**total** [2] - 5:8, 133:9
**totality** [2] - 12:22,
177:22
**totally** [6] - 15:19,
17:19, 19:11,
199:18, 226:7, 247:6
**touch** [2] - 27:22,
43:25
**touched** [5] - 141:9,
141:13, 142:13,
174:22, 176:17
**touches** [1] - 96:17
**touching** [1] - 140:15
**tough** [1] - 127:17
**toward** [1] - 45:12
**towards** [2] - 180:13,
180:15
**town** [1] - 224:5
**track** [2] - 48:1, 51:23
**Trademark** [1] - 77:21
**traffic** [3] - 265:13,
265:16, 265:20
**trafficking** [1] - 96:17
**train** [1] - 12:6
**training** [14] - 8:10,
70:1, 70:7, 101:12,
126:2, 148:21,
173:5, 178:6,
178:10, 221:10,
221:25, 222:2,
266:22, 267:19
**Transcript** [1] - 1:25
**TRANSCRIPT** [1] - 1:7
**transcript** [3] - 304:9,

304:10, 304:13
transcription [1] - 1:25
transfer [1] - 50:22
transmitted [2] - 130:8, 130:18
transparency [2] - 30:8, 176:11
transparent [2] - 14:13, 138:15
transportation [1] - 205:6
Transportation [5] - 84:12, 84:13, 84:15, 204:22, 204:23
transportation-related [1] - 205:6
travel [2] - 269:14, 269:17
traveling [2] - 138:17, 138:22
treat [2] - 80:20, 80:21
treated [15] - 76:15, 109:24, 111:3, 112:17, 128:21, 246:8, 246:10, 246:12, 279:19, 279:24, 281:2, 281:3, 281:10, 281:12, 281:15
treatment [2] - 237:9, 271:12
trial [66] - 4:16, 5:2, 5:8, 6:15, 8:14, 9:4, 9:7, 10:13, 15:25, 16:6, 18:3, 21:21, 27:10, 29:1, 30:25, 31:5, 34:3, 34:9, 43:3, 43:6, 45:15, 45:20, 45:23, 48:8, 49:24, 51:25, 52:4, 54:20, 55:2, 55:19, 56:7, 58:9, 58:14, 58:21, 59:1, 61:25, 62:2, 62:4, 62:6, 64:9, 64:15, 74:12, 94:8, 120:23, 120:25, 121:16, 128:12, 138:19, 145:22, 146:24, 149:16, 163:20, 185:9, 207:18, 208:6, 218:15, 247:24, 248:1, 248:2, 253:8, 253:11, 275:15, 276:25, 288:1, 289:4, 295:20
TRIAL [1] - 1:7
trials [2] - 44:23,

253:6
tried [1] - 160:10
trigger [1] - 272:24
triggered [1] - 272:14
triggering [2] - 272:21, 273:19
trouble [2] - 160:23, 163:23
true [9] - 26:1, 129:11, 132:16, 148:20, 215:2, 273:2, 304:8, 304:9
trust [5] - 62:23, 63:4, 158:18, 173:18, 176:22
truth [11] - 76:24, 77:8, 78:5, 78:8, 79:5, 79:8, 79:13, 80:15, 80:17, 117:6, 117:22, 143:17
truthful [2] - 46:19, 132:20
truthfully [2] - 48:21, 48:25
try [9] - 3:6, 50:1, 74:11, 112:2, 112:4, 133:2, 254:11, 294:13
trying [22] - 16:9, 25:11, 32:21, 81:11, 102:19, 103:5, 163:6, 213:17, 235:4, 241:22, 247:17, 247:20, 250:25, 271:25, 272:7, 278:22, 281:19, 281:21, 281:22, 281:23, 282:6, 303:8
Tuesday [1] - 87:16
Tuesdays [1] - 196:10
turn [11] - 4:25, 13:3, 15:6, 15:16, 56:5, 71:21, 72:7, 72:19, 72:21, 97:9, 157:12
turned [2] - 30:19, 133:11
TV [2] - 278:21
twelve [1] - 45:7
twenty [1] - 205:4
twenty-five [1] - 205:4
twice [7] - 45:21, 51:18, 51:22, 78:6, 276:22, 277:19, 286:25
twin [1] - 87:23
twins [2] - 202:13, 202:14
two [55] - 4:17, 8:14, 9:7, 18:10, 18:19,

18:21, 24:12, 41:3, 44:5, 45:7, 56:21, 74:23, 81:1, 81:2, 88:15, 99:4, 99:5, 105:24, 118:9, 118:20, 125:3, 125:4, 135:18, 141:6, 142:11, 148:4, 148:8, 150:8, 150:13, 153:9, 154:10, 154:14, 156:16, 160:5, 168:19, 171:12, 188:15, 202:13, 202:14, 212:12, 220:6, 228:23, 233:5, 234:15, 249:6, 249:10, 252:21, 259:5, 260:20, 267:2, 279:13, 281:8, 300:18, 302:22
two-step [2] - 18:19, 18:21
two-week [1] - 18:10
type [5] - 102:19, 104:24, 108:19, 145:24, 209:11
types [1] - 88:9
typically [1] - 24:20

U

U.S [23] - 1:13, 10:11, 53:6, 53:19, 53:25, 54:14, 60:15, 60:16, 60:17, 77:21, 136:24, 172:17, 173:6, 182:14, 185:2, 185:4, 206:25, 217:6, 255:2, 255:7, 255:12, 268:14, 268:23
U.S.C [1] - 17:10
ultimately [2] - 24:24, 25:19
ultrasound [2] - 74:3, 81:4
um-hmm [7] - 79:20, 81:18, 140:8, 141:4, 212:22, 285:8, 291:16
um-hum [5] - 76:6, 213:2, 214:24, 219:5, 288:25
unable [2] - 187:22, 237:22
unanimous [2] - 64:22, 65:6

unbiased [1] - 234:19
uncle [4] - 284:12, 284:18, 285:1
unclear [1] - 14:19
uncomfortable [30] - 3:11, 51:24, 52:4, 66:17, 66:21, 69:5, 69:12, 114:2, 114:8, 120:8, 120:15, 120:18, 121:23, 122:5, 123:6, 123:9, 139:23, 140:4, 140:5, 141:24, 142:4, 144:24, 145:6, 164:3, 195:17, 247:10, 248:7, 273:18, 296:4, 297:16
under [18] - 5:10, 17:10, 25:8, 65:22, 66:3, 68:17, 68:22, 126:22, 141:9, 174:21, 208:1, 227:3, 227:6, 236:20, 248:20, 249:13, 249:15, 250:6
underage [2] - 76:4, 76:5
undercover [2] - 126:23, 127:8
underneath [3] - 26:13, 140:15, 141:13
underpinnings [1] - 178:23
understandings [1] - 221:15
understood [12] - 12:24, 14:12, 16:22, 28:24, 89:23, 99:22, 116:14, 116:15, 117:13, 302:5
unemployment [1] - 88:19
unequivocal [1] - 144:25
unequivocally [1] - 145:15
unfortunately [6] - 9:21, 49:23, 232:24, 234:12, 236:24, 299:7
UNICEF [3] - 96:14, 96:19, 97:15
Union [1] - 292:14
unique [1] - 20:22
unit [2] - 11:13, 269:21
UNITED [4] - 1:1, 1:3,

1:9, 1:11
United [13] - 2:2, 2:18, 40:13, 40:23, 53:3, 53:4, 53:5, 53:23, 53:24, 65:24, 66:5, 172:11, 280:12
University [3] - 139:14, 144:4, 239:21
unjust [1] - 272:23
unless [5] - 33:6, 63:21, 64:3, 225:23, 235:5
unnamed [1] - 8:2
unnecessary [1] - 40:25
unsure [3] - 213:10, 214:13, 214:15
unusual [1] - 248:7
up [141] - 3:2, 3:4, 3:6, 3:8, 4:21, 4:23, 7:15, 10:18, 12:2, 13:10, 21:11, 22:24, 23:24, 24:19, 30:1, 39:6, 47:5, 50:21, 56:17, 58:3, 71:22, 73:13, 76:9, 78:17, 78:24, 79:4, 79:8, 79:15, 81:5, 85:1, 85:2, 85:10, 94:4, 94:13, 94:15, 95:11, 99:8, 99:18, 100:17, 100:20, 103:21, 104:3, 110:21, 110:24, 110:25, 111:5, 112:14, 118:23, 118:25, 119:1, 121:14, 123:7, 127:16, 128:23, 133:17, 134:11, 135:12, 136:5, 142:9, 144:16, 145:5, 145:10, 145:13, 145:18, 145:20, 146:7, 146:18, 150:8, 153:15, 157:17, 159:14, 167:8, 169:1, 173:7, 173:20, 175:11, 175:19, 176:5, 188:10, 188:15, 189:9, 194:23, 195:2, 195:3, 203:20, 206:3, 206:4, 209:11, 213:20, 214:3, 214:11, 214:18, 222:8, 226:12, 228:14, 229:6,

229:12, 229:14,
229:16, 229:21,
230:9, 232:7,
233:16, 235:10,
235:13, 236:4,
238:15, 242:4,
242:9, 242:18,
251:5, 256:20,
256:22, 256:23,
259:14, 259:16,
263:19, 263:20,
265:20, 266:8,
266:14, 267:9,
268:1, 270:2, 270:3,
270:4, 273:15,
276:8, 276:9, 279:2,
280:1, 280:22,
280:24, 281:5,
285:23, 286:16,
288:22, 289:17,
300:8
**upcoming** [1] - 7:17
**updated** [2] - 18:3,
43:23
**upper** [1] - 46:22
**ups** [2] - 23:11, 173:1
**upset** [3] - 159:20,
160:21, 272:25
**upsetting** [1] - 164:15
**urgent** [4] - 58:16,
59:3, 73:24, 288:3
**USAO** [1] - 1:13

**V**

**vaccine** [1] - 207:1
**vague** [1] - 236:19
**various** [11] - 75:3,
97:6, 104:17,
171:17, 171:18,
171:22, 173:2,
175:14, 178:15,
178:24, 239:22
**vary** [2] - 58:12, 58:24
**vast** [1] - 104:25
**Vaughn** [2] - 57:16,
57:22
**venire** [7] - 18:4,
21:15, 24:13, 72:10,
154:25, 155:9, 201:1
**venires** [1] - 24:18
**venue** [1] - 204:25
**veracity** [2] - 148:6,
233:14
**verbally** [1] - 50:21
**verdict** [14] - 49:11,
63:21, 64:3, 64:20,
64:21, 64:22, 64:25,
65:4, 65:5, 65:6,

65:9, 71:4, 71:8,
225:23
**versed** [1] - 21:1
**versus** [3] - 2:18,
177:13, 177:23
**vicinity** [2] - 171:23,
176:8
**victim** [63] - 35:5,
35:7, 62:9, 62:14,
67:1, 67:10, 68:4,
68:8, 68:12, 68:14,
76:1, 91:10, 91:14,
92:20, 109:9,
113:20, 114:13,
127:22, 129:4,
130:4, 150:4, 151:1,
166:13, 166:17,
167:15, 174:2,
177:23, 184:8,
184:11, 186:3,
186:5, 191:25,
201:12, 211:3,
218:19, 218:22,
218:23, 218:25,
219:4, 221:1,
224:19, 232:4,
232:22, 236:1,
240:24, 241:2,
244:14, 244:17,
248:17, 255:19,
262:4, 262:7,
265:10, 273:6,
276:14, 285:7,
286:4, 286:9, 287:2,
293:20, 293:22,
297:3, 297:5
**victim's** [1] - 31:25
**victims** [4] - 62:21,
63:2, 92:24, 173:16
**video** [4] - 30:18,
42:11, 42:12, 43:19
**view** [17] - 59:10,
59:16, 65:13, 65:17,
107:9, 109:23,
109:25, 122:22,
155:15, 222:14,
234:19, 235:22,
247:3, 275:6, 286:7,
289:22, 298:4
**viewing** [8] - 16:11,
17:8, 66:18, 66:22,
139:24, 247:11,
296:5, 296:9
**viewpoints** [1] - 47:19
**views** [1] - 230:13
**violating** [1] - 50:6
**violation** [4] - 12:19,
24:14, 172:11,
201:17
**violations** [2] - 5:15,

110:23
**violence** [18] - 70:16,
70:18, 70:22, 70:24,
142:21, 142:22,
143:6, 143:9,
144:23, 147:1,
205:16, 293:23,
294:9, 294:16,
297:6, 298:9
**violence-related** [1] -
205:16
**Virginia** [4] - 137:1,
149:10, 219:8,
261:23
**virtually** [1] - 38:8
**vis** [2] - 188:13
**vis-a-vis** [1] - 188:13
**visceral** [1] - 298:15
**vision** [4] - 59:7,
59:12, 271:4, 275:3
**visual** [1] - 106:8
**vital** [1] - 49:8
**void** [1] - 304:12
**voir** [7] - 3:15, 30:9,
30:14, 39:16, 48:19,
49:21
**volunteer** [4] - 62:19,
62:25, 96:15, 173:15
**volunteers** [1] - 224:4
**voter** [1] - 22:3
**voting** [1] - 46:7
**vs** [1] - 1:4

**W**

**wait** [6] - 2:6, 23:22,
51:10, 71:24, 72:4,
160:11
**waiting** [3] - 49:18,
49:25, 50:1
**waive** [2] - 2:7, 26:21
**wake** [1] - 25:5
**walk** [1] - 141:13
**walked** [1] - 141:9
**walking** [2] - 122:4,
141:12
**Wanda** [2] - 56:20,
57:6
**wants** [7] - 16:3, 49:9,
65:13, 65:17,
195:24, 235:6
**warm** [1] - 276:9
**warmer** [1] - 275:19
**Washington** [17] - 1:6,
1:14, 1:19, 14:22,
50:15, 55:8, 55:16,
92:16, 93:24, 93:25,

112:24, 116:1,
137:15, 144:4,
148:23, 204:22,
241:3
**waste** [3] - 38:21,
39:11, 193:19
**watch** [2] - 258:24,
270:14
**water** [1] - 73:7
**wave** [2] - 41:16,
41:21
**ways** [8] - 33:20,
77:10, 80:20, 98:17,
112:4, 189:16,
233:24, 244:25
**weaker** [1] - 120:14
**wear** [4] - 41:23,
43:22, 44:10, 275:21
**wearing** [5] - 42:1,
42:2, 42:4, 51:19,
275:25
**weather** [1] - 276:1
**web** [1] - 179:5
**website** [2] - 43:19,
175:14
**websites** [1] - 240:1
**wedding** [1] - 138:16
**Wednesday** [3] -
86:22, 86:23, 87:16
**wee** [1] - 15:17
**wee-hours-of-the-
morning** [1] - 15:17
**week** [36] - 18:10,
58:10, 58:17, 58:22,
59:4, 73:25, 86:8,
86:13, 86:14, 86:15,
87:2, 87:3, 89:4,
90:1, 90:6, 105:21,
123:21, 138:10,
156:14, 194:17,
194:18, 197:14,
206:21, 207:21,
215:23, 235:1,
253:20, 287:20,
288:2, 288:3, 288:4,
302:1
**weekend** [4] - 87:13,
159:16, 160:7,
194:22
**weekends** [3] - 256:4,
256:18, 256:19
**weeks** [10] - 20:9,
24:17, 74:2, 109:14,
160:5, 207:6,
207:12, 256:4,
256:14, 272:5
**weigh** [2] - 80:11,
295:19
**weight** [6] - 63:10,
63:17, 77:3, 77:7,

80:9, 80:14
**welcome** [7] - 40:11,
58:3, 190:1, 231:6,
274:24, 275:20,
292:25
**West** [1] - 261:23
**whatnot** [1] - 104:18
**wheel** [17] - 17:21,
19:15, 19:23, 20:3,
20:19, 20:20, 21:2,
21:12, 21:21, 22:2,
22:6, 22:8, 26:25,
27:4, 27:23, 252:21
**whichever** [1] - 182:3
**whistleblowing** [1] -
173:5
**White** [4] - 26:18,
88:1, 88:3, 259:2
**whoa** [1] - 86:4
**whole** [9] - 33:7,
36:12, 36:17,
157:14, 229:2,
235:3, 272:14,
272:17
**wholeheartedly** [1] -
178:1
**wife** [8] - 149:9, 151:2,
151:10, 151:16,
157:8, 158:14,
232:7, 273:7
**Williams** [11] - 57:2,
57:8, 290:24, 291:1,
291:2, 291:4, 291:5,
291:6, 291:22,
292:1, 292:4
**willing** [3] - 27:25,
81:10, 81:23
**wills** [1] - 231:19
**window** [1] - 114:16
**wireless** [1] - 178:25
**wish** [3] - 49:6,
153:15, 201:4
**wishful** [1] - 118:12
**wishing** [1] - 35:23
**witness** [51] - 8:1,
10:1, 10:2, 31:9,
36:20, 62:9, 62:10,
62:14, 62:16, 76:1,
77:12, 80:16, 91:10,
98:15, 101:4, 109:9,
113:20, 114:13,
114:14, 117:18,
127:22, 147:9,
150:5, 166:14,
180:1, 184:9,
184:22, 192:1,
201:12, 218:20,
224:19, 229:8,
232:5, 234:20,
240:25, 244:15,

255:19, 255:24, 256:16, 262:4, 265:11, 276:14, 291:17, 291:20, 291:21, 291:22, 292:2, 293:21, 295:4, 295:19, 298:6
**witness's** [5] - 80:12, 80:22, 98:24, 144:14, 179:24
**witnesses** [32] - 7:17, 8:1, 9:18, 10:12, 31:5, 31:24, 56:16, 59:10, 59:15, 63:6, 63:11, 63:13, 63:18, 76:20, 77:5, 78:13, 97:21, 101:4, 142:14, 143:17, 147:6, 149:15, 187:24, 188:2, 191:1, 198:25, 212:25, 215:4, 271:7, 275:6, 295:10
**witnesses'** [1] - 255:13
**witnessing** [1] - 245:1
**Wolf** [3] - 57:2, 57:7, 264:23
**word** [1] - 217:13
**words** [5] - 24:8, 38:5, 43:2, 63:9, 63:16
**works** [10] - 88:1, 88:8, 96:10, 108:18, 156:18, 156:19, 198:2, 231:14, 261:22, 291:11
**world** [3] - 172:24, 213:9, 269:7
**worried** [1] - 81:4
**worry** [2] - 121:14, 160:20
**worth** [1] - 201:24
**worthwhile** [1] - 3:25
**wound** [1] - 106:6
**wow** [1] - 220:7
**wrapped** [2] - 175:11, 176:5
**wrist** [2] - 246:9, 246:10
**write** [3] - 2:13, 46:21, 172:2
**writing** [1] - 48:1
**wrote** [1] - 177:14

## Y

**year** [26] - 26:6, 43:10, 128:14, 139:15, 139:16, 139:17,

157:18, 165:23, 165:25, 166:1, 202:13, 202:14, 203:7, 204:11, 204:12, 207:2, 228:23, 232:19, 267:18, 277:22, 277:23, 277:24, 284:14, 284:15, 302:15, 302:23
**Year's** [2] - 91:14, 91:24
**years** [89] - 5:20, 6:7, 6:17, 45:18, 50:13, 68:17, 68:23, 77:23, 84:16, 84:17, 88:16, 91:13, 91:18, 93:1, 99:4, 99:5, 102:4, 109:12, 109:15, 109:17, 110:17, 115:25, 124:22, 125:3, 125:4, 125:23, 128:9, 128:17, 128:19, 129:20, 137:16, 137:18, 140:10, 140:11, 144:6, 148:4, 148:8, 148:12, 148:22, 150:13, 151:3, 166:19, 168:19, 170:21, 184:20, 188:6, 192:9, 201:19, 205:4, 211:11, 217:3, 217:4, 220:6, 225:1, 232:7, 232:17, 233:6, 236:15, 236:22, 246:19, 249:17, 250:6, 252:22, 254:17, 255:5, 255:21, 255:22, 259:5, 260:20, 262:10, 263:16, 267:2, 267:17, 267:20, 268:17, 269:11, 277:11, 280:8, 283:12, 285:19, 293:25, 294:3, 294:4, 294:24
**York** [4] - 1:14, 191:10, 192:7, 209:24
**you-all** [9] - 3:12, 31:16, 43:9, 72:3, 72:9, 119:8, 123:1, 134:11, 300:22
**young** [7] - 114:16, 130:16, 131:25,

150:8, 199:17, 245:15, 248:22
**younger** [5] - 50:14, 177:23, 178:3, 211:19, 283:12
**yourself** [6] - 134:25, 183:24, 213:6, 214:12, 221:25, 275:21

## Z

**zero** [1] - 26:4